UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:19-cr-00013 |
| v. | **UNDER SEAL** |
| GEORGIANNA A.M. GIAMPIETRO, | Chief Judge Waverly D. Crenshaw, Jr. |
| Defendant. | Magistrate Judge Alistair E. Newbern |

## MEMORANDUM OPINION AND ORDER

Defendant Georgianna A.M. Giampietro appeared before the Magistrate Judge for a hearing on the United States' motion for pretrial detention (Doc. No. 9) on August 21, 2019. After the hearing concluded, the United States filed a second memorandum in support of its motion that included supplemental documentary evidence. (Doc. No. 16.) Giampietro has moved to strike the United States' second memorandum. (Doc. No. 17.) For the reasons that follow, the United States' motion for pretrial detention will be granted and Giampietro's motion to strike will be denied.

### I.       Legal Standard

A defendant may be detained pending trial only upon the Court's finding that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Court's finding that no combination of conditions will reasonably assure the community's safety must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). A finding of risk of flight must be supported by a preponderance of the evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). "The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F. 3d 939, 945 (6th Cir. 2010); *see also United States*

*v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.")

This default position is altered when probable cause has been established to believe that the defendant has committed one of the offenses specified in 18 U.S.C. § 3142(e)(3), including 18 U.S.C. § 2339B(a)(1). *United States v. Stone*, 608 F.3d 939, 945 (2010). For these enumerated offenses, the rebuttable presumption is that no condition or combination of conditions will reasonably assure the defendant's appearance or the safety of the community. 18 U.S.C. § 3142(e)(3). This presumption imposes a "not heavy" burden of production on the defendant, which may be met by the introduction of "at least some evidence" that he does not present a danger to the community or a risk of flight. *Stone*, 608 F.3d at 945. If the defendant's burden is met, "'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.'" *Id.* (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Because the presumption reflects Congress's judgment that "particular classes of offenders should ordinarily be detained prior to trial," it falls to the defendant to "'present all the special features of his case' that take it outside 'the congressional paradigm[.]" *Id.* (quoting *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985)).

In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of any other person and the community, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

2

## II. Factual and Procedural Background

On August 14, 2019, Giampietro was indicted on one count of attempting to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1)[1] and 18 U.S.C. § 2.[2] (Doc. No. 3.) Specifically, the indictment charges that, between approximately September 23, 2018, and October 23, 2018, Giampietro attempted to provide personnel and services to a foreign terrorist organization so designated by the Secretary of State and known as the Hay'at Tahrir, Hay'et Tahrir al-Sham, Hayat Tahrir al-Sham, and HTS. (*Id.*) The statutory maximum sentence for the violation of 18 U.S.C. § 2339B with which Giampietro is charged is twenty years. 18 U.S.C. § 2339B(a)(1).

The Magistrate Judge held a hearing on the United States' motion for detention on August 21, 2019. The United States invoked the rebuttable presumption of detention provided for offenses listed in 18 U.S.C. § 2332b(g)(5)(B) that carry a maximum term of imprisonment of more than ten

---

[1]   18 U.S.C. § 2339B(a)(1) provides:

> **Unlawful conduct.**—Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization . . . , that the organization has engaged or engages in terrorist activity . . . , or that the organization has engaged or engages in terrorism . . . .

[2]   18 U.S.C. § 2 provides:

> **(a)** Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> **(b)** Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal.

3

years. 18 U.S.C. § 3142(c)(3)(C). Giampietro offered the testimony of three witnesses: Lori Chaney, a co-worker; Dana Looper, her family law attorney; and Maria Williams, her mother. The Magistrate Judge found that these witnesses' testimony provided "at least some evidence" sufficient to rebut the presumption of detention that Giampietro would not present a danger or a risk of flight if released pending trial. *Stone*, 608 F.3d at 945; *see also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (finding that the presumption imposes a "'limited burden of production—not a burden of persuasion . . . .'" on the defendant) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). The United States then supported its motion for pretrial detention by evidentiary proffer set out in an accompanying memorandum and exhibits (Doc. No. 13).

## III.     Detention Analysis

Having found that Giampietro met the limited burden of production required to rebut the presumption of detention under 18 U.S.C. § 3142(e)(3)(C), the Magistrate Judge must now determine whether the United States has shown by clear and convincing evidence that Giampietro will pose a danger to others or the community or by a preponderance of the evidence that Giampietro is likely to flee pending her trial and that there are not conditions of release sufficient to assure the community's safety or Giampietro's future appearance at court proceedings. The Magistrate Judge considers the following factors set out by 18 U.S.C. § 3142(g) in making this determination.

### A.     Nature and Circumstances of the Charged Offense

Giampietro is charged with one county of violating 18 U.S.C. § 2339B(g)(5)(B) and 18 U.S.C. § 2 by attempting to provide material support to a designated foreign terrorist organization. This is a serious felony offense that carries a maximum prison term of twenty years. It has also

4

been designated by Congress as one of a number of exceptional charges that warrant a rebuttable presumption of detention before trial. 18 U.S.C. § 3142(g)(1). *See United States v. Al-Arian*, 280 F.Supp.2d 1345, 1351 (M.D. Fla. 2003) (finding offense falling under § 2339B "not a common violent crime, but rather terror that rips civilization's fabric").

