IN THE UNITED STATES DISTRICT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **FILED UNDER SEAL** |
| | ) | |
| v. | ) | Case No. 2:19-cr-00013 |
| | ) | |
| | ) | Chief Judge Waverly D. Crenshaw, Jr. |
| GEORGIANNA A.M. GIAMPIETRO | ) | Magistrate Judge Alistair E. Newbern |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S SUPPLEMENTAL MOTION TO CERTIFY CASE AS COMPLEX UNDER THE SPEEDY TRIAL ACT AND OPPOSITION TO THE GOVERNMENT'S PROPOSED SCHEDULING ORDER AS A VIOLATION OF THE SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL**

For the reasons set forth below, the government's motion to certify this case as "complex" under the provisions of the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(B)(ii), should be denied, because under the circumstances a single material support of terrorism charge under 18 U.S.C. § 2339B is not complex, notwithstanding the potential need to utilize procedures under Classified Information Procedures Act (CIPA), 18 U.S.C. App. 3 §§ 1-16, with respect to discovery. Further, the two-year delay requested by the government before the commencement of trial not only violates Ms. Giampietro's statutory right to a speedy trial, but also her constitutional right to a speedy trial under the Sixth Amendment.

Instead, deviation from the Speedy Trial Act is more appropriate under §3161(h)(7)(B)(iv), which permits "reasonable time necessary for effective preparation, taking into account the exercise of due diligence". *Id*. At this stage in the proceedings the defense respectfully submits that with the exercise of due diligence, a trial date in July, 2020,

1

(approximately 11 months from her arrest) is a reasonable period of time to be prepared for trial. Under the defense's proposed schedule, the time from September 17, 2019, to November 13, 2019, would be excluded under 18 U.S.C. § 3161(h)(1)(d)[1]. The period from November 13, 2019, until June 22, 2020, would be excluded under either §3161(h)(1)(d) or (7)(B)(iv), or both. The resulting speedy trial calculation, with these exclusions, would result in trial for purposes of the Speedy Trial Act commencing within forty days of arrest. Further, it would also result in trial within one year of arrest for Sixth Amendment purposes thereby satisfying the presumption of a speedy trial.

1. **Procedural History**

Ms. Giampietro is charged with a single-count of attempted material support of a foreign terrorist organization in violation of 18 U.S.C. § 2339 (B)(a)(1) and § 2 (Aiding and Abetting). The offense conduct presumably centers on Ms. Giampietro's alleged communications with two undercover officers who had indicated to Ms. Giampietro their purported desire to travel to Syria to join Hayat Tahrir al-Sham ("HTS").[2] These conversations and meetings are recorded and

---

[1] 18 U.S.C. § 3161(h)(1)(d) excludes the time period for the pendency of motions from the speedy trial clock. This period is not suspended from Sixth Amendment consideration.

[2] The Government's proffer regarding Ms. Giampietro's alleged attempted material support between September 23, 2018 and October 23, 2018, does not concern Ms. Giampietro's personal travel to Syria but instead relates to the assistance Ms. Giampietro provided to the two undercover agents who in late September, 2018, expressed their intent to travel to Syria to join HTS to Ms. Giampietro. The Government proffers that Ms. Giampietro expressed reservations regarding this plan, but ultimately provided advice from research she had done regarding her prior plan to travel to Syria herself and gave the undercovers Individual A's contact information. The Government proffers that open source information about Individual A establishes his connection to foreign terrorist organizations and that he raises funds for fighters in Syria on a social media platform channel. The Government further proffers that the agents contacted Individual A and told him they understood him to be someone who facilitated people who wanted to "make Hijrah" (religious immigration). Individual A advised the undercovers it was best to wait and advised them how to travel through Turkey undetected. Finally, the Government proffers that the undercover thanked Ms. Giampietro for Individual A's contact information, and

taped making the facts of this case undisputed. These recordings and meetings required no warrant and the government has referenced them throughout the proceedings.

