IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| | ) | No. | 2:19-cr-00013 |
| v. | ) | | |
| | ) | | Chief Judge Crenshaw |
| | ) | | |
| GEORGIANNA A.M. GIAMPIETRO | ) | | |

**GOVERNMENT'S NOTICE REGARDING 404(b) EVIDENCE**

The United States, through the United States Attorney for the Middle District of Tennessee,

and the Counterterrorism Section of the National Security Division, U.S. Department of Justice,

respectfully files this Notice Regarding 404(b) Evidence. In its Scheduling Order, the Court

directed the government to "give notice to the Defendant of its intent to use at trial evidence under

Federal Rule of Evidence 404(b)(2) sufficiently in advance of trial so as to afford Defendant the

opportunity to file a motion in limine regarding the same, if necessary." (Doc. 89 at 1). In this case,

the government intends to introduce a substantial amount of evidence which, although it relates to

conduct which precedes the approximate dates of the specific offenses alleged in Counts One,

Two, and Three of the Superseding Indictment, is nevertheless intrinsic to those offenses and is

therefore admissible as evidence of those offenses. This evidence is additionally, or alternatively,

admissible for various purposes under Rule 404(b)(2) or for other purposes, as outlined below.

## I.     Overview of Charges

Count One of the Superseding Indictment alleges that, between on or about February 22,

2018, and continuing until on or about October 23, 2018, GIAMPIETRO attempted to provide

material support and resources, namely, personnel and services, to Hay'at Tahrir al-Sham, also

known as HTS, a designated foreign terrorist organization. (Doc. 77 at 1.) Count Two of the

Superseding Indictment alleges that, beginning in or about March 2018, and continuing until on or about October 23, 2018, GIAMPIETRO altered, destroyed, mutilated, concealed, and covered up a record and document, including but not limited to social media accounts, text messages, chat conversations, and other electronic communications, with the intent to obstruct a federal investigation. (*Id.* at 2.) And Count Three of the Superseding Indictment alleges that, between on or about September 23, 2018 and on or about October 23, 2018, GIAMPIETRO corruptly altered, destroyed, mutilated, and concealed a record and document, including but not limited to contact information, text messages, electronic communications, and a cell phone, and attempted to do so, with the intent to impair the record and document's integrity and availability for use in a federal grand jury proceeding. (*Id.* at 3.)

These allegations are based on evidence that GIAMPIETRO introduced an undercover FBI employee ("UCE-1") and her purported husband, another undercover FBI employee ("UCE-2"), to Individual A, the Middle East-based user of a social media account, whom GIAMPIETRO believed to be supportive of members of terrorist organizations operating in Syria, and whom GIAMPIETRO also believed could facilitate the safe travel of UCE-1 and UCE-2 into Syria to join the conflict there. GIAMPIETRO did so after planning to travel to Syria herself to marry her "fiancé," a foreign fighter in Syria, and after posting numerous images to her social media profile expressing sympathy for and solidarity with foreign fighters operating in Syria as well as antipathy toward the United States. GIAMPIETRO also used self-destruct timers in text messaging applications, deleted social media accounts, and deleted text messages, after becoming aware of federal investigations into other subjects of this investigation. And GIAMPIETRO directed UCE-1 to delete information about GIAMPIETRO from UCE-1's cell phone before traveling to Syria to join HTS.

2

The government anticipates introducing evidence at trial of the conduct above which falls within the specific time frame alleged in each Count of the Superseding Indictment. As outlined below, however, the government also anticipates introducing substantial evidence of GIAMPIETRO's conduct between 2015 and 2018 that is inextricably intertwined with the allegations in Counts One, Two, and Three of the Superseding Indictment. Such evidence is not subject to the limitations or requirements of Rule 404(b)(2).

