IN THE UNITED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff, | ) ) ) ) | |
| v. | ) ) ) | Case No.: 2:19-cr-00013 |
| GEORGIANNA A.M. GIAMPIETRO<br>Defendant. | ) ) ) | Chief Judge Waverly D. Crenshaw, Jr. |

## MOTION TO COMPEL EXPERT TESTIMONY DISCLOSURE
## AND MEMORANDUM OF LAW IN SUPPORT

Defendant Georgianna Giampietro, in accordance with Rule 16 of the Federal Rules of Criminal Procedure and this Court's Scheduling Order, moves for this Court to require the government to disclose a summary of the government's expert opinion testimony from its case-in-chief and provide the defense an opportunity to challenge via *Daubert*, once disclosed. For the reasons set forth in the attached Memorandum of Law, Defendant respectfully requests that this Court grant Defendant's Motion.

Respectfully submitted this 5th day of June, 2020.

By: /s/ *Charles Swift*
Charles D. Swift,
Pro Hac Vice Attorney for Giampietro
CLCMA
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507

1

# MEMORANDUM OF LAW

## I.   SUMMARY OF THE ARGUMENT

This Court's Scheduling Order directed that "all expert disclosures be made by May 15, 2020 and any motions under *Daubert* are due June 5, 2020." Doc. 89. Both parties prepared summaries of expert testimony related to the Syrian conflict and terrorism. The government's summary provided an extensive description of their experts' qualifications. With regard to testimony, the summary contained a general description of the topics ON which the experts would testify. The government's summary of testimony, however, did not disclose any opinions held by either expert.

The lack of any disclosed opinion testimony necessarily prevents the defense from filing a *Daubert* motion. The focus of *Daubert* is not just the expert's knowledge and experience, but also the reliability of their scientific methodology, neither of which can be examined here. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993) (holding that an expert's opinion testimony is governed by Rule 702 of the Federal Rules of Evidence which sets out four conditions related to the experts specialized knowledge, facts and data, reliability of the principles and methods used and reliable application of those principles.)

Defendant moves this Court to find that the government's expert disclosures failed to comply with Fed. R. Crim. P. Rule 16(a)(1)(G), order the government to disclose expert opinions of the experts, Dr. Bloom and Mr. Hassan, to be presented in the government's case-in-chief, and allow for the defense to submit a *Daubert* challenge, as necessary, prior to trial.

## II. FACTUAL BACKGROUND

The government's notice provided an expansive description of its experts' qualifications. But when it came to summarizing their opinion testimony, the government provided only the following with regards to Dr. Mia Bloom:

> The government intends to present Dr. Bloom as an expert witness at trial to discuss the role of women in terrorism, including…female jihadists and female jihadi supporters…the radicalization process, with a focus on the radicalization of women, the use of particular teachings or the teachings of particular clerics in the radicalization process, the role of on-line communications and certain social media platforms in the radicalization process and in the encouragement of terrorist support activities, the use of charities to fund terrorist activities, and the techniques used to travel undetected and internationally in support of jihadis. Dr. Bloom will also explain the genesis and meaning of the ideology reflected in the Islamic literature and teachings often used in radicalization efforts, as well as the meaning of terminology used in this context.

Doc. 101.

With regard to summarizing the opinion testimony of Hassan Hassan, the government provided only the following:

> …will testify regarding what the foreign terrorist organization Hayat Tahrir al-Sham is and to discuss its genesis, ideology, strategy, tactics, activities, and recruiting efforts. Mr. Hassan is also expected to testify about the relationship of Hayat Tahrir al-Sham to other extremist groups and foreign terrorist organizations operating in the region.

Doc. 101.

In contrast, the defense's summary of the opinion testimony of its expert on Syria, Aymenn Jawad, provided the following summary of opinion testimony to the government:

> Aymenn Jawad will testify, based on his personal research and scholarship, about the concept of military jihad within Islam, and the recent developments of Islamic foreign fighters traveling to participate in regional conflicts as a perceived religious duty. Mr. Jawad will testify about different terrorist and Islamist organizations, including the Islamic State (ISIS), Hay'at Tahrir al-Sham (HTS), Harakat Nour al-Din al-Zinki and Ahrar al-Sham, use of religious beliefs in recruiting support in the form of personnel and finances during the Syrian conflict. Mr. Jawad will specifically testify about the religious duties to participate in jihad and issues of debt. The defendant's insistence that she be debt free- in particular regarding debts

owed to non-Muslims- is inconsistent with the beliefs and actions of Westerners who travelled to Syria believing that jihad was an individual obligation on every Muslim and thus overrode the need to seek the permission of the creditor.

