IN THE UNITED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA </br> Plaintiff, | ) </br> ) </br> ) </br> ) | |
| v. | ) </br> ) </br> ) | Case No.: 2:19-cr-00013 |
| GEORGIANNA A.M. GIAMPIETRO </br> Defendant. | ) </br> ) | Chief Judge Waverly D. Crenshaw, Jr. |

**MOTION TO DISMISS COUNTS TWO AS VOID FOR VAGUENESS AS APPLIED AND COUNT THREE FOR ABSENCE OF A NEXUS**

**AND MEMORANDUM OF LAW IN SUPPORT**

Defendant Georgianna A. M. Giampietro, in accordance with Rules 12(b)(3) of the Federal Rules of Criminal Procedure, the Free Speech Provision of the First Amendment and the Due Process provision of the Fifth Amendment to the Constitution of the United States, and the Sixth Circuit's decisions in *United States v. Jones,* 542 F.2d 661 (6th Cir. 1976) and *United States v. Levin*, 973 F.2d 463 (6th Cir. 1992), moves for this Court to dismiss Count Two as void for vagueness as applied, and dismiss of Count Three in the absence of a nexus to an official proceeding. For the reasons set forth in the attached Memorandum of Law, Defendant respectfully requests that this Court grant this Motion.

Respectfully submitted this 5th day of June, 2020.

By: /s/ *Charles Swift*
Charles D. Swift,
Pro Hac Vice Attorney for Giampietro
CLCMA
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507

1

# MEMORANDUM OF LAW

## I.    FACTUAL BACKGROUND

In its Detention Memorandum, the government cited the defendant's use of Telegram's secret chat feature (described as a self-destruct timer) as other evidence of wrongdoing supporting her detention. The government also alleged that the defendant encouraged the undercover not to take her phone with her to Syria and to get new phones. Govt. Detention Memo. Doc. 13 at 13-14. The government subsequently superceded the indictment against the Defendant and charged this conduct as violations of 18 U.S.C. § 1519 and § 1512(c)(1).

During the charged period for Count Two, defendant Georgianna Giampietro maintained a Telegram account under the screennames of "Ameera", "Umm Roses", and "La Shay Huna". Telegram accounts permit communication in multiple means, these include group chats, private chats and secret chats. The Telegram website describes the secret chat feature as follows:

> Secret chats are meant for people who want more secrecy than the average fella. All messages in secret chats use end-to-end encryption. This means only you and the recipient can read those messages — nobody else can decipher them, including us here at Telegram. On top of this, Messages cannot be forwarded from secret chats. And when you delete messages on your side of the conversation, the app on the other side of the secret chat will be ordered to delete them as well.
>
> You can order your messages, photos, videos and files to self-destruct in a set amount of time after they have been read or opened by the recipient. The message will then disappear from both your and your friend's devices.
>
> All secret chats in Telegram are device-specific and are not part of the Telegram cloud. This means you can only access messages in a secret chat from their device of origin. They are safe for as long as your device is safe in your pocket.

*Telegram FAQ*, Telegram, https://telegram.org/faq#q-how-are-secret-chats-different (last visited June 5, 2020).

In February 2018, the Defendant informed the undercover agent about the Telegram application. Thereafter, both the Defendant and the undercover used Telegram and its secret chat feature. The Defendant initiated the use of the secret chat feature on at least two occasions in

conversations with the undercover.[1] In addition to the occasions where the defendant initiated the use of the secret chat feature, the undercover initiated the use of the secret chat feature on at least four of occasions.[2]

Prior to, and during, the charged period, the Defendant, and other members of a Telegram chat group, expressed the belief that unknown individuals might be informants.[3] Neither the defendant, nor any of the members expressed a belief that they were currently under investigation. Instead, the Defendant expressed that the undercover agent was trustworthy and continued to interact with the undercover agent until October 4, 2018. On October 4, 2018, the Defendant expressed that she thought the undercover was going to get her arrested and thereafter unfollowed her own Telegram channel and blocked the undercover. Her blocking the undercover and unfollowing her Telegram channel prevented the undercover from being able to contact the Defendant further. [4]

