UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| | ) | No. | 2:19-cr-00013 |
| v. | ) | | |
| | ) | | Chief Judge Crenshaw |
| | ) | | |
| GEORGIANNA A.M. GIAMPIETRO | ) | | |

GOVERNMENT'S OPPOSITION TO MOTION TO COMPEL
EXPERT TESTIMONY DISCLOSURE

The United States of America, by and through the United States Attorney for the Middle District of Tennessee, and the Chief of the Counterterrorism Section of the National Security Division, U.S. Department of Justice, respectfully opposes the defendant's Motion to Compel Expert Testimony Disclosure and Memorandum of Law in Support. (Doc. 111.) The government respectfully submits that its notice regarding expert witnesses, filed on May 15, 2020 (Doc. 101) complies with the Court's Order of January 2, 2020. The government's previously filed notice provides an adequate written summary of the anticipated testimony of each of its two expert witnesses. The written summaries in no way prevent the defense from filing a motion pursuant to *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and provide the Court with sufficient information for the Court to evaluate the admissibility of the proposed government expert witnesses under Rule 702 of the Federal Rules of Evidence.

A.    The Defendant's Motion is Untimely

The Court's Scheduling Order directed the parties to file their notices regarding expert witnesses on May 15, 2020, and set a deadline of June 5, 2020 for *Daubert* motions to be filed. The Court's Order gave the parties three weeks' time between the filing of expert notices and the

1

submission of any *Daubert* motion.

Instead of filing a *Daubert* motion on June 5, 2020, however, the defendant filed a motion to compel more information, complaining that the government's notice was inadequate and "necessarily prevents the defense from filing a *Daubert* motion." (Doc. 111 at 2). At best, this motion to compel can be interpreted as triggering, for the first time, obligations pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G).[1] The defendant waited to launch any challenge to the notice for three weeks, instead choosing to file her motion on the date that the Court ordered any substantive *Daubert* motions to be submitted. The government respectfully submits that if the defendant anticipated filing a *Daubert* motion, she should have done so in compliance with the Court's Scheduling Order, rather than attempting to argue that she could not yet decide whether to present a challenge to the proposed experts based upon the written summaries she was provided on May 15, 2020.[2]

---

[1]    Rule 16(a)(1)(G) states, in pertinent part, "At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . .The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *See also* Advisory Committee Notes to Rule 16, 1993 Amendment ("Like other provisions in Rule 16, subdivision (a)(1)(E) requires the government to disclose information regarding its expert witnesses *if the defendant first requests the information.*") (emphasis added). Rule 16(a)(1)(E) was relettered to become Rule 16(a)(1)(G) as part of the 2002 Amendments to the Rule.

[2]    If a party fails to file a timely pretrial motion under Rule 12, the court has discretion to consider a late-filed motion as untimely, unless good cause is shown. *See, e.g., United States v. Walden*, 625 F.3d 961, 964 (6th Cir. 2010); *United States v. Hines,* No. 3:19-CR-187-TAV-HBG, 2020 WL 1866710 at *2 (E.D. Tenn. Apr. 14, 2020); Fed. R. Crim. P.12(c)(3). The good cause standard focuses on the conduct of the party seeking leave to file a motion late, and "[a]t a minimum, it requires the party seeking a waiver to articulate some legitimate explanation for the failure to timely file." *Id.* at 965. Generally, if the failure to file a motion in a timely fashion occurs as a result of a lawyer's conscious decision not to file a pretrial motion before the deadline, good cause is not established. *Id.*; *see also United States v. Cornejo-Garcia,* No. 3:19-CR-90-PLR-HBG, 2019 WL 5296762 at *5 (E.D. Tenn. Oct. 21, 2019) ("*Counsel's* decision not to file a motion at a particular time is a matter of strategy and not good cause even though counsel's decision results in the defendant's inability to raise an issue." (emphasis included in text). Even if good cause is established, the district court is not required to consider the late filing. *Walden,* 625 F.3d at 967.

