UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| | ) | No. | 2:19-cr-00013 |
| v. | ) | | |
| | ) | | Chief Judge Crenshaw |
| | ) | | |
| GEORGIANNA A.M. GIAMPIETRO | ) | | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT THREE AS DUPLICITOUS AND/OR MULTIPLICITOUS, OR IN THE ALTERNATIVE AMEND COUNT THREE (Doc. 112)**

The United States, through the United States Attorney for the Middle District of Tennessee, and the Chief of the Counterterrorism Section of the National Security Division, U.S. Department of Justice, respectfully opposes defendant Georgianna A.M. GIAMPIETRO's Motion to Dismiss Count Three as Duplicitous and/or Multiplicitous, or in the Alternative Amend Count Three. (Doc. 112.)[1] Neither Count Two nor Count Three is duplicitous, because these counts only allege a single offense in each count. Nor are Counts Two and Three multiplicitous, because they allege different offenses under *Blockburger v. United States*, 284 U.S. 299 (1932). The Court should therefore deny GIAMPIETRO's motion without a hearing.

I.      **Procedural and Factual Background**

On August 14, 2019, a federal grand jury in the Middle District of Tennessee indicted GIAMPIETRO on one count of attempting to provide material support to a foreign terrorist organization, namely, Hayat Tahrir al-Sham, also known as "HTS." (Doc. 1.) On December 18,

---

[1]      GIAMPIETRO captions her motion as one to dismiss Count Three (only) as duplicitous and/or multiplicitous. (*See* Doc. 112 at 1.) But she asks that the Court dismiss Count Two *and* Count Three as duplicitous and/or multiplicitous. (*See id.*) This opposition responds to GIAMPIETRO's claims regarding Count Two and Count Three.

1

2019, the grand jury returned a superseding indictment, which broadened the dates of the offense conduct in the attempt-to-provide-material-support count (Count One), and also charged GIAMPIETRO with two obstruction-of-justice offenses, in Counts Two and Three. (Doc. 77.)

GIAMPIETRO's motion concerns these latter two counts. Broadly speaking, Count Two alleges that GIAMPIETRO deleted electronic data, including Instagram and Telegram[2] accounts GIAMPIETRO was using to communicate with other "sisters" in her online network, after becoming aware in approximately May 2018 that one "sister" had been interviewed by the FBI and after becoming aware in approximately October 2018 that another "sister" was under investigation for possible immigration violations. Count Two alleges further that GIAMPIETRO engaged in this conduct with the intent to obstruct the investigation of a matter within the jurisdiction of a department and agency of the United States.

Count Three, by contrast, alleges that GIAMPIETRO attempted to destroy electronic data, including electronic communications, and a cell phone belonging to an FBI undercover employee (the "UCE"), by directing the UCE to (among other things) "unfollow" GIAMPIETRO's Telegram channel, delete any references to or photographs of GIAMPIETRO in any of the UCE's electronic devices, get rid of the UCE's cell phone, and get a new number, after GIAMPIETRO learned of the UCE's imminent plans to travel to Syria with her fictitious husband to join HTS. Count Three alleges further that GIAMPIETRO engaged in this conduct with the intent to impair the integrity and availability of these materials for use in an official proceeding, namely, a federal grand jury investigation.

For the reasons below, neither Count Two nor Count Three is duplicitous. Nor are Counts

---

[2]       Telegram is an encrypted social media platform.

Two and Three multiplicitous. GIAMPIETRO's arguments thus lack merit and should be rejected.

## II.     Argument

### A.     Neither Count One Nor Count Two is Duplicitous

GIAMPIETRO contends that Counts Two and Three "are duplicitous because they charge multiple separate individual acts as a singular course of conduct rather than the individual crimes they represent." (Doc. 112 at 2.) GIAMPIETRO contends further that, although "a single course of conduct may be charged in some circumstances under either statute, those circumstances are not present when the allegation relates to separate and distinct acts of destruction across a wide variety of platforms, rather than a singular act accomplished by multiple means." (*Id.*) GIAMPIETRO also contends that "[u]tilizing a single course of conduct under these circumstances will not reveal whether the jury unanimously found the defendant guilty of any particular alleged criminal conduct, or guilty of one crime and not guilty of the others." (*Id.*)

These arguments lack merit. "An indictment is duplicitous if it sets forth separate and distinct crimes in one count." *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007) (quotation omitted). "It is not duplicitous," however "to allege in one count that multiple means have been used to commit a single offense." *United States v. Damrah*, 412 F.3d 618, 622-63 (6th Cir. 2005); *see also Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) ("Our cases reflect a long-established rule of the criminal law that an indictment need not specify which overt act, among several named, was the means by which a crime was committed.").

