IN THE UNITED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:19-cr-00013 |
| ) | |
| GEORGIANNA A.M. GIAMPIETRO ) | Chief Judge Waverly D. Crenshaw, Jr. |
|     Defendant. ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO COMPEL EXPERT DISCLOSURES**

The government argues that it was not required to provide a summary of their experts' testimony because the defendant did not make a specific request under Fed. R. Crim. P. 16 (a)(1)(G) and has waived her right to challenge admission. Alternatively, the government argues that its disclosures were sufficient under Rule 16(a)(1)(G) and satisfy the government's burden for admission.

**A. This Court's Scheduling Order and Rule 16 (a)(1)(G) Requirements**

In the absence of this Court's Scheduling Order, the defense would agree that the government was not required to make a Rule 16(a)(1)(G) disclosure. *See United States v. Suddarth*, No. 3:15-cr-00074, 2017 U.S. Dist. LEXIS 184382, at *3-4 (M.D. Tenn. Nov. 7, 2017) (holding that Rule 16(a)(1)(G) and the Local Rules do not mandate disclosure absent a request.) The defense however, respectfully submits that the Court's Scheduling Order required both parties to make expert disclosures pursuant to Rule 16 (a)(1)(G) and (b)(1)(C).

During the status conference of December 23, 2019, counsel discussed with the Court the potential for expert testimony. Both sides indicated they anticipated expert testimony and the

1

potential for a *Daubert* challenge. The Court then set May 15, 2020, as the required date for reciprocal expert disclosures, and set June 5, 2020, for subsequent *Daubert* motions to be filed. The government now argues that the Court's Order regarding witness disclosure was not inclusive of Rule 16 (a)(1)(G) and, in the absence of a specific request, the Court's Order did not obligate them to meet the full requirements.

This argument is, at best, gamesmanship on the part of the government.[1] Although the Court did not specifically reference Rule 16 (a)(1)(G), it was clear from the wording of the Order requiring "disclosures", and its intention to facilitate *Daubert* motions three weeks later, that the parties would reasonably understand the Order to include Rule 16 (a)(1)(G) and (b)(1)(C) disclosures.

This understanding is buttressed by the fact that the reciprocal obligation under Rule 16 (b)(1)(c) arises only when the government has complied with 16 (a)(1)(G). Thus, the Court's Order for the defense to provide a summary anticipates that the government will do the same. In fact, the government's filing on May 15, 2020, indicated that their production was "pursuant to the Court's Order…and Rule 16(a)(1)(G)". Doc. 101 at 1.

The defense likewise understood the Order as incorporating Rule 16 (a)(1)(G) and Rule (b)(1)(C) and made a full disclosure pursuant to Rule 16 (b)(1)(C) to the government on May 15, 2020. Doc. 111.1, Exhibit A.

---

[1] In the government's notice regarding expert witnesses, provided on May 15, 2020, the government stated, "The United States of America…hereby files notice of its intention to call…as expert witnesses at trial in this case, pursuant to the Court's Order of January 2, 2020 and Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure." Doc. 101 at 1.

**B. The Government's notice pertaining to Curriculum Vitae qualifications alone do not satisfy *Daubert* requirements, even for non-scientific testimony**

Alternatively, the government argues that the summaries are sufficient to satisfy Rule 16(a)(1)(G) because the government:

> "does not intend *to elicit opinions from its experts about the defendant's individual conduct or her intent in engaging in specific activities*. Rather the testimony of Mr. Hassan and Dr. Bloom is intended to provide background information to the jury concerning the history, nature, and structure of foreign terrorist organizations, such as HTS, its activities, modus operandi, terminology and recruitment efforts, how these organizations use certain Islamic doctrines and teachings to encourage support for their activities and the role that women play in supporting these organizations. The government also anticipates that these witnesses will make reference to specific items of evidence in this case to illustrate these points."

Doc. 121 at 7.

Identifying the general topics about which the expert will testify when the government does not intend to offer expert opinion regarding the defendant's conduct, however, is insufficient to meet the requirements of the disclosure obligations of Rule 16 (a)(1)(G). "The Rule requires a summary of the expected testimony, not a list of topics." *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001); *see also United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017).

