**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:19-cr-00013** |
| | ) | |
| **GEORGIANNA A.M. GIAMPIETRO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

On December 18, 2019, a federal grand jury returned a Superseding Indictment (Doc. No. 77) against Georgianna A.M. Giampietro charging her with (1) attempting to provide material support and resources to a foreign terrorist organization, namely Hayat Tahrir al-Sham (Count One); (2) altering, destroying, mutilating, or concealing evidence relating to a federal investigation (Count Two); and (3) altering, destroying, mutilating, or concealing evidence in relation to a federal grand jury investigation (Count Three). Now before the Court is Giampietro's "Motion to Dismiss Count Three [sic] as Duplicitous and/or Multiplicitous, or in the Alternative to Dismiss Count Three" (Doc. No. 112), and her "Motion to Dismiss Counts [sic] Two as Void for Vagueness as Applied and Count Three for Absence of a Nexus" (Doc. No. 113). The Government has filed a response in opposition to both Motions (Doc. Nos. 122, 123), and Giampietro has replied (Doc. Nos. 133

### I. Background

Giampietro's Motions relate solely to the obstruction of justices charges. Count Two alleges a violation of 18 U.S.C. § 1519, which provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or

> any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

Giampietro is alleged to have violated that statute by engaging in the following conduct:

> Beginning in or about March 2018, and continuing until on or about October 23, 2018, in the Middle District of Tennessee, the defendant, GEORGIANNA A.M. GIAMPIETRO, did knowingly alter, destroy, mutilate, conceal, and cover up a record and document, including, but not limited to, social media accounts, text messages, chat conversations, and other electronic communications, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, that is, a possible violation of Title 18, United States Code, Section 2339B(a)(1), a matter within the jurisdiction of the Federal Bureau of Investigation, and in relation to and in contemplation of such matter.

(Doc. No. 77 at 2).

Count Three alleges a violation of 18 U.S.C. § 1512(c)(1), which states that "[w]hoever corruptly alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding . . . shall be fined under this title or imprisoned not more than 20 years, or both." In violation of this provision, Giampietro allegedly did the following:

> Between on or about September 23, 2018, and on or about October 23, 2018, in the Middle District of Tennessee, the defendant, GEORGIANNA A.M. GIAMPIETRO, knowingly and corruptly did alter, destroy, mutilate, and conceal a record and document, including but not limited to, contact information, text messages, electronic communications, and a cell phone, and corruptly did attempt to do so, with the intent to impair the record and document's integrity and availability for use in an official proceeding, namely, a grand jury investigation into a possible violation of Title 18, United States Code, Section 2339B(a)(1).

(Id. at 3).

## II. Motion to Dismiss as Duplicitous or to Amend (Doc. No. 112)

Although the title of this Motion suggests it is directed only at Count Three, in the body of the motion Giampietro requests "this Court to direct the government to dismiss Counts Two and

Three as duplicitous" because "they each charge multiple distinct allegations of obstruction over a broad spectrum of time." (Doc. No. 112 at 1, 4). She also claims that those Counts "are multiplicitous because, as charged, they permit conviction based on identical factual conduct." (Id. at 10). The Court is unpersuaded by either argument.

**A. Duplicitous Counts**

"An indictment is duplicitous if it sets forth separate and distinct crimes in one count." United States v. Davis, 306 F.3d 398, 415 (6th Cir. 2002). "The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both.'" United States v. Anderson, 605 F.3d 404, 414 (6th Cir. 2010) (citing United States v. Washington, 127 F.3d 510, 513 (6th Cir. 1997)).

Nevertheless, a duplicitous "charge is not prejudicial *per se*, because proper jury instructions can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense." United States v. Savoires, 430 F.3d 376, 380 (6th Cir. 2005). This has long been the law in the Sixth Circuit. See United States v. Eaton, 784 F.3d 298, 308 (6th Cir. 2015) (citation omitted) ("A special unanimity instruction is a means of clarifying a so-called 'duplicitous' charge, or one that 'sets forth separate and distinct crimes in one count.'"); United States v. Blandford, 33 F.3d 685, 699 (6th Cir. 1994) ("In light of this unanimity instruction, we reject Blandford's duplicity argument."); United States v. Robinson, 651 F.2d 1188, 1194 (6th Cir. 1981) ("[A] duplicitous or multiplicitous indictment is remediable by the court's instruction to the jury particularizing the distinct offense charged in each count in the indictment.").

