# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:19-cr-00013 |
| GEORGIANNA A.M. GIAMPIETRO, | ) ) ) |
| Defendant. | ) |

## ORDER

The Scheduling Order governing this case (Doc. No. 89) provided that expert disclosures were to by made by May 15, 2020, and any Daubert motions were to be filed by June 5, 2020. In accordance with that Scheduling Order, the Government disclosed Dr. Mia M. Bloom and Hassan Hassan as its experts. Georgianna A.M. Giampietro disclosed Aymenn Jawad as her expert witness as it pertains to the charge in Count One that she attempted to provide material support to a designated foreign terrorist organization. No timely Daubert motions were filed, however. Instead, on the day those motions were due, Giampietro filed a "Motion to Compel Expert Testimony Disclosure (Doc. No. 111). The Government has filed a response in opposition to that motion (Doc. No. 121), viewing Giampietro's filing as an effort to circumvent the deadlines that had been imposed, and arguing that, in any event, its disclosures were sufficient. Because the Court agrees with the last argument, it need not weigh in on the first.

Rule 16 of the Federal Rules of Criminal Procedure provides in part that, upon a defendant's request, "the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its

case-in-chief at trial."[1]  Fed. R. Crim. P. 16(a)(1)(G).  That rule also provides that the "summary provided . . . must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  Id..

The Government complied with both this Court's Scheduling Order and Rule 16.  Giampietro concedes that the Government has adequately apprised her of the expert witnesses' qualifications. Her only quarrel is that the notice provided by the Government does not sufficiently describe the opinions and the basis for those opinion.  In doing so, she compares her expert witness's four-paragraph substantive disclosure with the one-paragraph substantive disclosure provided by both of the Government's experts.  That comparison is inapt because, while there may be a "battle of the experts," there is no "battle of the expert disclosures."

With respect to Dr. Bloom, the Government extensively described her educational background, employment, and writings in the field of terrorism, and then stated:

> The government intends to present Dr. Bloom as an expert witness at trial to discuss the role of women in terrorism, including the activities undertaken by female jihadists and female jihadi supporters. Dr. Bloom will help to explain the radicalization process, with a focus on the radicalization of women, the use of particular teachings or the teachings of particular clerics in the radicalization process, the role of on-line communications and certain social media platforms in the radicalization process and in the encouragement of terrorist support activities, the use of charities to fund terrorist activities, and the techniques used to travel undetected and internationally in support of jihadis. Dr. Bloom will also explain the genesis and meaning of the ideology reflected in the Islamic literature and teachings often used in radicalization efforts, as well as the meaning of terminology used in this context.

(Doc. No. 101 at 3).  Likewise, the Government sets forth Mr. Hassan's employment and education

---

[1] "Although the Rule itself imposes an obligation on the government only '[u]pon a defendant's request, this court's standing discovery rule, under L. Cr. R. 16.01(a)(2), automatically imposes a similar obligation on the government . . . without the requirement of a defense request." United States v. Suddarth, No. 3:15-CR-00074, 2017 WL 5152353, at *1 (M.D. Tenn. Nov. 7, 2017).

2

background, and stated:

> The government intends to present Mr. Hassan as an expert witness at trial to explain what the foreign terrorist organization Hayat Tahrir al-Sham is and to discuss its genesis, ideology, strategy, tactics, activities, and recruiting efforts. Mr. Hassan is also expected to testify about the relationship of Hayat Tahrir al-Sham to other extremist groups and foreign terrorist organizations operating in the region.

(Id. at 4).

The Government's disclosures may be less than fulsome, but they are sufficient. Rule 16(a)(1)(G) "is intended to minimize surprise that often results from unexpected expert testimony, [to] reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 advisory committee' note (1993 Amendment). As a consequence "Rule 16(a) does not instruct the government to provide detailed step-by-step information," United States v. Stockton, No. CR 13-571 MCA, 2015 WL 13662858, at *9 (D.N.M. June 1, 2015), and "federal courts have found that single sentences and paragraphs suffice to meet the requirements of Rule 16(a)(1)(G)." United States v. Asher, No. 1:09-CR-414-WSD, 2012 WL 13106304, at *23 (N.D. Ga. Oct. 17, 2012).

Here, the summaries of the expert testimony, coupled with the recitations of the expert witness's respective background is enough to fulfill the requirements of Rule 16(a)(1)(G). This is particularly true in this case since *pro hac vice* counsel made it a point at the start of this case to tell the Court about his extensive experience and expertise in handling terrorism cases.

Moreover, Giampietro's focus is misplaced. She complains because "[t]he government's summary of testimony . . . did not disclose any opinions held by either expert." (Doc. No. 111 at 2). She then argues that "[t]he lack of any disclosed opinion testimony necessarily prevents the defense from filing a Daubert motion [because the] focus of Daubert is not just the expert's

3

knowledge and experience, but also the reliability of their scientific methodology, neither of which can be examined here." (Id. at 2).

The Court does not understand the Government to be offering *opinion* testimony from either Dr. Bloom or Mr. Hassan. To the contrary, the Government has stated that it "does not intend to elicit opinions from its experts about the defendant's individual conduct or her intent in engaging in specific activities. Rather, the testimony of Mr. Hassan and Dr. Bloom is intended to provide background information to the jury concerning the history, nature, and structure of foreign terrorist organizations, such as HTS, its activities, modus operandi, terminology and recruitment efforts, how these organizations use certain Islamic doctrines and teachings to encourage support for their activities and the role that women play in supporting these organizations." (Doc. No. 121 at 7).

The Government's proffered use of Dr. Bloom and Mr. Hassan is consistent with Rule 702. The advisory committee notes explain:

> [I]t might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case. For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles. For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony 'fit' the facts of the case.

Fed. R. Crim. P. 16 advisory committee' note (2000 Amendment). Thus, "although an expert may be used to give an opinion on the specific facts of the case in which he or she is testifying, there is no requirement under Rule 702 (or Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)) that the expert's testimony actually address the specific facts of the case." United States v. Baker, No. 3:17-CR-59, 2019 WL 4738030, at *2 (S.D. Ohio Sept. 27, 2019). In fact, it is not

4

uncommon for experts to give generalized – but not opinion – expert testimony regarding terrorist organizations, including their history, structure, and activities. See e.g., United States v. Amawi, 695 F.3d 457, 478 (6th Cir. 2012) (in case alleging conspiracy to provide material support to terrorist, expert allowed to testify about how terrorists use the internet to disseminate videos, the difficulties in obtaining such videos, and how internet users could locate and access such materials); United States v. Farhane, 634 F.3d 127, 159 (2d Cir. 2011) (expert allowed to testify about al Qaeda's history and structure); United States v. Abdi, 498 F. Supp. 2d 1048, 1069 (S.D. Ohio 2007) (witness allowed to testify under Rule 702 as "an expert on world terrorism").[2]

Accordingly, Giampietro's "Motion to Compel Expert Testimony Disclosure (Doc. No. 111) is **DENIED.**

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Whether Dr. Bloom or Mr. Hassan are allowed to testify, and, if so, to what extent, is not an issue that is presently before the Court. This Order only addresses the sufficiency of the Government's Rule 16 notice.