**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:19-cr-00013** |
| | ) | |
| **GEORGIANNA A.M. GIAMPIERTRO,** | ) | **Chief Judge Waverly D. Crenshaw, Jr.** |
| **Defendant.** | ) | |
| | ) | |

**MOTION IN LIMINE REGARDING 404(b) EVIDENCE**
**AND SUPPLEMENTAL MEMORANDUM OF LAW**

Defendant Georgianna A.M. Giampietro, in accordance with this Court's Order dated January 15, 2021, respectfully submits this Motion in Limine[1] and Supplemental Memorandum of Law regarding the Rule 404(b) evidence of which the government has given notice ("Government's Notice"). *See* Doc. 102. Specifically, Defendant asks this Court to deny admission of the following three categories of evidence in the government's case-in-chief:[2]

1. **Category 1 - The Defendant's Social Media Posts and Messages Regarding Unrelated Terrorist Organizations, Terrorists, or Attacks**

   - Posts with supportive comments about "Jihadi John," an ISIS fighter who became notorious for beheading captured prisoners, and about the man responsible for the Pulse nightclub shooting in Orlando, Florida.

   - Posts in 2015 reflecting support at the time for ISIS, a notorious foreign terrorist organization, including supportive comments about "Jihadi John."

   - Posts in 2015 espousing support for terrorist attacks against the United States, including positive comments concerning Omar Mateen and his attack of the Pulse nightclub in Orlando, Florida.

2. **Category 2 - Social Media Photos or Statements Made by Terrorists or Unrelated Terrorist Organizations, or Espousing Support for Them**

   - Shared posts of radical Islamic teachings on a Telegram channel, including

---

[1] Defendant respectfully requests oral argument on this Motion in Limine.
[2] *See* Exhibit 1 – Table of Categories of Evidence.

posting Anwar Al-Awlaki's "44 Ways to Support Jihad."

- Photographs on cell phone of statements by Anwar al-Awlaki.

- Photographs on cell phone of images related to organizations espousing contributions to the cause of foreign fighters, including, for example, an image captioned, "He who Equips a FIGHTER in Allah's Cause Has taken part in the FIGHTING."

**3. Category 3 - Photos Depicting Battlefield Violence and Activity**

- Photographs on cell phone of foreign fighters accompanied by phrases urging persons to engage in violent jihad.

- Photographs on cell phone of dead bodies, including what appear to be photographs of victims of foreign fighters.

- Photographs on cell phone of what appear to be improvised explosive devices.

**4. Category 4 – Defendant's Uncharged Financial Transfers to Individuals in Turkey**

- Defendant's uncharged June 2018 Western Union transfers to a Muhammad Muhammad, Ahment Hayek, Omar Ali and others for $150, $250, and $500.

Defendant further requests that the Court provide a limiting instruction on the following category of evidence:

**5. Category 5 - Defendant's Prior Plans to Travel to Syria and Abu Abdullah**

- Defendant's prior discussions with Abu Abdullah about wanting to travel to Syria to join and marry him.

- Defendant's prior planning regarding potential travel to Syria, including research and other studies.

For the reasons set forth in the attached Supplemental Memorandum of Law, Defendant respectfully requests that this Court find that the evidence concerning each of the above topics is extrinsic to the charges in this case and inadmissible under Federal Rule of Evidence 404(b) and/or is more prejudicial than probative under Rule 403.

Respectfully submitted this 15th day of February, 2021.

By:  */s/ Charles Swift*

Charles D. Swift
CONSTITUTIONAL LAW CENTER
FOR MUSLIMS IN AMERICA
833 E. Arapaho Rd., Ste 102
Richardson, TX 75081
(972) 914-2507

*Pro Hac Vice Attorney for*
*Giampietro*

# SUPPLEMENTAL MEMORANDUM OF LAW

## I.    SUMMARY OF THE ARGUMENT

The Government's Notice includes the intent to offer evidence of Defendant's statements and social media posts between January 2015 and February 21, 2018, expressing approval of terrorist groups and acts, photographs from Defendant's cellphone depicting battlefield violence and combat activities, and statements Defendant shared that were made by Anwar Al-Awlaki[3] or otherwise expressed support for fighters. The government has given further notice of intent to offer evidence of Defendant's prior travel plans and her online relationship with a foreign fighter. Lastly, while the government has not given notice of its intention to introduce evidence of unrelated financial transfers to individuals in Turkey, it has indicated it views this evidence as intrinsic to the offense.

Contrary to the government's assertions, Defendant's statements approving violent opposition to the Assad regime, including approval of uncharged terrorist organizations and individuals, is not a prelude to the charged offense. The charged offense is that under 18 U.S.C. § 2339B, Defendant provided material support to Hay'at Tahrir al-Sham (HTS) in the form of personnel and services. To prove this offense, it is only necessary to show that: (1) Defendant knew HTS was a designated terrorist organization (something that is not in dispute), and (2) that the information she provided, during the charged period, to the undercover constituted an attempt to provide personnel or services to HTS. Defendant's lawful speech activities are not a prelude to the charged conduct because they relate to other organizations, do not represent her beliefs during the charged period, and are not preparatory to the charged conduct.[4] *See Holder v.*

_____

[3] Anwar Al-Awlaki is the American cleric who promoted violent resistance to the West as a religious duty and was killed in an airstrike in Yemen on September 30, 2011.

