UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) No. 2:19-cr-00013 | |
| v. | ) | |
| | ) Chief Judge Crenshaw | |
| | ) | |
| GEORGIANNA A.M. GIAMPIETRO | ) | |

GOVERNMENT'S FILING CONCERNING THE CLOSURE OF THE COURTROOM
AND OTHER PROTECTIVE MEASURES RELATING TO THE TESTIMONY OF
UNDERCOVER EMPLOYEES AT TRIAL

The United States of America, by and through the Acting United States Attorney for the Middle District of Tennessee, hereby submits its filing concerning the closure of the courtroom and other protective measures relating to the testimony of undercover employees at trial.

On June 8, 2021, the government filed its Renewed Motion for a Protective Order relating to the trial testimony of undercover employees who are expected to be called in the prosecution of this case. D.E. 180. The government's motion presented the Court with numerous options to consider to protect the true identities of these witnesses and the full scope of their work as undercover employees. All of the described options have been employed by other courts in order to provide the requested protection. The defense had previously filed a general opposition to the government's motion. D.E. 124. On June 17, 2021, the Court held a status hearing, at which the Court asked defense counsel to specify which protective options were objectionable to the defense. During the hearing, defense counsel proposed that the courtroom could be closed during the testimony of these witnesses as an alternative to the options described by the government, which did not include seeking a closure of the courtroom. At the conclusion of the hearing, the Court directed the parties to meet and consult on the protective measures described by the government in its motion, and report back to the Court concerning the areas of agreement and the areas of

disagreement concerning the proposed protective measures. The Court orally denied the government's motion for a protective order, noting that the Court required additional information from the government to support its request for such protections. The Court thereafter issued an Order requiring the parties to provide their status report on July 2, 2021. On July 2, 2021, the parties filed a notice of the status of consultations, describing the areas of agreement and the areas of disagreement relating to the protective measures sought by the government. In that notice, the government agreed to explore seeking permission from the requisite Department of Justice authorities to close court proceedings to the public during the testimony of undercover employees, based on the defense suggestion to do so and assuming that the Court would agree to do so. On July 6, 2021, the Court issued an Order instructing the government to report back to the Court by July 20, 2021, concerning the status of its discussions with the Department of Justice relating to the partial closure of the courtroom during the testimony of the undercover employees. D.E. 193.

The government thereafter sought the approval of Department of Justice authorities to consent to the closure of the courtroom, but approval was not granted in this case. In all cases, the government is required to seek authorization from the Office of the Deputy Attorney General in the Department of Justice to move for the closure of the courtroom. The exercise of that authority is based upon consideration of the factors enumerated in 28 C.F.R. § 50.9, which is entitled "Policy with regard to open judicial proceedings."

Section 50.9 includes clear directives to government attorneys making or consenting to requests to close a courtroom. The regulation states:

> Because of the vital interest to open judicial proceedings, the Government has a general overriding affirmative duty to oppose their closure. There is, moreover, a strong presumption against closing proceedings or portions thereof, and the Department of Justice foresees very few cases in which closure would be warranted. The Government should take a position on any motion to close a judicial proceeding, and should ordinarily oppose closure; it should move for or consent to closed proceedings only when closure is plainly essential to the interests of justice.

2

Acknowledging that a government attorney has a "compelling duty to protect the societal interest in open proceedings," government counsel is under an obligation not to move for or consent to the closure of the courtroom unless consideration of the following six factors, enumerated in 28 C.F.R. § 50.9 support the closure request:

> (1) No reasonable alternative exists for protecting the interests at stake; (2) Closure is clearly likely to prevent the harm sought to be avoided; (3) The degree of closure is minimized to the greatest extent possible; (4) The public is given adequate notice of the proposed closure; and, in addition, the motion for closure is made on the record, except where the disclosure of the details of the motion papers would clearly defeat the reason for closure specified under paragraph (c)(6) of this section; (5) Transcripts of the closed proceedings will be unsealed as soon as the interests requiring closure no longer obtain; and (6) Failure to close the proceedings will produce: (i) A substantial likelihood of denial of the right of any person to a fair trial; or (ii) A substantial likelihood of imminent danger to the safety of parties, witnesses, or other persons; or (iii) A substantial likelihood that ongoing investigations will be seriously jeopardized.

In this case, the government submits that there are reasonable alternatives to closing the courtroom that could protect the interests at stake, and therefore, the courtroom should not be closed. Additionally, there is no "substantial likelihood" that open proceedings in this case will deny the defendant her right to a fair trial; there is no "substantial likelihood of imminent danger to the safety of parties, witnesses or other persons" if proceedings are open and certain additional protections sought by the government are adopted; and there is no "substantial likelihood that ongoing investigations will be seriously jeopardized" if there are open proceedings incorporating the specific protections related to the scope of the testimony proposed by the government.

