IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>     Plaintiff, | )<br>)<br>)<br>) | |
| v. | )<br>)<br>) | Case No.: 2:19-cr-00013 |
| GEORGIANNA A.M. GIAMPIETRO<br>     Defendant. | )<br>)<br>) | Chief Judge Waverly D. Crenshaw, Jr. |

**<u>DEFENDANT'S RESPONSE TO GOVERNMENT FILING CONCERNING
COURTROOM CLOSURE AND TESTIMONY OF UNDERCOVER EMPLOYEES</u>**

The defendant, Georgianna A.M. Giampietro responds to the government's Filing Concerning the Closure of the Courtroom and Other Protective Measures Relating to the Testimony of Undercover Employees at Trial, which seeks protective measures for the government's undercover witnesses.[1] Doc. 197. Pursuant to the Confrontation Clause and the right to an impartial jury under the Sixth Amendment of the United States Constitution, and pursuant to *Roviaro v. United States*, 77 S. Ct. 623 (1957), the defendant requests that this Court: (1) deny the government's renewed request for a protective order relating to undercover testimony; (2) reject consideration of any inappropriately classified filings; and (3) in the alternative, if the Court finds sufficient showing for protective measures, narrowly tailor the measures to those agreed upon in the joint Notice of Status of Consultations, as well as other defense proposed alternatives that are based on the superior option of limited court closure outlined in *United States v. Alimehmeti* to

---

[1] The defense responded to these requested protective measures in detail when they were first requested. The defense renews those responses and incorporates them herein. *See* Doc. No. 124.

1

ensure the jury is not prejudiced by knowledge of any protective measures. 284 F. Supp. 3d 477, 491 (S.D.N.Y. 2018)

**BACKGROUND**

On June 4, 2020, the government filed its Motion for a Protective Order for protective measures during the testimony of undercover witnesses at trial. After the defense filed its Response, this Court denied the Motion. On June 8, 2021, the government renewed the Motion. Thereafter, on June 17, 2021, the Court held a status hearing and denied the government's request, finding that the government made an insufficient showing of need for the protective measures. After reviewing the defense's filing, the Court concluded that there was room for compromise and asked defense counsel to specify which protective options were objectionable to the defense. During the hearing, defense counsel proposed that the courtroom could be closed during the testimony of the undercover witnesses as an alternative to the options described by the government, which did not include seeking a partial closure of the courtroom. At the conclusion of the hearing, the Court directed the parties to meet and consult on the protective measures described by the government in its motion, and report back to the Court concerning the areas of agreement and disagreement.

The Court again denied the government's Motion, noting that the Court required additional information from the government to support its request for such protections. The Court then issued an Order requiring the parties to provide their status report on July 2, 2021. During the Court ordered consultation, the defense proposed two alternatives to partial court closure: (1) the defense would agree to all of the government's suggested protective measures related to the undercovers' identities, thereby permitting the court to be open to all proceedings, if the government would agree to a bench trial (because the defendant believes the Court would not hold those protective measures against the defendant); or alternatively (2) the use of light disguise that would not be

2

Case 2:19-cr-00013 Document 201 Filed 07/28/21 Page 2 of 11 PageID #: 2327

apparent to the jury if audio tapes of the meetings were played as opposed to video because this would prevent the jury from becoming aware of the protective measures. The government indicated that its preferred method was to seek approval from the Department of Justice for partial court closure.

On July 2, 2021, the parties filed a notice of the status of consultations, describing those areas of agreement and disagreement. In that notice, the government agreed to explore seeking permission from the requisite Department of Justice authorities to close court proceedings to the public during the testimony of undercover agents, based on the defense suggestion to do so and assuming that the Court would agree to do so. On July 6, 2021, the Court issued an Order instructing the government to report back to the Court by July 20, 2021, on the status of its discussions with the Department of Justice. The government's response indicated that the Department of Justice did not authorize limited courtroom closure and that it again seeks the protective measures originally requested.

## ARGUMENT

### A. The government's request for a protective order lacks a factual basis for reconsideration by this Court.

This Court denied the government's motion for a protective order relating to the trial testimony of undercover witnesses twice.[2] In its second denial, the Court noted that the affidavit produced in support of the government's request for a protective order was insufficient to justify protective measures.[3] In the absence of any additional information, this Court should once more deny the government's request.

---

[2] See Doc. No. 129 and Doc. No. 187.
[3] See Doc. No. 108 and Doc. No. 108.1, Government's Motion for a Protective Order and Declaration of Dr. Jill Sanborn.

3

Rather than providing additional information to justify the need for the protective measures, the government submitted a Filing Concerning the Closure of the Courtroom and Other Protective Measures as a substitute. They now seek a protective order on the basis that the Department of Justice opposes partial closure of the courtroom. The fact that the Department of Justice opposes partial closure however, does not cure the failure to produce more than a generic basis for protective measures that this Court has previously found to be insufficient. In the absence of any additional information, this Court should once more deny the government's request. The facial basis of the government's request for a protective order in its filing is that the defense did not agree to all of the protective measures that this Court had previously denied.[4] Reconsideration on this ground is not appropriate. While this Court ordered the parties to confer and come up with a joint agreement, the failure to reach an agreement does not constitute new evidence establishing the necessity for a protective order.

