IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>  Plaintiff, | ) <br> ) <br> ) <br> ) | |
| v. | ) <br> ) <br> ) | Case No.: 2:19-cr-00013 |
| GEORGIANNA A.M. GIAMPIETRO<br>  Defendant. | ) <br> ) <br> ) | Chief Judge Waverly D. Crenshaw, Jr. |

## MOTION TO SECURE TRAVEL / PAROLE PASS FOR EXPERT WITNESS

Ms. Georgianna A.M. Giampietro, the defendant, through undersigned counsel, respectfully submits this Motion to Secure Travel in the form of a Parole Pass for defense Expert Witness, Aymenn Jawad. Defense respectfully requests that this Court ensure Mr. Jawad's presence for trial by ordering the Justice Department to facilitate the issuance of a Parole Pass to Mr. Jawad.[1]

**1. Defense Expert**

The expert for the defense, Aymenn Jawad, is a scholar on the Syrian conflict. Mr. Jawad lives in the United Kingdom and is a British Citizen, born in the UK. Defense disclosed Mr. Jawad as a defense expert on 5/5/20. The District Court and the Sixth Circuit COA approved expert

---

[1] A Parole Pass is specifically used for an individual who is ineligible to enter the US as a refugee, immigrant, or nonimmigrant and may be ''paroled'' into the US by the Secretary of Homeland Security. This provision of the law is authorized for emergency (impending death of a family member, for example), humanitarian reasons (to donate a kidney, for example), and, importantly, in this case, public interest reasons. The Public Interest Parole includes the need to come to the United States to testify at a trial. Application is made to the Department of Homeland Security for approval and issuance of a Parole Pass by submitting USCIS Form I-131 - Application for Travel Document.

1

funding for this defense expert. Because Mr. Jawad is traveling for work related reasons, rather than as a tourist, he is required to obtain a visa prior to entering the US. The defense has been working diligently with Mr. Jawad to obtain the necessary visa to ensure his presence for trial scheduled for September 14, 2021. As will be shown below, Mr. Jawad has been unsuccessful in obtaining a visa, and a Parole Pass applied for by a government agency is now required to permit his entry into the United States for trial.

**2. Efforts to Obtain a Visa for Mr. Jawad**

On 10/15/20, Mr. Jawad applied for a visa for the following September, 2021 – 11 months away. Mr. Jawad requested an expedited processing. On 3/16/21, the US Embassy in London denied expedited processing and set Mr. Jawad's visa interview for 8/3/21. As the interview date was six weeks before trial, there was sufficient time for a visa to be issued. However, on 6/2/21, Mr. Jawad received an email from the US Embassy in London changing the interview date from 8/3/21 to a date in February, 2022. On 6/2/21, Mr. Jawad again asked the US Embassy in London for an expedited interview date, noting that the new interview date is AFTER the trial date. On 6/11/21, the US Embassy sent information to Mr. Jawad on how to request an expedited interview. Mr. Jawad sent a request for an expedited interview the very same day. On 7/7/21, Mr. Jawad's request for expedited visa interview was denied by the US Embassy in London, and a new visa interview date was re-set to March of 2022, four months after the current trial date. Accordingly, the only way for Mr. Jawad to attend the trial is with a Parole Pass in the public interest.

**3. Mr. Jawad has been granted a Parole Pass to testify on behalf of the government.**

Mr. Jawad is also serving as an expert witness for the government in Detroit, MI. (*U.S. v. Musaibli*, 2:18-cr-20495, Eastern District of Michigan). In *Musaibli*, the government secured Mr. Jawad's presence for the *Dabert* hearing held on 6/28/21 and 6/29/21, through the use of a Parole Pass. (See Attachment 1.) The Parole Pass permitted Mr. Jawad's entrance into the United States

2

for the purpose of the hearing, but unlike a visa, it does not permit his entrance into the United States for any purpose other than the specific hearing in Detroit, MI, and does not permit him to enter the United States for any other hearing. (In fact the government on the *Musaibli* case is in the process of securing a second Parole Pass for Mr. Jawad to testify at their trial starting on October 5, 2021.)

4. **Defense Efforts to Obtain a Parole pass for Mr. Jawad**

As a first step for securing Mr. Jawad's presence for trial, the defense requested and received a subpoena for Mr. Jawad for trial from the Nashville District Court Clerk's Office (See Attachment 2). This step was necessary with the COVID-19 restrictions regarding persons traveling from the United Kingdom.[2]

The defense next contacted AUSA Hank Moon, government counsel on *Musaibli*, on 7/17/21 to learn the procedural details the how the government had secured a Parole Pass for Mr. Jawad. Mr. Moon referred defense counsel to the Detroit FBI and to ICE, which made the application for the Parole Pass for Mr. Jawad on behalf of the US Attorney's Office in Detroit. The defense subsequently spoke to the Case Agent Supervisor who instructed defense counsel's office to contact the Nashville ICE office for assistance.

On 7/19/21, after being unable to reach a live person at the ICE/DHS Office, defense counsel's office reached out to Ann Card at the Federal Public Defender's Office in Nashville for

---

[2] On January 25, 2021, Presidential Proclamation 10041 (May 24, 2020) was issued restricting entry of individuals who had been physically present in the United Kingdom "during the 14-day period preceding their entry or attempted entry into the United States." (Proclamation 10041 of May 24, 2020). However, the suspension and limitation of entry does not apply to "any noncitizen whose entry would further important United States law enforcement objectives, as determined by the Secretary of State, the Secretary of Homeland Security, or their respective designees, based on a recommendation of the Attorney General or his designee… or any alien whose entry would be in the national interest" (Proclamation 10041 of May 24, 2020, SECTION 2(a)(xi) and (xii)). The defense believes a subpoena was the first step for meeting these requirements by establishing that Mr. Jawad was indeed a witness for trial.

