*Offense Instructions* –

# COUNT ONE - ATTEMPTING TO PROVIDE MATERIAL SUPPORT TO A FOREIGN TERRORIST ORGANIZATION

- It is a federal crime for anyone to knowingly attempt to provide material support or resources to a foreign terrorist organization, knowing that the organization is a designated terrorist organization or has engaged or engages in terrorism.

- The government has charged two distinct courses of conduct in which they believe the defendant provided material support in violation of Count 1: (1) first is that between February 22, 2018 and October 23, 2018 Ms. Giampietro attempted to provide personnel to serve under the direction and control of Hayat Tahrir al-Sham; or (2) that Ms. Giampietro attempted to provide expert advice to Hayat Tahrir al-Sham.

**One:**

To find Ms. Giampietro guilty of attempting to provide **personnel** you must be convinced that the government has proved both of the following elements beyond a reasonable doubt:

 First, that the defendant knowingly attempted to provide material support in to form of personnel to Hayat Tahrir al-Sham;

 Second, that the defendant did some act as a substantial step in an effort to provide personnel to Hayat Tahrir al-Sham.

 Third, that at the time the defendant attempted to provide material support to Hayat Tahrir al-Sham, Hayat Tahrir al-Sham was a specially designated terrorist organization;

 Fourth, that the defendant knew that Hayat Tahrir al-Sham was a designated foreign terrorist organization or had engaged in or was engaging in terrorist activity or terrorism when she attempted to provide the personnel; and

 Fifth, that at the time the defendant attempted to provide material support to Hayat Tahrir al-Sham, the defendant was a national of the United States.

**Two:**

Alternatively, to find Ms. Giampietro guilty of attempting to provide services Hayat Tahrir al-Sham in the form of **expert advice or assistance** you must be convinced that the government has proven the following elements beyond a reasonable doubt:

 First, that the defendant knowingly attempted to provide services in the form of expert advice or assistance in coordination with, or at the direction of, Hayat Tahrir al-Sham[1];

---

[1] Thus, any independent advocacy in which plaintiffs wish to engage is not prohibited by § 2339B. On the other hand, a person of ordinary intelligence would understand the term "service" to cover advocacy performed in coordination with, or at the direction of, a foreign terrorist organization.
*Holder v. Humanitarian Law Project*, 561 U.S. 1, 24 (2010).

Second, that the defendant did some act as a substantial step in an effort to provide expert advice or assistance to Hayat Tahrir al-Sham.

Third, that at the time the defendant attempted to provide services in the form of expert advice or assistance to Hayat Tahrir al-Sham, Hayat Tahrir al-Sham was a specially designated terrorist organization;

Fourth, that the defendant knew that Hayat Tahrir al-Sham was a designated foreign terrorist organization or had engaged in or was engaging in terrorist activity or terrorism when she attempted to provide the expert advice or assistance to Hayat Tahrir al-Sham; and

Fifth, that at the time the defendant attempted to provide expert advice or assistance to Hayat Tahrir al-Sham, the defendant was a national of the United States.

In determining whether the defendant is guilty under either these two courses of conduct, you are provided the following definitions:

The term "knowingly" means voluntarily and intentionally, and not because of mistake or accident. This definition both courses of conduct.

The term "personnel" means providing one or more individuals (who may be or include the defendant) to work under the direction and control of Hayat Tahrir al-Sham or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control. [2] You are advised that this definition applies to course of conduct one.

The term "expert advice or assistance" means advice or assistance derived from scientific, technical or other specialized knowledge. [3] You are advised that this definition applies to course of conduct two.

The term "foreign terrorist organization" has a particular meaning under the statute. In order for an organization to qualify as a "foreign terrorist organization," the organization must have been designated as such by the Secretary of State of the United States through a process established by law. I instruct you as a matter of fact that in this case, the parties have stipulated that at all times relevant to the charged conduct, Hayat Tahrir al-Sham was designated as a foreign terrorist

---

[2] 18 U.S.C. 2339B(h) states, "**Provision of personnel.** No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

[3] 18 U.S.C. 2339A(b)(3) states, "the term "expert advice or assistance" means advice or assistance derived from scientific, technical or other specialized knowledge."

organization by the Secretary of State. This definition and stipulation applies to both courses of conduct.

The term, "terrorist activity" includes any activity that if it had been committed in the United States, would have been unlawful under the laws of the United States or any State and that involves a threat, attempt, or conspiracy to use any explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain) with the intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property. This definition both courses of conduct.

