IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff, | )<br>)<br>)<br>) | |
| v. | )<br>) | Case No.: 2:19-cr-00013 |
| GEORGIANNA A.M. GIAMPIETRO<br>Defendant. | )<br>)<br>) | Chief Judge Waverly D. Crenshaw, Jr. |

## MOTION IN LIMINE TO PROHIBIT
## THE CONSTRUCTIVE AMENDMENT OF COUNT ONE
## AND PREJUDICIAL VARIANCE FROM THE ALLEGATIONS OF COUNT ONE

Comes now the defendant, Georgianna Giampietro, through counsel, and moves that this Court prohibit evidence concerning the alleged financial support of Hayat Tahrir Al-Sham ("HTS") as an alternative theory of guilt to Count One of the Indictment as a constructive amendment of Count One, in violation of the Fifth Amendment, and prohibit evidence concerning the concerning the financial transactions as a prejudicial variance from Count One.

**A. Basis for the Motion**

The defendant is currently charged in Count One of the Superceding Indictment as follows:

> Beginning on or about February 22, 2018, and continuing until on or about October 23,2018, in the Middle District of Tem1essee and elsewhere, the defendant, GEORGIANNA A.M. GIAMPIETRO, a national of the United States, did knowingly attempt to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b)(l), *to wit: personnel and services*, to a foreign terrorist organization, namely, the Hay'at Tahrir, also known as Hay'et Tahrir al-Sham, also known as Hayat Tahrir al-Sham, also known as HTS, which at all times relevant to this indictment was designated by the Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, knowing that the organization was a designated foreign terrorist

1

organization and knowing that the organization had engaged in, and engages in, terrorist activity and terrorism. In violation of Title 18, United States Code, Section 2339B(a)(l).

(emphasis added).

On August 14, 2021, the government sent undersigned counsel a letter indicating that it "intends to offer evidence to show that the defendant attempted to provide material support and resources to a foreign terrorist organization when she conducted financial transactions and provided money to various entities supportive of the Mujahedeen (i.e. fighters) in Syria, in addition to the manners previously identified in the Superseding Indictment: personnel and services." (Exhibit A.) This allegation that Ms. Giampietro provided material support to HTS in the form of currency or monetary instrument is outside of the conduct charged in Count One.

B. Background

On August 14, 2019 the government issued an Indictment in this case that charged Ms. Giampietro with one Count of aiding and abetting an attempt to provide material support, in the form of personnel and services, to HTS between September 23, 2018 and October 23, 2018. On December 18, 2018, the government issued a Superceding Indictment, as set out above, charging the defendant with attempting to provide material support to HTS by providing personnel and services.

From the charge and discovery, the defense understood that the Superseding Indictment charged Ms. Giampietro with attempting to provide material support to HTS by attempting to provide one or more persons, which could include herself, to work under the direction or control of HTS, or attempting to provide some service to HTS under the direction and control of HTS. The indictment did not charge, and the defense did not understand it to include, providing financial

2

resources. That understanding was furthered by the government's Notice of 404(b) filing of May 22, 2020, in which the government stated that Count One was:

> based on evidence that GIAMPIETRO introduced an undercover FBI employee ("UCE-1") and her purported husband, another undercover FBI employee ("UCE-2"), to Individual A, the Middle-East based user of a social media account, whom GIAMPIETRO believed to be supportive of members of terrorist organizations operating in Syria, and whom GIAMPIETRO also believed could facilitate the safe travel of UCE-1 and UCE-2 into Syria to join the conflict there. GIAMPIETRO did so after planning to travel to Syria herself to marry her "fiancé," a foreign fighter in Syria, and after posting numerous images to her social media profile expressing sympathy for and solidarity with foreign fighters operating in Syria as well as antipathy toward the United States.

Doc. 102 at 2.

On March 1, 2021 the government again reiterated in its Response to Ms. Giampietro's second 404(b) Motion in Limine that "… GIAMPIETRO's intent in providing UCE-1 with Individual A's contact information will be a—if not the—central issue at trial…". Doc. 170 at 1. That is not to say that the defense was not aware of the Western Union transfers which were provided in discovery. The defense, however, considered this to be other evidence of wrongdoing rather than charged conduct, and therefore litigated this issue in the context of 404(b) rather than as charged conduct. In its Response, the government did not assert that the Western Union transfers were charged in the indictment but rather that they were intrinsic to Count One because they showed her willingness to support mujahideen. The government did not assert that it was actually charged conduct.

