IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>    Plaintiff, )<br> )<br> )<br>v. )<br> )<br> )<br>GEORGIANNA A.M. GIAMPIETRO )<br>    Defendant. ) | Case No.: 2:19-cr-00013<br><br>Chief Judge Waverly D. Crenshaw, Jr. |

## MOTION IN LIMINE TO PROHIBIT THE INTRODUCTION OF OPEN SOURCE MATERIAL RELATED TO MERCIFUL HAND AND AL-SADAQAH SYRIA AS HEARSAY

Ms. Georgianna A.M. Giampietro, the Defendant ("Defendant"), through undersigned counsel, respectfully submits this Motion in Limine regarding open-source material on charities Ms. Giampietro allegedly donated to or was in contact with. Specifically, the Defendant through counsel, moves, in limine, for this Court to prohibit the government from introducing the following evidence in support of its case-in-chief:

- Open source article on Merciful Hands from MEMRI[1]
- Open source article on Merciful Hands from SITE Intelligence Group[2]
- Open-source articles on Al-Sadaqah Syria from MEMRI and Vimeo[3]
- Two open sources articles on UK women pleading guilty to donating money to Merciful Hands from the Daily Mail Online[4]

Defendant respectfully requests that this Court find that the evidence concerning each of the above topics is inadmissible hearsay pursuant to Federal Rules of Evidence 801-03, they do not qualify as learned treatises, and may not be relied upon by any lay or expert witness as the basis for testimony.

---

[1] Attached as Exhibit A.
[2] Attached as Exhibit B.
[3] Attached as Exhibit C.
[4] Attached as Exhibit D.

1

# INTRODUCTION

The government has indicated its intent to offer evidence concerning certain Western Union transfers the government alleges were made to the charity Merciful Hands, and open source material on Merciful Hands, as an alternative theory of guilt for Count One by providing material resources in the form of funds to Hayat Tahrir Al-Sham ("HTS").[5] In support of their theory that Merciful Hands acted under the control and direction of HTS the government provided four open source articles ("The Articles") related to Merciful Hands. (attached hereto as Exhibit A). These articles, originating from various online sources, imply that Merciful Hands provides funds to Al Qaeda; however, they do not offer evidentiary support for this assertion, nor do they originate from credible or authoritative sources with sufficient indicia of accuracy. Similar open-source articles related to the charity Al-Sadaqah Syria were also provided to imply Al-Sadaqah Syria supported terrorist organizations.

# ARGUMENT

### A. The Articles are Inadmissible Hearsay

Hearsay pursuant to the Federal Rules of Evidence is defined as out of court statements offered to prove the truth of the matter asserted. Fed. R. Evid. 801. Unless covered by an established exception to the hearsay rule, such statements are inadmissible against a Defendant. The Articles sought to be introduced by the government are out of court statements published in unreliable online sources and submitted for the purpose of bringing the truth of their contents before the court. As discussed *infra,* the Articles do not fall into any established hearsay exception and therefore should be excluded.

---

[5] The defense, by separate motion, objects to the government's attempt to prosecute Count One under a theory of providing financial resources to HTS as a variance from the Indictment. Doc. 228. The Superseding Indictment charges personnel and services and the government has always outlined that its theory that charge relates to Ms. Giampietro's provision of Individual A's contact information to UCE-1 and UCE-2.

### *i. The Articles are out of Court Statements Submitted for the Truth of the Matter Asserted*

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Cave v. Warden, N. Cent. Corr. Complex,* No. 1:16-cv-929, 2017 U.S. Dist. LEXIS 201357, at *12-13 (S.D. Ohio Dec. 7, 2017) (citing Fed. R. Evid. 801 (c)). To constitute hearsay then, two elements must be met: first, the statement must have been made, verbally or in writing, out of court, and second, it must be offered to prove the truth of the matter asserted therein. *Id.* Both elements are present here.

