IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 2:19-cr-00013 |
| v. | ) | |
| | ) | Chief Judge Crenshaw |
| | ) | |
| GEORGIANNA A.M. GIAMPIETRO | ) | |

# UNITED STATES' WITNESS LIST FOR TRIAL ON SEPTEMBER 20, 2021

COMES NOW the United States of America, by and through the undersigned, and hereby files this witness list, identifying witnesses who may testify during trial in the above-referenced case, which is scheduled to begin on September 20, 2021. A brief summary of the topics on which each identified witness is expected to testify is also included herein.

*Identified Witnesses:*

1. **Blackwell, Jeffrey - Special Agent USDA, OIG**

Agent Blackwell is expected to testify regarding the defendant's participation in and receipt of funds from federal assistance programs for low-income individuals during the time in which she was donating money to organizations supporting the Mujahideen in Syria and the time she was soliciting others for money to pay off her student loan debt so that she could travel to Syria and marry an individual fighting on behalf of foreign terrorist organizations.

2. **Bennett, Lyndsey E. - Middle Tennessee State University Records Custodian**

Ms. Bennett is expected to identify, authenticate, and testify regarding records received from MTSU related to the defendant and classes she took while enrolled at MTSU, which are relevant to this investigation and the defendant's knowledge of what was happening in the Middle East and certain foreign terrorist organizations.

3. **Bloom, Mia**

Dr. Bloom will be offered as an expert and is expected to testify about the role of women in terrorism, including the activities undertaken by female jihadists and female jihadi supporters. She will describe the differing roles of women in HTS and ISIS and the differing roles of younger women and older women in each foreign terrorist organization. Dr. Bloom will help to explain

1

the meaning of jihad in its various forms, the genesis and meaning of the ideology reflected in the Islamic teachings and literature often used in radicalization efforts, and the meaning of terminology used in this context. She is also expected to testify about certain clerics, including Anwar Awlaki, and their philosophies as they relate to women. She will help to explain the radicalization process, with a focus on the radicalization of women. She will explain the movement from radicalization of thought to the radicalization of deed. Dr. Bloom is expected to testify about the differing recruitment methods used to reach different categories of women, depending on their anticipated role in the foreign terrorist organization. She will explain the role of online communications and certain social media platforms in the radicalization process and in the encouragement of terrorist support activities, the use of organizations posing as charities to fund terrorist activities, and the techniques used to travel undetected and internationally in support of jihadis.

4. **Bronstein, Stewart – Special Agent, FBI**

Agent Bronstein was present during the initial interview of witness Maram Ese and is expected to testify about that interview and the extraction of information from Ms. Ese's cellular telephone.

5. **Campbell, Rich – Special Agent, FBI**

Agent Campbell is expected to testify regarding his background, training, and experience and his duties as the current Division Coordinator for the FBI's Computer Analysis Response Team for the FBI's Memphis Division. Agent Campbell will also testify regarding his extraction and processing of any electronic items, such as the defendant's cellular telephone and computer, that were seized during this investigation. Finally, Agent Campbell may testify regarding electronic items that were sent to FBI headquarters for assistance related to the forensic analysis of any electronic devices seized during this investigation.

6. **Cannata III, Frank - PayPal Records Custodian**

Mr. Cannata is expected to identify, authenticate, and testify regarding records received from PayPal related to the defendant and this investigation.

7. **Carnright, Cassandra – Special Agent, FBI**

Agent Carnright was present during the interview of witness Shirin Yusupova and is expected to testify about that interview.

8. **Carter, Toby – Sergeant, Tennessee Highway Patrol**

Sergeant Carter is expected to testify regarding his employment with the Tennessee Highway Patrol and his duties in 2015, including his participation in the FBI's Joint Terrorism Task Force. As a result of his participation on that task force, Sergeant Carter received a referral from an analyst employed by the Westchester Intelligence Center (at the Westchester District Attorney's office) and related to potential criminal conduct being committed by the defendant. Sergeant Carter is further expected to testify his review of the materials received from the analyst,

including screenshots of postings made by the defendant, which resulted in the FBI opening an investigation into the defendant's potential involvement with terrorist organizations.

9. **Clark, Jennifer - Western Union Records Custodian**

Ms. Clark is expected to identify, authenticate, and testify regarding records received from Western Union related to the defendant and this investigation.

10. **Craig, Kelsey**

Ms. Craig was a friend of the defendant who is expected to testify regarding her observations of some radical postings the defendant made on social media, including an image on Instagram of the Statue of Liberty headless, burning, and holding a black flag with Arabic writing, and New York City burning in the background.

