1    IN THE UNITED STATES DISTRICT COURT
          MIDDLE DISTRICT OF TENNESSEE
2                NASHVILLE DIVISION

3    UNITED STATES OF AMERICA        )
                                     )
4                                    )
          v.                         )  Case No.
5                                    )  2:19-cr-00013
     GEORGIANNA A.M. GIAMPIETRO      )
6                                    )  CHIEF JUDGE CRENSHAW
                                     )
7    - - - - - - - - - - - - - - - - - - - - - - - - - - -

8               BEFORE THE HONORABLE

9    CHIEF DISTRICT JUDGE WAVERLY D. CRENSHAW, JR.

10             TRANSCRIPT OF PROCEEDINGS

11                September 10, 2021

12   - - - - - - - - - - - - - - - - - - - - - - - - - - -

13
     APPEARANCES:
14
             For the Plaintiff:  Mr. Philip H. Wehby
15                               Ms. Kathryn Risinger
                                 U.S. Attorney's Office
16                               110 Ninth Avenue, S., Suite A961
                                 Nashville, Tennessee 37203
17

18           For the Defendant:  Charles D. Swift
                                 Constitutional Law Center for
19                               Muslims in America
                                 833 E Arapaho Road
20                               Richardson, Texas 75081

21

22

23   PREPARED BY:
                    LISE S. MATTHEWS, RMR, CRR, CRC
24                     Official Court Reporter
                       801 Broadway, Room A839
25                      Nashville, TN 37203
                   lise_matthews@tnmd.uscourts.gov

1                              I N D E X

2                      Friday, September 10, 2021

3

4

5                                     MARKED   RECEIVED  WITH-

6   COURT'S EXHIBIT                   FOR I.D.  IN EVD.  DRAWN

7

8   1                                                    10

9   2                                                    10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          The above-styled cause came on to be heard on

2    September 10, 2021, before the Honorable Waverly D.

3    Crenshaw, Jr., Chief District Judge, when the following

4    proceedings were had, to-wit:

5          THE COURT:  All right.  Be seated.  Good morning.

6          So we're here on Case 19-13, *United States of*

7    *America versus Giampietro*.  And the Court's advised that

8    Ms. Giampietro is quarantined due to the ongoing outbreak of

9    COVID-19.

10          So Mr. Swift I'm going to order you to get an

11    official transcript and make sure she gets a copy of it to

12    read.

13          MR. SWIFT:  We will, Your Honor.

14          THE COURT:  Today is more for scheduling and

15    preparation for the same.

16          So I think -- as we discussed the last time,

17    Mr. Swift -- both parties have given me filings.  I've read

18    them, digested them.  And what I want to do when we leave

19    from here is for you to have an understanding that if I issue

20    an order allowing you to do the examination you know what the

21    parameters of the examination are.

22          So to facilitate that I've created a document that

23    I'm going to share, questions 1 through 9, that I think do a

24    pretty fair job of creating the parameters, and then a second

25    document that with Mr. Swift's permission I'm going to share.

1  I've highlighted in yellow the questions that I think are

2  proper given the parameters.  So we're going to pass that out

3  to the lawyers.  There are three copies.  And I'm going to

4  ask you all to return them when we're done.

5          Yeah.  There you go.  You should have two

6  documents, Mr. Swift.

7          So the record's clear, I've given the lawyers only

8  two documents, one styled *United States versus Giampietro*,

9  with the case number 19-13.  And that first document is a

10  single-page document where the Court has identified what I

11  believe are relevant areas for questioning, 1 through 9.

12          In summary, the questions the Court believes are

13  appropriate focus upon -- allows the defendant to delve into

14  what occurred on June the 25th, 2018, in the hotel room with

15  defendant and others.

16          Then the second document I've shared with the

17  lawyers is a multi-page document, 21 pages.  At the top,

18  right-hand corner it should have a little asterisk.  And I've

19  highlighted in yellow what I think would be proper questions

20  for Mr. Swift to delve into, consistent with the parameters.

21          Again, the things in yellow will be permitted or

22  --  I'm here for -- I hope at the end of this we'll have

23  agreement on the things in yellow.  So. . .