Evidence proffered by the United States shows that Giampietro's charge stems from online conversations with an undercover FBI employees (UCE-1) beginning in May 2016 and extending over several months about Islam and current events. (Doc. No. 13.) These online interactions led to an in-person meeting between Giampietro and a second undercover FBI employee (UCE-2) in November 2017 that was surveilled by agents and in which Giampietro expressed her desire to travel to Syria. A second monitored in-person meeting between Giampietro and UCE-2 took place in February 2018. In that meeting, Giampietro stated that she wanted to travel to Syria to meet her fiancé Abu Abdullah, who supported numerous rebel groups and was affiliated primarily with Jabhat al-Nusrah. Giampietro expressed her belief that Islamic women have a duty to support Islamic men in waging jihad. She stated that she hoped "to die alongside her husband in Syria, in an airstrike, on a Friday during Ramadan while she and her husband were praying." (Doc. No. 13, PageID# 23.) Giampietro also offered to help UCE-2 and the person she believed to be her husband, UCE-3, travel to Syria without drawing government suspicion and stated that Abdullah could obtain false documents for this process. She also connected UCE-2 to other women planning to travel to Syria through an online chat group.

A search of Giampietro's social media revealed communications between Giampietro and Abdullah discussing his fighting in Syria and her travel to assist him. Giampietro inquired about whether she could get a gun to travel with him; Abdullah stated that she could and would be able to travel through checkpoints without being stopped if she were with him. Social media also

5

showed Giampietro having conversations with several other persons regarding Giampietro's plans to travel to Syria. On Giampietro's cell phone, agents recovered photographs of Abdullah that show him posing in military fatigues and carrying high-powered firearms.

In September 2018, UCE-2 told Giampietro that she and another person (UCE-3) planned to travel to Syria to join HTS. Giampietro provided specific advice as to how to travel without being detected by law enforcement, including cutting off contact with others, purchasing round-trip tickets, and traveling through Italy instead of London. She also encouraged UCE-2 to travel to Afghanistan instead of Syria because no jihad was taking place in Syria, but fighting continued in Afghanistan. Giampietro also provided UCE-2 with contact information for Individual A, whom Giampietro implied could assist UCE-2 and UCE-3 with travel. Individual A participates actively in a social media platform that raises funds online to provide "the mujahideen in Syria with weapons, financial aid[,] and other projects relating to the jihad." UCE-3 contacted Individual A to ask for assistance in travelling to Syria. Individual A advised against making the trip at that time. Individual A also provided UCE-3 with advice about travelling undetected, including volunteering with charities to pose as an aid worker. Giampietro later denied connecting UCE-2 and UCE-3 with Individual A to arrange travel, stating instead that she did so only for charity purposes and asking UCE-2 not to raise the subject again out of fear that she would be arrested.

After that conversation, Giampietro deleted the social media platform she had used to communicate UCE-2 and has had no further interaction with UCE-2. Giampietro also sent a message to her contacts on the social media platform stating that she would be leaving the forum and warning others to "[b]e careful who you trust and what you say. A sister may wear niqab and pray beside you and remind you of Allah, yet they're spies. Brothers and sisters don't share your

'future plans' with anyone whether you trust them or not. Sadly, in these times you just don't know."

Agents executed a search warrant at Giampietro's home on October 23, 2018, during which Giampietro agreed to be interviewed. In the interview, Giampietro admitted to having said that she wanted to travel to Syria to marry a jihadi fighter, to pull bodies off the battlefield, and to die in an airstrike on Ramadan, and that she had communicated with UCE-2 about plans for UCE-2 and UCE-3 to travel to Syria. She stated that she knew that the United States recognized HTS as a foreign terrorist organization. Giampietro also stated that she wanted to perform charity work overseas and that she had reported to foreign law enforcement the names of persons with whom she communicated who supported terrorist groups. She admitted to using self-destructing text messages because she did not want law enforcement to know the nature of her communications.

Agents also searched Giampietro's cell phones, where they discovered both images with messages encouraging participation in violent jihad and photographs of dead bodies assumed to be foreign fighters and their victims. A review of Giampietro's postings on social media revealed comments made in 2015 and 2016 advocating violence towards the United States and supporting ISIS and other terrorist organizations. Finally, Western Union records show that Giampietro transferred money to a person based in Turkey and alleged to represent Individual A on June 14, 2018. The United States proffers that Giampietro made two additional money transfers to people in Turkey and one transfer to a person in Egypt through Western Union.[3]

This factor weighs in favor of detention.

---

[3] These records are the subject of Giampietro's motion to strike (Doc. No. 17), addressed elsewhere in this Memorandum Opinion.