The government's investigation into Ms. Giampietro long preceded the conduct charged in the sole count of the indictment and has been ongoing since at least 2015. In addition to the use of undercover informants, the government executed a search warrant to search Ms. Giampietro's home on October 23, 2018. In conjunction with the execution of the search warrant, the executing FBI agents also questioned Ms. Giampietro. Beyond the search of her residence and the seizure of her electronic devices, the government has also executed search warrants for her online social media and email accounts.[3] The defense anticipates that the information retrieved from these warrants, along with the recorded conversations and open source information regarding Individual A, will constitute the primary evidence regarding the alleged offense.

After the search of Ms. Giampietro's residence, Ms. Giampietro retained counsel to assist her in the ongoing investigation. Approximately six months after executing the search warrant, the government provided Ms. Giampietro and counsel with a reverse proffer on April 24, 2019. The purpose of the proffer was to provide Ms. Giampietro and her counsel with information regarding the government's potential evidence in order to secure a plea to the count charged in

---

Ms. Giampietro responded by saying she did not provide his information for the purposes of travel but for charity, and promptly deleted her social media accounts and cut contact with the undercover. (Doc. 13, p. 9-12). None of these activities appear to implicate classified information. The conversations between Ms. Giampietro and the undercovers were recorded based on one-party consent and do not contain, in substance, classified information. Likewise, the Government's information concerning Individual A is proffered to be from open-source rather than classified materials. Finally, the intercepted conversation between Individual A and the undercovers is likewise recorded under one-party consent and does not contain substantive classified information.

[3] None of these materials would be considered classified because they were not obtained pursuant to Foreign Intelligence Surveillance Act ("FISA") warrants and the content itself is not classified.

3

the indictment and to offer her an opportunity to cooperate in the ongoing investigation in exchange for leniency with regards to a potential sentence. During the proffer, the government made clear to counsel that in addition to the present charge the government believed there was other criminal conduct which could potentially be charged. After the proffer, in late May, 2019, Ms. Giampietro, through her attorney, Peter Strianse, informed the government that she was unwilling to plead to the count now charged and accordingly did not believe a proffer on her part would be of value.

Approximately two months later, Ms. Giampietro was indicted on August 14, 2019 and her Detention Hearing was held on August 21, 2019, where she was ordered detained. Following her detention, the government moved for the Court to exclude all future delay for purposes of the Speedy Trial Act on the basis that the case is complex. On September 17, 2019, this Court denied the government's motion and ordered that the government supplement its reasons for complex designation and ordered a scheduling conference for October 16, 2019. The government filed its supplemental motion for complex designation on October 15, 2019. The government however failed to produce Ms. Giampietro for the October 16, 2019, scheduling conference. The Court accordingly set another scheduling conference for November 13, 2019. The Court further directed that the parties confer on a proposed schedule.

Immediately following this conference, the parties conferred for 45 minutes but could not reach an agreement on a proposed schedule. During the conference, in an effort to understand the potential delays necessitated by the need to review classified evidence, the defense asked the government whether the government planned to provide the defense with classified materials as part of discovery and if so, the volume of classified materials the government anticipated providing. Defense counsel indicated to the government that depending on the volume they were

4

willing to consider some version of the government's case if the volume of evidence would justify it. The government refused to make any further representations with regards to the potential of classified materials. The government instead indicated that if the defense had objections to their proposed schedule, the defense should file a motion in opposition and its own proposed schedule. Accordingly, the defense files its own proposed schedule and motion in support of that schedule.

### 2. **The government has failed to show that this case is so unusual or complex as to warrant a continuance under the Speedy Trial Act**

The Speedy Trial Act, 18 U.S.C. §§ 3161-74, generally requires that:

> "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

That is not to say that a defendant must be brought to trial in all cases within seventy calendar days, as the Act also provides that certain "periods of delay shall be excluded . . . in computing the time within which the trial of any such offense must commence." *Id.* § 3161(h). Included among the reasons listed in sub-paragraph (h) is:

> [a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection…
> *Id.* § 3161(h)(7)(A).