## II.     Legal Standard

"The Sixth Circuit has recognized that Rule 404(b) "is not implicated" when the prior acts are "part of a continuing pattern of illegal activity" or when they are "inextricably intertwined" with the indicted crime. *United States v. Rios*, 830 F.3d 403 (6th Cir. 2016); *see also United States v. Buchanan*, 213 F.3d 302, 311 (6th Cir. 2000) (remanded for re-sentencing on other grounds) ("evidence that constitutes 'a continuing pattern of illegal activity'" is not considered an "other act," and, therefore, is not governed by Rule 404(b)) (quoting *United States v. Barnes*, 49 F. 3d 1144, 1149 (6th Cir. 1995)); *United States v. Dimora*, 843 F. Supp. 2d 799, 823, 854 (N.D. Ohio 2012) ("Intrinsic acts, or those 'inextricably intertwined' with the crime charged, . . . or 'part of a single criminal episode,' . . . are admissible and beyond the reach of Rule 404(b)") (citations omitted); *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987) ("evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the [other] act and the evidence concerning the crime are inextricably intertwined") (quoting *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979)).

"More generally, the Sixth Circuit "has recognized the admissibility of *res gestae*, or background evidence, in circumstances when the evidence includes conduct that is 'inextricably intertwined' with the charged offense." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015)

3

(citation omitted). "Proper background evidence has a causal, temporal[,] or spatial connection with the charged offense." *Id.* (citation and internal quotation marks omitted). "Such evidence may include evidence that is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of [a] witness's testimony, or completes the story of the charged offense." *Id.* (citation and internal quotation marks omitted); *see also United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995) ("'Intrinsic' acts . . . are those that are part of a single criminal episode."); *United States v. Peete*, 781 F. App'x 427, 433 (6th Cir. 2019).

"*Res gestae* is sometimes also known as 'intrinsic evidence.'" *Churn*, 800 F.3d at 779. "Intrinsic acts are those that are inextricably intertwined with the criminal act charged or a part of the criminal activity." *Id.* "Intrinsic acts" are distinct from "extrinsic acts," "which are those [acts] that occurred at different times and under different circumstances from the offense charged." *Id.* (citation and internal quotation marks omitted). Although the "distinctions among *res gestae*, inextricably intertwined evidence, intrinsic evidence, and background evidence are far from clear," the Sixth Circuit has treated these concepts similarly. *Id.* (citation and internal quotation marks omitted). Notably, however, "*[r]es gestae* evidence does not implicate Federal Rule of Evidence 404(b), which generally bars evidence of past acts to prove character, . . . with some exceptions." *Id.* (citation omitted).

Given the inapplicability of Rule 404(b) in such circumstances, "the government has no duty to disclose the other crimes or wrongs evidence." *Barnes*, 49 F. 3d at 1149; *see also United States v. Moore*, 495 F. App'x 680, 685-86 (6th Cir. 2012) (evidence of drug buys not previously noticed to the defense under Rule 404(b) and admitted without a cautionary instruction from the Court were properly admitted as "direct evidence of the conspiracy itself as evidence of a

4

'continuing pattern' of the same nature and type of criminal conduct"). The 1991 Advisory Committee note to Rule 404(b), moreover, makes clear that the 1991 amendments adding a pre-trial notice requirement in criminal cases "does not extend to evidence of acts which are 'intrinsic' to the charged offense." Fed. R. Evid. 404(b), Advisory Committee note, 1991 Amendments; *see also Barnes*, 49 F.3d at 1149 (citing the 1991 Advisory Committee note to Rule 404(b) for the same proposition).

Here, as noted, the government anticipates introducing substantial evidence of GIAMPIETRO's conduct between 2015 and 2018 that is inextricably intertwined with the allegations in Counts One, Two, and Three of the Superseding Indictment. The government anticipates introducing evidence, for example, that GIAMPIETRO:

- Made posts to a social media platform in 2015 reflecting her support at the time for ISIS, a notorious foreign terrorist organization;

- Made posts to a social media platform in 2015 espousing support for terrorist attacks against the United States;

- Researched, and demonstrated a familiarity with, the conflict in Syria and the various militia groups operating in the region between 2015 and 2018;

- Disseminated radical Islamic teachings via an encrypted social media platform between approximately 2016 and 2018, and later directed followers to unfollow her account;

- Expressed a desire to travel to Syria and marry a foreign fighter named "Abu Abdullah" during online communications which included OCE-1 (an online covert employee) between 2016 and 2018, and which included UCE-1 between 2017 and 2018, and with others on social media platforms between approximately 2016 and 2018;