Mr. Jawad will testify in particular on HTS's views of jihad and recruitment, focusing on the recruitment campaigns the group has launched and which primarily target people inside Syria. Although foreigners have an important role in the group and the group sees itself as defending a wider Muslim cause, the recruitment of foreigners these days is a matter that requires coordination and vetting prior to their arrival in Syria. Mr. Jawad will also testify as to the question of foreign women who are present in northwest Syria and their limited roles in life under HTS rule.

Mr. Jawad will testify about the defendant's statements made in person to the undercover and by the defendant in social media, about ISIS, HTS, Harakat Nour al-Din al-Zinki and Ahrar al-Sham. Mr. Jawad will offer testimony comparing the defendant's attitudes towards HTS with persons who were actively supporting this group and will offer the opinion that the defendant's expressed feelings about HTS were not consistent with persons who supported, contributed, or promoted HTS in social media. Rather, the defendant's criticisms and stated reasons for disapproval of HTS based on its infighting with the other rebel groups, was a 3 common line of social media criticism of HTS. Based on the defendant's expressed statements about HTS, Mr. Jawad will offer the opinion that the defendant statements cannot be reasonably described as those of a supporter of HTS during the charged period.

Finally, Mr. Jawad will offer the opinion based on his research and scholarship regarding the travel of Westerners to Syria that the advice the defendant and her contact gave to the undercover was general advice regarding travel that was commonly available on the internet or from news stories, and not specialized advice one might pay for that would significantly enhance the chance for success of going to Syria and of being recruited.[1]

### III. ARGUMENT

"Rule 16 does not require experts in criminal cases to provide written reports explaining their opinions to or to make a written proffer containing the information required under the civil rules." *United States v. Nacchio*, 555 F.3d 1234, 1262 (10th Cir. 2009) (citing *United States v. Mehta*, 236 F. Supp. 2d 150, 155-56 (D. Mass. 2002)); *see also United States v. McCluskey*, 954

---

[1] The defense's summary of expert testimony, made pursuant to this Court's Scheduling Order and Fed. R. Crim. P. 16(b)(1)(C) is attached as Exhibit A. Defendant filed notice of compliance with the Court's Order on May 15, 2020.

4

F. Supp. 2d 1224, 1231 (D.N.M. 2013) ("Detailed, extensive discussion is not required in the Rule 16 summary").

The notice given by the government in this case, however, is nevertheless insufficient to satisfy the requirements of Rule 16 regarding expert testimony and as such, violates the Court's Scheduling Order, which required that "all expert disclosures shall be made by May 15, 2020". Doc. 89.

The government provided inadequate notice of expert opinion testimony on that date, while the defense provided complete notice of the proposed opinion testimony of both of its experts. Fed. R. Crim. P 16(a)(1)(G) requires that: "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(C) further provides that "the summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." The purpose of the expert disclosure requirement is to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16, Advisory Committee's note to 1993 amendment.

The government's disclosures are wholly inadequate. The government's expert disclosures did not provide any description of the expert's opinions or the reasons for those opinions. The failure to disclose opinion testimony and the reason therefore is insufficient to meet the requirements of Rule 16. *See United States v. Jenkins*, No. 3:09-CR-42, 2009 U.S. Dist. LEXIS 89819, *5 (E.D. Tenn. Sep. 28, 2009) (holding that the government's expert disclosure failed to meet the requirements of Fed. R. Crim. P. 16(a)(1)(G) where the notice did not "provide a summary

of their testimony, *including a description of their opinions and the reasons therefore.*") (emphasis added).

Specifically, the government's list of broad topic areas is insufficient to constitute adequate notice under Rule 16 for the purpose of entering opinion testimony. *See United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017) (finding that the trial court did not abuse its discretion in prohibiting an expert witnesses opinion testimony when an expert disclosure identifying only broad topics of expert testimony such as "the various purposes and uses of Bitcoin", "the mechanics of Bitcoin transaction" and "the concepts of Bitcoin speculating and Bitcoin mining" among others and "did not summarize the experts' opinions about those topics, let alone describe the bases for the experts' opinions.").

At most, the government's disclosure permits the experts to testify to fact matters only pursuant to Federal Rule of Evidence 702. As the court observed in *United States v. Pembrook,* 119 F. Supp. 3d 577, 598-99 (E.D. Mich. 2015), an expert need not testify as to opinions, but may assist the trier of fact through testimony regarding facts within his expertise, citing Fed. R. Evid. 702. *Id.* at 598-99. Accordingly, the court permitted the expert to testify to facts within their knowledge pursuant to Federal Rule of Evidence 702. *See Pembrook*, 119 F. Supp. 3d at 598-99 (finding that Fed. R. Crim. P. 16 required that "the Government "describe . . . the bases and reasons for [its expert's] opinions," nevertheless permitting the expert to testify to facts within her knowledge).