---

[1] The secret chat history between the Defendant and the undercover is briefly summarized in Exhibit 1.
[2] See Exhibit 1.
[3] The individuals are unknown to the defense because the government has redacted all of these individuals' identities from discovery provided to the defense. In redacting the information, the government necessarily concedes that the individuals' identities are not relevant to the proceedings. This is presumably because the individuals' identities is not relevant to the proceedings.
[4] Telegram contains a feature wherein you can block an individual recipient from contacting you. This feature prevents the individual from participating in a channel that you have previously established. However, it does not block the individual from contact you further as they can continue to attempt private messages with you (private message requires you to accept or deny the request). Further, the individuals can attempt to re-contact you from a different screen name because it only blocks the screenname of the individual blocked. Deleting the account blocks any ability to communicate in the future because the blocked individual does not know the new screenname being utilized and therefore cannot attempt to join unless they are specifically informed of the new screenname. Individuals who wish to cut off contact routinely delete their accounts and re-establish a new number to prevent the individuals from being re-contacted.

## II. SUMMARY OF THE ARGUMENT

In *Rankin v. McPherson*, the Supreme Court held that firing a public employee based on a private statement to a co-worker that "…if they go for him again, I hope they get him"[5] constituted a violation of the plaintiff's First Amendment rights. *Rankin v. McPherson,* 107 S. Ct. 2891, 2895 (1987). The government now contends that if, instead of telling her co-worker in a private conversation that "…if they go for him, I hope they get him", Ms. McPherson instead used the secret chat on Telegram to have the same conversation, she would not only have been fireable but eligible for up to twenty years imprisonment for obstruction of justice.

This is necessarily so because, in Count Two, the government contends that the Defendant's use of the secret chat feature to automatically destroy electronic records of her statements concerning the war in Syria and her religious obligations and plans (in possible violation of 18 U.S.C. §2339B(a)(1)), constitutes a violation of 18 U.S.C. §1519. If the Defendant's conduct here is punishable, then Ms. McPherson's possible threats against the United States, made in a secret conversation, would also be punishable.[6] The Defendant respectfully submits that extending §1519 under the circumstances here to include the use of the secret chat feature is unconstitutional as applied because it infringes upon rights protected by the First Amendment, includes conduct within §1519 than an ordinary person would not have understood to be criminal, and encourages arbitrary and discriminatory enforcement of §1519.

In Count Three, the government contends that following the undercover's statements to the Defendant on September 23, 2018, stating that she was going to accompany her husband to Syria

---

[5] Referring to John Hinckley's attempted assassination of president Ronald Reagan,
[6] It is of no consequence that the Supreme Court determined that Ms. McPherson's statements did not constitute a true threat because the statements were sufficient, and did, trigger an investigation within the jurisdiction of the federal government and it is the investigation, not the underlying crime, which is the trigger for liability under 18 U.S.C. §1519.

4

to join HTS, the Defendant's destruction, or attempted destruction, of contact information, text messages, electronic communications, and a cell phone, constitutes a violation of 18 U.S.C. §1512(c)(1). The government, however, cannot establish the nexus to an official proceeding necessary to establish criminal intent under §1512(c)(1) as a matter of law, because during the charged period the most the Defendant knew was that a crime had been committed, or was likely to be committed by the undercover, and under these circumstances, the most a person can know is that a prosecution may or may not happen, which is insufficient to establish a nexus to an official proceeding.

### III. ARGUMENT

#### A. The Defendant's motion to dismiss Counts Two and Three is appropriate for pre-trial decision

Rule 12 of the Federal Rules of Criminal Procedure and its component parts encourage district courts to entertain and dispose of pre-trial criminal motions before trial if they are capable of determination without trial of the general issues. Fed. R. Crim. P. 12(b). As a general rule, indictments cannot be challenged under Rule 12 on the ground that they are not supported by adequate or competent evidence, because this would invade the province of the grand jury. *Costello v. United States*, 76 S. Ct. 406, 408 (1956).