Here, defense counsel's decision to challenge the expert witness notice as a prerequisite to filing a *Daubert* motion will result in a late filing of a *Daubert* motion, should the defense ultimately decide to do so. Counsel waited until the filing deadline for the *Daubert* motion to challenge the sufficiency of the government's notice, claiming that a perceived inadequacy in the detailed notice prevented the defense from filing a substantive *Daubert* motion. Defense

2

B.  The Defendant's Motion is Meritless Because the Government's Notice Complies with the Court's January 2, 2020 Order and Rule 16(a)(1)(G)

The defendant is charged with attempting to provide material support to a designated foreign terrorist organization, Hay'at Tahrir al-Sham ("HTS"). The defendant is also charged with two counts of obstruction of justice, based upon her destruction and attempted destruction of evidence showing that she was attempting to provide material support to a designated foreign terrorist organization. The charges filed against this defendant require the government to establish that the defendant attempted to provide material support to a foreign terrorist organization. As such, the government must establish what constitutes "material support" and what a "foreign terrorist organization" is. The case thus requires the government to present evidence that is not within the general understanding of the average person, including the activities of designated foreign terrorist organizations, such as HTS, the use of the internet to recruit members, radicalization strategies, the role of women in such organizations, the nature of the support solicited by these organizations, and concepts of Islam distorted by these organizations to encourage violent action by members and sympathizers.

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony at trial, authorizes the Court to allow the introduction of such testimony if the Court finds that the testimony is reliable and helpful to the trier of fact. The Court has a "gatekeeping role" in evaluating the reliability of expert testimony. *Tamraz v. Lincoln Electric Co.,* 620 F.3d 665, 668 (6 th Cir. 2010). The Sixth Circuit has observed that expert testimony must satisfy three

---

counsel has not explained the good cause for ignoring the Court's deadline, particularly when the stated reason for not filing a *Daubert* motion by June 5 is based on information that counsel received three weeks ago. It is also noteworthy that defense counsel had the opportunity to request a new motion deadline or ask the Court to excuse the filing of an untimely motion, but has not done so. *See Cornejo-Garcia,* 2019 WL 5296762 at *4.

3

requirements under Rule 702: "First, the witness must be qualified by 'knowledge, skill, experience, training or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." *In re Scrap Metal Antitrust Litigation,* 527 F.3d 517, 528-29 (6th Cir. 2012).

In cases involving gang or organized crime activity, this Court has noted that expert witnesses with a specialized knowledge of the inner workings, nature, and structure of the organization at issue can offer testimony relevant to the jury because such matters are "generally beyond the understanding of the average layman." *United States v. Frazier,* No. 3:17-cr-00130, 2020 WL 996454 at *3 (M.D. Tenn. Mar. 3, 2020) (quoting *United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000) and *United States v. Thomas,* 74 F.3d 676, 682 (6th Cir. 1996)). Numerous courts have likewise reasoned that expert testimony concerning terrorist organizations, their history, structure, and activities is admissible to assist the jury in evaluating evidence of particular criminal conduct. *See, e.g, United States v. Hassan,* 742 F.3d 104, 130-32 (4th Cir. 2014); *United States v. Amawi,* 695 F.3d 457, 478 (6th Cir. 2012); *United States v. Damrah,* 412 F.3d 618, 625 (6th Cir. 2005) (admission of expert testimony regarding violent terrorist activities); *United States v. Shafi,* Case No. 15-cr-00582-WHO-1, 2018 WL 3159769 (N.D. Cal. June 28, 2018) (proposed expert testimony concerning general activities and background of al-Nusrah admitted; disclosure of general topics to provide background sufficient for Rule 16); *United States v. Abdi,* 498 F. Supp. 2d 1048, 1070 (S.D. Ohio 2007) (admitting expert testimony regarding international terrorism); *United States v. Sabir,* 2007 U.S. Dist. LEXIS 34372 at *27 (S.D.N.Y. May 9, 2007) (admitting expert testimony on al Qaeda); *United States v. Aref,* 2007 U.S. Dist. LEXIS 12228 at *48-49 (N.D.N.Y Feb. 22, 2007) (admitting expert testimony regarding affiliations with mujahideen