Here, Count Two alleges a single offense. Specifically, Count Two alleges that GIAMPIETRO violated 18 U.S.C. § 1519, as follows:

> Beginning in or about March 2018, and continuing until on or about October 23, 2018, in the Middle District of Tennessee, the defendant, **GEORGIANNA A.M.**

3

**GIAMPIETRO**, did knowingly alter, destroy, mutilate, conceal, and cover up a record and document, including, but not limited to, social media accounts, text messages, chat conversations, and other electronic communications, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, that is, a possible violation of Title 18, United States Code, Section 2339B(a)(1), a matter within the jurisdiction of the Federal Bureau of Investigation, and in relation to and in contemplation of such matter.

(Doc. 77 at 2.) As is plain from the face of the indictment, Count Two alleges that GIAMPIETRO used multiple means—namely, deleting social media accounts, text messages, chat conversations, and other electronic communications—to commit the offense of obstruction of justice. Count Two is therefore not duplicitous. *See*, *e.g.*, *United States v. Anderson*, 605 F.3d 404, 414-15 (6th Cir. 2010) (indictment alleging yearlong scheme involving monthly submission of fraudulent Medicaid reimbursement claims not duplicitous, and need not be charged as individual counts tied to each reimbursement claim, because of the "continuous nature of the scheme").

Count Three, similarly, alleges a single offense. Specifically, Count Three alleges that GIAMPIETRO violated 18 U.S.C. § 1512(c)(1), as follows:

Between on or about September 23, 2018, and on or about October 23, 2018, in the Middle District of Tennessee, the defendant, **GEORGIANNA A.M. GIAMPIETRO**, knowingly and corruptly did alter, destroy, mutilate, and conceal a record and document, including, but not limited to, contact information, text messages, electronic communications, and a cell phone, and corruptly did attempt to do so, with the intent to impair the record and document's integrity and availability for use in an official proceeding, namely, a grand jury investigation into a possible violation of Title 18, United States Code, Section 2339B(a)(1).

(Doc. 77 at 3.) As is plain from the face of the indictment, Count Three alleges that GIAMPIETRO used multiple means—namely, attempting to delete contact information, text messages, electronic messages, and a cell phone—to commit the offense of obstruction of justice. Count Three is therefore not duplicitous either.

4

GIAMPIETRO suggests that the government is likely to rely on *United States v. Schmeltz*, 667 F.3d 685 (6th Cir. 2011) and *United States v. Moyer*, 674 F.3d 192 (3d Cir. 2012) to argue that GIAMPIETRO "committed a single offense in more than one way," and that "unanimity is [therefore] not required on any specific means of committing the offense." That may be because *Schmeltz* and *Moyer* both help establish that Count Two and Count Three are not duplicitous. Jay Schmeltz was a deputy with the Lucas County Sheriff's Office in Ohio. *Schmeltz*, 667 F.3d at 685-86. He was responsible for transporting pretrial detainee Carlos Benton from an area hospital, where Benton had received treatment for seizures, back to the jail where Benton was being held. *Id.* But Benton, after enduring various forms of abuse by the police while in transit and after arriving back at the jail—including Schmeltz's shoving Benton to the ground in the jail's booking area, and another officer's (John E. Gray's) use of a sleeper hold to incapacitate Benton and render him unconscious—died. *Id.*

Schmeltz later prepared two "Corrections Officer Reports," which described the events surrounding Benton's transport from the hospital but omitted important details about the officers' actions. *Id.* at 686. A federal grand jury later charged Schmeltz with two counts of violating 18 U.S.C. § 1519, one for each report he allegedly falsified, in Counts 6 and 7 of the indictment. *Id.* at 686-87. Count 6 of the indictment, in particular, alleged that:

> Schmeltz omitted from his official report any mention of his assault of C.B. in the Jail's Booking area; any mention of John E. Gray's use of a 'sleeper hold' on C.B.; and any mention of the fact that Gray had rendered C.B. unconscious with the sleeper hold.

*Id.* at 687. The jury found Schmeltz guilty of Count 6 but acquitted him on Count 7. *Id.*

On appeal, Schmeltz argued that Count 6 was duplicitous because it alleged "separate and distinct crimes" in a single count, and based the charge of falsifying a report on three separate

5

omissions contained in that report. *Id.* Schmeltz argued further that the district court thus erred by failing to instruct the jury that it must unanimously agree as to which of these three omissions supported a guilty verdict. *Id.*

The Sixth Circuit rejected that argument. The district court, relying on Sixth Circuit Pattern Jury Instruction 8.03B(2), had instructed the jury that, "[i]n order to return a guilty verdict, all 12 of you must agree as to each count and each defendant that at least one way of violating the statute has been proved; however, all of you need not agree that the same way has been proved." *Id.* at 687. The Sixth Circuit found no error, explaining that, "[a]lthough a jury must unanimously find that the government has proven each element of a crime, it need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element." *Id.* (internal citation and quotation marks omitted). The Sixth Circuit thus reasoned that jurors could disagree about which specific information Schmeltz omitted from the report at issue, while unanimously agreeing on the ultimate issue, namely, that Schmeltz knowingly falsified the report with the intent to impede a federal investigation. *Id.* at 688.