Nor does the government's submission satisfy the government's burden for admission of expert testimony under Rule 702 at this point. Rule 702 "gives district courts a 'gatekeeping role' in screening the reliability of expert testimony," *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010). While a trial court has great leeway in determining whether to admit expert testimony, the gatekeeping function requires a "'sufficiently developed record'" to allow a determination of whether the trial court "'properly applied the relevant law.'" *Avitia-Guillen*, 680 F.3d at 1258 (quoting *United States v. Nichols*, 169 F.3d 1255, 1262 (10th Cir. 1999)).

To pass through the gate, the proponent of the testimony must show that expert evidence is admissible by a preponderance of proof. *Daubert*, 509 U.S. at 592 n.10. To satisfy this burden,

3

the government must show that, in addition to being qualified, the expert's testimony evidence is both relevant and reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008).

The most the government does here is show that the expert is qualified. What is missing is the methodology and the relevance of the testimony for either expert. Topic areas do not permit the Court to determine that the methodology underlying the experts' testimony is sufficiently reliable to warrant entry. As Judge Herrera explained in *United States v. McCluskey*, No. 10-2734 JCH, 2013 U.S. Dist. LEXIS 207061, (D.N.M. May 28, 2013), mere topics do not provide the court with what the expert has to say about the topic, what the expert relied upon in reaching his or her conclusions, why the testimony is reliable, or how it is relevant. *Id.* at 11.

Reliability and relevance are both at issue in Dr. Bloom's potential testimony concerning the role that women play in supporting these organizations. The defendant is a woman, but before admitting testimony about women generically, the Court must be satisfied that her testimony regarding how other women have behaved in terrorist organizations is sufficiently related to this case, that it is both relevant and reliable, and that it does not pose the risk of unfair prejudice.

Likewise, Mr. Hassan's topic areas concerning the history, nature, and structure of foreign terrorist organizations, such as Hayat Tahrir al-Sham (HTS), its activities, modus operandi, terminology and recruitment efforts, how these organizations use certain Islamic doctrines and teachings to encourage support for their activities, fails to explain how his testimony is relevant to the present case. The primary facts the government must prove with regards to HTS are that it was a designated terrorist organization when the defendant allegedly attempted to provide material support and that she knew that it was so designated or that it engaged in terrorist acts. Expert testimony on HTS to aid in establishing these facts, however, is not necessary or helpful. The defendant has admitted knowledge of HTS's designation during questioning by the FBI and will

4

stipulate that HTS was a designated terrorist organization at the time. Without a summary of testimony the Court cannot judge whether further expert testimony is relevant to establish a material fact, and whether the probative value outweighs the prejudicial effect.[2]

**C. Conclusion**

Following the continuance of this case until September 2021, undersigned counsel contacted the government and suggested that the parties should resolve the pending expert issues by re-setting the dates for expert disclosures and challenges. This proposal was in line with the defense's requested relief regarding expert disclosures to require disclosure and to re-set the *Daubert* challenges deadline, as opposed to seeking to strike the experts' testimony. The government, however, was unwilling to accept this proposal, instead taking the position that the defense had waived its opportunity to challenge the admission of the testimony of Mr. Hassan and Dr. Bloom. The defense nevertheless does not believe that seeking a similar drastic measure to bar the testimony of Mr. Hassan and Dr. Bloom, as the Court did in *McCluskey,* is appropriate. *McCluskey*, U.S. Dist. LEXIS 207061 at *22. Instead the defense requests that in light of the continuation, the Court set a new date for expert disclosures in 2021 and direct that the government provide summaries of the expert's testimony in accordance with Rule 16(a)(1)(G).

Respectfully submitted this 17th day of July, 2020.

By: /s/ <u>*Charles D. Swift*</u>
Charles D. Swift,
*Pro Hac Vice* Attorney for Giampietro
CLCMA
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
(972) 914-2507

---

[2] The defense respectfully submits that much of the evidence the government seeks to introduce at trial is not related to the defendant's actions which are punishable, but an effort to paint her as a dangerous person based on her political and religious beliefs.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of July, 2020, I electronically filed the foregoing Reply to the Government's Response to Defendant's Motion to Compel Expert Testimony Disclosure with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

By: /s/ *Charles Swift*
Charles D. Swift, Pro Hac
*Pro Hac Vice* Attorney for Giampietro
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081