Providing the jury with a unanimity instruction or a special verdict form is not the only possible remedy to duplicitous charges, however. Instead, "[a] defendant moving pursuant to Rule 12 can request that a duplicitous indictment be dismissed, . . . [s]he can attempt to force the government to elect the charge within the count upon which it will rely, or [s]he can ask the court to particularize the distinct offenses contained within a count." United States v. Kakos, 483 F.3d 441, 444 (6th Cir. 2007) (internal citation omitted); see also United States v. Sturdivant, 244 F.3d 71, 79 (2d Cir. 2001) (collecting cases for the proposition that "courts have held that prior to a defendant's conviction, prejudice to the defendant can be avoided by having the government elect to proceed based upon only one of the distinct crimes included within a duplicitous count").

In lieu of awaiting the jury charge, Giampietro requests that either Counts Two and Three be dismissed, or the Government be required to choose and set out in a Bill of Particulars the precise method she allegedly used to obstruct justice for both Counts Two and Three. In support, she argues:

> [T]hese charges are duplicitous because they charge multiple separate individual acts as a singular course of conduct rather than the individual crimes that they represent. While a single course of conduct may be charged in some circumstances under either statute, those circumstances are not present when the allegation relates to separate and distinct acts of destruction across a wide variety of platforms, rather than a singular act accomplished by multiple means. Utilizing a single course of conduct under these circumstances will not reveal whether the jury unanimously found the defendant guilty of any particular alleged criminal conduct, or guilty of one crime and not guilty of the others.
>
> Additionally, Counts Two and Three's courses of conduct are duplicitous with each other. The courses of conduct charged by Counts Two and Three overlap in both time and factual allegations, creating the potential that the same facts used to convict the defendant of Count Two could also be used to convict the defendant of Count Three in violation of the Due Process and Double Jeopardy Clauses of the Fifth Amendment.

(Doc. No. 112 at 2).

As already noted, duplicity occurs when two or more crimes are alleged in one count, but "[i]t is not duplicitous to allege in one count that multiple means have been used to commit a single offense." United States v. Damrah, 412 F.3d 618, 622 (6th Cir. 2005). That is precisely what is alleged in both Counts Two and Three. Count Two alleges that Giampietro used multiple means to obstruct an FBI investigation by altering or destroying social media accounts, text messages, chat conversations, and other electronic communications. Similarly, Count Three alleges that Giampietro used multiple means to obstruct a grand jury investigation by concealing, altering, or destroying contact information, text messages, electronic messages, and a cellphone. See United States v. Kamalu, 298 F. App'x 251, 254 (4th Cir. 2008) ("Where the indictment fairly interpreted alleges a continuing course of conduct, during a discrete period of time, the indictment is not prejudicially duplicitous."); United States v. Klat, 156 F.3d 1258, 1266 (D.C. Cir. 1998) ("[S]everal acts may be charged in a single count if the acts represent a single, continuing scheme that occurred within a short period of time and that involved the same defendant.") (internal quotation marks and citations omitted).

Giampietro tacitly concedes that her duplicitous argument is undercut by the Sixth Circuit's decision in United States v. Schmeltz, 667 F.3d 685 (6th Cir. 2011), and the Third Circuit's decision in United States v. Moyer, 674 F.3d 192, 204 (3d Cir. 2012). In Schmeltz, a deputy sheriff was charged with obstruction of justice by falsifying a report relating to an inmate's death when the deputy failed to record that the inmate was (1) assaulted; (2) placed in a "sleeper hold"; and (3) rendered unconscious as a result of the "sleeper hold." Defendant argued that the charge was duplicitous because it "'set[ ] forth separate and distinct crimes in one count' by basing the charge of falsifying a report on three separate omissions," and therefore, the trial court erred by instructing

the jury that it need only determine that "at least one way of violating the statute has been proved," and did not have to unanimously "agree that the same way has been proved." 667 F.3d at 687. Rejecting that argument, the Sixth Circuit observed that "'[a]lthough a jury must unanimously find that the government has proven each element of a crime, it need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element.'" Id. (quoting United States v. Comer, 436 F. App'x 490, 493 (6th Cir. 2011).