[4] With respect to the use of Telegram's secret chat feature and code words to avoid detection by other

*Humanitarian Law Project*, 561 U.S. 1, 16-17 (2010) (holding, in part, that independent advocacy on behalf of a terrorist organization is protected by the First Amendment, and is not criminal conduct precluded by § 2339B).

The purported probative value of Defendant's statements and interest in the Syrian conflict is to show that she was sympathetic to terrorists and terrorist organizations. Her prior general affinity for terrorists or terrorist organizations, however, is character evidence of the type generally precluded by Federal Rule of Evidence 404(a), and which does not fall within any of the exceptions created by Federal Rule of Evidence 404(b). Most of the 404(b) exceptions are precluded by the charge and facts of this case. Defendant's motive and intent are irrelevant to the general offense crime of § 2339B, which merely requires knowledge. The acts are not sufficiently related as to show preparation for the charged offense. Absence of mistake is not applicable, and none of the statements or photographs demonstrates knowledge regarding travel to Syria. *See Huddleston v. United States*, 485 U.S. 681, 685 (1988).

Additionally, evidence demonstrating Defendant's general prior affinity for terrorist organizations and interest in the Syrian conflict is not necessary to rebut an entrapment defense or the defense that Defendant lacked the requisite intent to support HTS when she provided contact information to the undercover agent. Contrary to the government's prediction, the defense intends to offer neither an entrapment nor mistake of fact defense.

With regard to the government's evidence of Defendant's studies about the Syrian conflict, her online romance with a Syrian fighter, and her plans to travel to Syria, the defense does not oppose admission of this evidence to show Defendant's knowledge regarding travel to

---

persons, including members of law enforcement, such activity is First Amendment protected conduct in the furtherance of private speech and does not constitute illegal activity in and of itself. Defendant concedes, however, that to the extent this Court accepts the government's arguments to the contrary, her prior instruction to W-1 and W-2 would be admissible as to intent under Rule 404(b).

Syria, but requests an instruction pursuant to Rule 404(b) to limit the purposes for which this evidence may be used.

Finally, although absent from the Government's Notice, the defense anticipates that the government will seek to offer evidence regarding financial transfers made by Defendant to persons in Turkey. This evidence is not charged in the indictment and it is not intrinsic to the charged offense because it lacks a direct link to HTS. As a result, it is not admissible.

## II.   BACKGROUND

The Court must decide whether to admit or exclude Defendant's statements outside of the charged period, and the photographs from her cellphone, against the backdrop of the charged offenses. The government alleges that between February 22, 2018 and October 23, 2018, Defendant knowingly attempted to provide material support and resources, including personnel and services, to Hay'at Tahrir al-Sham (also known as HTS), a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1). *See* Doc. 77 at 1. HTS was designated as a foreign terrorist organization on May 17, 2018.

Based on the discovery provided and discussions with the government, the government alleges two potential theories of guilt for the charged offense: (1) Defendant attempted to provide personnel to HTS in the form of two undercover agents, UCE-2 and UCE-3; and (2) Defendant attempted to provide services in the form of expert advice to UCE-2 and UCE-3 for the purpose of traveling to Syria.

**UCE-2 and UCE-3's travel to Syria to join HTS**

Prior to the charged period, Defendant was introduced to UCE-2 online and met with UCE-2 at a coffee shop. During their discussions, UCE-2 represented to Defendant that her husband (UCE-3) was committed to jihad and desired to fight in Syria, and that it was her intent to travel with him to Syria. Defendant likewise told UCE-2 that she desired to travel to Syria to

marry a fighter named Abu Abdullah.

On February 22, 2018, UCE-2 again met face-to-face with Defendant in a hotel room in Cookeville. During that meeting, Defendant again expressed her wish to travel to Syria, where she explained that she intended to join her fiancé, whom she again identified as "Abu Abdullah." She explained that her fiancé supported numerous "rebel groups" in Syria, and that he was affiliated primarily with "JFS," an alias for Jabhat al-Nusrah.

Defendant explained further that she believed it to be every Muslim man's duty to wage "jihad," meaning the "struggle or fight against the enemies of Islam," and that it was the duty of their women to support them. She said that women could assist in that effort by, for example, fighting alongside their husbands, carrying bodies from the battlefield, and providing food and water to the fighters. Defendant also expressed her desire to cook and provide food for the "brothers" who were fighting jihad. And she explained that she hoped to die alongside her husband in Syria, in an airstrike, on a Friday during Ramadan while she and her husband were praying.

During this conversation, Defendant also told UCE-2 her thoughts on how to travel to Syria without drawing suspicion from law enforcement authorities. She told UCE-2 that she and Abdullah had discussed bringing Defendant's son to Syria, and that Defendant planned to tell her son's father in the United States that she was only taking her son on a trip to Italy. She then said, however, that according to Islamic teachings, she could not travel to Syria until she had repaid her student loan debt, which was substantial.

On August 13, 2018, Defendant told UCE-2 that she had received a religious opinion (fatwa) online from a Saudi sheikh that she was required to pay off all of her debts before traveling to Syria.

On August 24, 2018, Abdullah broke up with Defendant after becoming angry with

Defendant's online communications with other individuals. There are no further communications between Defendant and Abdullah after this date.