The guidelines enumerated in 28 C.F.R. § 50.9 reflect the First Amendment rights of the public to attend criminal trials. *See generally Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555 (1980); *see also Globe Newspaper Co. v. Superior Court,* 457 US. 596 (1982); *Gannett Co. v. DePasquale,* 443 U.S. 368, 397-405 (1974) (Powell, J. concurring). This Circuit has long recognized the substantial interest in open court proceedings, based on the reasoning in these

Supreme Court precedents. *See Application of Stover Communications, Inc.,* 828 F.2d 330, 336 (6th Cir. 1987) (the Supreme Court has recognized the "strong presumption of openness in criminal trials."); *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1177 (6th Cir. 1983) ("Throughout our history, the open courtroom has been a fundamental feature of the American judicial system. Basic principles have emerged to guide judicial discretion respecting public access to judicial proceedings."). A defendant seeking to close a courtroom overcomes the public's First Amendment right to access to proceedings only if he or she can demonstrate that his or her right to a fair trial will likely be prejudiced by conducting the hearing publically, that alternatives to closure cannot adequately protect his or her fair trial right, and that closure will probably be effective in protecting the defendant's right against perceived danger. *See United States v. Chagra*, 701 F.2d 354, 364-65 (5th Cir. 1983). Here, the defendant has made no such showing to the Court. Defense counsel simply asserts that the closure of the courtroom, presumably without any additional protections accorded to the undercover employees, is necessary to prevent the jury from drawing negative inferences from the fact that these witnesses interacted with the defendant as undercover employees.

Should the Court nevertheless decide that the courtroom should be closed in this case, the Court is also required to make specific findings on the record that are sufficient to support a closure order. The Court's findings must establish that the closure of the courtroom "is essential to preserve higher values" than the First Amendment right to public access to proceedings "and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13-14 (1986) (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). The Court must at least consider alternatives to closure and explicitly state reasons on the record for rejecting such alternatives. *United States v. Criden,* 675 F.2d 550, 560-61 (3d Cir. 1982) (citing cases).

As the government previously stated, there are reasonable alternatives to closing the

4

courtroom that will protect the public's interest in open proceedings, the government's interest in protecting information that would identify undercover employees and their work in other investigations, and the defendant's confrontation interest. The government requests that the Court reconsider the government's previously filed Motion for a Protective Order relating to the testimony of undercover witnesses, D.E. 180, in light of the consultations that the parties have undertaken to address the issues presented by the government's request for protective measures. While its original Motion for a Protective Order identified numerous options for the Court to consider, the government now proposes adoption of just four protective measures that were not agreed upon by the parties, all of which are reasonable alternatives to closing the courtroom for the testimony.[1] First, the government seeks permission for the undercover employees to use a light disguise to modify their physical appearance in a way that will protect their identities. Second, the government seeks permission for these witnesses to first identify themselves on the stand by initials, and thereafter to identify themselves using the name by which they were known by the defendant. Third, the government seeks to present at trial a pixilated version of any video evidence that includes depiction of the facial features of an undercover employee. Fourth, the government seeks to limit the examination of the undercover witnesses concerning their work in other investigations or the training provided through the FBI's Undercover programs. These alternatives would allow the defendant, counsel, court personnel, the jury and the public to observe and participate in an open proceeding and protects the significant interests of the government in shielding the identities of its undercover employees. The jury could receive an instruction from the Court relating to the witnesses that would advise the jury not to infer or assume that the defendant is a danger simply because undercover witnesses need to protect their identities.

---

[1] There does not appear to be any defense objection to the request that the undercover witnesses be permitted to use a separate entrance and exit from the courthouse and the courtroom in connection with their testimony.

Based on the foregoing, the government respectfully submits, in response to the Court's July 6 Order, that the Department of Justice will not authorize government counsel in this case to consent to any closing of the courtroom, based upon the availability of reasonable alternatives that would not restrict the public's right to attend open criminal proceedings. Defense counsel has not established a sufficient basis for seeking to close the courtroom that demonstrates that a compelling right of the defendant will likely be prejudiced by conducting a public trial at which the government's witnesses can be heard and observed. The government has proposed several reasonable alternatives to protect its witnesses and the public's right to attend the full trial. An appropriate limiting instruction can be provided to the jury before the undercover employees testify, so that the jury will not draw any adverse inferences against the defendant from the specific measures employed relating to these witnesses.

## CONCLUSION

WHEREFORE, the Government requests that the Court approve the government's requested protective measures in this case and deny the defense's request to close the courtroom in lieu of such measures.

Respectfully Submitted,

MARY JANE STEWART
Acting United States Attorney
Middle District of Tennessee

By: /s/ *Kathryn Risinger*
KATHRYN RISINGER
Deputy Criminal Chief – Organized Crime

/s/ *Phil Wehby*
PHIL WEHBY
Assistant United States Attorney
110 9th Avenue South
Nashville, Tennessee 37203
Phone: (615) 736-5151

/s/ *Jennifer E. Levy*
JENNIFER E. LEVY
Trial Attorney
Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Suite 7600
Washington, D.C. 20530
(202) 514-1092

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2021, a true and correct copy of the foregoing document was filed electronically via CM/ECF, which will automatically provide service to Charles Swift and Peter Strianse, counsel for the defendant.

/s/ *Kathryn Risinger*
KATHRYN RISINGER
Deputy Criminal Chief – Organized Crime