1. ***Ex parte* filings should not be considered.**

Subsequent to the Court's denial, the government has made a classified *ex parte* filing with this court.[5] The defense, of course, has no knowledge of these filings and they are not referenced in the government's latest request for a protective order, nor should they be because *ex parte* filings are not appropriate in considering protective measures that affect the substantive rights of the accused. Section 4 of the Classified Information Procedures Act (CIPA) and Federal Rule of Criminal Procedure 16(d)(1) do not permit the *ex parte* consideration of evidence to decide the

---

[4] The defense has made extensive good faith efforts to compromise and has suggested numerous alternatives to the requested protective measures. These are outlined in the areas of agreement of the joint Notice of Status of Consultations filed on July 2, 2021. Doc. No. 191 at 1-3. But now, the government returns again asking this Court for the original protective order that this Court denied on the argument that the defendant would not be prejudiced by them.

[5] *See* Doc. No. 196

4

Case 2:19-cr-00013   Document 201   Filed 07/28/21   Page 4 of 11 PageID #: 2329

substantive rights of the accused to confront her accusers and the due process rights to a jury free of prejudice.

Section 4 of the CIPA and Federal Rule of Criminal Procedure 16(d)(1) are discovery rules and inapplicable to the use of protective measures for witness testimony. Section 4 states:

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an *ex parte* showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

Pub. L. 96–456, § 4, Oct. 15, 1980, 94 Stat. 2025. And Federal Rule of Criminal Procedure 16(d)(1) states:

> (1) Protective and Modifying Orders. At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect *ex parte*. If relief is granted, the court must preserve the entire text of the party's statement under seal.

Using either rule to classify additional information as support for its request for a protective measure related to witness testimony is inappropriate. They relate solely to classified filings in discovery and do not extend to issues relating to courtroom procedure. The government recognizes as much in their motion, when they remind the Court that the reasons for partial closure should be on the record and announced as such. But the same reasoning extends to any protective measure in this case, it should have a factual basis announced on the record. Nowhere in the text of Section 4 of CIPA does Congress authorize the use of *ex parte* proceedings to make substantive factual determinations concerning in-court protective measures for witnesses.

5

2. **If the Court nevertheless decides there is a basis for protective measures, this Court should narrowly tailor limited protective measures to protect Ms. Giampietro's rights.**

If the Court decides that the government has made a sufficient showing to justify a protective order, it should tailor the protective measures so as to protect Ms. Giampietro's rights to due process, to confront the witnesses against her, and to prevent prejudice.

The government argues that its requested protective measures are necessary in order to avoid the closure of the courtroom during testimony of the undercovers because the Department of Justice did not approve their request for courtroom closure. In so doing, the government necessarily places a higher premium on the public's right to attend a trial than the potential resulting prejudice to Ms. Giampietro. That, of course, can never be the case. As the Supreme Court explained, at trial "the need for a truthful verdict outweighs society's need for the [confidential] privilege." *McCray v. Illinois*, 87 S. Ct. 1056, 1060 (1967). Accordingly, as discussed in the defense's previous Response to the Government's Motion, every court to consider the issue has erred on the side of closure to protect the Ms. Giampietro's rights, rather than putting in place the measures suggested by the government that would prejudice Ms. Giampietro. *See* Doc. No. 124 at 4-14 (*collecting cases*).

### B. Granting the Motion would prejudice Ms. Giampietro.

The government claims that its requested protective measures would not prejudice Ms. Giampietro. The government is wrong. Disguising the undercovers and concealing their identities in court and on video will prejudice the jury because both measures restrict the defendant's right to cross-examine the undercovers, implicating the Confrontation Clause.

### 1. The government's proposed protective measures regarding the undercovers' identities will prejudice Ms. Giampietro.

Disguising and blurring the undercovers in video evidence and obscuring their online identities will prejudice the defendant because these actions insinuate to the jury that she poses a threat to the government agents. It was this prejudice that led the court in *Alimehmeti* to reject the government's suggested alternative measures to partial closure of the court to protect the identity of the undercover informants. *See Alimehmeti*, 284 F. Supp. 3d at 494 (rejecting the use of a disguise or a screen in favor of partial closure due to the risk that the jury would infer the defendant presents a danger.); *see also United States v. Hernandez*, No. S1 12 CR 809 PKC, 2013 U.S. Dist. LEXIS 107221, 2013 WL 3936185, *2 (S.D.N.Y. July 29, 2013) (also rejecting the use of a screen or disguise). "And because the jury would likely discern the fact of an [undercover's] disguise—including to the extent the undercover presented differently in the court than in a video recording—the jury might infer a potential for danger or retaliation against the [undercover], and draw negative inferences adverse to [the defendant]." *Alimehmeti* 284 F. Supp. 3d at 489 (citing *United States v. Pugh*, No. 1:15-cr-00116-NGG, 2016 U.S. Dist. LEXIS 194544 (E.D.N.Y. Feb. 24, 2016)).