3

guidance on how this may have been handled by the FPD in Nashville in the past. Unsurprisingly, this was not something the Nashville FPD had ever dealt with. On 7/20/21, defense counsel's office was then provided information from Ms. Card, which she had received from the US Marshall's Office, on how to secure a Parole Visa/Parole Pass. The information was eleven years old and the phone reference did not work. Ms. Card, however, provided defense counsel's office the name of a live person, Special Agent David Brown of Homeland Security Investigations (HSI), at the Nashville ICE office, whom defense counsel was told could possibly help. Defense counsel spoke with Mr. Brown on 7/20/21, and outlined what was needed – assistance with the submission of an application for a Parole Pass. The following day Mr. Brown emailed the defense indicating that "in his experience defense counsel will work with the US Attorney's office as well as the agency who has the case to coordinate the issuance of visas for these applicants, through the specific agency headquarters." Mr. Brown was told that "HSI is not equipped locally to handle these issues."

As a result, on 7/22/21, defense counsel contacted the Victim Witness Coordinator at the US Attorney's Office in Nashville. The Victim Witness Coordinator, John Hernandez, was out of the office until the following Monday, 7/26/21. On Monday, 7/26/21, defense counsel spoke to Mr. Hernandez, who indicated the US Attorney's Office could only help secure government witnesses and experts, and could not assist defense counsel. Mr. Hernandez then referred the defense to the US Marshall's Office, and provided the name of Marnie Lehew, Administrative Officer, US Marshall's Office. On 7/21/21, defense spoke to Ms. Lehew and provided her the information regarding the request for submission of the application of a Parole Pass. Ms. Lehew informed defense via email, after the phone call, that she had left a message with Justice Management Division's Special Authorization unit and that she also left a message with DOJ Criminal Division Office of International Affairs. She indicated she would contact the defense

office with any updates. On 7/28/21, Ms. Lehew indicated she was waiting for a call or email from the FBI office in London.

**5. Court Assistance is Necessary and Appropriate**

Defense understands (from AUSA Hank Moon in Detroit, MI) that it takes around six weeks to obtain a Parole Pass. We are just under seven weeks at present before the Giampietro trial. Defense has worked diligently in seeking out assistance from government actors whom we have been told were poised to assist with this type of submission/request. Not only was Mr. Jawad already in the US in late June 2021 on a Parole Pass as a government expert, but the AUSA's Office in Detroit will be making a second application for Mr. Jawad to come back to the US in October 2021 to testify at the *Musaibli* trial. It is clear that the DHS has, can and will authorize Mr. Jawad's parole into the US to testify as an expert witness. The key is that only submissions by "government agencies" may request expedited processing, and only United Kingdom citizens applicants who are sponsored by a government agency are exempt from the Presidential Proclamation which restricts United Kingdom citizens from coming to the US unless entry would further important United States law enforcement objectives . . . or whose entry would be in the national interest. It is clear from the fact that one of the uses of a Parole Pass is to allow for witness testimony at a hearing or trial, that necessary testimony is a category under which the purposes of Parole Pass is authorized.

The Parole Pass should not be a tool only available for the government. Similar to the Marshall's Office assisting defense in securing witnesses for trial, so too is defense entitled to the same government assistance in securing witnesses and experts, even those located overseas. As the Supreme Court has observed "[o]ur cases establish, at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt."

5

Case 2:19-cr-00013 Document 202 Filed 07/28/21 Page 5 of 7 PageID #: 2341

*Taylor v. Illinois*, 484 U.S. 400, 408-409 (1988), quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). "To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense." *United States v. Nixon*, 418 U.S. 683, 709 (1974). This is particularly true in this case. Although the witness is overseas, the government has secured this same witness for its own benefit in another case, and to deny the defense access to the same witness would be contrary to the Sixth Amendment to the US Constitution.

**6. Conclusion**

The defense asks this Court to order the Justice Department to immediately facilitate application and the issuance of a Parole Pass to Mr. Jawad by submitting the requested documentation for a Parole Pass in sufficient time for trial on September 14, 2021.[3] While Ms. Lehew at the US Marshall's Office appears to be making headway in getting answers, as of today, we are concerned about a possible lack of a sense of urgency in the agencies Ms. Lehew is contacting, thus the need for this Motion for Assistance by this Court.

Respectfully submitted this 28th day of July, 2021.

By: /s/ Charles Swift
Charles D. Swift,
*Pro Hac Vice* Attorney for Giampietro
CLCMA
100 N. Central Expy, Ste 1010
Richardson, TX 75080
(972) 914-2507

---

[3] In support of this request, the defense is prepared to complete USCIS Form I-131. The defense is also in possession of Mr. Jawad's photo to submit with the application. The defense notes that there is a $575 fee for the application and submission of USCIS Form I-131. Defense is, however, is unsure if this fee is required if the request comes from a government agency and it is in the national interest. Defense nevertheless is prepared to tender $575 fee, and subsequently submit for reimbursement as a cost attributed to our expert.

6

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of July, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

By: /s/ Charles Swift
Charles D. Swift, *Pro Hac Vice*
Attorney for Giampietro
100 N. Central Expy, Ste 1010
Richardson, TX 75080