The term, "terrorism" means premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents. This definition applies to both courses of conduct.

The term "national of the United States" means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States.[4] I instruct you as a matter of fact that in this case, the parties have stipulated that at all times relevant to the charged conduct that the defendant was and is a national of the United States. This definition and stipulation applies to both courses of conduct.

## UNANIMITY INSTRUCTION

If you are convinced beyond a reasonable doubt that the government has established all of the elements for either or both courses of conduct above in Count I, you may find the defendant guilty of Count I. But in order to return a guilty verdict, all of you must agree on at least one of the courses of conduct That is all of you must agree that the government proved beyond a reasonable doubt that the defendant attempted to provided material support to Hayat Tahrir al-Sham in the form of personnel; or, all of you must agree that the government proved beyond a reasonable doubt that the defendant attempted to provide material support in the form of services of Hayat Tahrir al-Sham.[5]

---

[4] Section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22))

[5] The existence of "multiple factual bases" in a charge warrants a special unanimity instruction where (1) the nature of the evidence is exceptionally complex or the alternative specifications are contradictory or only marginally related to each other; or (2) there is a variance between indictment and proof at trial; or (3) there is tangible indication of jury confusion, as when the jury has asked questions or the court has given regular or supplementary instructions that create a significant risk of nonunanimity. [***11] *United States v. Miller*, 734 F.3d 530, 538-39 (6th Cir. 2013) (quoting *United States v. Damra*, 621 F.3d 474, 504-05 (6th Cir. 2010)).

United States v. Hendrickson, 822 F.3d 812, 822-23 (6th Cir. 2016)

# COUNT THREE - TAMPERING WITH EVIDENCE

Count Three charges the defendant with corruptly altering, destroying, mutilating, or concealing records, OR attempting to corruptly alter, destroy, mutilate, or conceal a record and document, including, but not limited to, contact information, text messages, electronic communications, and a cell phone, with the intent to impair the record and document's integrity and availability for use in an official proceeding, namely, a grand jury investigation into a possible violation of Title 18, United States Code, Section 2339B(a)(l).

For you to find the defendant guilty of this offense, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:

First, that the defendant altered, destroyed, mutilated, or concealed a record, document, or other object including, but not limited to, contact information, text messages, electronic communications, and a cell phone OR attempted to alter, destroy, mutilate, or conceal a record, document, or other object including, but not limited to, contact information, text messages, electronic communications, and a cell phone;

Second, the defendant acted knowingly; and

Third, the defendant acted corruptly.

With regards to the second element, the government must prove beyond a reasonable doubt is that the defendant acted with the intent to impair the object's integrity or availability in an official proceeding. The law does not require that the grand jury proceeding be pending at the time of defendant's actions as long as the proceeding was foreseeable such that defendant knew that his actions were likely to affect the proceeding. In addition, the government does not have to prove that defendant knew that the proceeding would be in (e.g., federal court).[6]

---

[6] **United States Supreme Court:** Arthur Andersen LLP v. United States, 544 U.S. 696, 125 S. Ct. 2129, 161 L. Ed. 2d 1008 (2005). In *Arthur Andersen LLP v. United States*, the Supreme Court, in addressing the elements of a violation of section 1512(b)(2)(A) and (B), held that there must be a nexus between the defendant's conduct and the "official proceeding." The Court noted that section 1512(e)(1) provides that the proceeding "need not be pending … at the time of the offense," but that it is "quite another [thing] to say that a proceeding need not even be foreseen" at that time. Thus, the Court made clear that if a defendant lacks the knowledge that a particular official proceeding is foreseeable, then he cannot have the required intent to obstruct it. The Sixth Circuit has not definitively extended this nexus requirement to 1512(c)(1). *See United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009). However, every court that has ruled on the issue has extended the nexus requirement to §1512(c)(1). See e.g. *United States v. Friske*, 640 F.3d 1288, 1292 (11th Cir. 2011)(holding the government was required to prove that the defendant knew of, or at least foresaw, the forfeiture proceeding); *United States v. Bennett*, 664 F.3d 997 (5th Cir. 2011), vacated on other grounds, 133 S. Ct. 71 (2012) ( which applied *Arthur Anderson* to require a nexus for charges under Section 1512(c)(2*)); United States v. Reich*, 479 F.3d 179 (2nd Cir. 2007)(requiring a nexus in the context of charges brought pursuant to Section1512(c)(2)); s*ee also United States v. Suarez*, No. 5:13 CR 420, 2014 U.S. Dist. LEXIS 63682 (N.D. Ohio May 8, 2014) (concluding that "the government must establish a nexus between the corrupt conduct and an official proceeding.") *Id.* at *11-12.