That position was consistent with the government's representations to defense counsel on multiple occasions that it was considering superseding the indictment to charge Ms. Giampietro's Western Union transfers to individuals in Turkey as a violation of either 18 U.S.C. 2339C (prohibitions against the financing of terrorism) or 18 U.S.C. 2339B. As recently as June 2021, the government informed the defense that it was awaiting approval from Main Justice for the charge

and anticipated a new Superseding Indictment prior to August 1, 2021. Instead of obtaining a second Superseding Indictment, perhaps because the government could not obtain permission to alternatively indict or perhaps the grand jury refused to indict, the government now argues that the conduct was charged all along under Count One. While the government is correct that it could have pursued a Second Superseding Indictment to charge the financial transactions, government counsel are mistaken in the belief that they can obtain a conviction on this alternative theory to Count One, because the government is not a grand jury.

## C. Argument

Convicting Ms. Giampietro of Count One on the basis of Western Union financial payments would constitute a constructive amendment of the indictment. Further, even if the jury instructions exclude the Western Union payments as a theory of guilt, admitting the evidence concerning the payments would constitute a prejudicial variance of the indictment by providing the jury with an uncharged alternative theory of guilt.

"An indictment may be the subject of an actual amendment, a constructive amendment, or a variance." *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007). Amendments occur "when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed on them." *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989) (citations omitted). Amendments are considered prejudicial per se, warranting reversal of a conviction, because they "directly infringe upon the Fifth Amendment guarantee" to hold a defendant answerable only for those charges levied by a grand jury. *Id*.

A variance occurs "when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment" and

4

are not reversible error unless the defendant can prove it prejudiced his defense. *Id*; *see also United States v. Hathaway*, 798 F.2d 902, 910-11 (6th Cir. 1986) (citations omitted).

Between an amendment and a variance is a constructive amendment. Constructive amendments are variances occurring when an indictment's terms are effectively altered by the presentation of evidence and jury instructions that "so modify essential elements of the offense charged that there is a substantial likelihood the defendant [was] convicted of an offense other than that charged in the indictment." *Hathaway*, 798 F.2d at 910; *see also United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989). The Sixth Circuit has held that a constructive amendment occurs where both the jury instructions and the evidence at trial vary from the indictment to broaden the basis for conviction. *See United States v. Cusmano*, 659 F.2d 714, 718 (6th Cir. 1981); *see also United States v. Kuehne*, 547 F.3d 667, 685 (6th Cir. 2008).

**1. Allowing the government to present unrelated evidence of uncharged financial conduct will result in a constructive amendment of the indictment.**

Permitting the government to pursue a theory of guilt on Count One based on the financial transfers set out in Attachment A would constructively amend Count One by broadening the basis for conviction beyond what is contained in the superseding indictment. To reach this conclusion the Court need look no farther than the language of the incitement specifying that Ms Giampietro "did knowingly attempt to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b)(l), *to wit: personnel and services*…".

Personnel and services are among the laundry list of acts which are defined as material support under 18 U.S.C. § 2339A(b)(1).[1] Out of § 2339A(b)(1)'s list, the government selected

---

[1] 18 U.S.C. § 2339A(b)(1) defines material support or resources as: any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities,

5

personnel and services. "Personnel" is defined by § 2339B as "1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization."

The term "services" is not defined in either §2339A or §2339B but has been defined be the United States Supreme Court as follows:

> "Service" similarly refers to concerted activity, not independent advocacy. *See* Webster's Third New International Dictionary 2075 (1993) (defining "service" to mean "the performance of work commanded or paid for by another: a servant's duty: attendance on a superior"; or "an act done for the benefit or at the command of another") and noting that the term services "[c]ontext confirms that ordinary meaning"...

*Holder v. Humanitarian Law Project,* 561 U.S. 1, 23 (2010).