The Articles are written statements made outside of court in circumstances unrelated to the Defendant's alleged actions or the charges brought against her. The government attempts to introduce them as evidence of the truth of their contents. Specifically, the government has produced the Articles in order to show that Merciful Hands, a charity donated to by Defendant, fundraises on behalf of terrorist organizations including Al Qaeda, and therefore Defendant's donations are necessarily evidence of her support for such organizations. *See Anderson v. United States,* 417 U.S. 211, 219 (1974) (explaining that [o]ut-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted."); *cf Spurlock v. Fox,* No. 3:09-cv-0756, 2010 U.S. U.S. Dist. LEXIS 100366, at *31 (M.D. Tenn. Sep. 23, 2010) (finding that evidence was admissible non-hearsay where it was not submitted for the truth of the matter asserted, but rather to show the effect that the out of court statement had on the individual's state of mind); *cf United States v. Thurman,* 915 F. Supp. 2d 836, 867 (W.D. Ky. 2012) (finding that out of court statements were admissible background information where the mere fact of their existence had significance separate from the truth of the statements themselves). The only plausible relevance of the Articles to the government's case is to show that Merciful Hands funds terrorism, and therefore any financial support offered by Defendant also went to support terrorist organizations. These kinds of out of court statements, introduced for their truth is prohibited under the rules of hearsay.

3

Because the Articles fall squarely within the definition for hearsay, the court must evaluate whether they are covered by any established exception to the hearsay rules. *United States v. Chavez*, 951 F.3d 349, 358 (6th Cir. 2020) ("an out-of-court assertion (or 'statement') is hearsay if it offered to prove the truth of the matter asserted….[h]earsay is inadmissible unless it falls within an exception.") The recognized exceptions to the hearsay rule are numerous; however, the only potentially applicable exception here is for submission of a 'learned treatise[6].' As discussed in greater detail below, the government's use of the Articles does not satisfy the requirements of this exception and therefore they remain inadmissible. *See* Fed. R. Evid. 803(18).

### ii. *The Articles do not Qualify Under the Learned Treatise Exception to Hearsay*

Fed. R. Evid. 803(18) creates an exception to the hearsay rule for out of court statements that qualify as "learned treatises." The exception provides that: "[t]o the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in *published* treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, *established as a reliable authority* by the testimony or admission of the witness or by other expert testimony or by judicial notice[;] [i]f admitted, the statements may be read into evidence but may not be received as exhibits." *United States v. Martinez*, 588 F.3d 301, 311-12 (6th Cir. 2009) (emphasis in the original) (citing Fed. R. Evid. 803(18)). Broken down, in order for otherwise inadmissible hearsay to fall within the learned treatise exception it must be (1) called to the attention of an expert witness on cross-examination or relied upon on direct examination; and (2) it must be a reliable authority, as established by the expert's admission or testimony, by another expert's testimony, or by judicial notice. *Id.* It is the "burden of the proponent of the material to show that [it] fits within the learned treatise exception."

---

[6] *See, e.g.*, Fed. R. Evid. 803, 804, 807.

*Campos v. MTD Prods.,* No. 2:07-CV-00029, 2009 U.S. Dist. LEXIS 63846, at *54-56 (M.D. Tenn. July 24, 2009). Here, the Articles, even if relied upon or called to the attention of an expert witness, do not bear sufficient indicia of reliability to warrant admission, nor is the court able to take judicial notice of their contents.