11. **Elvenaes, Alexandra**

Ms. Elvenaes is expected to testify regarding her employment as an analyst at the Westchester Intelligence Center (at the Westchester District Attorney's office) in 2015, during which she observed postings made by the defendant that concerned her and which she reported to law enforcement for follow-up. Such reporting is what led to the FBI investigation in this case.

12. **Ese, Maram**

Ms. Ese is expected to testify regarding meeting the defendant through online forums in or around September 2017 when Ms. Ese was a minor female. Ms. Ese is further expected to testify about the extremist views espoused by the defendant during the time that they knew each other. Ms. Ese is further expected to testify about her conversations with the defendant regarding the defendant's fiancé, who was a fighter in Syria, the influence the defendant had on Ms. Ese and her beliefs, and their discussions regarding traveling to Syria.

13. **Evans, Kirk**

Mr. Evans is the father of the defendant's minor son and with whom she shared joint custody during this investigation. During the investigation in this case, the defendant repeatedly discussed with other individuals her desire to move to Syria in order to support the Mujahideen and her desires to take her minor son with her to Syria, despite knowing that Mr. Evans would not allow his son to go to Syria. Mr. Evans is expected to testify that during the time of this investigation, the defendant never discussed moving to Syria with their son, and had she discussed as much, he would not have allowed her to move to Syria with her son.

14. **Fletcher, Brandi - Tennessee Tech University Records Custodian**

Ms. Fletcher is expected to identify, authenticate, and testify regarding records received from TTU related to the defendant and classes she took while enrolled at TTU, which are relevant to this investigation and the defendant's knowledge of what was happening in the Middle East and certain foreign terrorist organizations.

### 15. Griffin, Elizabeth

Ms. Griffin is the defendant's ex-girlfriend who was incarcerated with the defendant following her arrest in this case. Ms. Griffin subsequently went to live with the defendant's mother upon her release from jail. Ms. Griffin is expected to testify regarding conversations about this case that she had with the defendant while incarcerated and after Ms. Griffin's release from jail.

### 16. Hassan, Hassan

Mr. Hassan will be offered as an expert and is expected to testify about the foreign terrorist organization, Hayat Tahrir al-Sham, its genesis, ideology, strategy, tactics, activities, and recruiting efforts. He is expected to testify about the relationship of this organization to other extremist groups and foreign terrorist organizations operating in the region during and around the time that the defendant attempted to provide material support to a foreign terrorist organization – Hayat Tahrir al-Sham. More specifically, Mr. Hassan will provide a background of the history of the region encompassing Iraq, Iran, and Syria since 2011, the background and history of the groups operating in this region and how they operate, including their Islamic philosophy, how jihadists became involved in the conflict in Syria, and the identification of certain foreign terrorist organization leaders and clerics. Mr. Hassan will discuss the tactics and strategies for radicalization, including the perspective of certain literature, and will explain specific concepts of importance in understanding Islamic philosophy or religious teachings and how some of those concepts are interpreted to assist in radicalization and recruitment efforts.

### 17. Hermanson, Gregory T. – FBI Forensic Examiner

Mr. Hermanson is expected to testify regarding his background, training, and experience and his duties as a forensic examiner for the FBI's Computer Analysis Response Team. Mr. Hermanson will also testify regarding any assistance he provided in extracting and processing the data retrieved from any of the electronic devices seized during this investigation.

### 18. Kamel, Karam – (Language Specialist, FBI)

Mr. Kamel is expected to testify regarding his background, training, and experience related to the Arabic language and his official translation of materials and conversations from this case that included phrases, words, and writings in Arabic. Mr. Kamel is further expected to testify that he was born in Egypt where he lived until age 18. At 18 years old, he moved to Nashville, Tennessee, and subsequently joined the United States Air Force as a Civil Engineering Assistant before contracting for/joining the FBI as an Arabic Language Specialist in 2007.

### 19. Kesey, Client - Ben Lomand / Subsentio Records Custodian

This witness will identify, authenticate, and testify regarding records, including records related to IP address 137.119.204.163, received from Ben Lomand / Subsentio related to the defendant and this investigation.