24          Starting on page 2, it just allows normal

25  questions about background.  The same is true on page 3.  And

1  really when you get to page 4, 5, we get into the meat and
2  substance of events of -- of the event on June the 25th.
3          From page 5 to page 21 some foundational questions
4  may be dispositive of the questions I've highlighted in
5  yellow.
6          So Mr. Swift, I'll give you a moment to -- I
7  guess -- I guess -- Mr. Swift, give you a moment -- given the
8  parameters and my take on the questions asked, take a look at
9  that and give me some feedback.  And then I need the
10  Government to tell me if the parameters I've set appear to
11  the Government to be appropriate.
12          MR. SWIFT:  Your Honor --
13          THE COURT:  All right.
14          MR. SWIFT:  -- just for the record, generally -- I
15  completely understand what the parameters are.  There are a
16  couple of areas that would appear to be off limits but I'd
17  ask for consideration depending on a foundational part.  One
18  that's discussed is that benefits are --
19          THE COURT:  What page are you looking at?
20          MR. SWIFT:  I'll start on page 1.
21          You know, we talked about benefits on that day.
22  The purpose of the terrorist watch list assistance and
23  immigration benefits was that those were other benefits, and
24  I wanted to be able to ask in some way that -- the
25  understanding on benefits.  I could ask the question

1  generically as benefits of any kind or consideration or any
2  promises made to you for cooperation.
3          THE COURT:  So look at question 27.  We could
4  modify that to say have you ever received any money, payment,
5  or benefits --
6          MR. SWIFT:  Okay.
7          THE COURT:  -- from the United States Government
8  for work on this case.
9          MR. SWIFT:  I'll do that, Your Honor.
10         THE COURT:  If the answer is no, that's that.
11         MR. SWIFT:  The next one has to do with the
12 religious part on it.
13         THE COURT:  What page?
14         MR. SWIFT:  This would be on page 3.
15         THE COURT:  Okay.
16         MR. SWIFT:  Religious figures served as -- part on
17 it -- is I'm -- one of the reasons that I asked question
18 44 -- and I could combine them into a single question -- is
19 that -- depending on the board of a mosque, some people hire
20 imams; some people who are more traditional hire religious
21 scholars.  An imam historically in a mosque was actually the
22 caretaker.  That position has evolved.  But I wouldn't want
23 him to say, no, I've never been hired as a mosque [sic], when
24 he is, in fact, the religious scholar, which would be the
25 equivalent of what you would think of the leader of the

```
 1   congregation, under the board's contract.  So I just --
 2              THE COURT:  If we change 43 to say as the imam
 3   or --
 4              MR. SWIFT:  Religious scholar.
 5              THE COURT:  Or -- religious scholar or Islamic
 6   scholar?
 7              MR. SWIFT:  Islamic scholar.  Islamic scholar.
 8              For the purposes of next week it would be --
 9              THE COURT:  Well, let's finish this.  Anything
10   else with the 21-page document, especially the matters in
11   yellow?
12              MR. SWIFT:  Yes.
13              THE COURT:  Go ahead.
14              MR. SWIFT:  And this part is at area 6 -- yeah,
15   when we go to the text --
16              THE COURT:  Page 6?
17              MR. SWIFT:  Page 6.  Yes.
18              THE COURT:  Go ahead.
19              MR. SWIFT:  The Hadith would be -- I don't know
20   that it's necessary for the 21st.  But if called as a witness
21   at trial, I would want to lay foundation with the person so
22   that the jury could understand what a Hadith is.
23              THE COURT:  You're going to have other experts to
24   do that.
25              MR. SWIFT:  I can do that.
```

1          THE COURT:  Yeah.

2          MR. SWIFT:  Okay.  I don't have anything else,

3    Your Honor.

4          THE COURT:  So let me turn to the Government.

5          First, the Government's comfortable with this

6    one-page document, the parameters, correct?

7          MS. RISINGER:  That's correct, Your Honor.

8          THE COURT:  And now having had an opportunity to

9    look at the things in yellow as -- as Mr. Swift and I just

10   modified ever so slightly, any -- any concerns the Government

11   has about these questions, the ones in yellow?