### B. Weight of the Evidence

The Court next considers the weight of the evidence that Giampietro would pose a danger to any person or the community if released before trial. *Stone*, 608 F.3d at 948. The United States chose to make its case entirely by proffer. "[C]onducting a bail hearing by proffer is acceptable under the law and at the discretion of the district court." *Id.* However, the fact that the information it presented was not subject to meaningful cross-examination lessens its evidentiary weight. That weight is bolstered by evidence of Giampietro's admissions, her social media postings, and images kept on her cell phones, which reflect radical views aligned with the support of terrorism against the United States. *See United States v. Muhtorov*, 702 F. App'x 694, 702 (10th Cir. 2017) (finding significant danger warranting detention where defendant "professed that he is willing to fight and die for his cause, and he took affirmative steps to further that goal" and where the "contents of his phone reflect Islamic extremist tendencies").

This evidence weighs in favor of detention.

### C. Giampietro's History and Characteristics

Giampietro has no prior criminal history. Until her arrest, she worked as a licensed clinical social worker providing mental health services through inpatient and outpatient therapy. She is pursuing a master's degree in Middle Eastern Studies. She lives with her mother and has two children.

Giampietro offered the testimony of three witnesses to demonstrate her character and ties to the community. Lori Chaney worked with Giampietro and has known her for approximately ten months. Chaney described Giampietro as empathetic, professional, caring, and a hard worker.[4]

---

[4] Giampietro offered letters from four other co-workers describing her as an excellent and trustworthy colleague.

Chaney stated that Giampietro had told her she did not use social media. Chaney had no knowledge of Giampietro's online postings or her desire to travel to Syria. Attorney Dana Looper represented Giampietro in family law matters, most recently regarding Giampietro's custody of her son. Giampietro's shared custody was challenged by the child's father after the FBI informed him Giampietro had made statements that she planned to take the child with her to Syria. The child's father now has full custody. Looper did not have any knowledge of Giampietro outside of their attorney-client relationship. Finally, Giampietro's mother Maria Williams testified that she considers Giampietro to be a gullible person who welcomes anyone into her life. Williams did not have knowledge of Giampietro's online activities, but speculated that they are a "phase" and not reflective of her true beliefs.

The fact that Giampietro has no criminal history, strong professional references, and ties to the community weighs against a finding that she would be dangerous if released before her trial. However, these witnesses' testimony also demonstrates that Giampietro has been able to conceal her online activities completely from her friends and family. This factor weighs slightly against detention

### D.    The Nature and Seriousness of the Danger to Any Person or the Community

The evidence presented does not show that Giampietro poses a danger to any particular person. The danger posed by Giampietro's release is the furtherance of terrorism and the threat it presents at a national and international level. Congress has determined that the nature and seriousness of that threat warrant a presumption of detention. *See also United States v. Khusanov*, 731 F. App'x 19, 23 (2d Cir. 2018) (finding district court "entitled to conclude that a person in this country who criminally commits to supporting [a terrorist organization] clearly and convincingly presents a danger to United States persons and communities in this country, as well as abroad");

*United States v. Abdurahman*, 107 F.Supp.3d 992, 996 (D. Minn. 2015) (finding "harm to the wider community—that of civilians in the Middle East—if the Defendant succeeds in his ambition to travel to Syria and join ISIL"). That Giampietro has been able to engage in these activities via the internet and entirely undetected by her family and friends shows that there are not conditions of pretrial release that could effectively mitigate that danger. That finding is bolstered by Giampietro's attempts to hide her online conduct from law enforcement by deleting social media accounts and using self-destructing communication platforms.

This factor weighs in favor of detention and, with the foregoing analysis, requires that Giampietro be detained until her trial.

## IV. Motion to Strike

Giampietro moves to strike the United States' supplemental memorandum in support of pretrial detention by which the United States offered documents to support its proffer that Giampietro had provided funds to groups supporting terrorist activities by Western Union transfer. (Doc No. 17.) Giampietro argues that the supplemental memorandum constitutes a reopening of her detention hearing under 18 U.S.C. § 3142(f) that is only justified when evidence is discovered that was "not known to the movant at the time of the hearing" and is material to the detention decision. She further argues that evidence of the Western Union transfers was available to the United States at the time of the hearing and thus should not be considered.

The Court questions whether the provisions of Section 3142(f) regarding the reopening of a detention hearing do not apply in this circumstance. The United States proffered that Giampietro had made Western Union transfers in the detention hearing; the documents and additional detail provided thus are not new evidence but a supplement to proof already provided. Further, the Court specifically inquired as to whether evidence of such transfers existed. Regardless, the information

provided in the United States' supplemental memorandum is not necessary to the Court's detention decision. The Court would reach the same conclusion relying only on the United States' proffer that Giampietro had made Western Union transfers of funds to Turkey. The motion to strike will therefore be denied.

## V.       Conclusion

Based on the evidence presented, the Court finds that the United States has shown by clear and convincing evidence that there is no combination of conditions that could reasonably assure the safety of the community if Giampietro is released pending trial.

Giampietro is therefore ORDERED remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Giampietro must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Giampietro to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Any party aggrieved by this order may seek review as provided in 18 U.S.C. § 3145.

It is so ORDERED.


ALISTAIR E. NEWBERN
United States Magistrate Judge

11