In determining whether the interests of justice are served by a continuance the Court is required to consider statutory factors. *Id.* § 3161(h)(7)(B). The two statutory factors at issue in the instant motion are:

> [w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
> *Id.* § 3161(h)(7)(B)(ii); (relied upon by the Government here)

and

> [w]hether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

*Id.* §3161(h)(7)(B)(iv). The government contends that the instant case is complex and in a supporting motion asks the Court in conjunction with granting its proposed trial schedule, to designate the defendant's case as complex.

A continuance for a "complex" case provides a narrow exception to the Speedy Trial Act that must be reasonably related to the actual needs of the case and should be of limited duration rather than an open-ended grant of additional time, absent extraordinary circumstances. *United States v. LoFranco*, 818 F.2d 276, 277 (2d Cir. 1987); *United States v. Jones,* 56 F.3d 581, 585-86 (5th Cir. 1995). *See United States v. Clymer*, 25 F.3d 824, 828 (9th Cir. 1994) (holding that a district court may grant an "ends of justice" continuance under the Speedy Trial Act only where (1) the continuance is specifically limited in time, and (2) it is justified on the record with reference to the facts as of the time the delay is ordered). Courts must give "careful consideration when balancing the need for delay against 'the interest of the defendant and of society in achieving a speedy trial,'" *United States v. Brooks*, 697 F.2d 517, 520 (3rd Cir. 1982), and must articulate their "ends of justice" findings. *United States v. Saltzman*, 984 F.2d 1087, 1090-91 (10th Cir. 1993).

Courts have generally certified cases as "complex" under the Speedy Trial Act, when the case involves multiple defendants and implicates complicated legal or logistical issues. *See, e.g., United States v. Reavis*, 48 F.3d 763, 770-71 (4th Cir 1995) (considering the existence of "six defendants, eight attorneys, a thirty-three count indictment, and the possibility of prosecution under a seldom-used federal death penalty statute," and affirming the district court's grant of a continuance); *United States v. Thomas*, 774 F.2d 807, 810 (7th Cir. 1985) (finding no abuse of discretion where the district court granted an "ends of justice" continuance in a fraud case involving six defendants and thousands of pages of financial documents); *United States v. Bernacett Cosme*, 127 F. Supp. 2d 271, 271 (D.P.R. 2001) (finding that complicated investigations involving DNA analysis of hair and blood samples, as well as the government's potentially seeking the death penalty, made this a complex case). Ms. Giampietro's case presents no such complications and in fact, is straightforward and simple involving one defendant, one count and meticulously recorded and monitored largely undisputed facts.

Here, the government argues that the case is complex because of logistical issues involving the volume of evidence and the possibility of involving classified evidence and legal issues concerning the subject matter - terrorism. In support of their rationale, the government cites a trio of cases, where classified evidence and terrorism were indicated and were ultimately designated as complex, for its argument that cases implicating CIPA, are necessarily "complex:" *United States v. Salad*, 779 F. Supp. 2d 509 (E.D. Va. 2011); *United States v. Al-Arian*, 267 F. Supp. 2d 1258, 1263 (M.D. Fla. 2003) and *United States v. Moussaoui*, No. 01-455-A, 2001 WL 1887910, at *1 (E.D. Va. Dec. 27, 2001).

The facts in the above cases however, differ significantly and are distinct from the instant case. Each of the cases cited by the government, in addition to the potential for CIPA procedures,

7

implicated the other factors that had traditionally recognized to constitute a complex case. Beginning with the piracy case of *Salad*, the case involved fourteen Somali defendants; the witnesses were all U.S. Navy personnel, some of whom were deployed; and both the government and the defense needed Somali interpreters, which would make the trial preparation process more time consuming, 779 F. Supp. 2d at 509. The multiple defendants and complicated logistic issues were the primary reasons for the Courts designation as complex. While the Court also considered the potential use of classified information and the time-consuming requirements of the CIPA in making its determination, they were one factor among many, and the Court noted that "the mere possibility of the involvement of classified information in a case might not suffice, by itself, to justify a continuance beyond the Act's time period." *Id.* at 514.