- Made statements during online communications with others on social media platforms between approximately 2017 and 2018 evincing knowledge of, and support for, various Islamic extremist organizations, and explained to others how to travel to Syria for purposes of jihad;

- Communicated with "Abu Abdullah" via a social media platform in 2016 and 2017;

5

- Expressed a desire, during a face-to-face meeting with UCE-1 on November 28, 2017, to travel to Syria;

- Engaged in countersurveillance measures on various social media platforms between 2015 and 2018, including frequently changing her username and using an encrypted platform, coded language, and self-destruct timers in order to conceal her online activity;

- Made statements to W-1, who reported that GIAMPIETRO (during the period when GIAMPIETRO supported ISIS) posted supportive comments about "Jihadi John," an ISIS fighter who became notorious for beheading captured prisoners, and about the man responsible for the Pulse nightclub shooting in Orlando; that GIAMPIETRO advised W-1 that GIAMPIETRO wanted to marry "Abu Abdullah" because he was a fighter, and because GIAMPIETRO wanted to support him in his efforts; that GIAMPIETRO told W-1 that she had many "connections" with persons who operated Islamic channels online; and that GIAMPIETRO taught W-1 how to use "destructive timers" on their chats that would result in the destruction of these chats after a specified period of time, so that W-1 would not be detected by other persons, including members of law enforcement, as well as various code words online in order to mask her activities, all between approximately 2015 and 2018;

- Made statements to W-2, a minor, who followed GIAMPIETRO's channel, "Islaamic Literature," on an encrypted social media platform, as well as GIAMPIETRO's profiles on other social media platforms; that GIAMPIETRO supported Jabhat al-Nusrah and HTS; that GIAMPIETRO discussed counter-surveillance methods with W-2; that GIAMPIETRO told W-2 that GIAMPIETRO wanted to take her son with her to Syria, where she planned to marry "Abu Abdullah"; that GIAMPIETRO discussed counter-surveillance methods with W-2 for use in avoiding detection by law enforcement, including the use of various code words; that GIAMPIETRO also told W-2 that UCE-1 and UCE-2 had traveled to Syria via London; and that GIAMPIETRO provided W-2 with a page hosted on the encrypted social media platform associated with Individual A, which W-2 reported was a page that persons could use to send money to support the mujahideen and their efforts, including fighting, all between approximately 2017 and 2018;

- Set up a GoFundMe page online in approximately 2017 so that others could help pay down her student loan debt, which was substantial, and which would enable her to travel to Syria herself;

- Maintained photographs on her cell phone of "Abu Abdullah" wearing military fatigues and posing with various firearms, as well as photographs of other foreign fighters accompanied by phrases urging persons to engage in violent jihad;

- Maintained photographs on her cell phone of dead bodies, including what appear to be

6

photographs of victims of foreign fighters;

- Maintained photographs on her cell phone of what appear to be improvised explosive devices;

- Maintained photographs on her cell phone of statements by Anwar al-Awlaki, a radical Islamic cleric who has preached that Muslims have a religious duty to kill Americans; and

- Maintained photographs on her cell phone of images related to organizations espousing contributions to the cause of foreign fighters, including (for example) an image captioned, "He who Equips a FIGHTER in Allah's Cause Has taken part in the FIGHTING.

This evidence—which helps establish a longstanding pattern of GIAMPIETRO's support for and sympathy towards foreign extremist organizations and extremist teachings, her efforts over time to research the conflict in the region and the groups engaged in that conflict, her longstanding intention to marry "Abu Abdullah," a foreign fighter, and to move to Syria to support him, and her persistent use of countersurveillance measures to conceal her online activity—is all plainly intrinsic to the allegations in the indictment. That is because this evidence serves as a prelude to the charged offenses, is directly probative of the charged offenses, arises from the same events as the charged offenses, forms an integral part of witness testimony (including the anticipated testimony of online covert employees, undercover employees, and civilian witnesses who communicated with GIAMPIETRO directly on various social media platforms), and completes the story of the charged offenses. *See*, *e.g.*, *United States v. Springer*, 753 F. App'x 821, 825-26, 828-30 (11th Cir. 2018) (images demonstrating support for ISIS and for radical cleric Anwar al-Awlaki on defendant's cell phone and social media account admissible as intrinsic evidence of charged threat to assault and murder a United States judge and related obstruction charges because the evidence was "necessary to provide context for and complete the story of" these offenses and also