## IV. REMEDIES

The text of Fed. R. Crim. P. 16(d)(2)[2] gives the court "broad discretion in fashioning a remedy," for a violation of discovery, which may include granting a continuance or "ordering the exclusion of evidence." *United States v. Lee*, 834 F.3d 145, 158 (2d Cir. 2016). *See* Fed. R. Crim. P. 16(d)(2)(A)-(D) (a district court may order "any other [remedy] that is just under [**82] the circumstances"). In this case, the defendant respectfully submits the Court should to require the government to disclose a summary of the government's expert opinion testimony from its case-in-chief and provide the defense an opportunity to challenge via *Daubert*, once disclosed. This disclosure should be made in a short time frame so as not to further prejudice Defendant, causing a slip in the scheduled trial date of August 17, 2020.

The Sixth Circuit has identified several factors which should be considered in deciding whether suppression of evidence is an appropriate remedy to be imposed for a discovery violation. These include: (1) the reasons for the government's delay in producing the materials, including whether it acted intentionally or in bad faith; (2) the degree of prejudice, if any, to the defendant; and (3) whether the prejudice to the defendant can be cured with a less severe course of action, such as granting a continuance or a recess. *See United States v. Maples*, 60 F.3d 244, 247 (6th Cir. 1995); *see also United States v. Ganier*, 468 F.3d 920, 927 (6th Cir. 2006). In making this determination, the Court must keep in mind that "[t]he goal of discovery in criminal trials is to insure a fair and thorough determination of defendant's guilt or innocence. In order to reach this goal, suppression of evidence must be viewed as an undesirable remedy reserved for cases of

---

[2] Fed. R. Crim. P. 16 (d)(2) provides the following remedies for failure to comply: (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances.

7

incurable prejudice or bad faith conduct demanding punishment by the court." *Maples*, 60 F.3d at 247.

The defense submits that providing the government a very limited window to disclose the summary of the government's expert opinion testimony from its case-in-chief and provide the defense an opportunity to challenge via *Daubert*, though not ideal, may be an appropriate remedy in this case when taking into account the factors as set out in *Maples*.

First, at this point, the defense does not have any evidence of the reason for the government's delay in producing the disclosures, including whether it acted intentionally or in bad faith. As such, the recommendation of a remedy of suppression is likely not reasonable at this time.[3] Second, Defendant has sought from the onset to invoke her rights to a speedy trial. Therefore, the granting a continuance of the August 17, 2020, trial date prejudices Defendant without any prejudice being suffered by the government. Third, if the government's expert disclosures and any *Daubert* challenge(s) can be done in a short time frame and prior to trial, a less severe course of action than outright suppression, such as granting a very brief window to produce their disclosures, may be amenable to the defense. Defendant notes, however, that because discovery was ordered simultaneously by the Court granting a lengthy continuance for the government to provide and supplement its opinions gives the government the tactical advantage of formulating its experts' opinion testimony based on the anticipated stated defense expert testimony. As the Supreme Court has observed, "[i]t is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." *Wardius v.*

---

[3] Should evidence come forth as to bad faith on the part of the government, defense reserves the right to seek an alternative remedy.

8

Case 2:19-cr-00013    Document 111    Filed 06/05/20    Page 8 of 10 PageID #: 773

*Oregon*, 93 S. Ct. 2208 (1973). Finally, to the extent the government proffers that its experts will testify only to the factual areas outlined in its disclosure, the defense seeks alternatively that this Court limit the witnesses to that proffer at trial. *See Pembrook*, 119 F. Supp. 3d at 598-99.[4]

## CONCLUSION

For the reasons stated above, Defendant respectfully submits that the government, having not described the proposed expert witness's opinions or the bases and reasons for those opinions, should be directed by this Court to disclose a summary of the government's expert opinion testimony from its case-in-chief and provide the defense an opportunity to challenge via *Daubert*, once disclosed. The timing of the disclosure should occur fairly quickly so the opportunity for a *Daubert* challenge can occur, ideally, prior to the commencement of trial.

Respectfully submitted this 5th day of June, 2020.

By: /s/ *Charles Swift*
Charles D. Swift,
Pro Hac Attorney for Giampietro
CLCMA
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507

---

[4] Because of the broad nature of the topics, the defense does not concede that all factual testimony on the proffered factual areas will be relevant, nor unduly prejudicial, and reserves the right to object as such at trial.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of June, 2020, I electronically filed the foregoing Motion to Compel Expert Testimony Disclosure and accompanying Memorandum of Law with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

By: /s/ *Charles Swift*<br>
Charles D. Swift, Pro Hac<br>
Attorney for Giampietro<br>
833 E. Arapaho Rd., Suite 102<br>
Richardson, TX 75081