The Sixth Circuit, however, has recognized that there are exceptions to this rule. In *United States v. Jones,* the Sixth Circuit recognized the ability of a trial court to dismiss an indictment when "the facts surrounding the alleged offense [are] virtually undisputed and trial of the substantive charges would not substantially assist the court in deciding the *legal issue* raised by the motion to dismiss the indictment." (emphasis added) *United States v. Jones,* 542 F.2d 661, 665 (6th Cir. 1976). Additionally, the Sixth Circuit has held that a Court may also dismiss an indictment under Rule 12(b) where the undisputed extrinsic evidence demonstrates that the government, as a

matter of law, is "incapable of proving beyond a reasonable doubt the intent required to convict". *United States v. Levin*, 973 F.2d 463, 470 (6th Cir. 1992). In summary, the requirements are (1) the issue raised must be a question of law, and (2) the relevant facts must be undisputed. *United States v. Houston*, No. 3:13-CR-9, 2013 U.S. Dist. LEXIS 184323, at *7 (E.D. Tenn. Oct. 3, 2013).

Each of the challenges raised by the Defendant fall within the exceptions identified in either *Jones* or *Levin*. The Defendant's challenge that the use of Telegram's secret chat feature as a basis for liability under §1519 is in violation of the First Amendment, meets the standard set out in *Jones*. The determination of whether a statute, as applied, violates the First Amendment is a question of law determined by the Court. Further, the facts regarding this challenge are not in dispute. For the purposes of this motion, the Defendant admits the charged conduct related to her use of Telegram. The relevant circumstances surrounding the Defendant's use of Telegram without actual knowledge of an investigation are sufficient for the Court's legal determination of whether, under these circumstances, the charged conduct is void for vagueness as applied for violating the First Amendment.

Likewise, the Defendant's alternative challenge to Count Two is that the charged conduct in Count Two relating to use of the Telegram application was not something that an ordinary person could understand was prohibited, and has been arbitrarily and discriminatorily enforced here. This is a legal challenge determined by the Court and the predicate facts of actual knowledge of an investigation and the Defendant's conduct are not in dispute for the purposes of this motion. *See United States v. Avant,* 907 F.2d 623, 625 (6th Cir. 1990); and *United States v. Kernell,* 667 F.3d 746, 750 (6th Cir. 2012).

Finally, in the Defendant's request to dismiss Count Three, the Defendant argues that the undisputed facts are insufficient to show the necessary nexus between the Defendant's conduct

6

and a potential federal proceeding and therefore are insufficient to establish that the Defendant had the requisite intent. Pursuant to *United States v. Levin*, the Court may properly consider the Defendant's motion under Rule 12(b) because absent evidence of a nexus to an official proceeding, the Defendant, as a matter of law, cannot form the required intent to violate 18 U.S.C. §1512(c)(1).

B. **The defendant's charged conduct regarding the use of Telegram's secret chat feature, in violation of §1519, is void for vagueness as applied in this case**

A penal statute is void for vagueness — and thereby unconstitutional — if it fails to "define [a] criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Coss*, 677 F.3d 278, 289 (6th Cir. 2012) (quoting *Gonzales v. Carhart*, 550 U.S. 124, 148-49, 127 S. Ct. 1610, 167 L. Ed. 2d 480 (2007)). As the Sixth Circuit has explained, "[a] challenge based on a statute's purported vagueness must be considered on 'an as-applied basis' so long as the statute does not involve First Amendment rights." *United States v. Maslenjak*, 821 F.3d 675, 695 (6th Cir. 2016).

"[P]erhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights." *Hoffman Estates v. Flipside*, Hoffman Estates, 102 S. Ct. 1186, 1189 (1982). When rights protected under the First Amendment are implicated, a more stringent vagueness test applies. For a Defendant to prevail on her as-applied First Amendment challenge, she must demonstrate that the statute is unconstitutional as applied to her particular expressive activity. *See United States v. Edwards*, No. 2:17-cr-170, 2017 U.S. Dist. LEXIS 201968, at *7 (S.D. Ohio Dec. 7, 2017).