4

organizations); *United States v. Paracha,* 2006 U.S. Dist. LEXIS 1, at *67 (S.D.N.Y. Jan. 3, 2006) *aff'd* 313 F. App'x 347, 351 (2d Cir. 2008) (expert testimony admitted regarding al Qaeda); *see also United States v. Holy Land Foundation for Relief and Development,* 2007 U.S. Dist. LEXIS 51184 at *14-17 (N.D. Tex. July 16, 2007) (admitting expert testimony regarding Hamas and its affiliated organizations).

The government respectfully submits that the proffered testimony of its experts, Dr. Mia Bloom and Mr. Hassan Hassan, as described in its Notice, is relevant to the pending charges against the defendant. Insofar as the government must establish that the defendant attempted to provide material support to a designated foreign terrorist organization, these experts will present the jury with background information about HTS, its relation to other foreign terrorist organizations, its modus operandi, its activities, and its recruitment strategies. The government intends to present Mr. Hassan as an expert witness at trial to explain what the foreign terrorist organization HTS is and to discuss its genesis, ideology, strategy, tactics, activities, and recruiting efforts. Mr. Hassan is also expected to testify about the relationship of HTS to other extremist groups and foreign terrorist organizations operating in the region. Mr. Hassan's expertise is based upon his work as a journalist, a best-selling author, a trainer, a lecturer and a native Syrian who has had first-hand experience with operatives of foreign terrorist organizations imposing their will in his own neighborhood. As the government's notice explains, Mr. Hassan was a journalist in the Middle East for almost 11 years before focusing on research into extremism. While working as a journalist, Mr. Hassan covered HTS extensively as part of his reporting on the Syrian conflict. He has interviewed some of the group's leaders and rank and file members over the years. In its earlier incarnation as Jabhat al-Nusra, the group operated heavily in Mr. Hassan's home town. In addition to his first-hand experience with members of this foreign terrorist organization, Mr. Hassan has

5

reviewed materials that the group provides to its new recruits and members as part of its "orientation courses."

The government's proffered experts will also explain to the jury the ideology and doctrinal texts that are used by foreign terrorist organizations to encourage support and assistance from individuals in Western countries who may not have a full appreciation of Islam. The government's evidence against the defendant includes her use of social media to develop a relationship with a number of individuals online, including undercover employees of the Federal Bureau of Investigation. In developing those relationships, the defendant shared her views of selected radical Islamic doctrine justifying support for the violent activities of foreign terrorist organizations. The defendant provided advice to one undercover employee on traveling to Syria to join HTS and fight for or otherwise support the organization.

The government intends to present Dr. Bloom as an expert witness to discuss the role of women in terrorism, including the activities undertaken by female jihadists and female jihadi supporters. Dr. Bloom will help to explain the radicalization process, with a focus on the radicalization of women, the use of particular teachings or the teachings of particular clerics in the radicalization process, the role of on-line communications and certain social media platforms in the radicalization process and in the encouragement of terrorist support activities, the use of charities to fund terrorist activities, and the techniques used to travel undetected and internationally in support of jihadis. Dr. Bloom will also explain the genesis and meaning of the ideology reflected in the Islamic literature and teachings often used in radicalization efforts, as well as the meaning of terminology used in this context. As more fully described in the government's May 15, 2020 Notice, Dr. Bloom's testimony will be based upon her 30 years of studying terrorism, which has included conducting research on the use of social media by terrorists and terrorist sympathizers,

6

developing a familiarity with Islamic literature, and writing several books focusing on suicide bombers, the use of children by terrorist organizations, and the role of women in these organizations.