The same is true here. As to Count Two, the jury must unanimously find that the government has proven each element of this crime, including that the defendant altered, destroyed, mutilated, concealed, covered up, falsified, or made a false entry in, a record, document, or tangible object. The government has identified the documents at issue as "including, but not limited to, social media accounts, text messages, chat conversations, and other electronic communications." But the jury need not decide unanimously whether GIAMPIETRO destroyed (for example) social media accounts, or text messages, or chat conversations, or other electronic conversations, or all of these items or some combination of these items—in other words, "which of several possible

6

sets of underlying brute facts make up a particular element"—to find her guilty on Count Two.

Likewise, as to Count Three, the jury must unanimously find that the government has proven each element of this crime, including that the defendant altered, destroyed, mutilated, or concealed any record, document, or tangible object, or attempted to do so. The government has identified the documents and tangible object at issue as "including, but not limited to, contact information, text messages, electronic communications, and a cell phone." But, for the same reasons outlined above with respect to Count Two, the jury need not decide unanimously whether GIAMPIETRO directed the UCE to destroy (for example) contact information, text messages, electronic communications, a cell phone, or all of these items or some combination of these items to find her guilty on Count Three.

*Moyer*, which also involved the falsification of documents by police officers following a criminal investigation, aids the government as well. William Moyer, a Shenandoah, Pennsylvania police officer, was one of several officers investigating the assault of Luis Ramirez by a group of teenagers; the assault resulted in Ramirez's death. *Moyer*, 674 F.3d at 198-99. Officers charged Francis Ney, who was nearby when the assault occurred, and who called 911 to report it, in connection with the incident based upon the assertion of Brandon Piekarskey—who had kicked Ramirez in the head while Ramirez was on the ground—that he had seen Ney with a gun. *Id.* at 199-201. As it turned out, one of the officers who arrested Ney was romantically involved with Piekarsky's mother; that officer took Piekarsky aside after the incident and spoke with him privately about it. *Id.* at 200. As the investigation proceeded, it became clear that officers involved in the investigation had a conflict of interest when it came to potentially prosecuting Piekarsky, and that it appeared that some of the suspects were trying to protect whoever had kicked Ramirez

7

and caused his death. *Id.* at 200.

Several days after the homicide, the local District Attorney's Office charged teenagers in connection with it. *Id.* at 200-01. But the District Attorney's Office had trouble obtaining police reports from the officers who had initially investigated the homicide. *Id.* at 201. Among the reports they ultimately received were two from the police chief, Matthew Nestor. *Id.* at 201-02. A federal grand jury investigating Ramirez's homicide as a possible hate crime later charged Nestor with falsifying documents, in violation of 18 U.S.C. § 1519, in connection with false statements and material omissions Nestor made in these two police reports. *Id.* at 202. Nestor was convicted of this offense after a jury trial. *Id.* at 202.

On appeal, Nestor claimed that the § 1519 count was duplicitous "because it alleged multiple false statements in multiple police reports in a single count." *Id.* at 204. Relying on *Schmeltz*, the Third Circuit rejected Nestor's claim, explaining that § 1519 "does not require the government to charge separate counts for each false entry in a document." *Id.* The Third Circuit explained further that the terms "document" and "record" in § 1519 "could fairly be interpreted as the collection of official police reports" underlying the Ramirez homicide investigation. *Id.* at 205. Thus, the court reasoned, the § 1519 count—which alleged a "continuing course" of conduct over a nine-month period, from July 12, 2008 to March 30, 2009, to falsify the "record" to obstruct a single federal investigation, and which identified multiple reports created to serve that singular purpose—was not duplicitous. *Id.* On similar grounds, the court also rejected Nestor's claim that the jury, which had to find that the government met every element of § 1519 before convicting him on that count, may have relied on different underlying acts in finding him guilty. *Id.*

The same, again, is true here. Count Two alleges that GIAMPIETRO engaged in a

8

continuing course of conduct over a seven-month period to delete various forms of data to obstruct a federal investigation. Count Three likewise alleges that GIAMPIETRO engaged in a continuing course of conduct over a one-month period to attempt to delete various forms of data and a physical object by directing the UCE to carry out this deletion and destruction. Each count alleges that GIAMPIETRO committed a single offense through various means, just as Nestor had done in *Moyer* by making false statements in multiple police reports over time to achieve his singular purpose of obstructing justice.