On this score, it is useful to consider, for example, robbery where force, or the threat of force is an element. "Some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force." Richardson v. United States, 526 U.S. 813, 817 (1999).

The same is true here. The Government must prove each of the essential elements for a violation of 18 U.S.C. § 1519 (Count Two), and each of the essential elements for a violation of 18 U.S.C. § 1512(c)(1) (Count Three). This includes that Giampietro knowingly (Count Two) or corruptly (Count Three) altered, destroyed, mutilated or concealed a "record, document, or object," but it is not necessary that the jury unanimously decide whether she altered or destroyed social media accounts, text messages, or chat conversation, *etc.*, or some or all of those things.

Giampietro seeks to limit Schmeltz's holding by arguing that the "lynchpin for the Sixth Circuit's logic" is contained in the following passage:

> The "falsifies" clause of § 1519 was thus intended to punish the falsification of a document, rather than specific statements or omissions within a document. Accordingly, Schmeltz could violate § 1519 once—and no more than once—by falsifying his May 30th report with his omissions.

(Doc. No. 112 at 4, quoting Schmeltz, 667 F.3d at 688). Actually, an equally "logical linchpin" is the Sixth Circuit's statement in the preceding paragraph that "[e]ach of the listed verbs [alters, destroys, mutilates, conceals, covers up, *etc*.] acts upon the entire 'record, document, or tangible object," and its corollary observation that "'[t]he intent of [§ 1519] is simple; people should not be destroying, altering, or falsifying documents to obstruct any government function.'" Schmeltz, 667 F.3d at 688 (quoting United States v. Damrah, 412 F.3d 618, 622 (6th Cir. 2005). After all, "'[i]n determining whether there is duplicity or multiplicity [in an indictment] the decisive criteria are legislative intent and separate proof.'" Damrah, 412 F.3d at 622 (quoting United States v. Duncan, 850 F.2d 1104, 1108 n.4 (6th Cir. 1988)).

Whatever the "linchpin" for the holding in Schmeltz, the Third Circuit in Moyer relied on the same passage quoted by Giampietro when it rejected defendant's argument that a count was duplicitous "because it alleged multiple false statements in multiple police reports [spanning eight months] in a single count." Moyer, 674 F.3d at 204. In so doing, the Third Circuit observed:

> Section 1519 does not explain in *ipsis verbis* whether each falsified document must be charged separately. The statute criminalizes the falsifying of "any record." The word "any" is defined as "[a]n indeterminate derivative of one ... in which the idea of unity ... is subordinated to that of indifference as to the particular one or ones that may be selected." OXFORD ENGLISH DICTIONARY (3d ed. 2009) (online version Dec. 2011). Courts have consistently rejected duplicity arguments when the statute employs "any" as a signifier regarding the "allowable unit of prosecution." . . .
>
> Interpretation of the word "record" permits this reading as well. "Record" is defined as "anything preserving information and constituting a piece of evidence about past events." Oxford English Dictionary (3d ed. 2009) (online version Dec. 2011).

United States v. Moyer, 674 F.3d 192, 204–05 (3d Cir. 2012) (internal case citations omitted).[1]

[1] Given the rationale provided in both Schmeltz and Moyer, the Court is unpersuaded by United States v. D-2 Chavonne Simmons, No. CRIM. 13-20184, 2013 WL 5933679, at *4 (E.D. Mich. Nov. 4, 2013), an unpublished district court opinion relied upon by Giampietro her reply brief.

In an effort to distinguish the holdings in Schmeltz and Moyer that separate acts of obstruction can be charged in one count, Giampietro argues that "[t]he destruction of records of electronic communications" as alleged here, "as opposed to the creation of a false record" as alleged in both Schmeltz and Moyer, "is a distinction with a difference." (Doc. No. 112 at 5). This is because, according to Giampietro, "[e]ach of the acts in destroying electronic records or communications reflect 'distinct conceptual groupings," a concept "first articulated by Judge Wisdom in United States v. Gipson, 553 F.2d 453, 456-59 (5th Cir. 1997) [that] has been adopted by the Sixth Circuit in United States v. Duncan, 850 F.2d 1104 (6th Cir. 1988)." (Id.).