In an online conversation on September 23, 2018, UCE-2 informed Defendant that her husband (UCE-3) had sworn *bayat* (an oath of loyalty) to HTS and was planning to travel to Syria via London to join HTS. Defendant replied that HTS was not good, and that "[t]here are no known groups right now. And there's Hadith about that also. When this situation approaches . . . that when there's no known group then stay in your home." UCE-2 said that because she intended to go to Syria with her husband, they were required to pick a group to join. Defendant told UCE-2 that this was not true because the borders were open. And Defendant counseled UCE-2 to be careful because she was worried for her safety.

Between September 23, 2018, and October 2, 2018, UCE-2 shared details of her plans to travel to Syria with Defendant and asked Defendant for guidance. Defendant maintained her reservations but gave the following advice:

- UCE-2 and UCE-3 should not take their phones with them and should acquire new phones and new phone numbers before they traveled.

- UCE-2 and UCE-3 should cut ties with other persons before leaving, explaining that "[w]hen I was planning my plan was to delete everyone 6 to 8 months before leaving and have no contact with anyone. Bc [because] one wrong move."

- UCE-2 and UCE-3 should purchase roundtrip airline tickets, rather than one-way tickets, and that they should consider traveling to Turkey (prior to entering Syria) by traveling first to Italy, and then from Italy to Turkey.

- Defendant also advised that she had spoken with one of her contacts, "Individual A," who claimed that there was presently no jihad in Syria, and asked UCE-2, "Have you thought about Afghanistan? They're still fighting there."

On October 2, 2018, UCE-2 informed Defendant that despite the advice, she and UCE-3 were planning to travel the following the week to Turkey via London. Defendant then provided UCE-2 and UCE-3 with Individual A's social media name, as an alternative contact for

8

arranging their travel to Syria to join HTS. However, shortly after providing Individual A's contact information, Defendant told UCE-2 not to use Individual A and to "forget it."

Despite Defendant's direction not to use Individual A, on October 4, 2018, UCE-3 made online contact with Individual A. UCE-3 asked Individual A if he had helped people make Hijrah[5] before, and if it was still possible to do so. Individual A replied, "Yes akhi [brother]. You can but safest to wait" to travel to Syria, explaining that "there isn't any fighting at the moment," and that UCE-3 would primarily be doing "guard duty" "5 or 7 days a month." UCE-3 asked Individual A whether he could get UCE-2 and UCE-3 "across" to Syria if UCE-2 and UCE-3 made it to Turkey. Individual A replied that he could but that he had talked to "another brother" who said it was very difficult to cross into Syria at present, and that UCE-2 and UCE-3 should wait and cross later.[6]

On October 4, 2018, UCE-2 told Defendant that they had contacted Individual A and he agreed to help them. Defendant responded, "He wasn't to make hijrah. But glad he can help you. It was just for charity purposes. And I have no clue who he is. Was just given to me to give to you for charity . . . [r]emember I don't want to talk about this and also if you remember I said to forget it. And not to worry about it. I never said he was for H."

## III.  ARGUMENT

Section 2339B(a)(1) makes it a federal crime to "knowingly provide material support or resources to a foreign terrorist organization," as well as to "attempt or conspire" to do the same. 18 U.S.C. § 2339B(a)(1). The term "material support or resources" includes the provision of any "service" or "personnel." *Id*. at § 2339A(b)(1). This is a general intent crime that only requires

---

[5] Emigration to a Muslim country during times of religious persecution.
[6] Individual A also provided UCE-3 with information about how to travel to Turkey undetected. Individual A explained, for example, that UCE-3 should have a good cover story and take certain steps to make it look like UCE-2 and UCE-3's travel was legitimate, including getting a Turkish visa and messaging charities to appear as an aid worker.

knowledge that the organization being supported is a designated foreign terrorist organization.

Defendant has admitted that she had knowledge HTS was a terrorist organization.[7] HTS was designated as a foreign terrorist organization on May 17, 2018. Defendant has further admitted that she knew on September 23, 2018, that UCE-2 and UCE-3 had declared *bayat* (an oath of allegiance) to HTS. Because these elements are not in dispute, they do not require additional evidence to be proven. The only element at issue is whether the information[8] provided by Defendant to UCE-2 regarding UCE-2 and UCE-3's preparation and plan to travel to Syria is sufficient to constitute provision of material support, or in the alternative, whether Defendant's action constitute attempting to provide UCE-2 and UCE-3 as personnel. In short, the issue at trial is whether Defendant's actions during and after September 23, 2018 are sufficient to constitute attempted material support of terrorism.

Defendant's statements, conversations, and actions prior to the charged period are extrinsic to that question. In this Circuit,

> [w]hen the other crimes or wrongs occurred at different times and under different circumstances from the offense charged, the deeds are termed 'extrinsic.' 'Intrinsic' acts, on the other hand, are those that are part of a single criminal episode. Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity.

*United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). Defendant's actions fall under *United States v. Barnes* because they are outside of the charged period. Further, they are not part of a continuing pattern of illegal activity. None of the statements, photographs, and social media posts concerns HTS. None of the statements and photographs and social media posts reflects the

---

[7] During her voluntary interview with the FBI in October 2018, Defendant admitted that she knew HTS was a designated terrorist organization.