*Alimehmeti* is relevant not only because of the red flag to the jury analogy, but also is illustrative of the inappropriate balance that the government would have this Court strike by adopting its proposed protective measures. Courts should not prioritize the government's interest in an open trial with thirteen protective measures over the significant potential for prejudice to Ms. Giampietro. Like the courts in *Alimehmeti*, *Hernandez*, and *Pugh*, even if this Court believes that protecting the undercovers' online personas and monikers is necessary, it should implement partial closure and reject the measures proposed by the government.

This prejudice cannot be cured by a jury instruction, as suggested by the government, because such an instruction would only highlight the fact that protective measures were being

7

taken to the jury. This Court has recognized the potential for that prejudice when the Court directed that during *voire dire*, prospective jurors were not to be questioned regarding protective measures because it would prejudice Ms. Giampietro. It logically follows that the same prejudicial concerns would apply to any instruction this Court might give.

2. **Partial court closure is appropriate to protect the identities of undercover witnesses that face a particularized threat, despite the government's objections.**

As the above cited courts have found, partial court closure protects both the witness and the defendant. *See e.g. Alimehmeti*, 284 F. Supp. 3d at 494. At the onset of these proceedings the government moved for, and the Court granted, the closure of the proceedings.

The government has no legal standing to object to the use of partial courtroom closure as an alternative protective measure. In fact, the requirement to consider alternatives to closure is not even before this Court. Under Sixth Circuit law, a defendant or a third party has standing to object to a closed hearing. *See Johnson v. Gidley*, No. 16-1373, 2016 U.S. App. LEXIS 23477, *6 (6th Cir. Dec. 6, 2016) (holding that "[a] defendant is only entitled to have the trial court weigh the various interests discussed in *Waller* and *Presley* if the defendant objects") (citing *Waller v. Georgia*, 104 S. Ct. 2210, 2215 (1984)). Accordingly, the fact that the Department of Justice objects to a closed hearing is irrelevant to this Court's consideration.

Indeed, the government's rejection of the defense's alternatives is not based on a desire to impose the least impactful protective measures; rather, it is a tactical ploy to gain an unfair advantage at trial. The government's rejection of the defense's other alternatives is telling. If the government truly believed that protection of its agents was paramount, it would agree to a bench trial. Or, in the alternative, if it believed the videos posed a danger, they would play audio recordings. If the government truly thought partial court closure should be disfavored in all occasions, it would not have sought it at the beginning of trial.

8

For the above reasons, in the event that the Court finds that protective measures are justified under the facts, the defense moves for the Court to partially close the courtroom during their testimony and reject the use of light disguise, altered video.[6] The defense also moves that this Court reject the use of initials by the undercover agents in favor of an agreed, believable pseudonym for the agents when they testify. Similar to disguise and pixelated videos, the use of initials, highlights for the jury that the witnesses are uniquely protecting their identity.

3. **The government's proposed blanket prohibition against the questioning of undercover witnesses, or others, regarding other investigations violates the Confrontation Clause.**

Limiting questions concerning other investigations would likewise limit questioning of two potential witnesses in this case; Alaa Abu-Saad and Eman [last name unknown]. The government investigated both women at the same time and in the same group that Ms. Giampietro participated in. Alaa Abusaad was arrested in October 2018 and pled guilty in the Northern District of Alabama and is cooperating with the United States government. Eman, has not been arrested but has been interviewed by the FBI and is potentially a witness in this case. The government nevertheless asserts that questioning the undercover about their interactions with these two women, who were part of Ms. Giampietro's chat group, would threaten their ongoing investigations. Under the government's proposed protective order, the defense would be prohibited from asking the undercovers or the witnesses about their dealings with each other and the conversations where Ms. Giampietro, Abusaad, Eman, and the undercover all participated. Foreclosing cross-examination about these investigations as the government suggests would not only exclude relevant information, it would permit the government to tell a one-sided story that obscures the truth. For

---

[6] Partial courtroom closure would exclude the public from viewing the proceedings but permit them to hear the audio of the proceedings.

this reason, the Court should permit questioning of the undercovers and others regarding their interactions with Alaa Abusaad and Eman [last name unknown].

## CONCLUSION

For the foregoing reasons, this Court should deny the government's renewed request for a protective order relating to undercover testimony and reject consideration of any inappropriate classified filings related to the government's request. In the alternative, if the Court finds sufficient showing for the use of protective measures, the defendant requests that this Court narrowly tailor the measures to those agreed upon in the joint Notice of Status of Consultations and other defense proposed alternatives to protect the defendant's rights to confront the witnesses against her and ensure the jury is not prejudiced by knowledge of any protective measures

Respectfully submitted,

/s/ *Charles D. Swift*
CHARLES D. SWIFT
*Pro Hac* Attorney for Giampietro
Constitutional Law Center for Muslims in America
100 N. Central Expy., Suite 1010
Richardson, TX 75080
Phone: (972)-914-2507
Email: cswift@clcma.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of July, 2021, I electronically filed the foregoing Response to the Government's Filing Concerning Courtroom Closure and Testimony of Undercover Employees with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Charles D. Swift*
CHARLES D. SWIFT
*Pro Hac* Attorney for Giampietro