With regards to the third element, you are advised that act "corruptly" means to act with an improper purpose and to engage in conduct knowingly and dishonestly and with the intent to obstruct, impede or influence the due administration of justice.

# **IMPLICIT BIAS**

We all have feelings, assumptions, perceptions, fears, and stereotypes about others. Some biases we are aware of and others we might not be fully aware of, which is why they are called "implicit" or "unconscious biases." No matter how unbiased we think we are, our brains are hardwired to make unconscious decisions. We look at others, and filter what they say, through the lens of our own personal experience and background. Because we all do this, we often see life — and evaluate evidence — in a way that tends to favor people who are like ourselves or who have had life experiences like our own. We can also have biases about people like ourselves. One common example is the automatic association of male with career and female with family. Bias can affect our thoughts, how we remember what we see and hear, whom we believe or disbelieve, and how we make important decisions.

As jurors you are being asked to make an important decision in this case. You must:

1. Take the time you need to reflect carefully and thoughtfully about the evidence.

2. Think about why you are making the decision you are making and examine it for bias. Reconsider your first impressions of the people and the evidence in this case. If the people involved in this case were from different backgrounds, for example, richer or poorer, more or less educated, older or younger, or of a
different gender, gender identity, race, religion, or sexual orientation, would you still view them, and the evidence, the same way?

3. Listen to one another. You must carefully evaluate the evidence and resist and help each other resist any urge to reach a verdict influenced by bias for or against any party or Witness. Each of you have different backgrounds and will be viewing this case in light of your own insights, assumptions, and biases.
Listening to different perspectives may help you to better identify the possible effects these hidden biases may have on decision-making.

4. Resist jumping to conclusions based on personal likes or dislikes generalizations, gut feelings, prejudices, sympathies, stereotypes, or unconscious biases. The law demands that you make a fair decision, based solely on the evidence, your individual evaluations of that evidence, your reason and common sense, and these instructions.[7]

---

[7] Footnote re this instruction is used in federal courts around the country. The Middle District of Tennessee gives an implicit bias instruction.

# **FIRST AMENDMENT PROTECTED SPEECH**

The First Amendment to the United States Constitution guarantees to all persons in the United States the right to freedom of speech, freedom of religion, and freedom of association. No one can be convicted of a crime based only on her beliefs, her expression of those beliefs, or her associations.

The Supreme Court holds that expression is protected unless the defendant's words both are intended to incite or produce imminent lawless action and are actually likely to incite or produce such action.[8] In other words, there must be a clear danger of immediate violence.[9] Under this standard, mere advocacy, even advocacy of unlawful acts or highly offensive ideas, is protected.

Defendant contends that her discussion of events and politics in Syria and elsewhere, and expression of her opinion about them, represent speech and association protected by the First Amendment, and do not constitute the offense of material support, which requires actual conduct.[10]

While a defendant's statements may be relevant to her intent or knowledge, mere advocacy, expression, and association are not sufficient to establish the crime of material support for terrorism.

---

[8] *Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969) (noting that "[n]either the indictment nor the trial judge's instructions to the jury in any way refined the statute's bald definition of the crime in terms of mere advocacy not distinguished from incitement to imminent lawless action").

[9] In the Supreme Court case, *Whitney v. California*, Justice Louis Brandeis stated in his concurring opinion: "Whenever the fundamental rights of free speech and assembly are alleged to have been invaded, it must remain open to a defendant to present the issue whether there actually did exist at the time a clear danger; whether the danger, if any, was imminent; and whether the evil apprehended was one so substantial as to justify the stringent restriction interposed by the legislature... In order to support a finding of clear and present danger, it must be shown that immediate serious violence was to be expected[.]" 274 U.S. 357, 378-379 (1927), J. Brandeis, concurring.

[10] *Holder v. Humanitarian Law Project*, 561 U.S. 1, 37 (2010) (distinguishing speech from conduct under the material support statute); *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 349 (2010) ("If the First Amendment has any force, it prohibits Congress from fining or jailing citizens, or associations of citizens, for simply engaging in political speech").