Taken together, the terms of the indictment make clear that the defendant is charged with attempting to perform work for HTS herself or attempting to provide someone else to perform work on HTS's behalf in some capacity. The effect of the "to wit", which means "that is,"[2] is to limit the conduct alleged as material support to attempt to perform work herself or to provide others to provide work for HTS.

Support in the form of the Western Union transfers, which the government's letter claims is an alternative basis for liability to Count One of the Superseding Indictment are also included in § 2339A(b)(1)'s laundry list which includes "tangible property" including "currency or monetary instruments." This form of material support, however, is distinctively different from the work forms of support. It requires no service on the part of the defendant, and no person to work under the direction and control of HTS. Instead, the tangible property can simply be a gift or providing payment to the organization for a service. Permitting the government to seek a

---

weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

[2] *United States v. D'Amelio*, 636 F. Supp. 2d 234, 245 (S.D.N.Y. 2009).

6

conviction on either attempting to provide a service or tangible property impermissibly broadens the basis of conviction beyond the charged conduct in Count One of the Superseding Indictment.

To reach this conclusion, this Court need only look to *Stirone v. United States*, 361 U.S. 212 (1960). In *Stirone*, the district judge, over defendant's objection, permitted the government to offer evidence of an effect on interstate commerce in violation of the Hobbs Act not only on the basis of sand brought into Pennsylvania from other states, as had been charged in the indictment, but also in steel shipments from the steel plant in Pennsylvania into Michigan and Kentucky. *Id*. at 214. A unanimous Court overturned the conviction finding that because the alternative basis of steel shipments had not been included in the indictment the Court could not know whether the grand jury included steel as a basis for violation of the charge. *Id.* at 219.

In so doing, the Court explained

> The trial court charged the jury, there are two essential elements of a Hobbs Act crime: interference with commerce, and extortion. Both elements have to be charged. Neither is surplusage and neither can be treated as surplusage. The charge that interstate commerce is affected is critical since the Federal Government's jurisdiction of this crime rests only on that interference. It follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened. The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment. Here, as in the Bain case, we cannot know whether the grand jury would have included in its indictment a charge that commerce in steel from a nonexistent steel mill had been interfered with. Yet because of the court's admission of evidence and under its charge this might have been the basis upon which the trial jury convicted petitioner. If so, he was convicted on a charge the grand jury never made against him. This was fatal error.

*Id* at 218-219.

The government, like the prosecution in *Stirone*, plead a particular means by which the statute was violated: "personnel" and "services." Like *Stirone*, it is clear that the government now

7

seeks to pursue an additional theory of guilt to Count One of the Superseding Indictment by showing "that the defendant attempted to provide material support and resources to a foreign terrorist organization when she conducted financial transactions and provided money to various entities supportive of the Mujahedeen (i.e. fighters) in Syria, in addition to the manners previously identified in the Superseding Indictment…".[3] If there was any doubt as to the government's intentions, that doubt is eliminated by the proposed jury instructions provided to the defense, wherein the government included the uncharged Western Union transfers in the definitions of what would constitute material support in this case.

Here, like *Stirone*, the activity that constitutes material support is an essential element and not surplusage. *See United States v. Awan*, 459 F. Supp. 2d 167, 175 (E.D.N.Y. 2006), aff'd 384 F. App'x 9 (2d Cir. 2010) (summary order) (rejecting an indictment alleging violations of Section 2339A because it only used "the generic expression 'material support,' as defined in 18 U.S.C. § 2339A(b), without specifying which of a variety of activities, any one of which would be criminal, that the defendant must defend against or which the grand jury considered."). Judge Sifton's observations in *Awan* noted that between money and personnel, the two material support theories the government was pursuing, "there [was] no way of knowing whether the grand jury considered both categories (or, for that matter, either) of those activities under the general heading of material support." *Id.*

Unlike *Awan*, the government here did allege a means of material support in the Superseding Indictment: personnel and services. The consequence is that this Court can be sure the grand jury considered and returned an indictment on the theory of attempting to provide personnel and services. But, when it comes to the alternative theory the defendant provided

---

[3] Paragraph 1 of Attachment A, the government's letter to counsel.