### *1. The Articles are Not Sufficiently Reliable Sources*

The reasoning underlying the learned treatise exception to the hearsay rule is "that learned treatises usually have sufficient assurances of trustworthiness to justify equating them with the live testimony of an expert." *United States v Martinez,* 588 F.3d 301, 311-12 (6th Cir. 2009) (citing *In re Welding Fume Prods. Liab. Litig.,* 534 F. Supp. 2d 761, 765 (N.D. Ohio 2008)) (internal quotations omitted). "[A]uthors of treatises have no bias in any particular case [, and] they are acutely aware that their material will be read and evaluated by others in their field, and accordingly feel a strong pressure to be accurate." *Id* (citing 2 McCormick on Evidence § 321 (6th ed. 2006). The Sixth Circuit and its lower courts have recognized that a learned treatise must bear the appropriate "indicia of reliability" in order to be deemed admissible. Factors indicating sufficient reliability include whether the purported treatise was "subjected to peer review or public scrutiny" and if it was "written primarily for professions…with the reputation of the writer at stake." *Id.* (citing *Schneider v. Revici,* 817 F.2d 987, 991 (2d Cir. 1987). With respect to sources like the ones at issue here, the Middle District of Tennessee has rejected an argument that a number of "informal publications…consisting largely of Internet publications and newspaper or magazine articles" were admissible as learned treatises, where "the only support the plaintiff offers for the conclusion that these materials…are learned treatises is that his expert" provided a list of "supposedly reliable authorities, of which the articles…were apparently included." *Campos,* 2009 U.S. Dist. Lexis 63846, at *54-56. The Court declined to rely on this assurance, and noted that, in the absence of any information showing that the specific materials did actually satisfy the requirements of a learned treatise, the plaintiff's argument

that the materials could be characterized as such "strikes the court as bizarre." *Id; see also Conde v. Velsicol Chem. Corp.,* 804 F. Supp. 972, 990 (S.D. Ohio 1992) (explaining that an article could not be considered a learned treatise in part because the expert has not submitted an affidavit explaining that they would rely on any specific factual assertions from that article). Credibility is at the heart of the learned treatise exception to the hearsay rule; without it, the purpose of the exception is eroded, and unreliable out of court statements could be introduced in court for the truth of their contents.

The specific Articles at issue here suffer from irreparable bias, and all indicia of professional reliability are absent. The government produced 6 Articles in total: 2 from the Daily Mail, one from 'SITE Intelligence Group', and one from MEMRI regarding Merciful Hands, as well as two articles from MEMRI about Al-Sadaqah Syria. None of these articles are a matter of public record, nor do they come from governmental sources. Two of the three sources (MEMRI and SITE) are private entities that have been criticized for anti-Muslim bias; both are run by prominent Israeli activists. The third, the Daily Mail, is a UK based newspaper. Its tabloid-style journalism has been repeatedly criticized as inaccurate or misleading. Notably, none of these sources are academic in nature, nor are they produced as a resource for other professionals in a specific field.

The first two articles submitted come from the Daily Mail, a highly circulated newspaper in the U.K. that is published in a tabloid format. The articles were both published in March of 2019 (after the events that led to the charges brought against Defendant). They do not contain any professional, scientific or academic information, but merely describe in broad terms a separate case in which an individual characterized as a 'former wag and beauty queen' married an 'Islamist fighter,' and was charged with funding terrorism, purportedly based in part on her support of Merciful Hands. The Articles do not cite to any authoritative reports involving Merciful Hands, nor does the author purport to be an expert, or even an authority, on the subject of terrorism fundraising. Furthermore, the Daily Mail itself has repeatedly been criticized by other news sources for its lack

6

of appropriate journalistic standards for accuracy. For example, in 2017, Wikipedia (a source that itself is often faulted as lacking in credibility) banned the use of the Daily Mail as a source for its website, citing concerns, even by its own standards, about the "Daily mail's reputation for poor fact checking, sensationalism and flat-out fabrication."[7] The Guardian has similarly published articles highlighting concerns about the trustworthiness of the Daily Mail's content, explaining in one article how a third-party startup created to analyze the trustworthiness of internet sources gave the Mail online, "one out of five on credibility—the same level as the Kremlin-backed RT news service."[8]

The third Article comes from the website for 'SITE' Intelligence group, and was also published in March of 2019. SITE describes itself as "an American non-governmental organization that tracks online activity of white supremacist and jihadist organizations." It is a private entity run by a private individual; it is not a source of government verified data nor does it purport to provide academic reports or studies. SITE is founded and led by Israeli Analyst Rita Katz. Ms. Katz has built her career on being a self-described "terrorist hunter."[9] In interviews, she has explained how she attends Muslim events, including fundraisers, conferences and events at mosques, dressed as a Muslim woman, in an attempt to infiltrate the community and root out radicalization. This kind of bias is disqualifying under the learned treatise exception, where the nature of a treatise is based in large part on the impartiality of its source. *See Martinez,* 588 F.3d at 311-12 ("[A]uthors of treatises have no bias in any particular case.") Furthermore, the substance of the Article does not actually