### 20. Laskowski, Tammi – Special Agent, FBI

Agent Laskowski is expected to testify regarding her background, training, and experience with the FBI, including her time as an analyst for the FBI and her time as an Army Intelligence Officer before becoming an FBI agent. Agent Laskowski is expected to testify as to her current duties as an agent and the squad to which she is assigned. Agent Laskowski is also expected to testify regarding the FBI's overall investigation into the defendant, including, among other things, the genesis of the FBI's investigation into the defendant, the steps taken by the FBI to investigate the defendant, records received and analyzed related to this investigation, and evidence obtained and analyzed during this investigation. Agent Laskowski is further expected to testify regarding photographs taken during the search of the defendant's residence and items recovered during that search including, but not limited to books, journals, notes, and extremist propaganda, as well as data extracted from the defendant's electronic devices and information obtained from the defendant's cloud. Such testimony is expected to include Agent Laskowski's identification of extremists related to this case, such as individuals depicted or quoted in items/electronic data recovered from the defendant's devices or electronic communications with other individuals.

### 21. Lefler, Vanessa A.

Dr. Lefler was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Lefler is expected to testify regarding the courses that she taught and in which of those courses the defendant was a student. Dr. Lefler is further expected to testify that she never asked the defendant to pose as someone who supported extremist views in order to conduct research for her classes. Dr. Lefler is further expected to testify that during the defendant's time at MTSU, she took some of Dr. Lefler's classes, including "International Security in a Changing World," "Literature Review in International Affairs," and "Readings in International Relations."

### 22. Morris, Stephen D.

Dr. Morris was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Morris is expected to testify regarding the courses that he taught and in which of those courses the defendant was a student. Dr. Morris is further expected to testify that he never asked the defendant to pose as someone who supported extremist views in order to conduct research for his classes. Finally, Dr. Morris is expected to testify that while the defendant was a graduate student at MTSU, she took his class: Comparative Politics in the International Affairs Program. Dr. Morris is further expected to testify that when the defendant took his class in the spring of 2014, she wrote a paper for that class entitled, "Money in all the Wrong Places: Corruption and Financing Terrorist Organizations." Dr. Morris is further expected to testify that this paper detailed how terrorist organizations will use sham charities as a means for funneling money to support terrorist groups.

### 23. Neely, Kari Sue

Dr. Neely was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Neely is expected to testify regarding the courses that she taught and in which of those courses the defendant was a student. Dr. Neely is further expected to testify that she never asked the defendant to pose as someone who supported extremist Islamic views in order to conduct

research for her classes.

### 24. NY Online Covert Employee

This witness is expected to testify that he was directed to and observed a Facebook group named "Al Sadaqah." This witness is expected to testify that in the "about section" of the group, the group identified as "An independent charity organization supporting the Mujahideen in Syria."[1] This witness is also expected to testify that the group included images advocating for donations to the Mujahideen in an effort to purchase, among other things, new military uniforms, for those fighting on behalf of jihad. This witness is further expected to testify that he engaged in online communications with a user of the "Al Sadaqah" Facebook page through various platforms, including Facebook messenger, about how money could be sent, and to whom, overseas in support of the Mujahideen in Syria. Finally, this witness is expected to testify about Al Sadaqah's affiliation with HTS.

### 25. Online Covert Employee #1 ("OCE #1")

OCE #1 is expected to testify that she is an FBI employee who acted in an online covert capacity during this investigation, representing herself as a female individual who held extremist views. In that capacity, OCE #1 became online friends with the defendant and engaged in online communications with the defendant regarding their like-minded beliefs related to jihad and supporting the Mujahideen. OCE #1 is further expected to testify regarding her observations of the defendant's Telegram channel and/or other social media accounts and the items and information the defendant posted on that channel and/or other social media accounts. OCE #1 will also testify that she introduced the defendant to Undercover Employee #1 who acted as a like-minded sister who shared the defendant's extremist views. Finally, OCE #1 is expected to testify that in the fall of 2018, the defendant became concerned about having befriended potential spies for the Government and the steps she planned to take in order to protect herself against such spies and the Government.

*The Government anticipates calling OCE #1 twice at trial so as to present evidence in chronological order and to aid the jury in its understanding of the timeline of events in this case.

### 26. Online Covert Employee #2 ("OCE #2")

OCE #2 is expected to testify that he is an FBI employee who acted in an online covert capacity as the husband of UCE #1 during this investigation. OCE #2 is expected to testify that he was provided the online contact information for a foreign extremist related to Hayat Tahrir al-Sham, a foreign terrorist organization, by the defendant through UCE #1. OCE #2 is further expected to testify that the defendant provided this contact to UCE #1 so that they could reach out to the extremist contact for assistance in traveling from the United Kingdom to Syria for the purpose of joining Hayat Tahrir al-Sham and supporting jihad. OCE #2 is further expected to testify that he did, in fact, reach out to the foreign extremist through an online platform and will introduce

---
[1] The defendant donated money to an organization posing as a charity in an effort to support terrorist activities affiliated with Al Sadaqah for the purpose of supporting the Mujahideen.