12         MS. RISINGER:  Your Honor, would you mind giving

13   us about -- since this is the first time we are seeing them,

14   about 15 minutes or so to go through each one of the

15   highlight -- the yellow highlighted questions?

16         THE COURT:  You're going to do that here in the

17   courtroom, though?

18         MS. RISINGER:  Yes.  We can do it right here.  I

19   just -- I think we might need a few minutes.

20         THE COURT:  And then, before we break, you all

21   might want to talk about a schedule.  I want to talk about

22   the schedule, I guess.

23         So Mr. Swift, we've got the proposed 22nd all day.

24   22nd of September?

25         MR. SWIFT:  Yes.  Yes, Your Honor.

```
 1              THE COURT:  Okay.  So keep that on your calendar.
 2              And then add to that, as a possibility if we can,
 3   are you available the 21st from 9 to 2:00?
 4              MR. SWIFT:  One moment, Your Honor.
 5              MS. RISINGER:  Not the 21st, Your Honor.  For
 6   Mr. Swift it would be the 24th, in the afternoon.  The 21st
 7   was other issues.
 8              THE COURT:  Okay.  So let's go to the 24th, from 1
 9   to 5.  Could you do that if we don't do the 22nd?
10              MR. SWIFT:  Yes, I can, Your Honor.
11              THE COURT:  Okay.  Put that on your calendar.  And
12   put a hold on it for me.
13              MR. SWIFT:  24th and 22nd is held.
14              THE COURT:  Good.  And then -- Ms. Giampietro is
15   not here, but -- so for the trial date, for you all to think
16   about, and given my calendar, the best time for the Court,
17   and to give you all uninterrupted time, we would start the
18   trial on Tuesday, February the 22nd, go all that week and
19   then all of the week of February 28th.  That takes us to
20   March the 4th.  And if we're -- if for whatever reason we
21   need to bleed over just a little bit, I could -- I could do
22   that.  So just jot those down, and we'll come back to that.
23              So I'll give you all 15 minutes or so.
24              (Recess.)
25              THE COURT:  All right.  We're back on the record.
```

 1  So I do think I need to clarify the record here.

 2         I'm going to place these two documents -- make

 3  them Court Exhibit 1 and 2.  The one page will be Court

 4  Exhibit 1, under seal, and the second page will be Court

 5  Exhibit 2, under seal.  So the record's clear.

 6         (Whereupon Court Exhibits 1 and 2 were received in

 7  evidence.)

 8         THE COURT:  So now that the Government's had a

 9  chance -- any clarifications you want to offer?

10         MS. RISINGER:  Yes, Your Honor.  With regards to

11  page 3 of -- with regards to question 40, we wanted to ask

12  Mr. Swift to confirm that he is asking that question in real

13  life.

14         MR. SWIFT:  Yes.  Yeah.  It's not. . .

15         MS. RISINGER:  Okay.

16         MR. SWIFT:  It's. . .

17         MS. RISINGER:  Thank you.

18         THE COURT:  I think that's --

19         MS. RISINGER:  And same with 43.

20         MR. SWIFT:  Yes.

21         THE COURT:  Yeah.  Good.

22         MS. RISINGER:  And the only other thought the

23  Government had was before all of the discussions and messages

24  starting on page 6, that a foundational question be asked

25  about whether he ever even had communications before,

1  after -- or --

2        THE COURT:  So the record's clear, foundational

3  questions that he had any contact before or after June the

4  25th?

5        MS. RISINGER:  Correct, Your Honor.  Or whether he

6  had any communications with her through third parties --

7        THE COURT:  Yes.

8        MS. RISINGER:  -- on or before.

9        THE COURT:  All right.

10        MS. RISINGER:  I'm sorry.  Not on.  Before or

11  after June 25th, 2018.

12        THE COURT:  And I sort of alluded to that,

13  Mr. Swift, on page 4.  And I think we discussed, as well,

14  some foundational questions may actually streamline the

15  questions after that.

16        MR. SWIFT:  Yes, Your Honor.

17        THE COURT:  Okay.

18        All right.  So it seems like -- anything else,

19  Mr. Swift?

20        MR. SWIFT:  No, Your Honor.

21        THE COURT:  So it seems like we've got the

22  parameters, Court Exhibit Number 1.  We've got a pretty good

23  outline of the questions, Court Exhibit Number 2.  Both of

24  these will remain under seal.  We've got dates.  Anything

25  else from the Government?