Like the present case, *Moussaoui* involved a single defendant. 2001 WL 1887910 at *1. The circumstances of the case, however, are significantly more complex than posed by the present case. *Moussaoui,* of course, was alleged at the time to be the twentieth hijacker in the 9/11 attacks. While there was the potential for the need to utilized CIPA procedures that fact again did not largely govern the Court's decision to designate the case as complex. *Id.* Instead, the Court emphasized the potential for the death penalty and the logistical challenges posed by the magnitude and international scope of the alleged conspiracy. *Id*. The Court also noted that the subject matter at that time, terrorism, was relatively new and would likely pose novel issues of law.

The designation of complex in *Al-Arian* on the other hand, relied principally on the logistical challenges posed by confidential evidence. 267 F. Supp. 28 at 1263. In *Al-Arian*, however, the logistical challenges were not hypothetical but rather actual. In *Al-Arian*, the codefendants sought delay in order to review more than 21,000 hours of telephone recordings,

8

largely in Arabic, that had not yet been translated. *Id*. at 1264.With the exception of approximately 250 conversations that the government had already declassified, the remainder of the discoverable conversations were still classified, necessitating counsel and their translators to obtain clearances and review the materials. *Id*. Accordingly, the Court concluded over Al-Arian's objection that his codefendants motion to designate the case as complex was well-taken. *Id.*

In contrast to the above cases, Ms. Giampietro's is a single-defendant case, involving only a one-month period of time. Further, while it is a "terrorism" case, the body of law since 9/11 concerning material support charges has matured to the point that a terrorism charge by itself cannot be considered complex. *See e.g*. *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2728 (2010) (finding 18 U.S.C. § 2339B to be constitutional and explaining the circumstances under which activity constituted material support).

Further, the defense's understanding of the present charge is that it is a relatively straightforward allegation that is neither factually nor legally complex. Ms. Giampietro is charged with attempted material support with the additional statutory basis of aiding and abetting. The time period alleged, along with the government's proffer during its motion for pre-trial detention, strongly suggest that the charged criminal activity relates to Ms. Giampietro's interactions with two undercover government assets who allegedly desired to travel to Syria to join the then designated terrorist organization Hayat Tahrir Al-Sham (HTS) and whom the defense understands Ms. Giampietro is alleged to have aided and abetted.

18 U.S.C.S. § 2 (Aiding and Abetting) provides two alternative theories for aiding and abetting a crime. The first is contained in paragraph (a) of §2, which provides "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its

9

commission, is punishable as a principal." The existing case law interpreting paragraph (a), however, precludes a theory of guilt in this case because, like conspiracy, the undercovers did not, and cannot, actually attempt to provide themselves to HTS, so there is no crime for Ms. Giampietro to aid and abet. *See United States v. Hornaday,* 392 F.3d 1306 (11th Cir. 2004) (holding that a defendant cannot aid and abet undercover agent's attempt to commit a crime under paragraph (a)).

Paragraph (b), however, provides alternatively "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C.S. § 2 (b). The *Hornaday* Court and other courts interpreting paragraph (b), have found that a defendant can be liable for aiding and abetting an undercover agent's conduct because unlike paragraph (a), paragraph (b)'s language "willfully causes an act to be done which if directly performed by him or another would be an offense," focuses not on the existence of an offense but on the accused's intent to cause an offense. In short, paragraph (b) is applicable when "[the accused] directs the undercover agent to undertake acts that would be criminal if the defendant undertook them himself. "*United States v. Rendon-Agudelo,* 476 F. App'x 685, 686 (9th Cir. 2012). The most cited example of this type of aiding and abetting where the accused directs the agent to transport drugs on his behalf.

Based on the existing law the factual question for this case is whether, Ms. Giampietro directed the undercovers activity or, merely provided them with information while knowing their intent. The former would be a crime and the latter would not. The answer to that question is almost certainly contained within the recordings of the meetings and electronic communications between Ms. Giampietro and the undercover agents. The defense's understanding is that none of this is classified. While there are concerns about timely disclosure of the undercovers' identities, the evidence is ultimately straightforward and the involvement of classified evidence is likely to be

tangential. As such, the defense submits that the case at present is not complex within the meaning of 18 § 3161(h)(7)(B)(ii).