7

because it showed defendant's motive, intent, plan, preparation, and knowledge); *United States v. Salameh*, 152 F.3d 88, 110-12 (2d Cir. 1988) (extremist materials seized from defendant and defendant's residence, including videotape of the bombing of an American embassy, handwritten notebooks on how to make explosives and improvised weapons, and a document urging acts of terrorism against the enemies of Islam admissible as background evidence of bombing conspiracy and to show defendant's motive and intent).

Furthermore, even were this evidence not admissible as intrinsic evidence, it is nevertheless admissible under Rule 404(b)(2) of the Federal Rules of Evidence. Rule 404(b)(2) provides that "[e]vidence of a crime, wrong, or other act" "may be admissible" to prove a purpose other than propensity, including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evidence of GIAMPIETRO's pre-February 22, 2018 support for and sympathy towards foreign extremist organizations and extremist teachings, her efforts over time to research the conflict in the region and the groups engaged in that conflict, and her longstanding intention to marry "Abu Abdullah," a foreign fighter, and to move to Syria to support him, are admissible as evidence of GIAMPIETRO's motive, intent, preparation for, plan regarding, knowledge underlying, or absence of mistake or lack of accident with respect to her introducing UCE-1 and UCE-2 to Individual A as alleged in Count One of the Superseding Indictment. Evidence of GIAMPIETRO's pre-March 2018 use of countersurveillance measures to conceal her online activity is likewise admissible as evidence of GIAMPIETRO's motive, intent, preparation for, plan regarding, knowledge underlying, or absence of mistake or lack of accident with respect to her use of such measures as alleged in Count Two. And evidence of GIAMPIETRO's pre-October 23, 2018 use of such measures is admissible as evidence of GIAMPIETRO's motive, intent, preparation for, plan regarding, knowledge underlying, or absence of mistake or lack of

8

accident with respect to her use of such measures as alleged in Count Three. *See*, *e.g.*, *United States v. Kaziu*, 559 F. App'x 32, 35-36 (2d Cir. 2014) (evidence that defendant published extremist writings, held extreme political views, and watched video lectures of radical cleric Anwar al-Awlaki which "eased [his] apprehension[] about fighting jihad and encouraged [his] travel to the Middle East" admissible to establish defendant's criminal intent); *United States v. Mehanna*, 735 F.3d 32, 59-61 (1st Cir. 2013) (propaganda video clips of beheadings, statements of Osama bin Laden and Ayman al-Zawahiri, and images of the World Trade Center in flames relevant and admissible to show that defendant was inspired by these materials and as evidence of his motive and intent in deciding to travel to Yemen to join al-Qaeda); *United States v. Abu-Jihaad*, 630 F.3d 102, 131-34 (2d Cir. 2010) (defendant's recorded conversations in a leak case, which were captured more than four years after the charged offense, as well as pro-jihadi videos defendant purchased, were relevant and admissible because they demonstrated his familiarity with an organization sympathetic to jihad, his obsession with secrecy in discussing matters related to jihad, and his consciousness of guilt).

Lastly, introduction of this evidence may also be necessary to preempt defenses that GIAMPIETRO may seek to advance in this case, which the government is entitled to do in its case-in-chief. The government has a good-faith basis to believe that GIAMPIETRO's defense will include arguments that her online activity involving terrorist organizations related to research she was conducting into the Syrian conflict and into participants in that conflict; that she advocated for the establishment of a religious state, but opposed ISIS and other terrorist organizations as "false" versions of that state; that she planned to travel to Syria to marry "Abu Abdullah," but abandoned that idea because of substantial student loan debt she had accrued; and that the government went to great lengths to convince her to aid UCE-1 and UCE-2 in their effort to travel