Even if the Court concludes that the use of a secret chat does not implicate the First Amendment, the defendant can still prevail if the Court determines that ordinary people would not

7

have understood that using Telegram's secret chat feature was prohibited under the circumstances, or if the Court finds that extending §1519 to include using Telegram's secret chat feature would encourage arbitrary or discriminatory enforcement. *See United States v. Krumrei*, 258 F.3d 535, 538 (6th Cir. 2001) (quoting *United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990). Under these circumstances the "defendant bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation." *Id*. at 537.

With respect to 18 U.S.C. §1519, the Sixth Circuit has found that a defendant has standing to assert a void for vagueness as applied challenge so long as the facts do not clearly establish that the defendant had *actual knowledge* of an investigation. *United States v. Kernell,* 667 F.3d 746, 752 (6th Cir. 2012). In *Kernell,* after hacking into the email account of Governor Palin, the defendant posted the account information and confessed to the hacking on an Internet message board. *Id*. at 747. In response to Kernell's claims one of the participants on the message board claimed to have informed the FBI of his activities. The next day, Kernell posted that he had deleted the information from his computer as a result of his fear of being investigated. Id. at 749. Later computer forensic examinations revealed that Kernell had, in fact, taken numerous steps to remove information from the computer relating to his access to the email account.

The government argued that because Kernell had actual knowledge of the investigation, he could not make an as-applied challenge to §1519 citing the District Court's refusal to consider an as-applied challenge in *United States v. Fumo,* 628 F. Supp. 2d 573 (E.D. Pa. 2007). *See Kernell* at 751. The Sixth Circuit distinguished Kernell's conduct from that of the defendant in *Fumo* who had received a subpoena prior to the conduct which formed the basis for his indictment, finding that the facts did not support a finding that Kernell had an actual knowledge of an investigation

8

and, at most, Kernell acted in contemplation of one. *Id*. Accordingly, the Court found that he had standing to bring a challenge for void for vagueness as applied.

Having found standing, however, the Court rejected Kernell's claim that the "in contemplation of an investigation" element was vague, finding that "in contemplation of an investigation" was sufficiently broad that, while it could be vague to a hypothetical defendant, it was not vague when applied to Kernell because he had referenced the possibility of an FBI investigation in his online post concerning the deletion of the material. *Id* at 755.

The undisputed facts here likewise raise, at most, that the Defendant is acting in contemplation of an investigation rather than having actual knowledge of one. Accordingly, just like Kernell, she has standing to raise an as-applied void for vagueness challenge. Unlike Kernell, however, the facts here are sufficiently different for her to constitute the hypothetical defendant that the Sixth Circuit referenced in Kernell. The differences here are that unlike Kernell, the Defendant's use of Telegram's secret chat feature to have a private conversation is a protected activity under the First Amendment. Additionally, unlike Kernell, the Defendant's activities are not occurring after she has committed any alleged crime, but rather while the alleged potential criminal conduct was in contemplation and did not constitute wholesale deletion of portions of the computer, but rather the use of a privacy messaging app that hundreds of millions of people use worldwide on a daily basis to protect the privacy of their conversations.[7] As such, a reasonable person in her position would not understand that her

---

[7] 400 million active monthly users on Telegram worldwide as of October 2019. *See "Most popular mobile messaging apps worldwide as of October 2019, based on number of monthly active users."* (April 24, 2020). https://www.statista.com/statistics/258749/most-popular-global-mobile-messenger-apps/.

9

conduct was criminal and extending §1519 to include using Telegram's secret chat feature will unquestionably lead to arbitrary and discriminatory enforcement.[8]

### C. <u>Criminalizing the use of Telegram's secret chat feature violates the First Amendment because it prohibits a protected means of private speech</u>

Due process requires that laws give people of ordinary intelligence fair notice of what is prohibited. *Grayned v. City of Rockford*, 92 S. Ct. 2294 (1972). The lack of such notice in a law that regulates expression "raises special First Amendment concerns because of its obvious chilling effect on free speech." *Reno v. American Civil Liberties Union*, 117 S. Ct. 2329 (1997). The government will undoubtedly argue that prohibiting the use of Telegram's secret chat feature does not regulate expression because the speaker is free to use other means to express their views. This argument is illusionary because what the government is arguing is that people are free to speak as long as they do not take steps to prevent there being a record of what they said.