The expert testimony proffered by the government is precisely the type of evidence that has been admitted in numerous cases to assist the jury in understanding the context of the defendant's actions. The government does not intend to elicit opinions from its experts about the defendant's individual conduct or her intent in engaging in specific activities. Rather, the testimony of Mr. Hassan and Dr. Bloom is intended to provide background information to the jury concerning the history, nature, and structure of foreign terrorist organizations, such as HTS, its activities, modus operandi, terminology and recruitment efforts, how these organizations use certain Islamic doctrines and teachings to encourage support for their activities and the role that women play in supporting these organizations. The government also anticipates that these witnesses will make reference to specific items of evidence in this case to illustrate these points. This type of summary is itself contemplated by Rule 16(a)(1)(G). *See* Advisory Committee Notes, 1993 Amendment. Rule 702 also allows for admission of such testimony. The Advisory Committee Notes to the 2000 Amendments state, "It might be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case. . . . The amendment [to Rule 702] does not alter the venerable practice of using expert testimony to educate the factfinder on general principles. For this kind of generalized testimony, Rule 702 simply requires that (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony 'fit' the facts of the case." *See also United States v. Gibbs,* No. 3:17-cr-100123-1, Doc. 394 (Order filed March 30, 2020).

7

If the defendant decides to file an untimely motion for a *Daubert* hearing, and if the Court accepts that filing, the government submits that the Court should deny the motion as unnecessary. The Court is fully capable of determining whether the proposed testimony of Dr. Bloom and Mr. Hassan is admissible under Rule 702 without conducting a hearing. While *Daubert* provides a non-exclusive list of factors for the Court to use in evaluating the reliability of a particular scientific theory, this case does not involve the presentation of scientific evidence. Courts have recognized that not all of the *Daubert* factors can apply to every type of expert testimony. As this Court has noted, in evaluating the reliability of non-scientific expert testimony, the district court may forgo the *Daubert* factors and "focus on the reliability of the expert's personal knowledge or experience." *Frazier,* 2020 WL 996454 at *2 (citing *Thomas v. City of Chattanooga,* 398 F.3d 426, 431-32 (6th Cir. 2005); *see also Compton v. Subaru of America,* 82 F.3d 1513, 1518-19 (10th Cir.), *cert. denied,* 519 U.S. 1042 (1996) (application of *Daubert* factors "unwarranted in cases based solely upon experience or training"). Rule 702 thus provides the Court the flexibility to determine whether the proffered testimony of Dr. Bloom and Mr. Hassan would assist the jury in understanding the background and basic information about foreign terrorist organizations, their structure and their activities. The notice filed by the government on May 15, 2020, includes the resumes of each of the proposed expert witnesses, which establish the extensive experience and basis of knowledge supporting their testimony at trial. The government submits that the experience and training of these experts establishes that their testimony in this case would be reliable, relevant, and helpful to the jury.

WHEREFORE, the government respectfully requests that the Court deny the defendant's motion to compel further expert disclosure and evaluate the government's proffered expert witnesses pursuant to Federal Rule of Evidence 702 without holding a *Daubert* hearing.

Respectfully submitted,

DONALD Q. COCHRAN
United States Attorney
Middle District of Tennessee

By:     *s/Ben Schrader*
BEN SCHRADER
Assistant U.S. Attorney
110th Avenue South, A96l
Nashville, Tennessee 37203
Phone: (615) 736-5151

By:     *s/Philip Wehby*
PHILIP WEHBY
Assistant U.S. Attorney
110th Avenue South, A96l
Nashville, Tennessee 37203
Phone: (615) 736-5151

By:     *s/Jennifer Levy*
JENNIFER LEVY
Trial Attorney
Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W., Suite 7600
Washington, D.C.   20530
Phone: (202) 514-1092

Dated:          June 18, 2020

9

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2020 I electronically served one copy of the government's opposition to the defendant's Motion to Compel Expert Testimony Disclosure and Memorandum of Law in Support (Doc. 111), which will send a Notice of Electronic Filing to counsel for defendant.

 *s/Ben Schrader*
BEN SCHRADER
Assistant U.S. Attorney
110th Avenue South, A96l
Nashville, Tennessee 37203
Phone:   (615) 736-5151