GIAMPIETRO attempts to distinguish *Schmeltz* and *Moyer* on the grounds that those cases "dealt with the falsification of records rather than the destruction of them." (Doc. 112 at 4.) GIAMPIETRO contends that this distinction is relevant here because, unlike the falsification of records in *Schmeltz* and *Moyer*, GIAMPIETRO claims that the destruction of *electronic* records or communications involves "distinct conceptual groupings" requiring unanimity as to at least one allegation in order for the government to obtain a conviction. (*Id.* at 5.) To support her view, GIAMPIETRO relies on *United States v. Duncan*, 850 F.2d 1104 (6th Cir. 1988), a case involving a violation of 26 U.S.C. § 7206(1), which prohibits the making and preparation of a tax return containing a material false statement.

GIAMPIETRO is mistaken, for at least three reasons. First, GIAMPIETRO has cited no cases for the proposition that electronic records or communications ought to be treated differently under *Schmeltz* (or *Moyer*) because they are electronic in form rather than, for example, paper in form. And it is of course beyond dispute that electronic records are as susceptible to alteration, falsification, or destruction as paper records.

Second, GIAMPIETRO misapprehends the logic of *Duncan*. In *Duncan*, the Sixth Circuit

9

concluded that the district court should have issued a unanimity instruction as to a single count which alleged that the defendant had made "two separate and distinct" false statements on a single tax return. *Id.* at 1113. The Sixth Circuit explained that, because willfulness was an element of the offense of making a false statement in this context, the jury had to conclude unanimously that the defendant made at least one of the statements at issue "willfully" in order to find the defendant guilty. *Id.* Otherwise, there was a danger that the jury could convict the defendant even though the jurors had not unanimously found that the government had satisfied the elements of the offense. *Id.* at 1114-15. Crucially, in reaching this conclusion, the Sixth Circuit identified the actus reus at the heart of the charged false-statements offense as being the false statement itself. *Id.* at 1111-1113.

Here, by contrast, the actus reus of the charged obstruction offenses is GIAMPIETRO's destruction and attempted destruction of various records, documents, and a cell phone. To find GIAMPIETRO guilty, the jury will be required to find unanimously that she did, in fact, destroy and/or attempt to destroy various records, documents, and the cell phone with the intent (1) to impede, obstruct, or influence the investigation or proper administration of any matter or in contemplation of or in relation to any such matter (as to Count Two) and with the intent (2) to impair the record, document, or tangible object's integrity or availability for use in an official proceeding (as to Count Three). In other words, in order to convict GIAMPIETRO of Counts Two and Three, the jury must conclude that she destroyed or attempted to destroy records, documents, and/or a cell phone with the requisite intent. But the jury does not need to conclude unanimously *which* records or documents she destroyed or attempted to destroy in order to find her guilty of obstruction.

10

An example is instructive here. Suppose that the jurors in this case are presented with two instances of GIAMPIETRO's use of a self-destruct timer to delete Telegram conversations, each on a different date. Suppose further that six jurors conclude that GIAMPIETRO's use of a self-destruct timer to delete Telegram conversation #1 was intended to obstruct justice, but that GIAMPIETRO's use of a self-destruct timer to delete Telegram conversation #2 was not intended to obstruct justice. And suppose that the remaining six jurors conclude the opposite, namely, that GIAMPIETRO's use of a self-destruct timer to delete Telegram conversation #1 was not intended to obstruct justice, but that GIAMPIETRO's use of a self-destruct timer to delete Telegram conversation #2 was intended to obstruct justice. Under those circumstances, the jury would be permitted to return a guilty verdict—indeed, the jury *should* return a guilty verdict—because they would have concluded that the government satisfied the elements of the offense, albeit in different ways.

Lastly, GIAMPIETRO contends that "each decision [she] makes" regarding whether to delete or retain particular documents "must be weighed independently rather than as part of a continuing course of conduct." (Doc. 112 at 6.) GIAMPIETRO is again mistaken. GIAMPIETRO has cited no authority for the proposition that counts alleging a course of obstructive conduct, as here, require the jury to weigh each act underlying that course of conduct independently. The jury is of course free to do so, and indeed may elect, during deliberations, to assess specific deletions, or uses of self-destruct timers, or other acts of obstructive conduct in reaching its verdict. But the law does not require the Court to make unanimity findings as to every obstructive act underlying Counts Two and Three before accepting a guilty verdict. GIAMPIETRO's duplicitousness arguments as to Counts Two and Three must therefore fail.

Given that GIAMPIETRO's duplicitousness arguments lack merit, the "remedies" GIAMPIETRO urges this Court to adopt (*see* Doc. 112 at 7-9) are unnecessary and inappropriate. In other words, no remedies are necessary because GIAMPIETRO has identified no infirmity in Count Two or Three that requires remedying. The Court should therefore decline to dismiss Count Two or Three, as GIAMPIETRO proposes, particularly given that GIAMPIETRO acknowledges that dismissal "is considered [to be] a drastic remedy" which courts typically impose after "afford[ing] the government the opportunity to choose to proceed on one of the distinct crimes contained within the offense." (*See id*. at 7-8.)