In Gipson, defendant was convicted of violating 18 U.S.C. § 2313, which prohibits the sale or receipt of stolen motor vehicles. Addressing defendant's argument that there was no way to tell which of the six different acts set forth in the statute that the jury found defendant to have committed, Judge Wisdom observed:

> These six acts fall into two distinct conceptual groupings; the first consisting of receiving, concealing, and storing, and the second comprised of bartering, selling, and disposing. Within each grouping, the acts are sufficiently analogous to permit a jury finding of the *actus reus* element of the offense to be deemed "unanimous" despite differences among the jurors as to which of the intragroup acts the defendant committed. . . .
>
> On the other hand, the two conceptual groupings are sufficiently different so that a jury finding of the actus reus element of the offense would not be "unanimous" if some of the jurors thought the defendant committed only an act in the first conceptual grouping while others believed he committed an act only in the second. Differentiating the course of conduct prohibited by the first grouping from that proscribed by the second presents neither the conceptualization nor the characterization problems posed by distinguishing the acts within each grouping.

Gipson, 553 F.2d at 458 (citations omitted). Relying on Gipson, the Sixth Circuit in Duncan utilized "conceptual grouping" in deciding the jury had to unanimously agree in a false statement tax case whether the false statement was the one involving an interest deduction, or the one involving income

characterization.

As interesting as the approach is as a theoretical matter, "the notion of 'distinct conceptual groupings' is simply too conclusory to serve as a real test." Schad v. Arizona, 501 U.S. 624, 635 1991). The Supreme Court explained:

> We are not persuaded that the Gipson approach really answers the question, however. Although the classification of alternatives into "distinct conceptual groupings" is a way to express a judgment about the limits of permissible alternatives, the notion is too indeterminate to provide concrete guidance to courts faced with verdict specificity questions. This is so because conceptual groupings may be identified at various levels of generality, and we have no *a priori* standard to determine what level of generality is appropriate. Indeed, as one judge has noted, even on the facts of Gipson itself, "[o]ther conceptual groupings of the six acts are possible. [One might] put all six acts into one conceptual group, namely trafficking in stolen vehicles."

Id. (internal citations omitted). The Supreme Court also called into question cases that followed Gibson's logic, including, specifically, the Sixth Circuit's decision in Duncan. Id.

This Court, too, will not endeavor to decipher the possible variants required for "distinct conceptual groupings." See United States v. Verbitskaya, 406 F.3d 1324, 1334 (11th Cir. 2005) (refusing to follow Gipson because it was "discredited" by the Supreme Court in Schad.) It suffices that the jury unanimously agree on the ultimate issue: whether Giampietro knowingly altered, destroyed, mutilated, concealed or covered up a record, document or object with the intent to hinder or impede a federal investigation.

**B. Multiplicity Between Counts**

"'Multiplicity' is charging a single offense in more than one count in an indictment." United States v. Swafford, 512 F.3d 833, 844 (6th Cir. 2008) (citation omitted). "Multiplicity may result in a defendant being punished twice for the same crime, United States v. Brandon, 17 F.3d 409 (1st

Cir. 1994), or may unfairly suggest that more than one crime has been committed. United States v. Dixon, 921 F.2d 194 (8th Cir.1990)." Id. In determining whether counts are multiplicitous, courts generally utilize the test formulated in Blockburger v. United States, 284 U.S. 299 (1932). See United States v. Myers, 854 F.3d 341, 355 (6th Cir. 2017); Swafford, 512 F.3d at 844.

Blockburger states that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. This is also known as "the same elements test," United States v. Farah, 766 F.3d 599, 606 (6th Cir. 2014), because "the Blockburger test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." Illinois v. Vitale, 447 U.S. 410, 416 (1980).

Here, Giampietro asserts that the Counts Two and Three are multiplicitous and contends that the factual allegations as between the two counts differ in only three respects:

> (a) Count Two alleges obstruction of an FBI investigation, whereas Count Three alleges obstruction of a federal grand jury;
>
> (b) Count Two alleges the destruction of social media accounts, text messages, chat conversations and other electronic communications, whereas Count Three alleges the destruction of contact information, text messages, electronic communications and a cell phone; and
>
> (c) Count Three, in addition to alleging the destruction of messages, electronic communications and a cell phone, alternatively alleges the attempted destruction of the same.

(Doc. No. 112 at 11). This, in turn, Giampietro insists makes the Counts multiplicitous for several reasons, none of which the Court finds persuasive.