[8] The government has not identified a unified theory of its case but has variously described Defendant's provision of Individual A's contact information to the UCEs, her general advice regarding travel to Syria, and Defendant's own prior desire to travel to Syria as the factual conduct supporting this charge.

Defendant's stated view to UCE-2 that HTS is not a good organization. None of the statements, photographs or social media posts concerns the Defendant's prior planning regarding travel to Syria. None of them was made to UCE-2 in an effort to convince her to travel to Syria. Accordingly, they are not intrinsic to the charged offense but rather extrinsic character evidence.

### 1. Category 1 – Social Media Posts and Messages Regarding Unrelated Terrorist Organizations, Terrorists, or Attacks

Defendant requests that this Court deny admission of the following evidence identified in the Government's Notice:

- Posts with supportive comments about "Jihadi John," an ISIS fighter who became notorious for beheading captured prisoners, and about the man responsible for the Pulse nightclub shooting in Orlando, Florida.

- Posts in 2015 reflecting support at the time for ISIS, a notorious foreign terrorist organization, including supportive comments about "Jihadi John."

- Posts in 2015 espousing support for terrorist attacks against the United States, including positive comments concerning Omar Mateen and his attack of the Pulse night club in Orlando, Florida.

Pursuant to *Barnes*, the above statements are extrinsic because they occurred prior to the charged period of February 22, 2018 to October 2018. Further, they are not part of a continuing pattern of illegal activity.

In addition to being extrinsic under *Barnes*, the Category 1 statements are also inadmissible because: (i) the statements are protected speech and not part of a continuing pattern of illegality; (ii) the statements are inadmissible under Rule 404(b) and Rule 403; (iii) the statements are not probative of motive or intent because they are not substantially similar or reasonably near in time and would mislead the jury; and (iv) the evidence is not necessary to preempt anticipated defenses.

i. **Defendant's statements are protected speech and not part of a continuing pattern of illegality.**

This Court should not admit Defendant's Category 1 statements because they constitute protected speech and are not part of a continuing pattern of illegality. Under the material support statute:

> [n]o person may be prosecuted under [§ 2339B] in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization.

18 U.S.C. § 2339B(h). A person does not work under the "direction or control" of a terrorist organization if she "act[s] entirely independently of the . . . organization to advance its goals or objectives." *Id.* In *Holder v. Humanitarian Law Project*, the Supreme Court emphasized that the term "personnel" under the statute excludes "independent advocacy." 561 U.S. 1, 23 (2010).

Here, there is no evidence that Defendant made these statements while acting under the direction or control of any terrorist organizations. Instead they represent her political thought, and like in *Holder*, they are not in and of themselves criminal. *See Holder*, 561 U.S. at 23. Nor are the statements part of a continuing criminal enterprise. Subsequent to making them, Defendant disavowed ISIS and many of the earlier statements she made as the situation in Iraq and Syria changed rapidly. Most importantly, Defendant is not charged with providing material support to Al-Nusrah, ISIS, or Al-Qaeda. She is charged with providing material support to HTS; thus, her earlier statements are not part of a continuing course of conduct.

The government, nevertheless, maintained in its 404(b) Notice that these statements were intrinsic to the charged count of attempted provision of material support to HTS. For this proposition, the government cites *United States v. Springer*, 753 F. App'x 821, 828 (11th Cir. 2018). In *Springer*, the Eleventh Circuit held that a defendant's statements in support of ISIS

were intrinsic to determining whether the defendant's threats were "true threats" or just hyperbole.

Defendant in this case, however, is not charged with making threats that would be subjected to the "true threat" under the "objective listener" standard; rather, she is charged with providing material support to HTS in the form of services and personnel in violation of 18 U.S.C. § 2339B(a)(1). Section 2339B(a)(1) does not require the same subjective analysis of the facts surrounding the speech in *Springer* because, unlike 18 U.S.C. § 115(a)(1)(B),[9] § 2339B(a)(1) does not prohibit speech. *See Holder*, 561 U.S. at 23 (holding that "[§ 2339B(a)(1)] does not prohibit being a member of one of the designated groups or vigorously promoting and supporting the political goals of the group . . .What [§ 2339B] prohibits is the act of giving material support") (citing *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1133 (9th Cir. 2000)). The *mens rea* required to violate 18 U.S.C. § 2339B(a)(1) is knowledge about the organization's connection to terrorism and not the specific intent to further the organization's activities.

Unlike *Springer*, where the defendant's statements were intrinsically intertwined with an element of the offense, all the government need show here is that Defendant knew about HTS's terrorist activities. Apart from the singular fact that Defendant, prior to the charged conduct, liked HTS, all of the speech reflects her general approval of radical Islamic teachings,[10] which constitutes protected speech and is therefore not part of a continuing pattern of illegality.

This prior speech is clearly being offered by the government to show that Defendant's

---

[9] 18 U.S.C. § 115(a)(1)(B) prohibits speech in the form of threats to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section. Key to conviction under § 115(a)(1)(B) was whether defendant intentionally communicated threat. *United States v. Schiefen*, 139 F.3d 638, 647 (8th Cir. 1998). Whether defendant's utterance was intended as a "true threat" had to be evaluated under an "objective listener" standard. *United States v. D'Amario*, 461 F. Supp. 2d 298, 302 (D.N.J. 2006).