8

monetary support to HTS, the Superseding Indictment's silence leaves open the question of whether the alternative basis of providing material support to HTS in the form of monetary contributions was ever before the grand jury; or even if it was, whether the grand jury returned the indictment on the basis of the alleged monetary contributions. As the Supreme Court held in *Stirone,* permitting conviction based on an alternative theory of guilt for an essential element that was not included in the indictment constitutes a constructive amendment of the charge in violation of the Fifth Amendment's grand jury requirement. The defendant therefore prays (1) that this Court find that an alternative theory of guilt to Count One of the Superseding Indictment on the basis of the alleged Western Union transfers is an impermissible constructive amendment in violation of the Fifth Amendment of Count One, (2) refuse to instruct on the monetary contribution alternative theory of guilt, and (3) prohibit the government from arguing that the Western Union transfers violated Count One of the Superseding Indictment.

**2. Evidence Concerning the alleged financial support of a terrorist organization amounts to a prejudicial variance.**

Refusing to instruct on the on the alternative theory of monetary contributions and prohibiting argument, however, is not enough to prevent unlawful prejudice from the presentation of evidence concerning the theory of material support based on the Western Union transfers. In *United States v. Mize,* 814 F.3d 401 (6th Cir. 2016), the Sixth Circuit held that even where the trial court instructions prevented a constructive amendment of the indictment, the government's focus on evidence concerning an uncharged conspiracy to money launder constituted a prejudicial variance from the indictment.

9

Case 2:19-cr-00013    Document 228    Filed 08/18/21    Page 9 of 11 PageID #: 2667

The Sixth Circuit held as follows:

> [p]rejudice in this context means whether Defendants were found guilty of a different conspiracy from that charged in the indictment, not whether the evidence was sufficient to justify the verdict...We likewise reject the government's argument that any danger of prejudice was minimized by the district court's instructions to the jury… While that may be the general rule, it does not apply here. Because of the sheer volume of evidence introduced to establish the [separate] conspiracy, it is substantially less likely that the court's instructions cured the danger of creating unfair prejudice.
>
> *Id*. at 412.

The danger here is exactly what the Sixth Circuit cautioned against in *Mize*. The government clearly believes that its evidence is sufficient to prove that defendant's alleged provision of "money to various entities supportive of the Mujahedeen" constitutes attempted material support. The government's anticipated witness list and proffered testimony shows at least five witnesses devoted exclusively to this issue, and at least four of the remaining witness are expected to testify regarding the defendant's alleged financial support of HTS. The defendant denies that the payments were intended to support HTS, that the charities were under the direction and control of HTS, or that she intended the payments to support hostilities in Syria. In support of her claim the defendant will offer expert testimony, her charitable contributions to children, and evidence that the payments were to individuals in need. In short, if the evidence is permitted, then what will occur is a trial within a trial, which like in *Mize* assumes a disproportional role on the question of guilt on the actual charged conduct.

All of this is because the government, despite having two years and repeatedly indicating its intent to go through the front door by seeking a Second Superseding Indictment charging the Western Union payments to individuals in Turkey as material support, now wants to go through the backdoor to present this alternative basis of liability to the jury as evidence that the defendant violated Count One. For these reasons, the defendant prays that this Court will find that offering

evidence of uncharged financial transactions as material support constitutes a constructive amendment, or in the alternative, a prejudicial variance from the charged conduct.

## Conclusion

This Court should exclude evidence of Ms. Giampietro's financial transactions because they are unrelated to the charged conduct, and instead relate to an alternative basis of liability that was not before the grand jury. A conviction on this alternative theory of liability would constitute reversible error on the basis of a constructive amendment to the Superceding Indictment.

Respectfully submitted,

By: /s/ Charles Swift
Charles D. Swift,
*Pro Hac Vice* Attorney for Giampietro
CLCMA
100 North Central Expy., Suite 1010
Richardson, TX 75080
(972) 914-2507

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of August, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

By: /s/ Charles Swift
Charles D. Swift
*Pro Hac Vice* Attorney for Giampietro
CLCMA
100 North Central Expy., Suite 1010
Richardson, TX 75080
(972) 914-2507