---

[7] Jasper Jackson, *Wikipedia Bans Daily Mail as Unreliable Source for Website,* The Guardian (Feb. 8, 2017), https://www.theguardian.com/technology/2017/feb/08/wikipedia-bans-daily-mail-as-unreliable-source-for-website.

[8] Jim Waterson, *Don't Trust Daily Mail Website, Microsoft Browser Warns Users,* The Guardian (Jan. 23, 2019), https://www.theguardian.com/media/2019/jan/23/dont-trust-daily-mail-website-microsoft-browser-warns-users.

[9] *The Terrorist Hunter Speaks, An amazing story of an Iraqi Jew at the heart of dismantling terrorism,* National Review, (June 26, 2003) https://web.archive.org/web/20100313013715/http://article.nationalreview.com/269218/the-terrorist-hunter-speaks/q-a

7

describe fundraising on behalf of terrorist groups; it describes Merciful Hands fundraising efforts and provision of food packets for families in need. It is, in short, both inadmissible and irrelevant.

The last three articles come from MEMRI (the Middle East Media Research Institute). These Articles purport to describe how Merciful Hands uses services like bitcoin and Whatsapp to fundraise on behalf of Syrian 'jihadist' groups, under the guise of providing humanitarian aid. The articles about Al Sadaqah Syria purport to show that they provide funds to fighters in Syria for weapons and other aid.

MEMRI was co-founded by former Israeli military intelligence officer Yigal Carmon and Israeli-American political scientist Meyrav Wurmser; its' stated purpose is to "bridge the language gap between the West and the middle East…providing timely translations of Arabic, Farsi, Urdu-Pashtu, Dari, Turkish, Russian and Chinese media, as well as original analysis."[10] However, "[d]espite these high-minded statements[,]" "the stories selected by Memri for translation follow a familiar pattern: either they reflect badly on the character of Arabs or they in some way further the political agenda of Israel."[11] The Articles produced here are no exception to this trend. And similar to the Daily Mail Articles, are merely a broad journalistic report on alleged fundraising efforts by Merciful Hands, and Al- Sadaqah Syria. unrelated to Defendant herself. None of these sources meet the established reliability standards for a learned treatise and should be excluded as hearsay.

### 2. *They cannot be taken judicial notice of*

As noted above, the learned treatise exception provides that a sources propriety as a learned treatise may be established by either the testimony of an expert witness, or through the use of judicial notice. In addition to being insufficiently reliable to be admitted through the testimony of an expert witness, the Articles are similarly improper for judicial notice. Courts are permitted to take judicial

---

[10] Memri.org, https://www.memri.org/about (last visited August 13, 2021).
[11] Brian Whitaker, *Selective MEMRI,* The Guardian (Aug. 12, 2002), https://www.theguardian.com/world/2002/aug/12/worlddispatch.brianwhitaker.

8

Case 2:19-cr-00013   Document 229   Filed 08/18/21   Page 8 of 11 PageID #: 2679

notice of a fact when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Delozier v. Jacobs Eng'g Grp.,* No. 3:19-cv-451-TAV-HBG, 2021 U.S. Dist. LEXIS 60069, at *12-13 (E.D. Tenn. Feb. 19, 2021) (citing Fed. R. Civ. P. 201).