6

into evidence of his online communications with that individual. Finally, OCE #2 is expected to testify as to the substance of those communications.

### 27. Online Covert Employee #3 ("OCE #3")

OCE #3 is expected to testify that she is an FBI employee who acted in an online covert capacity during this investigation. In that capacity, OCE #3 followed a Telegram channel related to Merciful Hands, an organization soliciting and receiving donations on behalf of the Mujahideen. OCE #3 will authenticate postings that she downloaded from the Merciful Hands Telegram channel account and enter those postings into evidence at trial.

### 28. Phillips, Jacelynn

Ms. Phillips is expected to testify that during this investigation, she was friends with the defendant and observed graphic postings and pictures that the defendant made on Snapchat related to the Middle East.

### 29. Reller, Daniel - AT&T Records Custodian

Mr. Reller is expected to identify, authenticate, and testify regarding records received from AT&T related to the defendant and this investigation.

### 30. Saltar, Josh – Special Agent, FBI

Agent Salter was present during the initial interview of witness Maram Ese and is expected to testify about that interview and the extraction of information from Ms. Ese's cellular telephone.

### 31. Savage, Lukas – Resident Agency Specialist, FBI

Mr. Savage is expected to testify regarding his employment with the FBI and his duties related to his employment, including his role as a member of the FBI's Evidence Response Team. Mr. Savage is expected to testify about the execution of a search warrant at the defendant's residence in October 2018, the photos taken during the execution of the search warrant, and any items seized as evidence in this case. Mr. Savage will also authenticate certain photos and items seized from the search warrant that will be entered into evidence at trial.

### 32. Schreck, Catherine - SITE Intelligence Group

Ms. Schreck is a senior analyst with the SITE Intelligence Group and is expected to testify about the research that SITE Intelligence Group has conducted concerning entities that hold themselves out as charities to raise funds for terrorist organizations, including Alsadaqah and The Merciful Hands. She will testify about the publication of a report dated March 8, 2019 entitled, "Pro-AQ Group Persists in Fundraising for Foreign Fighters' Families in Syria" and other SITE

Intelligence Group publications on this subject.

33. **Schu, Erin C. – Special Agent, FBI**

Agent Schu was present during the interview of witness Shirin Yusupova and is expected to testify about that interview.

34. **Sledd, Scot – Special Agent, FBI**

Agent Sledd is expected to testify regarding his background, training, and experience with the FBI and before joining the FBI. Agent Sledd is expected to testify as to his current and former duties as an agent for the FBI, the squad to which he is assigned, and his duties. Agent Sledd is expected to testify regarding the FBI's overall investigation into the defendant, including, among other things, the genesis of the FBI's investigation into the defendant, the steps taken by the FBI to investigate the defendant, records received and analyzed related to this investigation, and evidence obtained and analyzed during this investigation. Agent Sledd is further expected to testify regarding photographs taken during the search of the defendant's residence and items recovered during that search including, but not limited to books, journals, notes, and extremist propaganda, as well as data extracted from the defendant's electronic devices and information obtained from the defendant's cloud. Such testimony is expected to include Agent Sledd's identification of extremists related to this case, such as individuals depicted or quoted in items/electronic data recovered from the defendant's devices or electronic communications with other individuals.[2]

35. **Undercover Employee #1 ("UCE #1")**

UCE #1 is expected to testify that she is an FBI employee who acted in an undercover capacity during this investigation, representing herself as a female individual who held extremist views, had a desire to support the Mujahideen in Syria, and who wanted to travel to Syria to support the jihad and Hayat Tahrir al-Sham. UCE #1 is expected to testify that she became friends with the defendant and engaged in ongoing conversations with the defendant regarding their like-minded radical beliefs and support for the Mujahideen. UCE #1 will authenticate any communications she had with the defendant underlying the charges in this case and is further expected to testify regarding the substance of those communications. UCE #1 is further expected to testify regarding her in-person meetings with the defendant and the topics they discussed during those meetings relating to the defendant's extremist views and her support of jihad. UCE #1 is further expected to testify that the defendant provided her with contact information for a "trusted brother" as an individual to whom UCE #1 could send money to help support the Mujahideen. UCE #1 is also expected to testify regarding the advice that the defendant provided her regarding the steps she and her purported husband should take in planning their travel to Syria to support the jihad so that they could avoid law enforcement detection and successfully arrive in Syria. UCE #1 is further expected to testify that the defendant provided her with the contact information for a foreign extremist with connections to Hayat Tahrir al-Sham, a foreign terrorist organization, in Syria in order to secure assistance for UCE #1 and her purported husband to safely travel to Syria to support the Mujahideen. UCE #1 is further expected to testify that she provided that contact