1        MS. RISINGER:  Your Honor, with regards to the

2   Court's proposed trial dates, just so the Court is aware,

3   that does work for the Government.  I think Mr. Swift might

4   have --

5        THE COURT:  Check with Ms. Levy.

6        MS. RISINGER:  I feel pretty comfortable saying

7   that for her, as well.  I will double-check, but I am -- like

8   -- I'm 99.9 percent positive.

9        MR. SWIFT:  There's no way I can get you to

10  consider the -- the Court to consider January, the end of

11  January, Your Honor?

12        THE COURT:  January what?

13        MR. SWIFT:  Starting either -- between January

14  26th and January 31st of next year.  I do not have a court

15  conflict.  I do have prepaid vacation during that period of

16  time.

17        THE COURT:  Where?

18        MR. SWIFT:  Vail, Colorado.  I go every year.

19        THE COURT:  Oh, it will still be there.

20        MR. SWIFT:  It only --

21        THE COURT:  It ain't going nowhere.

22        MR. SWIFT:  What's that?

23        THE COURT:  Vail is not going anywhere.  It will

24  be there.

25        MR. SWIFT:  Yes, Your Honor.  I asked.

```
 1              THE COURT:  See if you can move it up a little
 2     bit.
 3              MR. SWIFT:  Well -- I can't move that, but I can't
 4     cancel it.  Yeah.  It's just money.  In the process -- it's
 5     -- but I asked.
 6              THE COURT:  Now we still need to check with
 7     Mr. Strianse.
 8              MR. SWIFT:  Yes.  I will check with Mr. Strianse
 9     as to whether he's available during those dates.
10              THE COURT:  All right.
11              MS. RISINGER:  May I ask a follow-up question to
12     that, Your Honor?
13              THE COURT:  Sure.
14              MS. RISINGER:  Did -- originally the Court, my
15     understanding, was out of pocket for five weeks because of
16     the Ortuna-Lara case.
17              THE COURT:  Right.  And I got the filing.  But
18     just looking at everything that's on my calendar and my
19     life --
20              MS. RISINGER:  Okay.  So you have other -- thank
21     you.
22              MR. SWIFT:  Yeah, there are those things.
23              THE COURT:  My sanity.
24              All right.  Well, first of all, I appreciate the
25     filings.  Obviously it helped expedite today.  I appreciate
```

1   you all educating the Court some more.

2          I'll probably get something officially filed sort

3   of setting up where we are.

4          I've made real clear that I think based on the

5   record, my conversation with Mr. Swift, my view of the video,

6   and the entire record here, this is necessary; it's material;

7   it's helpful and relevant.  And I'm going to put something

8   formally in the record as a memorandum opinion.  So -- so we

9   can do that.

10         Also, on the record -- I don't think we discussed

11  this.  The Court's going to adopt -- no, I didn't.

12         I'm going to adopt the agreement that exists

13  between counsel and -- between the parties regarding the

14  protective measures.  You all have agreed.  I will adopt

15  those, subject only to the Court exercising its own due

16  diligence.

17         All right.  We're done I think.  Thank you.

18         (Court adjourned.)

19

20

21

22

23

24

25

1  REPORTER'S CERTIFICATE

2

3          I, Lise S. Matthews, Official Court Reporter for

4  the United States District Court for the Middle District of

5  Tennessee, with offices at Nashville, do hereby certify:

6          That I reported on the Stenograph machine the

7  proceedings held in open court on September 10, 2021, in the

8  matter of UNITED STATES OF AMERICA v. GEORGIANNA A.M.

9  GIAMPIETRO, Case No. 2:19-cr-00013; that said proceedings in

10  connection with the hearing were reduced to typewritten form

11  by me; and that the foregoing transcript (pages 1 through 14)

12  is a true and accurate record of said proceedings.

13          This the 20th day of September, 2021.

14

15                          /s/ Lise S. Matthews
                            LISE S. MATTHEWS, RMR, CRR, CRC
16                          Official Court Reporter

17

18

19

20

21

22

23

24

25