That is not to say that the case may not become complex in the future. The Government has repeatedly indicated that they are considering other charges and those charges may contain multiple defendants, significantly greater periods of time, overseas witnesses, as well as a significant volume of discoverable classified materials. That case, however, is not before this Court and the defense respectfully submits that this Court should not designate a case complex based on what might happen, but rather what has happened.

Although the defense respectfully submits that the current charge is not so unusual or complex as to warrant complex case designation, the defense readily acknowledges, and would seek some exclusion from the Speedy Trial Act 18 U.S.C. § 3161(h)(7)(A). As the government indicates, while there is not the level of discovery or factual complexities of *Al-Arian* or *Moussaoui*, there is a significant volume of material to be reviewed. Further, the defense anticipates the need for an expert witness to assist with reviewing the Defendant's devices. The defense's proposed schedule, attached herein, seeks exclusions for these times because they can be completed with reasonable diligence, and the defendant respectfully submits, is in accordance with the statute. Additionally, as explained in Part III, affords the defendant a trial within presumptive accordance with her Sixth Amendment rights to a speedy trial.

### 3. The government's proposed trial schedule would violate Ms. Giampietro's Sixth Amendment right to a speedy trial.

In addition to the statutory rights to a speedy trial provided under the Speedy Trial Act, the Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Analysis of the Sixth Amendment right to a speedy trial is independent of analysis of a defendant's statutory rights

under the Speedy Trial Act. *See, e.g., United States v. Hall*, 551 F.3d 257, 271 n.17 (4th Cir. 2009) (distinguishing between the defendants' asserted constitutional speedy trial claim and their "passing . . . contention that [the] delay [at issue in that case] violated the Speedy Trial Act"). The Sixth Amendment right to a speedy and public trial is triggered by 'arrest, indictment, or other official accusation.'" *Doggett v. United States*, 505 U.S. 647, 655, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992)).

Once this right is triggered, analysis of whether the delay violates the Sixth Amendment centers around the so called "Barker" factors laid out by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). In *Barker*, the Court laid out four factors that a court should consider in determining whether a delay for a particular defendant deprives them of the constitutional right to a speedy trial. These factors are "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant"; and are applied in "[a] balancing test [that] necessarily compels courts to approach speedy trial cases on an ad hoc basis." *Id.*

### a. The length of delay proposed in the government's schedule would be presumptively prejudicial.

The first factor, length of delay, is a threshold requirement under which the accused must show that the interval between accusation and trial has crossed the line from "ordinary to presumptively prejudicial delay." *United States v. Woolfolk*, 399 F.3d 590, 597 (4th Cir. 2005). The Supreme Court states that delay is presumptively prejudicial if it approaches a year. *Id.* (citing Doggett, 505 U.S. at 652 n. 1). In this case, the government's Proposed Scheduling Order makes it clear that the government seeks a trial date beyond that threshold on August 17, 2012, almost two years from now. Given that, as described above, this case is not a complicated one, substantial delay beyond the one-year threshold raises the likelihood of prejudicial delay for Ms.

12

Giampietro. The length of the delay is a threshold requirement that must be met to trigger further review. The delay is considerably longer than the seventy days required under the Act. Here, the delay between the indictment and the government's proposed production of Rule 16 discovery alone is sufficient to trigger the remaining factors as, "[a] delay approaching one year is presumptively prejudicial and triggers application of the remaining three factors." *Maples v. Stegall*, 427 F.3d 1020, 1025-26 (6th Cir. 2005), (citing *Doggett,* 505 U.S. at 652 n.1).

   b. **The government is to blame for the delay proposed in their trial schedule and can be rightly seen as motivated by an attempt to seek a tactical advantage over Ms. Giampietro.**

For the second factor, the reasons for delay, the focus is on "whether the government or the criminal defendant is more to blame for [the] delay." *Doggett*, 505 U.S. at 651. When the delay is attributable to the government, the Court further inquiries whether the delays were motivated by bad faith, harassment, or attempts to seek a tactical advantage, as these reasons weigh heavily against the government, while "more neutral" reasons such as negligence or overcrowded dockets weigh against the state less heavily. *United States v. Schreane*, 331 F.3d 548, 553-54 (6th Cir. 2003). *See Barker*, 407 U.S. at 531.