9

to Syria to join HTS, eventually persuading her to provide them with the name of an overseas contact who could facilitate their travel into Syria. It will therefore be incumbent on the government to introduce the evidence outlined above, to demonstrate that the "research" GIAMPIETRO was conducting into the Syrian conflict helped motivate her desire to aid the overseas travel of UCE-1 and UCE-2, and that she was deeply familiar with the various antagonists in the Syrian conflict; that she at one time supported ISIS; that she abandoned her interest in traveling to Syria to marry "Abu Abdullah" not because of her student loan debt but because "Abu Abdullah" eventually stopped communicating with GIAMPIETRO; and that the government's investigation into GIAMPIETRO's online activities lasted as long as it did because GIAMPIETRO continued to engage in suspicious and potentially criminal conduct over a period of years prior to her attempting to facilitate the travel of UCE-1 and UCE-2 to join HTS in September and October 2018. The Rules of Evidence permit the government to introduce evidence for these purposes. *See*, *e.g.*, *United States v. Young*, 916 F.3d 368, 374-75, 378-79 (4th Cir. 2019) (evidence that defendant maintained extremist paraphernalia, including white supremacist and Nazi paraphernalia, in his home relevant and admissible to show defendant's predisposition to support the Islamic State of Iraq and the Levant); *United States v. Mohamud*, 843 F.3d 420, 423-24, 432-35 (9th Cir. 2016) (evidence that defendant had written articles for *Jihad Recollections* praising terrorists a year before planning to carry out a bombing relevant and admissible to show defendant's predisposition to commit that bombing); *United States v. Kadir*, 718 F.3d 115, 123-24 (2d Cir. 2013) (photos of defendant charged with conspiracy to commit acts of terrorism posing with machine guns admissible to rebut defendant's claim that he was merely engaged in "peaceful fundraising for a future mosque"); *United States v. Hammond*, 381 F.3d 316, 342-44 (4th Cir. 2004) (en banc), (videotapes found in defendant's apartment depicting violence and anti-American sentiment

10

relevant and admissible as evidence of defendant's knowledge of FTO's unlawful activities and his motive in raising funds for the FTO, and also tended to rebut defendant's claim that he sympathized only with the humanitarian goals of the organization), *overruled on other grounds*, 543 U.S. 1097 (2005); *United States v. Siraj*, No. 07-0221-cr, 2008 WL 2675826, at *2 (2d Cir. July 9, 2008) (evidence that defendant charged in a bombing conspiracy recommended that a government source buy certain books from an Islamic bookstore where the defendant worked relevant and admissible to establish defendant's predisposition and rebut entrapment defense); *see also Brooks v. Caterpillar Global Mining America, LLC*, No. 4:14CV-00022-JHM, 2017 WL 3401476, at *7 (W.D. Ky. Aug. 8, 2017) (citing cases) ("Federal courts have repeatedly held that in a criminal case, the government may offer evidence in its case-in-chief in anticipation of an expected defense."). This same evidence, furthermore, is unlikely to be excludable under Rule 403. *See United States v. El-Mezain*, 664 F.3d 467, 509 (5th Cir. 2011) ("Evidence which tends to rebut a defendant's claim of innocent action is unlikely to be unduly prejudicial.").

Respectfully submitted,

DONALD Q. COCHRAN
United States Attorney
Middle District of Tennessee

By:     *s/Ben Schrader*
BEN SCHRADER
Assistant U.S. Attorney
110th Avenue South, A96l
Nashville, Tennessee 37203
Phone: (615) 736-5151

By:     *s/Philip Wehby*
PHILIP WEHBY
Assistant U.S. Attorney
110th Avenue South, A96l

11

Nashville, Tennessee 37203
Phone: (615) 736-5151


By:     *s/Jennifer Levy*
          JENNIFER LEVY
          Trial Attorney
          Counterterrorism Section
          U.S. Department of Justice
          950 Pennsylvania Avenue, N.W., Suite 7600
          Washington, D.C.   20530
          Phone: (202) 514-1092


Dated:      May 22, 2020

12

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2020 I electronically filed one copy of the government's Notice Regarding 404(b) Evidence via the CM/ECF electronic filing system, which will send a Notice of Electronic Filing to counsel for defendant.

*s/Ben Schrader*
BEN SCHRADER
Assistant U.S. Attorney
110th Avenue South, A96l
Nashville, Tennessee 37203
Phone:   (615) 736-5151

13