Such an argument ignores the importance of the protection of private speech as well as public speech by the First Amendment. The Supreme Court has observed that, "private dissent, no less than open public discourse, is essential to our free society." *United States v. United States Dist. Court*, 407 U.S. 297, 314, 92 S. Ct. 2125, 2135 (1972). Protecting the right of private speech does not just mean protecting the content, but also extends to mediums that facilitate private speech. As the Supreme Court explained in *Citizens United v. FEC,* 130 S. Ct. 876, 896 (2010),

---

[8] Unlike the defendant in <u>Kernell</u>, the defendant here did not profess that her use of the secret chat feature was done in contemplation of a potential FBI investigation and were part of her routine use of the Telegram app and thus insufficient to satisfy the mens rea requirement of intentionally impeding, obstructing, or influencing the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States in this case. The defendant nevertheless acknowledges that a finding of whether she acted in contemplation of an FBI investigation cannot be made until the government has been afforded the opportunity to present its case-in-chief.

"[l]aws enacted to control or suppress speech may operate at different points in the speech process."

That process includes the technology that facilitates public speech. *See Reno* (recognizing that the internet is a "dynamic, multifaceted category of communication" and that there is "no basis for qualifying the level of First Amendment scrutiny that should be applied to this medium"); *see also Burstyn v. Wilson*, 72 S. Ct. 777 (1952) (holding that movies are a protected form of speech).

When it comes to private speech, the same protection should also be necessarily true. Particularly in the situation here where the secret chat feature was used by the Defendant to keep her beliefs and intent to support the Syrian opposition to the Assad regime, private. In such situations, the Supreme Court has observed that "[t]he danger to political dissent is acute where the Government attempts to act under so vague a concept 'as the power to protect domestic security.' Given the difficulty of defining the domestic security interest, the danger of abuse in acting to protect that interest becomes apparent." (internal citations omitted) *United States v. United States Dist. Court*, 92 S. Ct. 2125, 2135 (1972).

Accordingly, this Court should not accept the government's position that the Defendant has the right to political opinions, but if those opinions would foreseeably lead to investigation, she has no right to express them on social media using a method that ensures they remain private. This is the type of power that totalitarian governments wield in the name of security and it is precisely the power that the First Amendment protects against.

### D. **An ordinary person would not understand that the use of Telegram's secret chat feature to discuss issues that federal government could foreseeably investigate would constitute a violation of 18 U.S.C. 1519**

Even if the use of Telegram's secret chat feature does not implicate the First Amendment's protections, extension of §1519 to it is beyond what an ordinary person would understand.

Telegram's secret chat feature was not in existence when Congress enacted §1519 and, as such, it was impossible for Congress to foresee that a creative prosecutor would seek to include the use of Telegram's secret chat feature to protect private conversations that could foreseeably interest a government agency from being investigated as a violation. The fact that Congress did not necessarily contemplate the extension does not itself foreclose the extension of §1519 to Telegram's secret chat feature, but it does demonstrate the dangers of the extraordinarily vague language of §1519 and it's unforeseeable consequences.

In fact, the application of §1519 to Telegram's secret chat feature was not just unforeseeable to ordinary people, it is unforeseeable to the extraordinarily sophisticated. During the pendency of this case, the ACLU's Surveillance and Cybersecurity Counsel, Jennifer Stisa Granick, published an article regarding Apple's ongoing battle with data encryption. In her article, Ms. Granick unequivocally states:

> A warrant gives police permission to search, but it doesn't entitle them to plaintext information that doesn't exist. *Moreover, there is no law in the U.S. requiring individuals to ensure our private communications are available to law enforcement.*[9]

(emphasis added) Jennifer Stista Granick, *In Latest Encryption Battle with Apple, Justice Department Still Wrong*, Am. Civ. Liberties Union, (Jan. 23, 2020), https://www.aclu.org/news/privacy-technology/in-latest-encryption-battle-with-apple-doj-still-wrong/ .[10] This case obviously would come as a surprise to Ms. Granick, as the government maintains that she is wrong and there are circumstances where an individual is under the obligation to ensure that their private communications are available. If

---

[9] See Exhibit B.