The Court should also decline to require the government to provide a bill of particulars as to Count Two or Three, as GIAMPIETRO further suggests. That is because GIAMPIETRO is not entitled to a bill of particulars here. The purpose of an indictment is to inform the defendant of the nature of the charges against her in order to prepare a defense, minimize surprise at trial, and enable the defendant to plead double jeopardy in the event of a subsequent prosecution for the same offense. *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965). It is well settled that an indictment is sufficient if it charges an offense substantially in the language of the statute and contains all the essential elements. *Wong Tai v. United States*, 47 S. Ct. 300, 301-02 (1927).

It is further settled that a defendant possesses no right to a bill of particulars. *See* Fed. R. Crim. P. 7(f) ("The court *may* direct the government to file a bill of particulars.") (emphasis added); *see also Will v. United States*, 389 U.S. 90, 100-02 (1967); *United States v. Burgin*, 621 F.2d 1352, 1358-59 (5th Cir. 1980). A bill of particulars "is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993). A bill of particulars should also not be used to obligate the

12

government to expose its legal theory to the defendant. *United States v. Presser*, 844 F.2d 1275, 1286 (6th Cir. 1988) ("the Supreme Court has never held that the Constitution creates . . . a right [to know the tactical strengths and weaknesses of the government's case] and we do not believe that it exists"); *see also United States v. Lawson,* 688 F. Supp. 314, 315 (S.D. Ohio 1987) ("The purpose of a Bill of Particulars is not to enable a defendant to obtain detailed disclosure of the Government's evidence or theories prior to trial.") (referencing *United States v. Kilrain*, 566 F.2d 979 (5th Cir. 1978), *cert. denied* 439 U.S. 819 (1978)); *United States v. Jones*, 678 F. Supp. 1302, 1304 (S.D. Ohio 1988) (same); *cf.* Mem. Op. and Omnibus Order, *United States v. Darden*, *et al.*, M.D. Tenn. No. 3:17-cr-124, ECF No. 823, at 27-28 (Nov. 2, 2018) (Crenshaw, C.J.) (citing cases) ("Leaving aside the voluminous discovery that has been provided and likely answers many of the questions posed by [the defendant], a court is not required to grant a Bill of Particulars seeking the exact date, time, and location of overt acts.").

Because its function is similar to that of an indictment, a bill of particulars limits the government's proof at trial. *Haskins*, 345 F.2d at 114. Thus, when deciding whether to grant a motion for a bill of particulars,[3] a court must balance the defendant's need for the requested information against the potential detriment to the government, including the potential risk to the government's witnesses. *United States v. Rosa,* 891 F.2d 1063, 1066 (3d Cir. 1989). In making its decision, a court should consider the specificity of the indictment and what discovery has been made available to the defendant. *See United States v. Mahar*, 801 F.2d 1477, 1503 (6th Cir. 1986); *United States v. Paulino*, 935 F.2d 739, 750 (6th Cir. 1991), *superseded on other grounds by*

---

[3]      The decision to grant or deny a motion for a bill of particulars is within the sound discretion of the trial court and will be reviewed only for an abuse of discretion. *Wong Tai*, 27 U.S. at 302.

13

*statute*. When an indictment sufficiently apprises a defendant of the charges against her, a bill of particulars is not necessary. *Mahar*, 801 F.2d at 1503; *see also Salisbury*, 983 F.2d at 1375 ("a court does not abuse its discretion by denying a bill of particulars in light of a detailed indictment").

Here, a bill of particulars is not warranted because Counts Two and Three are sufficiently detailed to permit GIAMPIETRO to prepare for trial, and because they preclude a claim of double jeopardy. Counts Two and Three charge the offenses in those counts in substantially the same language as in the statutes applicable to each offense, and also contain all of the essential elements of these offenses. Counts Two and Three also describe the categories of records, documents, and/or tangible objects GIAMPIETRO is alleged to have destroyed or attempted to destroy. GIAMPIETRO is not entitled to a bill of particulars under such circumstances. That is especially so given the reams of discovery that the government has provided to GIAMPIETRO, and given counsel's obvious familiarity with the substance of that discovery, as evidenced by GIAMPIETRO's filings in this case. *See Paulino*, 935 F.2d at 750 ("[A] defendant is not entitled to a bill of particulars with respect to information which is available through other sources."); *United States v. Roberts*, No. 6:06-82-SS-DCR, 2006 WL 3533071, at *3 (E.D. Ky. 2006) ("The question is not whether further particularity would assist the defendant; more information is always useful . . . [but] whether the specific context presented requires further particularization in light of the limited reasons for Rule 7(f)."); *United States v. Lilley*, 2015 WL 4758982, at *3 (W.D. Tenn. Aug. 12, 1995) ("a bare statement that the need [for the information] exists is not enough"); *see also United States v. Musick*, 291 F. App'x 706, 724 (6th Cir. 2008). The Court should therefore reject GIAMPIETRO's request for a bill of particulars here.