Giampietro first argues that "the fact that there were two different proceedings alleged to

have been obstructed is not sufficient to satisfy the Blockburger test." (Id.). She then cites the Supreme Court's statement in Yates v. United States, 574 U.S. 528 (2015) that there is a "significant overlap" between Sections 1512(c)(1) and 1519.

Giampietro's reliance on Yates is entirely misplaced. While the Supreme Court observed that "[v]irtually any act that would violate § 1512(c)(1) no doubt would violate § 1519 as well," id. at 544, it did not hold that those statutes do not constitute separate crimes. Rather, the issue there was whether throwing a grouper back into the ocean before it could be measured constituted the concealment, cover up or destruction of a "tangible object" as that term is used in § 1519. Far from suggesting that Sections 1512 and 1519 were effectively the same crime, the Court pointed out that the Government's interpretation of "tangible object" – "all objects in the physical world" versus "only objects one can use to record or preserve information" – would "render superfluous an entire provision [Section 1512(c)(1)] passed in proximity as part of the same Act." Id. at 543. What Yates really stands for is that "Congress intended 'tangible object' in § 1519 to have a narrower scope than 'other object' in § 1512(c)(1)." Id. at 543-44.

Next, Giampietro argues (to the extent the Court understands it) that the addition of the destruction of a cellphone and contact information in Count Three does not make the allegations materially different than what was alleged to have been destroyed or altered in Count Two. She also argues that Section 1512(c)(1) has a provision for attempt, whereas Section 1519 does not, but she never explains how this makes the counts multiplicitous. In any event, Blockburger merely requires that there be different elements between the counts.

For purposes of Count Two and Section 1519, the Government must prove that Giampietro (1) committed one of the enumerated acts in the statute, such as destroying, altering, or concealing

a document; (2) that he or she did so knowingly and with the intent to impede, obstruct, or influence an investigation; and (3) the matter was withing the jurisdiction of a department or agency of the United States. See United States v. Katakis, 800 F.3d 1017, 1023 (9th Cir. 2015); United States v. Powell, 680 F.3d 350, 356 (4th Cir. 2012); United States v. Yielding, 657 F.3d 688, 706 (8th Cir. 2011). To secure a conviction for a violation of 18 U.S.C. § 1512(c)(1), the Government must show Giampietro (1) corruptly altered or destroyed a document or object; (2) that she did so knowingly; and (3) she did so with the intent to impair that document or object's use in an official proceeding or investigation. United States v. Sterling, 860 F.3d 233, 245–46 (4th Cir. 2017).

Clearly there are numerous differences between the statutes: (1) a "conviction under Section 1519 requires proof that the defendant actually altered, destroyed, mutilated, concealed, covered up, falsified, or made false entry in a record, document, or object [whereas] a defendant can be convicted under § 1512 if she merely attempted to alter, destroy, mutilate, or conceal a record, document or other object. 18 U.S.C. § 1512(c)(1)"; (2) "[a] conviction under § 1512 can also be premised on conduct that 'obstructs, influences, or impedes any official proceeding, or attempts to do so,' even if no document was concealed, altered or destroyed [but] a conviction under § 1519 requires proof of document alteration, destruction, mutilation, or concealment"; and (3) "[a] conviction under § 1512 requires proof that there was a pending or foreseeable official federal proceeding, while conviction under § 1519 requires no proof that offense conduct was done with intent to impair an object's integrity or availability for use in an official proceeding." United States v. Stevens, 771 F. Supp. 2d 556, 563 (D. Md. 2011).

Finally, insofar as Giampietro's complaint is that the some or all of the same evidence will be used to support a conviction under both Counts Two and Three, this does not make the charges

multiplicitous. See Swafford, 512 F.3d at 844. As the Government correctly notes:

> A defendant's armed robbery of a federally insured bank, for example, could result in charges of, and convictions for, Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and possession of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Likewise, a defendant found in possession of a firearm, who had a prior felony conviction, who also happened to be an unlawful alien, could be charged with, and convicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and being an alien in unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(5).

(Doc. No. 122 at 21).

Neither Count Two nor Three will be dismissed on multiplicity grounds, nor will the Government be required to amend Count Three to alledge an "attempt" as requested by Giampietro.