[10] The government's proffered list of statements omits the fact that later, during the charged conduct, Defendant expressed strong disapproval for ISIS, and most importantly, strong disapproval for HTS.

extrinsic statements demonstrate her intent in providing Individual A's contact information in order to provide material support to HTS, instead of some alternative reason. Under Federal Rule of Evidence 404, these acts may only be admissible if they fall within the exceptions set out in 404(b).

### ii. The statements are inadmissible under Rules 404(b) and 403.

The Category 1 statements identified by the government are inadmissible under Federal Rules of Evidence 404(b) and 403. "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 108 S. Ct. 1496 (1988). Similar acts "may be admissible for another purpose [other than showing character], such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b).

Prior bad acts are inadmissible if they "are too unrelated" to the charged conduct or "too far apart in time to be probative of" the defendant's specific intent. *United States v. Clay*, 667 F.3d 689, 696 (6th Cir. 2012). These acts are also usually inadmissible under Rule 403 because they have "a powerful impact on a juror's mind" despite their "slim probative value." *Ibid.* As the Sixth Circuit in *Clay* noted, even with limiting instructions, there is "too much of a risk that the jury will generalize from prior examples of bad character." *Id.* at 697.

The government's proffered reason here is that this evidence is admissible "as evidence of the defendant's motive, intent, preparation for, plan regarding, knowledge underlying, or absence of mistake or lack of accident" with respect to Defendant introducing UCE-1 and UCE-2 to Individual A as alleged in Count One. *See* Doc. 102 at 8. The government does not offer further explanation of how the evidence concerning Defendant's prior statements expressing approval of so-called radical Islamic teachings and groups will further any of those objectives, citing instead to

cases where similar statements have been admitted. *See United States v. Kaziu*, 559 F. App'x 32, 35-36 (2d Cir. 2014); *United States v. Mehanna*, 735 F.3d 32, 59-61 (1st Cir. 2013); *United States v. Abu-Jihaad*, 630 F.3d 102, 131-34 (2d Cir. 2010). But, unlike the earlier statements regarding unrelated groups here, the statements in those cases were either intrinsic to the offense, or probative of the intent to support the charged organization.

Defendant respectfully submits that this Court cannot analyze whether the 404(b) evidence is admissible for a proper purpose, and whether the probative value outweighs the prejudicial effect, independently of the factual background of Defendant's alleged provision of Individual A as a contact to UCE-1 and UCE-2. *See Old Chief v. United States*, 117 S. Ct. 644, 647 (1997) (holding that, regarding the probative value of the evidence, the district court should consider "the full evidentiary context of the case as the court understands it when the ruling must be made").

### iii. The statements are not probative of motive or intent because they are not substantially similar or reasonably near in time and would mislead the jury.

The Category 1 statements should not be admitted as evidence of intent or motive because they are not substantially similar or reasonably near in time and would mislead the jury. "To determine if evidence of other acts is probative of intent, [courts] look to whether the evidence relates to conduct that is 'substantially similar and reasonably near in time' to the specific intent offense at issue." *United States v. Haywood,* 280 F.3d 715, 721 (6th Cir. 2002) (quoting *United States v. Blankenship,* 775 F.2d 735, 739 (6th Cir. 1985)). Here, the statements are not substantially similar and, most importantly, not reasonably near in time. First, all but one of the statements relates to other terrorist groups, not HTS. As such, they cannot be simply substituted for an intent on the part of Defendant to support HTS, despite her statements to the contrary. Equally important, they are not reasonably near in time. The Sixth Circuit has not set a

fixed limit on what is reasonably near in time. *See United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985) (stating "the rule is that the prior conduct must be reasonably near in time under the facts of the particular case") (internal citations omitted). Under the facts of this case, where Defendant's views about fighting in Syria and different groups in Syria changed over three years, the Category 1 statements are not reasonably near in time to the offense before the Court.

In this case, Defendant's initial attitudes toward groups in Syria, and the Syrian conflict in general, are not reasonably near in time because during the intervening period, the situation on the ground in Syria changed rapidly and Defendant's attitudes changed with it. Specifically, Defendant objected to the groups fighting among themselves, which was referred to as a time of Fitna.[11] Defendant and other members of the Telegram group discussed that, under those circumstances of disunity, jihad was impermissible because it meant fighting Muslims and that individuals should refrain from being part of the conflict and stay at home. Defendant's statements to UCE-1 telling her that there were no righteous groups in Syria and that during these times it was best to stay at home, are consistent with this belief. These statements are the best evidence of her intent and the religious rulings regarding going to fight.