For the reasons described *supra,* the Articles produced here do not come from "sources whose accuracy cannot be reasonably questioned." Rather, they are sourced from non-academic online articles and websites, run by private organizations and individuals and marred by heavy indications of bias. *See United States v. Bonds,* 12 F.3d 540, 553 (6th Cir. 1993) (explaining that it would not take judicial notice of a National Research Committee of the national Academy of Sciences Report entitled "DNA Technology in Forensic Science[,]" because although there "is no dispute that the NRC Report exists,…there is considerable dispute over the significance of its contents."); *see also Arizona v. California,* 283 U.S. 423, 448 (1931) (noting that "judicial notice was taken…of the reports of Congressional committees.") The veracity of the contents of the Articles are subject to a great deal of reasonable dispute, as is the credibility of their sources. Further, in the Sixth Circuit, articles, "news reports[,] and similar sources cannot be judicially noticed for the truth of their contents" *Roane City v. Jacobs Eng'g Grp., Inc.,* No. 3:19-cv-206-TAV-HBG, 2020 (U.S. Dist. LEXIS 73491, at *12-13 (E.D. Tenn. Apr. 27, 2020) (citing *Platt v. Bd. of Comm'rs on Griev. & Discipline of the Ohio Supreme Court,* 894 F.3d 235, 245 (6th Cir. 2018). Instead, such sources can only be judicially noticed to show "that a fact was printed or 'that a collection of numerous articles…show that a fact was printed or widely known.'" *Id* (quoting *Bradacs v. Haley,* 58 F. Supp. 3d 499, 511 (D.S.C. 2014). A party's attempt to introduce news sources in order to "ask[] the court to consider statements in the articles" "runs afoul of the rule that notice of public documents is proper only for the fact of the documents existence, and not for the truth of the matters asserted therein."

*Platt*, 894 F.3d at 245 (explaining that the district court was "well within its discretion" to deny an individual's request that the court take notice of news reports contained in the public domain). Here, the Articles produced by the government may, at most, be admitted for the fact of their existence; but, similar to the party in *Platt,* the government seeks to use the substance of these articles to support their factual allegations against Defendant. Judicial notice is an inappropriate mechanism to introduce this kind of information. Accordingly, the Articles are insufficiently reliable for admission through either judicial notice, or through the use of expert testimony, and should be excluded.

> **B. In the Alternative, If the Court Finds That the Articles Do Qualify Under the Learned Treatise Exception, They May Not Be Submitted As an Exhibit**

Finally, to the extent that this Court finds that the Articles are admissible, Fed. R. Evid. 803(18) states that they "may not be introduced as exhibits[,]" but may only "be read into evidence and used by the parties on examination of expert witnesses." *Roach v. Hughes,* No. 4:13-CV-00136-JHM, 2016 U.S. Dist. LEXIS 192835, at *16-17 (W.D. Ky. Mar. 9, 2016). The Articles use is thus limited to discussing their contents on examination of an expert witness. *Id.* Although Fed. R. Evid. 803(18) "permits the contents of learned treatises to be used as substantive evidence, if established as a reliable authority, it does not permit them to be introduced as physical exhibits." *United States v. Phillips,* 515 F. Supp. 758, 761-62 (E.D. Ky. 1981). This limitation "was a deliberate compromise by the drafters of the rule to allow the use of such treatises while preventing them from having undue effects." *Id.*

## CONCLUSION

For the reasons set forth above, the defendant respectfully requests that this Court deny admission of the following evidence:

- Open source article on Merciful Hands from MEMRI
- Open source article on Merciful Hands from SITE Intelligence Group
- Open source articles on Al Sadaqah Syria from MEMRI

10

- Two open sources articles on UK women pleading guilty to donating money to Merciful Hands from the Daily Mail Online

as being inadmissible hearsay, they do not qualify as learned treatises, and may not be relied upon by any lay or expert witness as the basis for testimony.

Respectfully submitted this 18th day of August, 2021

By: /s/ Charles Swift
Charles D. Swift,
*Pro Hac Vice* Attorney for Giampietro
CLCMA
100 North Central Expy, Suite 1010
Richardson, TX 75080
(972) 914-2507

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of August, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

By: /s/ Charles Swift
Charles D. Swift,
*Pro Hac Vice* Attorney for Giampietro
CLCMA
100 North Central Expy, Suite 1010
Richardson, TX 75080
(972) 914-2507