---

[2] Additionally, Agent Sledd is expected to testify regarding any statements the defendant made to the Government during her proffer session if the defense opens the door to the admissibility of those statements at trial.

information to her purported husband who then reached out to the foreign extremist for assistance regarding travel.

### 36. Vassilev, Todd - Google Records Custodian

Mr. Vassilev is expected to identify, authenticate, and testify regarding records received from Google related to the defendant and this investigation.

### 37. Wright, Joy – Special Agent, FBI

Agent Wright is expected to testify regarding her background, training, experience with the FBI, her current squad assignment, and her duties as an FBI agent. Agent Wright is expected to testify regarding statements the defendant made during a non-custodial interview with the FBI in October 2018, the defendant's demeanor during that interview, and how the defendant re-engaged the agents for additional conversations after the first interview had concluded and around the time the FBI had begun executing its search warrant at her residence.

### 38. Williams, Maria

Ms. Williams is expected to testify that she is the mother of the defendant and that during the time of this investigation, the defendant was living at the Ms. Williams's residence. She is further expected to testify that while living at the residence, Ms. Williams was unaware that the defendant had converted to Islam. Ms. Williams is further expected to testify that the defendant did not share her support for radical Islamic beliefs and that she was unaware of the postings and communications the defendant was making/having on social media related to her support for the Mujahideen fighting for jihad.

### 39. Yusupova, Shirin

Ms. Yusupova is expected to testify that she knew the defendant in an online capacity and communicated with the defendant through Telegram. Ms. Yusupova is expected to testify regarding her online communications with the defendant related to the fighting in Syria, the specific groups located there, and her extremist beliefs related to Islam. Ms. Yusupova is further expected to testify that she shared the defendant's extremist beliefs and that they often discussed their support for the Mujahideen, as well as the terroristic groups fighting in Syria, to include ISIS and Al Nusra.[3] Ms. Yusupova will also testify that the defendant discussed her fiancé in Syria and stated that he was affiliated with Hayat Tahrir al-Sham. During this investigation, Chicago FBI agents interviewed Ms. Yusupova about her online activities. Ms. Yusupova is expected to testify that after she was interviewed, she told the defendant about her interview with the FBI, and the defendant expressed concern about the FBI's interview of Ms. Yusupova and then immediately stopped communicating with Ms. Yusupova.

### 40. Zweig, Elliot – Deputy Director of MEMRI

Mr. Zweig is expected to testify about research conducted by MEMRI related to the

---

[3] Al Nusra is the precursor terrorist organization for Hayat Tahrir al-Sham.

9

Case 2:19-cr-00013   Document 233   Filed 08/18/21   Page 9 of 11 PageID #: 2743

organization known as "The Merciful Hands" and the publication of the report by MEMRI on August 9, 2018 entitled, "A Review of Al-Sadaqah Organization's Activity on Telegram: Group Updates Its WhatsApp Number, Uses Deep Web-Based Email Service SecMail."

*Records' Custodians Still to be Identified:*

### 41. Facebook/Instagram Records Custodian

This witness will identify, authenticate, and testify regarding records received from Facebook/Instagram related to the defendant and this investigation.

Respectfully Submitted,

MARY JANE STEWART
Acting United States Attorney
Middle District of Tennessee

By: /s/ *Kathryn Risinger*
KATHRYN RISINGER
Deputy Criminal Chief – Organized Crime

/s/ *Phil Wehby*
PHIL WEHBY
Assistant United States Attorney
110 9th Avenue South
Nashville, Tennessee 37203
Phone: (615) 736-5151

/s/ *Jennifer E. Levy*
JENNIFER E. LEVY
Trial Attorney
Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Suite 7600
Washington, D.C. 20530
(202) 514-1092

## CERTIFICATE OF SERVICE

  I hereby certify that on August 18, 2021, I electronically filed one copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to counsel for all defendants in this case.

                /s/ *Kathryn D. Risinger*
                KATHRYN D. RISINGER
                Deputy Criminal Chief