Here, it is clear that the government is predominantly responsible for the proposed delay. As of May, 2019, the government was aware that this case would likely go to trial on the present charge. To the extent that classified materials bear on the charge, the government was necessarily aware of the need to potentially declassify these materials or, in the alternative, to provide them to the defense in a classified setting. Despite having already had more than five months to make these determinations, the government insists that it needs an additional ten months to consider these questions before making any filing with the Court regarding the decision to withhold

classified materials from the defense. [4] Such a delay is under the circumstances, at best, negligence. The government has been investigating this case for more than three years and has been necessarily aware of the potential for CIPA procedures and has had ample time to prepare in advance of indictment. Indeed, *Al-Arian* is instructive because at the time of the Court's consideration, the government had already declassified the conversations it intended to use and provided copies to the defense of the remaining classified conversations in a secured facility for review. *See Al-Arian*, 267 F. Supp. 2d at 1263. [5] In short, the government was prepared for trial and the delay was that the codefendants could prepare. In contrast, here the government seeks the delay so that they can prepare for trial rather than the defendant.[6] The need for further time to prepare should be, at a minimum, considered negligent by this Court. Unlike *Salad* or *Moussaoui*, where the defendants' crimes had only been recently discovered, the government has already had ample time to prepare and through the use of due diligence should be able to make CIPA filings upon the appointment of an CISO officer rather than a year later.

---

[4] CIPA § 4 permits the Court to delete specified evidence and classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure or to substitute a summary of information or a statement admitted relevant facts.

[5] In *Al-Arian,* Al-Arian alternatively objected to the delay on the basis of the Sixth Amendment. *Id*. at 1265.The Court found that the Sixth Amendment was not violated based on his codefendants desire to review the evidence. *Id*. at 1263. Unlike the 11th Circuit in *Al-Arian*, the 6th Circuit would likely not have attributed Al-Arian's codefendants' delay to him. *See Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005). More importantly, in *Al-Arian* the Government could not be attributed the delay because they were ready to go to trial and it was a defendant who sought the delay. Here, it is solely the Government that seeks the delay.

[6] The present case also differs from *United States v. Warsame*, No. 04-29, 2007 WL 748281 at *3 (D. Minn. Mar. 8, 2007), cited by the Government for its complex case designation and delay where the defendant initiated the CIPA procedures and then complained that the time required for the procedures violated his Sixth Amendment rights. In contrast, Ms. Giampietro has not requested the production of classified materials. Nor does the Defense anticipate a request for classified materials at this point based on its understanding of the charges.

Apart from negligence, the delay requested by the government provides the government with both tactical and strategic advantage. The government has made no secret of the fact that it continues to investigate this case and is considering additional charges. The delay permits the government almost two years to further investigate the charge and seek indictment on additional charges. The delay permits the government not just to prepare for this charge but to determine whether to bring additional charges. The tactical advantage to the government is particularly acute in this case because only six months of the otherwise two-year delay until trial is necessary for the defense to prepare, and accordingly the primary beneficiary of the delay is not the accused, but the government.

### c. Ms. Giampietro timely asserts her right to a speedy trial.

The third factor, a defendant's timely assertion of her speedy trial right, is entitled to strong evidentiary weight in determining whether she is deprived of that right. *Barker*, 407 U.S. at 531-32. Ms. Giampietro is opposing the government's proposed delay and timely asserting her speedy trial rights here.

### d. Ms. Giampietro suffers actual prejudice.

With respect to the fourth factor, prejudice to the defendant, courts should consider the interests in particular that the speedy trial right was designed to protect: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. Ms. Giampietro is, of course, currently detained and therefore suffering prejudice under the first listed factor.[7]

---

[7] Ms. Giampietro intends to appeal the Magistrate's decision detaining her upon completion of the transcript of her detention hearing. Depending on the decision of this Court regarding her appeal this factor could change.