[10] Given that this case was under seal until January 2, 2020, and the government's allegations regarding the secret chat feature remain under seal, Ms. Granick is understandably unaware the government's position in this case.

12

Ms. Granick does not know, then it is hard to understand how an ordinary person, such as, Ms. Giampietro would know that the use of the secret chat feature would violate the text of §1519.

E. **Arbitrary and Discriminatory enforcement**

Extension of §1519 to secret chats under the circumstances present here, will lead to arbitrary and discriminatory prosecution.[11] While the use of Telegram's secret chat feature has been cited as one factor in establishing probable cause in search warrant applications, the defense has not found a single prior case where the government has alleged a similar violation of §1519. That the government now does so in a case involving political dissent of an individual the government clearly believes is an enemy of the state, demonstrates on its face the potential for arbitrary and discriminatory enforcement. That potential is not speculative. The Court need look no further than the government's 404(b) filing indicating the intent to enter multiple political statements, that are protected by the First Amendment, to ascertain the danger that the Defendant here will not be convicted for her conduct, but instead because the jury is inflamed by her political beliefs, and will seek to punish in any manner possible. Doc. 102. Using the very broad liability created by the general language of §1519 to punish the Defendant here will unquestionably lead to its future use to punish others who similarly seek to hide their political disagreements and religious beliefs from government scrutiny by using Telegram's secret chat feature.

---

[11] While the defense has found cases where the use of the secret chat app has been cited as probable cause of criminal conduct in warrant applications, the defense has found no case where the government has previously charged the use of the secret chat feature as obstruction.

13

**F. The government cannot establish the necessary nexus between the defendant's conduct and the federal proceeding necessary for liability under 1512(c)(1)**

In *Arthur Andersen LLP v. United States,* 125 S. Ct. 2129 (2005), the Supreme Court held that to establish the necessary criminal mens rea for 1512(b)[12] requires a nexus between the persuasion to destroy and a particular proceeding. *Id.* at 2136-37. Section 1512(c)(1) was enacted subsequent to *Arthur Anderson LLP* and the Sixth Circuit has not definitively extended this nexus requirement to 1512(c)(1). *See United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009). However, every court that has ruled on the issue has extended the nexus requirement to §1512(c)(1). See e.g. *United States v. Friske*, 640 F.3d 1288, 1292 (11th Cir. 2011)(holding the government was required to prove that the defendant knew of, or at least foresaw, the forfeiture proceeding); *United States v. Bennett*, 664 F.3d 997 (5th Cir. 2011), *vacated on other grounds*, 133 S. Ct. 71 (2012) ( which applied *Arthur Anderson* to require a nexus for charges under Section 1512(c)(2*)); United States v. Reich*, 479 F.3d 179 (2nd Cir. 2007)(requiring a nexus in the context of charges brought pursuant to Section1512(c)(2)); s*ee also United States v. Suarez*, No. 5:13 CR 420, 2014 U.S. Dist. LEXIS 63682 (N.D. Ohio May 8, 2014) (concluding that "the government must establish a nexus between the corrupt conduct and an official proceeding.") *Id.* at *11-12.

The nexus between the defendant's conduct and an official proceeding, however, does not need to be alleged in the indictment. *See Suarez* citing *United States v. Rand*, 2011 U.S. Dist. LEXIS 112083, 2011 WL 4498866 (W.D.N.C. July 27, 2011) and *United States v. Ring*, 628 F.Supp. 2d, 195, 223-24 (D.D.C. 2009). Nevertheless, whether the undisputed evidence precludes a finding

---

[12] The relevant conduct charged under §1512(b) was the corrupt persuasion of another with the intent to withhold a record, document, or other object, from an official proceeding; and alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding, in violation of 18 U.S.C. 1512(b)(2)(A) and (B).