14

**B.      Counts Two and Three are Not Multiplicitous**

GIAMPIETRO next contends that Counts Two and Three are multiplicitous. (Doc. 112 at 10.) She is mistaken. "'Multiplicity' is charging a single offense in more than one count in an indictment." *United States v. Myers*, 854 F.3d 341, 355 (6th Cir. 2017) (citation omitted). "To determine whether charges are multiplicitous, [the Sixth Circuit] generally analyze[s], under *Blockburger v. United States*, 284 U.S. 299 (1932), whether each charge requires proof of a fact that the other charge does not." *Id.*; *see also* Mem. Op. and Omnibus Order, *United States v. Frazier, et al.*, M.D. Tenn. No. 3:17-cr-130, ECF No. 998, at 26-27 (September 6, 2019) (Crenshaw, C.J.) (holding same). "[I]f each charge does, then the charges accuse different crimes and are therefore not multiplicitous." *Myers*, 854 F.3d at 355.

It is clear that, under *Blockburger*, Section 1519 and Section 1512(c)(1) charge different crimes. That is because each charge requires proof of a fact that the other charge does not. To prove a violation of Section 1519, as alleged in Count Two, the government must satisfy four elements. First, the government must show that the defendant altered, destroyed, mutilated, concealed, covered up, falsified, or made a false entry in, a record, document, or tangible object. Second, the government must show that the defendant carried out the destruction or concealment knowingly. Third, the government must show that the defendant acted with the intent to impede, obstruct, or influence the investigation or proper administration of any matter or in contemplation of or in relation to any such matter. Lastly, the government must show that the matter was within the jurisdiction of a department or agency of the United States. *United States v. Powell*, 680 F.3d 350, 355-56 (4th Cir. 2012); *United States v. Yielding*, 657 F.3d 688, 710 (8th Cir. 2011); Pattern

15

Crim. Jury Instr. 5th Cir. 2.65 (2015).[4]

To prove a violation of § 1512(c)(1), as alleged in Count Three, the government must satisfy three elements. First, the government must show that the defendant altered, destroyed, mutilated, or concealed any record, document, or tangible object, or attempted to do so. *United States v. Akiti*, 701 F.3d 883, 887-88 (8th Cir. 2012); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007); Pattern Crim. Jury Instr. 7th Cir. (2019). Second, the government must show that the defendant acted with intent to impair the record, document, or tangible object's integrity or availability for use in an official proceeding. *Akiti*, 701 F.3d at 887-88; *Matthews*, 505 F.3d at 705; Pattern Crim. Jury Instr. 7th Cir. (2019). With respect to this element, an "official proceeding" means a proceeding before a court, judge, or federal agency. The proceeding may be civil or criminal. The law does not require, however, that the federal proceeding be pending at the time of the defendant's actions, as long as the proceeding was foreseeable such that the defendant knew that her actions were likely to affect the proceeding. *See Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) (finding "nexus requirement" between defendant's conduct and official proceeding in § 1512(b)(2)(A) and (B) prosecution, including that the proceeding be foreseeable); *see also United States v. Carson*, 560 F.3d 566, 580-82 (6th Cir. 2009) (assuming

---

[4] There are also several elements that the government does *not* have to prove to sustain a conviction under § 1519. The government does not have to prove, for example, that a nexus existed between GIAMPIETRO's conduct and a federal investigation. *See*, *e.g.*, *Yielding*, 657 F.3d at 712 ("The requisite knowledge and intent [under Section 1519] can be present even if the accused lacks knowledge that he is likely to succeed in obstructing the matter."); *United States v. Gray*, 642 F.3d 371, 376-377 (2d Cir. 2011) ("[I]n enacting § 1519, Congress rejected any requirement that the government prove a link between a defendant's conduct and an imminent or pending official proceeding."). It is therefore of no legal moment whether, for example, GIAMPIETRO engaged in the conduct above with knowledge of or in an effort to thwart a specific federal investigation. Nor, furthermore, does the government have to prove that a defendant's obstructive conduct was material to a federal investigation. *See Powell*, 680 F.3d at 356. In other words, the government need not show that the obstructive conduct outlined above actually obstructed or impeded a particular investigation in order to sustain a conviction.

16

arguendo that a "nexus requirement" applies to § 1512(c)(2) prosecutions). Lastly, the government must show that the defendant acted "corruptly," meaning acting with an improper purpose and to engage in conduct knowingly and dishonestly and with the intent to obstruct, impede, or influence the due administration of justice. *Akiti*, 701 F.3d at 887-88; *Matthews*, 505 F.3d at 705; Pattern Crim. Jury Instr. 7th Cir. (2019).