## III. Motion to Dismiss Count Two as Void for Vagueness and Count Three for Absence of a Nexus

In this Motion, Giampietro argues that Count Two should be dismissed because "extending §1519 under the circumstances here to include the use of the secret chat feature is unconstitutional as applied because it infringes upon rights protected by the First Amendment, includes conduct within §1519 that an ordinary person would not have understood to be criminal, and encourages arbitrary and discriminatory enforcement of §1519." (Doc. No. 113 at 4). She also argues that Count Three should be dismissed because the Government "cannot establish criminal intent under § 1512(c)(1) as a matter of law." (Id.). Giampietro's arguments fail for a number of reasons, not the least of which is that they are premature.

The prematurity of Giampietro's Motion is best exemplified by the "Factual Background" she sets forth in her Memorandum of Law. (Id. at 2). There she asserts that "[d]uring the charged period for Count Two," she "maintained a Telegram account under the screennames [sic] of 'Ameera,' "Umm Roses,' and ' La Shay Huma." (Id.). She describes the different types of chats that

can occur using the Telegram application, including a "secret chat" feature, and claims to have "informed the undercover about the Telegram application." Thereafter she and the undercover F.B.I. employee communicated at least six times by "secret chat." (Id.).

At some point according to her recitation of events, Giampietro "and other members of a Telegram chat group expressed the belief that unknown individuals might be informants," but none of them "expressed a belief that they were currently under investigation." (Id. at 3). It was not until October 4, 2018, that Giampietro "thought the undercover was going to get her arrested," and so she "blocked" the alleged informant and "unfollowed her own Telegram channel" in order that she not be contacted again. (Id.).

Some or all of Giampietro's "facts" may be true, but none of them come from the Indictment or Superseding Indictment. Instead, she references a detention memorandum the Government filed under seal, quotes the Telegram website, and relies on a summary of the "secret chat history," whose compiler is never identified. Moreover, Giampietro herself concedes "that a finding of whether she acted in contemplation of an FBI investigation cannot be made until the government has been afforded the opportunity to present its case-in-chief." (Doc. No. 113 at 10 n.8). This is hardly the type of situation presented in United States v. Jones, 542 F.2d 661, 665 (6th Cir. 1976), on which Giampietro relies. There, resolution of the legal question of whether 28 U.S.C. § 2511(1)(a) was intended to apply to interspousal wiretaps was capable of pretrial decision because "the facts surrounding the alleged offense were virtually undisputed and trial of the substantive charges would not substantially assist the court in deciding the legal issue raised by the motion to dismiss the indictment." Id.

Furthermore, the record suggests – and the Government has represented – that Giampietro

used "a number of different methods" besides Telegram to obstruct a federal investigation, including "Instagram, a self-destruct timer on exchanges with others online, and cryptic abbreviations." (Doc. No. 123 at 2 n.2). That evidence, likewise, is neither undisputed nor before the Court, but it underscores the prematurity of Giampietro's motion. The Court can hardly dismiss Count Two on the ground that Section 1519 is unconstitutional as it relates to Giampietro's Telegram activity because other methods allegedly used by Giampietro also violated that statute.

Prematurity aside, Giampietro's constitutional challenge to Count Two fails. The Sixth Circuit has made clear that "Section 1519 clearly sets out the elements that the government must prove for a conviction under the statute," and is therefore constitutional on its face. United States v. Kernell, 667 F.3d 746, 756 (6th Cir. 2012). Apparently recognizing as much, Giampietro claims that Section 1519 is void for vagueness as applied to her and her actions.

Giampietro's "as applied" argument, however, is premised on her allegedly being unaware of a federal investigation, something which the Government vigorously disputes. Regardless, the statute applies not only to situations where a defendant acts "in relation to" an ongoing investigation, but also where a defendant does a prohibited act "in contemplation of" an investigation. 18 U.S.C. § 1915. Indeed, "[c]ourts considering the question have consistently held that the belief that a federal investigation directed at the defendant's conduct might begin at some point in the future satisfies the 'in contemplation' prong." Kernell, 667 F.3d at 755. As a consequence, " criminal liability [under Section 1915] is very broad," United States v. Moyer, 674 F.3d 192, 212 (3rd Cir. 2102) and it "does not [even] require the existence or likelihood of a federal investigation," United States v. Gray, 642 F.3d 371, 379 (2nd Cir. 2011). Clearly, the Court is not in a position to conclude as a matter of law or fact that Giampietro acted (or failed to act) "in relation to" or "in contemplation

of" a federal investigation. Accordingly, her "as applied" challenge to Section 1519 on this basis fails.