Whatever probative value Defendant's prior statements might have is likewise outweighed by its prejudicial effect. As the Sixth Circuit has observed, in situations where the bad acts are no longer substantially similar, courts may exclude the evidence "if its probative value is substantially outweighed by a danger of," among other things, "unfair prejudice, confusing the issues, [or] misleading the jury." *United States v. Snyder*, 789 F. App'x 501, 506 (6th Cir. 2019) (citing FED. R. EVID. 403). This danger is particularly real here. Defendant's

---

[11] "Fitna" is an Arabic and Islamic term referring to a feeling of disorder or unrest and to describe the oppression of the powerful against the weak, or to describe individuals or communities giving in to the "whispers" of Satan and becoming divided.

earlier statements regarding terrorism will undoubtedly pose a risk of luring the factfinder into declaring guilt on grounds different from proof specific to the offense charged (i.e., the knowing attempted material support of HTS). The more lurid the statement, the worse the potential for prejudicial effect. For instance, the government's proffered evidence concerning Anwar Al-Awlaki, ISIS, Jihadi John, or praise of attacks in the United States, bear little to no relationship to the charged crime and would have serious prejudicial effect. This type of evidence should be excluded under Rule 403. *See United States v. Al-Moayad*, 545 F.3d 139, 159-66 (2d Cir. 2008).

### iv.  The evidence is not necessary to preempt anticipated defenses.

The government argues that the 404(b) evidence is appropriate to rebut potential defenses including "[1] arguments that her online activity involving terrorist organizations related to research she was conducting into the Syrian conflict and into participants in that conflict; [2] that she advocated for the establishment of a religious state, but opposed ISIS and other terrorist organizations as 'false' versions of that state; [3] that she planned to travel to Syria to marry 'Abu Abdullah,' but abandoned that idea because of substantial student loan debt she had accrued; [4] and that the government went to great lengths to convince her to aid UCE-1 and UCE-2 in their effort to travel to Syria to join HTS, eventually persuading her to provide them with the name of an overseas contact who could facilitate their travel into Syria." Doc. 102 at 9.

The government argues that the evidence is necessary to rebut an entrapment defense by demonstrating that Defendant's research created a predisposition to aid UCE-1 and UCE-2, to rebut that she no longer approved of ISIS, to rebut that she had abandoned her interest in traveling to Syria because Abu Abdullah had stopped communicating with her (rather than her student debt holding her back), and to show that the length of the government's investigation was justified by her suspicious and potentially criminal conduct over a period of years.

Defendant agrees that predisposition evidence is admissible to rebut a defense of

17

entrapment. *See United States v. Young*, 916 F.3d 368, 374-75, 378-79 (4th Cir. 2019); *United States v. Mohamud*, 843 F.3d 420, 423-24, 432-35 (9th Cir. 2016); *United States v. Siraj*, No. 07-0221- cr, 2008 WL 2675826, at \*2 (2d Cir. July 9, 2008). In fact, *Siraj* and *Mohamud* do not even analyze whether the evidence is admissible under 404(b) because the defense put forward a defense of entrapment. But, as much as the government anticipates that there will be such a defense in this case, Defendant represents to this Court that she does not intend to offer a defense of entrapment or seek such an instruction. Accordingly, the holdings in *Young* and *Mohamud*, where the evidence was admitted to rebut the defendant's entrapment theory, are of no consequence here. Thus, in the absence of a defense of entrapment, Defendant's predisposition is not relevant and, in fact, it is the exact evidence that Rule 404(a) and (b) preclude.

Instead of entrapment, the defense intends to argue that the evidence is insufficient to satisfy the requirement that Defendant knowingly attempted to provide material support to a foreign terrorist organization in the form of services and personnel. In making this defense, Defendant does not dispute that she had knowledge of HTS's designation. Instead, Defendant intends to argue that the mere furnishing of information (Individual A's contact information) to a potential member of a designated terrorist organization is insufficient to constitute providing personnel or services to the organization, especially where that contact information was for an individual unconnected to the charged organization. *See United States v. Dhirane*, 896 F.3d 295, 303 (4th Cir. 2018) (citing *Holder*, 561 U.S. 1 at 16-17) (clarifying that the requisite "mental state" required to violate § 2339B is "knowledge about the organization's connection to terrorism, not specific intent to further the organization's terrorist activities").

Accordingly, the government's proposed Rule 404(b) evidence does not rebut either of these claims. This is in contrast to *United States v. Kadir*, 718 F.3d 115, 123-24 (2d Cir. 2013), where evidence of the defendant posing with weapons was admissible to rebut a claim that he

18

merely engaged in peaceful fundraising activities, and *United States v. Hammond*, 381 F.3d 316, 342-44 (4th Cir. 2004), where knowledge of a terrorist organization's unlawful activities was admissible to rebut the defendant's claim that he only sympathized with the humanitarian goals of the organization. Here, evidence of Defendant's statements regarding jihadist groups and individuals does not rebut her defense any more than it makes it more likely that she committed a crime.

### 2. Category 2 - Social Media Photos or Statements Made by Terrorists or Unrelated Terrorist Organizations, or Espousing Support for Them

Defendant requests that the Court deny admission of the following evidence identified in the Government's Notice:

- Shared posts of radical Islamic teachings on a Telegram channel including posting Anwar Al-Awlaki's "44 Ways to Support Jihad".

- Photographs on cell phone of statements by Anwar al-Awlaki.

- Photographs on cell phone of images related to organizations espousing contributions to the cause of foreign fighters, including (for example) an image captioned, "He who Equips a FIGHTER in Allah's Cause Has taken part in the FIGHTING."

Under *Barnes*, Defendant's shared posts and images of statements made by Anwar Al-Awlaki, or espousing support for fighting, made prior to the charged period of February 22, 2018 to October 2018, are extrinsic and are not part of a continuing pattern of illegal activity. The Category 2 statements are also inadmissible for the reasons below.