15

More importantly in this case, however, is the prejudice suffered by the defendant with respect to anxiety and concern. From the onset, the government sought to induce a plea via a reverse proffer. At that time, the government indicated that it might bring other charges in the event that Ms. Giampietro was unwilling to resolve the case on the now indicted charge. Two months later, the government indicted, arrested and sought detention of the defendant. Despite the apparent decision not to proceed on other theories of criminal liability, the government continues to hold open the specter of additional charges over the defendant while she remains incarcerated. The resulting pressure and uncertainty have the potential of wearing the defendant down and causing her to concede to the government's demands rather than assert her right to trial.

In fact, the circumstances presented here are precisely what the Sixth Amendment prohibits. The defendant is currently, and for the foreseeable future, held in anonymous detention awaiting a trial that under the government's proposed schedule would entail a delay of two years for a single-count indictment.[8] The government's argument is that the delay is necessary because of potential national security concerns. Whatever these concerns are, they cannot outweigh the defendant's right to a speedy trial under the Sixth Amendment. As Justice Scalia observed in *Crawford v. Washington*, with regards to the Sixth Amendment's right to confront a witness, "the Framers had an eye toward politically charged cases like Raleigh's--great state trials where the impartiality of even those at the highest levels of the judiciary might not be so clear." 541 U.S. 36, 68, 124 S. Ct. 1354, 1373-74 (2004). The same is equally true here. The Framers of the Sixth

---

[8] Despite the defense's inquiry, the Government has not explained the reasons for placing the entirety of the defendant's case under seal. Undersigned counsel is not familiar with the practice, but does note that Ms. Giampietro is not unique in this District in having her case placed under seal. The defendant to date has not filed a motion to unseal her case as the defendant does not believe that she is prejudiced solely by the fact that her case remains under seal. The defendant however, anticipates objecting to this procedure should it extend beyond the conclusion of the defense's proposed discovery dates.

16

Amendment sought not only to protect an individual's right to confront the evidence against them when state security was alleged, but also, to protect those individuals by mandating a speedy and public trial, rather than forcing the individual to languish anonymously in detention for two years in deference to the government's potential security concerns.

That is not to say that in the future the analysis may change and delay beyond the defense's proposed trial date become necessary. The government of course could seek and obtain a superseding indictment implicating more than the one month charged period. The government may determine that the defense is entitled to a, yet to be determined, volume of classified materials requiring the defense to seek delay to adequately prepare. The point is, none of those things have happened, nor are they guaranteed to happen, and this Court should not grant the government's proposed trial schedule based on hypothetical future events.

4. **Conclusion**

For the foregoing reasons, the Defendant requests that this Court deny the government's motion to designate this case as a "complex case" under 18 U.S.C. § 3161(h)(7)(B)(ii), to grant the defenses motion to exclude time under § 3161(h)(7)(A) and to adopt the defense's proposed trial schedule submitted to this Court by separate motion.

Respectfully submitted,

/s/ Charles D. Swift

CHARLES D. SWIFT

*Pro Hac* Attorney for Georgianna Giampietro
Constitutional Law Center for
Muslims in America
833 East Arapaho Rd., Suite 102
Richardson, TX 75081

17

Case 2:19-cr-00013   Document 49   Filed 10/29/19   Page 17 of 18 PageID #: 292

Phone: (972)-914-2507<br>
Email: cswift@clcma.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2019, a copy of this motion was served via email to Assistant United States Attorney, Ben Schrader, Assistant United States Attorney, Phil Wehby and NSD Attorney, Jennifer Levy.

/s/ Charles D. Swift

CHARLES D. SWIFT

*Pro Hac* Attorney for Georgianna Giampietro<br>
Constitutional Law Center for<br>
Muslims in America<br>
833 East Arapaho Rd., Suite 102<br>
Richardson, TX 75081<br>
Phone: (972)-914-2507<br>
Email: cswift@clcma.org