14

of a nexus is capable for decision pre-trial under *Levin's* "incapable of proving beyond a reasonable doubt the intent required to convict" exception because the nexus is a necessary element of intent.

In order to establish a criminal mens rea, "the government must show that there was a 'nexus' between the defendant's conduct and the pending, or foreseeable, official proceeding." *United States v. Martinez,* 862 F.3d 223, 237 (2d Cir. 2017). "[T]he existence of a nexus between [a defendant's] action and the proceeding does not depend on the defendant's knowledge.... Rather, the existence of a nexus, for obstruction-of-justice purposes, is determined by whether the defendant's acts have a relationship in time, causation, or logic with the judicial proceedings." *Id.* (internal citations and quotation marks omitted). "[I]n other words, 'the endeavor must have the natural and probable effect of interfering with the due administration of justice.'" *United States v. Reich*, 479 F.3d 179, 185 (2d Cir. 2007) (quoting *United States v. Aguilar*, 515 U.S. 593, 599, 115 S. Ct. 2357, 132 L. Ed. 2d 520 (1995)).

A nexus has been found to exist to an official proceeding, not only when the Defendant knew that there was an official proceeding, but also when the official proceeding was clearly foreseeable. *See United Stat*) (finding that a defendant who had been detained by Turkish authorities for attempting to travel to Syria clearly could foresee an official proceeding in the United States); s*ee also United States v. Johnson*, 655 F.3d 594, 598 (7th Cir. 2011) (finding that the defendant's actual knowledge of an investigation as evidenced by the execution of a search warrant at her residence, was sufficient to create a nexus for her liability under 1512(c)).*es v. Pugh*, 937 F.3d 108, 120-21 (2d Cir. 2019

Each of the above rulings turned on the knowledge of an actual investigation rather than the knowledge of commission of a crime that might be investigated. Indeed, that was the situation in *Arthur Anderson*. The defendants in *Arthur Anderson* allegedly acted because they anticipated

15

an investigation. The Supreme Court did not opine as to whether the anticipated investigation would be sufficient to satisfy the nexus, holding only that the jury instructions were in error. Judge Myron H. Thompson, however, has found that under these circumstances, a nexus cannot be established because a prosecution is not foreseeable. See *United States v. Dunn,* 434 F. Supp. 2d 1203, 1210 (M.D. Ala. 2006). Judge Thompson's analysis in *Dunn* is in the context of whether the obstruction enhancement under the Sentencing Guideline U.S.S.G. § 2K2.1(b)(5), would apply. The opinion is nevertheless informative because Judge Thompson considered whether the defendant's conduct constituted obstruction under 18 U.S.C. §1512(c). What Judge Thompson found was that "a person must at least have an inkling that he is the target of an investigation. Without such knowledge, that person only knows that he committed a crime and the federal government may or may not detect it. He knows only that a prosecution may or may not happen." *Dunn* at 1210 (internal citations omitted). Applying Judge Thompson's logic to Count Three, the government is similarly unable, as a matter of law, to establish a nexus here. At most, the government can show that on October 4, 2018, the Defendant believed that the undercover would be caught and that she, and the undercover, would get in trouble. That is no more than showing that the Defendant knew that a crime might occur, or had occurred. And to quote Judge Thompson, that she "at most knew that a prosecution may or may not happen", and that is insufficient for the federal proceeding to be foreseeable. The Defendant respectfully submits that the Court should likewise require the government to show that the Defendant likely knew that she was the target of an investigation, something they cannot do.

## Conclusion

For the reasons above, the defendant respectfully submits that this Court should dismiss Counts Two and Three.

16

Respectfully submitted this 5th day of June, 2020.

By: /s/ Charles Swift
Charles D. Swift,
Pro Hac Vice Attorney for Giampietro
CLCMA
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of June, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

By: /s/ Charles Swift
Charles D. Swift, Pro Hac Vice
Attorney for Giampietro
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