As noted, each charge requires proof of a fact that the other charge does not. Section 1519, for example, requires proof that the matter that the defendant intended to obstruct was within the jurisdiction of the department or agency of the United States. Section 1512(c)(1) requires no such proof. Likewise, Section 1512(c)(1) requires proof that the defendant acted with intent to impair a record, document, or tangible object's integrity or availability for use in an official proceeding, meaning a proceeding before a court, judge, or federal agency. Section 1519 requires no such proof. Additionally, "[a] conviction under § 1512 can also be premised on conduct that 'obstructs, influences, or impedes any official proceeding, or attempts to do so,' even if no document was concealed, altered, or destroyed." *United States v. Stevens*, 771 F. Supp. 2d 556, 563 (D. Md. Mar. 23, 2011). "By contrast, conviction under § 1519 requires proof of document alteration, destruction, mutilation, concealment, falsification or the making of a false entry in a record, document[,] or tangible object." *Id.* Counts Two and Three therefore charge different crimes and are not multiplicitous.[5]

---

[5]     Additionally, and although the *Blockburger* analysis does not turn on the facts underlying each charge, Counts Two and Three are intended to capture different conduct. Count Two, as noted, is intended to capture efforts GIAMPIETRO undertook to destroy her "own" records and documents (*e.g.*, her Telegram chats), in order to obstruct investigations within the jurisdiction of a department or agency of the United States. Count Three, as noted, is intended to capture efforts GIAMPIETRO undertook in directing the UCE to destroy the UCE's records, documents, and tangible objects (e.g., the UCE's Telegram chats and the UCE's cell phone). An analysis of the evidence underlying each charge thus also makes plain that Counts Two and Three are not multiplicitous, as they are intended to capture different conduct.

Case 2:19-cr-00013   Document 122   Filed 06/18/20   Page 17 of 23 PageID #: 999

GIAMPIETRO seeks to undercut the *Blockburger* analysis in three ways. First, GIAMPIETRO contends that "[t]he fact that there are two different proceedings alleged to have been obstructed is not sufficient to satisfy the Blockburger test." (Doc. 112 at 11.) Second, GIAMPIETRO contends that Count Two's allegation that GIAMPIETRO destroyed "social media accounts, text messages, chat conversations, and other electronic communications" "is not sufficient . . . to satisfy the *Blockburger* test's requirement of proof of a different fact" when compared with Count Three's allegation that GIAMPIETRO destroyed or attempted to destroy "contact information, text messages, electronic communications, and a cell phone." (*Id.* at 13.) Lastly, GIAMPIETRO contends that Count Two's allegation of a completed crime is likewise "not sufficient . . . to satisfy the *Blockburger* test's requirement of proof of a different fact" when compared with Count Three's allegation that GIAMPIETRO attempted to destroy "contact information, text messages, electronic communications, and a cell phone." (*Id.*)

These complaints all lack merit. In support of her first argument, GIAMPIETRO cites *Yates v. United States*, 574 U.S. 528 (2015) for the proposition that "[v]irtually any act that would violate § 1512(c)(1) would no doubt violate § 1519 as well, for § 1519 applies to the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or contemplation of any such matter, not just to an official proceeding." (*See* Doc. 112 at 11-12 (internal quotation marks omitted)). But *Yates* does not stand for this proposition. Indeed, *Yates* specifically rejected the proposition GIAMPIETRO has attributed to it.

In *Yates*, the U.S. Supreme Court was called upon to determine whether the term "tangible object" in § 1519 applied to undersized red grouper that a commercial fisherman had caught in the

18

Gulf of Mexico, and then ordered to be tossed overboard so that the catch would be hidden from federal authorities. *Id.* at 531. In determining that a fish could not be considered a "tangible object" within the meaning of § 1519, the Court looked for guidance in what Congress meant by the term "tangible object" in § 1519 by analyzing the text of other obstruction statutes enacted close in time to § 1519. *Id.* at 540-42. Those statutes included § 1512(c)(1), which included a proscription on the destruction of "record[s], document[s], or *other object[s]*" (emphasis added).

The government argued that § 1512(c)(1)'s reference to "other object[s]" "included all physical objects," and that it therefore stood to reason that the term "tangible object" in § 1519 also encompassed all physical objects—including fish. *Id.* at 542. But the Court *rejected* that view, reasoning that if § 1519's reference to "tangible object" already included all physical objects, Congress would have no reason to enact § 1512(c)(1). *Id*. Thus, the Court observed, *if* the government's view were correct, "then Congress had no reason to enact § 1512(c)(1)," because "[v]irtually any act that would violate § 1512(c)(1) no doubt would violate § 1519 as well." GIAMPIETRO's first argument is therefore premised on language in *Yates* which GIAMPIETRO has taken out of context, and which, when placed *in* context, actually reinforces that § 1519 and § 1512(c)(1) proscribe different conduct and are therefore separate offenses under *Blockburger*.