Next, Giampietro argues that Section 1519 is unconstitutional as applied because a reasonable person would not understand that how she used the Telegram app could lead to criminal liability. After all, if Jennifer Sista Granicka, the Surveillance and Cybersecurity Counsel for the American Civil Liberties Union, "does not know" and "it would come as a surprise" to her, "then it is hard to understand how an ordinary person, such as Ms. Giampietro would know that the use of the secret chat feature would violate the text of § 1519." (Doc. No. 113 at 13).

This Court does not know Granick's view of the constitutionality of Section 1519, nor, respectfully, does it really matter. All Giampietro has done is quote a passage from an opinion piece Granick wrote about the ongoing saga between the Department of Justice and Apple over the encryption of cellphones, in which Granick observed that "there is no law in the U.S. requiring individuals to ensure our private communications are available to law enforcement." (Id.)[2] True enough, but there is a law – 18 U.S.C. § 1519 – that prohibits knowingly altering, destroying or concealing a record, document, or object in an effort to obstruct a federal investigation. Certainly, "reasonable persons would know that their conduct is at risk," United States v. Parrish, 942 F.3d 289, 295 (6th Cir. 2019), when they activate a feature with the intent to hide or destroy material relating to their alleged effort to provide material support or resources to a foreign terrorist organization.

Giampietro also argues that "[e]xtension of § 1519 to secret chats under the circumstances present here, will lead to arbitrary and discriminatory prosecution," and that "the very broad

[2]Citing, www. aclu.org/news/privacy-technology/in-latest-encryption-battle-with-apple-doj.

liability" created by the statute "will unquestionably lead to its future use to punish others who similarly seek to hide their political disagreements and religious beliefs from government scrutiny[.]" (Doc. No. 113 at 13). As an initial matter, this argument fails because it is underdeveloped. The Sixth Circuit has repeatedly observed, "'[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.'" United States v. Fowler, 819 F.3d 298, 309 (6th Cir. 2016) (quoting El–Moussa v. Holder, 569 F.3d 250, 257 (6th Cir. 2009) (alteration in original). Furthermore, Giampietro neglects to consider that "§ 1519 regulates conduct, not speech, and "[t]he conduct it regulates – destruction of documents with the intent to obstruct a federal investigation – is not expressive." United States v. Fumo, 628 F. Supp. 2d 573, 600 (E.D. Pa. 2007). In other words, "Section 1519 criminalizes the destruction, alteration, or falsification of records related to federal investigations and has no bearing on First Amendment freedoms." United States v. Brown, No. 14 CR 674, 2015 WL 6152224, at *3 (N.D. Ill. Oct. 19, 2015); see also, Moyer, 674 F.3d at 601 ("The plain language of 18 U.S.C. § 1519 criminalizes a defendant's efforts to obstruct 'the investigation or proper administration of any matter' within the jurisdiction of the FBI, 'or in relation to or contemplation of any such matter.'").

Lastly with respect to Count Two, Giampietro argues in her reply brief that the Court should follow United States v. Elshinawy, No. CR ELH-16-009, 2018 WL 1521876 (D. Md. Mar. 28, 2018), which, according to her, determined "that the use of the secret chat feature in Telegram . . . to mask [the defendant's] only accounts during the planning and attempted commission of material support of ISIS, did not constitute obstruction" under the United States Sentencing Guidelines.

(Doc. No. 134 at 3). However, this is not even remotely what Elshinawy held, nor was the decision "[b]ased on similar facts," as Giampietro claims. (Id.).

In Elshinawy, the Presentence Report assessed two points for obstruction of justice under U.S.S.G. § 3C1.1. Those two point were not contemplated by the plea agreement, and the Government took "no position with respect to the application of the adjustment" at the time of sentencing. Id. It was on this record that the court "declined" to impose a two level enhancement, stating that (1) "the conduct at issue is largely embodied in Count Four [making false statements to the FBI]; and (2) "the enhancement, even if applied, would not affect the advisory Guidelines Range." 2018 WL 1521876, at *27.