### i. Defendant's prior shared statements are protected speech and not part of a continuing pattern of illegality.

For the reasons discussed *supra*, Section III. 1.i, Defendant's speech in this category is also protected and not part of a continuing pattern of illegality. These prior posts, photographs,

and shared statements are also not made by, or about, HTS.[12]

> **ii. Defendant's prior shared statements of unrelated organizations and terrorists are inadmissible under Rules 404(b) and 403.**

For the reasons discussed *supra*, Section III. 1. ii, Defendant's prior shared posts and photographs of statements made by Anwar Awlaki and other unrelated organizations and individuals are inadmissible because they are too unrelated to the charged conduct and too far apart in time from the charged period. In fact, these statements that Defendant shared represent ideas that she had been advising against for months before her arrest for the charged conduct and are "too far apart in time to be probative of" Defendant's specific intent. *United States v. Clay*, 667 F.3d 689, 696 (6th Cir. 2012). These acts are also inadmissible under Rule. 403 because they have "a powerful impact on a juror's mind." *Id*.

> **iii. The shared statements are not probative of motive or intent because they are not substantially similar or reasonably near in time and would mislead the jury.**

For the reasons set forth *supra*, Section III. 1. iii, Defendant's prior shared statements by unrelated organizations and terrorist individuals are not probative of motive or intent because they occurred in some cases years before the charged period and misrepresent the changed views of Defendant during the charged period.

Defendant's views about jihad in Syria had changed significantly from when she shared the statements of Anwar Awlaki and others. During the charged period, Defendant had discussed with UCE-2 and others on their shared Telegram channel that because of the confusion and disunity in the region, individuals should refrain from being part of the conflict and stay at home. These prior shared statements are so dissimilar and not near in time that they would certainly result in unfair prejudice, confuse the issues, and mislead the jury regarding Defendant's intent

---

[12] *See supra*, n. 9.

during the charged period.

### iv.  The evidence is not necessary to preempt anticipated defenses.

For the reasons explained *supra*, Section III. 1. iv, this category of evidence is also not necessary to rebut the defenses the government incorrectly anticipated, including entrapment and mistake of fact. Because Defendant represents that she will not be making any of those anticipated defenses, the government's proposed 404(b) evidence should not be admitted to rebut them.[13]

### 3.    Category 3 – Photos Depicting Battlefield Violence and Activity

Defendant requests that the Court deny admission of the following evidence identified by the Government's Notice:

- Photographs on cell phone of foreign fighters accompanied by phrases urging persons to engage in violent jihad.

-     Photographs on cell phone of dead bodies, including what appear to be photographs of victims of foreign fighters.

- Photographs on cell phone of what appear to be improvised explosive devices.

Under *Barnes*, Defendant's stored photographs of foreign fighters accompanied by phrases urging violence, photographs of dead bodies from conflict, and other battlefield activity made prior to the charged period of February 22, 2018 to October 2018, are extrinsic. They fall outside of the charged period and they are not part of a continuing pattern of illegal activity.

### i.   Defendant's photographs are protected speech and not part of a continuing pattern of illegality.

For the reasons explained *supra*, Section III. 1. i, Defendant's speech, in the form of shared and stored photographs in this category, is also protected and therefore not part of a continuing pattern of illegality. These photographs are also largely unrelated to HTS, the charged

---

[13] Should the Court have concerns regarding Defendant asserting these defenses after all, the Court could permit the government to present this information as rebuttal evidence if needed.

organization.[14]

### ii. Defendant's photographs are inadmissible under Rules 404(b) and 403.

For the reasons explained *supra*, Section III. 1. ii, Defendant's photographs of battlefield violence, including photographs from local news outlets depicting dead and exploded bodies, are inadmissible because they are highly prejudicial and too unrelated to the charged conduct. Defendant is not charged with violent conduct or participation in any of the violence depicted in the photographs. These types of disturbing, and unrelated, photographs are usually inadmissible under Rule 403, because they have "a powerful impact on a juror's mind" and their probative value is substantially outweighed by their prejudicial impact. *United States v. Clay,* 667 F.3d 689, 696 (6th Cir. 2012).

### iii. The photographs of battlefield violence and activity are not probative of motive or intent because they are not substantially similar or reasonably near in time, and would mislead the jury.

For the reasons discussed *supra*, Section III. 1. iii, Defendant's shared and stored photographs are not probative of motive or intent because they were accessed in some cases years before the charged period and misrepresent the limited, non-violent charged conduct of provision of information or personnel.

Further, Defendant's views about jihad in Syria had changed significantly from when she accessed these photographs, and in fact Defendant had discussed her sadness and anger at the violence in the region during the charged period. On a group Telegram channel, Defendant explained that because of the confusion and disunity in the region, individuals should refrain from being part of the conflict and stay at home. These photographs are so dissimilar from Defendant's charged, non-violent conduct that they would certainly result in unfair prejudice,

---

[14] *See supra*, n. 9.

confuse the issues, and mislead the jury regarding her intent during the charged period.

**iv. The evidence is not necessary to preempt anticipated defenses.**

For the reasons explained *supra*, Section III. 1. iv, this category of evidence is also not necessary to rebut defenses incorrectly anticipated by the government. Because Defendant represents that she will not be making any of the anticipated defenses, the government's proposed 404(b) evidence is unnecessary to rebut them.

**4. Category 4 - Defendant's Uncharged Financial Transfers to Individuals in Turkey**

Defendant requests that the Court deny admission of the following evidence that the government has not given notice of, but has previously indicated its intention to introduce:

- Defendant's uncharged June 2018 Western Union transfers to a Muhammad Muhammad, Ahment Hayek, and Omar Ali for $150, $250, and $500.

On June 14, 2018, Defendant sent $150 via Western Union Transfer to a Muhammad Muhammad in Turkey. On June 20, 2018 and June 25, 2018, Defendant also sent $250 and $500, respectively, via Western Union transfer, to Omar Ali and Ahmet Hayek, individuals in Turkey. To date, however, the government has not provided evidence linking these individuals to HTS, the charged terrorist organization.

The government clearly considers these transfers suspicious and has previously represented both in Court and to the defense that it is considering additional charges based on the transfers. The fact of these fund transfers, however, is not admissible on the present charge because under FED. R. EVID. 401 this conduct is wholly irrelevant to Defendant's interactions with the UCEs (the charged conduct), the government did not charge attempted provision of material support in the form of funds to HTS, and the transfers are inadmissible under FED. R. EVID. 404, and 403.

"Evidence is relevant if…it has a tendency to make a fact more or less probably than it

would be without the evidence…" and "the fact [must be] of consequence in determining the action." FED. R. EVID. 401. These transfers to unconnected individuals are not relevant to determining whether Defendant sufficiently attempted to provide the UCE's as personnel, or provide information. Further, use of these transfers as a basis for conviction would constitute an improper amendment of the indictment, a violation of the defendant's Fifth Amendment right to a grand jury. *See United States v. Combs*, 369 F.3d 925 (6th Cir. 2004). Lastly, introduction of evidence of the transfers without a clear link to HTS is likely to mislead the jury[15] and create the potential for a trial within a trial.

For these reasons, and the reasons explained *supra, Section III. 1. iii, iii,* and *iv,* this category of evidence is inadmissible.

### 5. Category 5 - Defendant's Prior Plans to Travel to Syria and Abu Abdullah

Defendant requests a limiting instruction on the following evidence identified in the Government's Notice:

- Defendant's prior discussions with Abu Abdullah about wanting to travel to Syria to join and marry him.

- Defendant's prior planning regarding potential travel to Syria, including research and other studies.

Unlike the other three categories of evidence, rather than requesting that the Court deny admission of this category of evidence altogether, Defendant requests a limiting instruction for the use of evidence of her prior travel plans and discussions with her ex online partner, Abu Abdullah. Under *Barnes*, this evidence should be considered extrinsic because it is outside of the charged period; however, Defendant acknowledges it may be admissible for the limited purpose of showing her knowledge about travel to Syria. Her expressed desire to travel to Syria to marry and support an alleged fighter is not protected speech and indeed, had she carried it out, most

---

[15] *See supra,* Sections III. 1. ii and III. 1. iii.

likely would have constituted a crime. That fact, however, does not make it intrinsic to the offense before the Court, as the government is alleging.

First, the government has not proffered that Defendant's intent was to attempt to provide material support to HTS (the charged offense). Second, Defendant abandoned any intent to travel to Syria until she could pay off her student debt, a prospect that had no likelihood of immediate fulfillment. Third, despite the undercover agents' best efforts, Defendant did not express an intent to travel with them to Syria to fulfill her prior desires. And finally, during the charged period, Defendant expressed that jihad was no longer appropriate in Syria because of infighting among the groups and she no longer maintained contact with the Syrian fighter she had previously expressed a desire to marry. Thus, Defendant's intent to travel is not intrinsically part of the charged conduct. Instead, it is again being offered to show that Defendant's desire to travel to Syria caused her to support the undercovers' desire to travel Syria. In other words, the evidence is being offered to show that Defendant, in aiding UCE-1, was acting in accordance with her prior expressed desires to travel to Syria herself. However, during the charged period, she took no overt steps necessary to constitute an attempt to furnish herself to HTS. In fact, during the charged period, the only conversations about Defendant's desire to travel were conversations about Abdullah not fighting, disavowing all fighting in the region, breaking up with Abdullah, and Defendant deciding that she needed to pay off her significant debt before any potential for travel.

For these reasons, Defendant requests that that Court find this category of evidence admissible only for the limited purpose of showing her knowledge about travel to Syria. She further requests that the Court reserve its decision on whether this evidence is intrinsic to the charged offense until the government can provide evidence of some overt act and substantial step on the part of Defendant to travel herself.

## IV. CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court: (1) deny admission of Categories 1, 2 and 3 of the evidence under FED. R. EVID. 404(b) and FED. R. EVID. 403; and (2) deny admission of evidence of the uncharged financial transfers in Category 4; and (3) give limiting instructions on Category 5.

Respectfully submitted this 15th day of February, 2021.

By:      */s/ Charles Swift*
Charles D. Swift
CONSTITUTIONAL LAW CENTER
FOR MUSLIMS IN AMERICA
833 E. Arapaho Rd., Ste 102
Richardson, TX 75081
(972) 914-2507

*Pro Hac Vice Attorney for Giampietro*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of February, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Charles Swift*
Charles D. Swift