GIAMPIETRO, in any event, has failed to cite any cases holding that § 1519 and § 1512(c)(1) are not different offenses under *Blockburger*. That is unsurprising, given that the case law directly addressing this question holds that § 1519 and § 1512(c)(1) are different offenses under *Blockburger. See Stevens*, 771 F. Supp. 2d at 563 ("Because 18 U.S.C. §§ 1512 and 1519 each require proof of an element that the other does not, Counts 1 and 2 of the indictment are not multiplicitous, and [the defendant's] motion shall be denied.")

19

Next, GIAMPIETRO misunderstands the *Blockburger* analysis in contrasting Count Two's allegations that she destroyed certain materials with Count Three's allegations that she destroyed other materials. The government does not satisfy *Blockburger* here because it has alleged the destruction of certain materials in Count Two and the destruction and attempted destruction of additional or different materials in Count Three. The government satisfies *Blockburger* because Count Two requires proof of an element that Count Three does not, and because Count Three requires proof of an element that Count Two does not, as outlined above. GIAMPIETRO's second argument misses thus mark as well.

GIAMPIETRO's final argument fares no better. As an initial matter, GIAMPIETRO concedes that, if the government proceeds solely under an attempt theory as to Count Three, Counts Two and Three do not present a multiplicity problem at all. (*See* Doc. 112 at 13 ("[T]he government could charge the defendant with separate attempts under § 1512(c)(1) regardless of whether she had been acquitted or convicted of the § 1519 charge . . ."); *see also id.* at 13-14 ("[S]hould the Court find that dismissal of Counts Two and Three is not warranted, the defendant respectfully requests that this Court direct the government to amend Count Three to exclusively charge an attempt to cure the multiplicity with Count Two.").) But GIAMPIETRO's further suggestion that the Court "cure" the multiplicity problem by amending Count Three to allege only an attempt overlooks that, as outlined above, there is at least one other way in which Counts Two and Three differ such that the *Blockburger* test is satisfied. The Court should therefore reject GIAMPIETRO's proposed cure, as it involves fixing a problem that does not exist.

The government, lastly, notes that GIAMPIETRO misapprehends the nature of multiplicitousness more generally, and, in doing so, conflates multiplicitousness with

20

duplicitousness, and also misstates the law. In arguing that Counts Two and Three are "duplicitous," GIAMPIETRO raises the specter that "the same facts used to convict [her] of Count Two could also be used to convict [her] of Count Three in violation of the Due Process and Double Jeopardy Clauses of the Fifth Amendment." (Doc. 112 at 2.) But it is undoubtedly the case that one set of facts can support a defendant's conviction of multiple crimes. A defendant's armed robbery of a federally insured bank, for example, could result in charges of, and convictions for, Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Likewise, a defendant found in possession of a firearm, who had a prior felony conviction, who also happened to be an unlawful alien, could be charged with, and convicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and being an alien in unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(5). GIAMPIETRO's concern here thus lacks a legal, or even a logical, basis.[6] *See*, *e.g.*, *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008) ("Using the same evidence to prove violations of two statutes does not violate *Blockburger*.").

---

[6] Furthermore, even if Counts Two and Three were multiplicitous "pretrial dismissal of one of those counts is not required. This is because '[t]he Supreme Court has instructed that the proper remedy for multiplicitous counts may include allowing the jury to consider all counts that are reasonably supported by the evidence and addressing any multiple-punishment issues at sentencing by merging overlapping convictions." Mem. Op. and Omnibus Order, *United States v. Frazier, et al.*, M.D. Tenn. No. 3:17-cr-130, ECF No. 998, at 27 (Sep. 6, 2019) (Crenshaw, C.J.).

21

## III. Conclusion

WHEREFORE, for the reasons above, the United States respectfully requests that the Court deny GIAMPIETRO's Motion to Dismiss Count Three as Duplicitous and/or Multiplicitous, or in the Alternative Amend Count Three (Doc. 112) without a hearing.

Respectfully submitted,

DONALD Q. COCHRAN
United States Attorney
Middle District of Tennessee


By:    *s/Ben Schrader*
BEN SCHRADER
Assistant U.S. Attorney
110th Avenue South, A96l
Nashville, Tennessee 37203
Phone: (615) 736-5151


By:    *s/Philip Wehby*
PHILIP WEHBY
Assistant U.S. Attorney
110th Avenue South, A96l
Nashville, Tennessee 37203
Phone: (615) 736-5151


By:    *s/Jennifer Levy*
JENNIFER LEVY
Trial Attorney
Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W., Suite 7600
Washington, D.C.   20530
Phone: (202) 514-1092


Dated:    June 18, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2020 I electronically served one copy of the government's opposition to the defendant's Motion to Dismiss Count Three as Duplicitous and/or Multiplicitous, or in the Alternative Amend Count Three (Doc. 112), which will send a Notice of Electronic Filing to counsel for defendant.

_s/Ben Schrader_

BEN SCHRADER
Assistant U.S. Attorney
110th Avenue South, A96l
Nashville, Tennessee 37203
Phone:   (615) 736-5151

23