Even read broadly, Elshinawy does not support Giampietro's position that the Government "is most likely to try to use § 1519 provisions to target individuals it perceives to be a threat to the government, as opposed to targeting ordinary criminal conduct," or that "Count Two fails as void for vagueness as-applied." (Doc. No. 134 at 3, 2). In fact, the defendant in Elshinawy was not even charged with violating 18 U.S.C. § 1519, and, if the Court is reading the lengthy opinion in Elishinawy correctly, that statute is not even mentioned in the decision.

As for Count Three, Giampietro's only argument is that the Government cannot establish the criminal intent required by 18 U.S.C. § 1512(c)(1) because it cannot show a nexus between her conduct and the grand jury investigation. Giampietro's knowledge, or the lack thereof, obviously presents a jury question. United States v. Meza, No. 15CR3175 JM, 2017 WL 1371102, at *4 (S.D. Cal. Apr. 7, 2017) ("While the Government must ultimately establish . . . nexus . . . whether an official proceeding was 'foreseeable,' 'in contemplation,' or 'foreseen' is a question of fact for the jury, not the court in a pretrial motion."); United States v. Moyer, 726 F. Supp. 2d 498, 507 (M.D.

Pa. 2010) (noting that a Section 1512(b)(2) prosecution "do[es] not mandate a nexus allegation in a criminal indictment; it is a factual determination appropriately left to the jury); United States v. Ring, 628 F. Supp.2d 195, 223–24 (D.D.C.2009) (holding that the nexus requirement of § 1512(c)(2) is a jury question and need not be alleged in the indictment).

The prematurity of Giampietro's nexus argument is evident from her heavy reliance on United States v. Dunn, 434 F. Supp.2d 1203 (M.D. Ala. 2006). There the court observed that "a person must at least have an inkling that he is the target of an investigation. Without such knowledge, that person only knows that he committed a crime and the federal government may or may not detect it. He knows only that a prosecution 'may or may not happen[.]'" Id. at 1210. Tellingly, those observations were made in the context of a sentencing enhancement under U.S.S.G. § 2K2.1(b)(5) after the case had been decided by a jury, meaning that the judge was in a position to decide what defendant knew or reasonably should have known. While Giampietro insists that the Government cannot show that "she likely knew that she was the target of an investigation," (Doc. No. 113 at 16), the evidentiary basis (or lack thereof) is not before the Court at this time.

Finally, in relation to both Counts Two and Three, the Court ends where Giampietro began. At the start of her supporting memorandum, Giampietro attempts to analogize her use of Telegram's "secret chat" feature when making "statements concerning the war in Syria and her religious obligations and plans" (id. at 4) to the situation presented in Rankin v. McPherson, 483 U.S. 378 (1987). The two hardly equate.

In Rankin, the issue was "whether a clerical employee in a county constable's office was properly discharged for remarking, after hearing of an attempt on the life of the President, '[i]f they go for him again, I hope they get him.'" Id. In ruling in favor of McPherson on her claim under 42

U.S.C. § 1983, the Supreme Court noted that "[i]t is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Id. at 379-80. Because (1) it was undisputed that McPherson was fired based on the content of her speech; (2) she was a public employee speaking on a matter of public concern; (3) there was "no evidence that [her speech] interfered with the efficient functioning of the office"; (4) the "speech took place in an area to which there was ordinarily no public access" and "her remark was evidently made in a private conversation with another employee"; and (5) her "statement did not amount to a threat punishable under 18 U.S.C. § 871(a) or § 2385, or, indeed, that could properly be criminalized at all," id. at 385-390, McPherson's termination violated her constitutional right to freedom of expression. It simply does not follow, as Giampietro argues, that "had Ms. McPherson instead used the secret chat on Telegram to have the same conversation, she would not only have been fireable but [also] eligible for up to twenty years imprisonment for obstruction of justice." (Doc. No. 113 at 3).

## IV. Conclusion

Based upon the foregoing, Giampietro's "Motion to Dismiss Count Three [sic] as Duplicitous and/or Multiplicitous, or in the Alternative to Dismiss Count Three" (Doc. No. 112), and her "Motion to Dismiss Counts [sic] Two as Void for Vagueness as Applied and Count Three for Absence of a Nexus" (Doc. No. 113) will be denied.

An appropriate Order will enter.

WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE