IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 2:19-cr-00013 |
| v. | ) | Chief Judge Crenshaw |
| | ) | |
| GEORGIANNA A.M. GIAMPIETRO | ) | |

## UNITED STATES' MOTION IN LIMINE NO. 1

The United States of America, by and through its attorneys, the Acting United States Attorney for the Middle District of Tennessee and the Chief of the Counterterrorism Section of the National Security Division, United States Department of Justice, hereby files this Motion in Limine No. 1, in which the Government seeks to exclude any evidence or argument relating to renunciation being a defense to attempting to commit an offense. In support thereof, the Government submits the following:

## BACKGROUND[1]

The defendant is an American citizen born in Cookeville, Tennessee. Prior to her arrest, she resided in Sparta, Tennessee. In late 2015, the FBI became aware that the defendant was posting materials supporting ISIS, a radical Islamic terrorist organization long designated by the United States as a Foreign Terrorist Organization ("FTO"), on social media. Because of these posts, the FBI began investigating whether the defendant may be committing criminal acts related to terrorism, in violation of Chapter 113B of Title 18, United States Code. At the outset of the investigation, an FBI online covert employee ("OCE-1") engaged the defendant online, using a social media platform that permits users to send encrypted messages, photographs, and other files,

---

[1] This is a brief summary of the facts relevant to the Government's Motion in Limine No. 1 and does not include all facts known to the Government or which the Government intends to introduce as evidence at trial.

1

and communicated with the defendant about various aspects of Islamic teachings and current events. Then, in November 2017, OCE-1 introduced the defendant to an FBI undercover employee ("UCE-1"), posing as a like-minded "sister" who shared the defendant's extremist and radical views related to Islam. Between November 2017 and October 2018, UCE-1 and the defendant engaged in countless electronic communications, via text message and messaging applications, and met in person on at least a few occasions. During their relationship, the defendant often espoused extremist views in support of the Islamic State, expressed her desire to travel to Syria to join her fiancé, a jihadi fighter; explained that every Muslim man's duty is to wage "jihad"[2]; and asserted that women should support their male fighters by fighting alongside them, carrying bodies from the battlefield, and providing food and water to the mujahideen.[3] The defendant also explained that she hoped to die alongside her husband in Syria, in an airstrike, on a Friday during Ramadan while they were praying.

In late September 2018, UCE-1 informed the defendant that her husband, another FBI undercover employee ("UCE-2") had sworn allegiance to Hayat Tahrir al-Sham ("HTS") on their behalf, and that they were preparing, imminently, to travel to Syria to join HTS. The defendant expressed reservations regarding UCE-1 and UCE-2's plans to travel to Syria, suggesting potentially traveling to Afghanistan instead because they were actively fighting in Afghanistan at that time. The defendant also expressed concern that if UCE-1 and UCE-2 were caught, authorities might trace them back to her, explaining further, ". . . I need you to unfollow the Telegram[4] channel . . . I need you to delete my name and phone number from your phone and all pictures and text messages." Notwithstanding these reservations, the defendant advised UCE-1 as to how UCE-1

---

[2] "Jihad" refers to the struggle or fight against the enemies of Islam.
[3] "Mujahideen" is a term which refers to persons who have taken up violent jihad.
[4] Telegram is an encrypted social media platform.

and UCE-2 could travel to Syria without being detected, telling UCE-1 that they should purchase roundtrip airline tickets, rather than one-way tickets; that they should consider traveling to Turkey (prior to entering Syria) by traveling first to Italy, and then from Italy to Turkey; that they should not take their phones with them, and that they should acquire new phones and new phone numbers before they traveled. The defendant also referenced her own plan for traveling to Syria, which included cutting ties with other persons before leaving, explaining that, "[w]hen I was planning my plan was to delete everyone 6 to 8 months before leaving and have no contact with anyone." The defendant also advised that she planned to take her minor son with her to Syria, without the permission of the boy's father. Additionally, after expressing concern about the contacts UCE-1 and UCE-2 were using to travel to Syria and advising that she (the defendant) knew others whom she trusted more, the defendant provided UCE-1 with contact information for @alsadaqahsyria, and told UCE-1 to message @alsadaqahsyria. The clear implication from their communications was that the defendant provided the contact for @alsadaqahsyria to UCE-1 and UCE-2 for assistance in traveling to Syria to join HTS.

UCE-2 subsequently made contact with @alsadaqahsyria online, telling @alsadaqahsyria that UCE-2 had been given @alsadaqahsyria's contact information by "Umm Roses," a social media moniker used by the defendant, and that UCE-2 understood @alsadaqahsyria to be someone who could help brothers and sisters making "Hijrah," meaning emigration to Syria.[5] UCE-2 asked @alsadaqahsyria if @alsadaqahsyria had helped people make Hijrah before, and if it was still possible to do so, to which @alsadaqahsyria replied, "Yes akhi [brother]. You can but safest to wait" to travel to Syria because "there isn't any fighting at the moment," and UCE-2 would

---

[5] "Hijrah" is an Islamic term meaning "migration." The term historically refers to the journey undertaken by the Islamic prophet Mohammed from Mecca to Medina. In the extremist context, the term "Hijrah" has been used to describe a foreign fighter's journey from his country of origin to terrorist-held countries abroad.

primarily be doing "guard duty" "5 or 7 days a month." UCE-2 asked @alsadaqahsyria whether @alsadaqahsyria could get UCE-1 and UCE-2 "across" to Syria, if UCE-1 and UCE-2 made it to Turkey. In response, @alsadaqahsyria replied that he could, but explained that he had talked to "another brother," who said that it was difficult to cross into Syria at present, and that UCE-1 and UCE-2 should wait and cross later.

The contact provided by the defendant, @alsadaqahsyria, also gave UCE-2 information about how to travel to Turkey undetected. Recognizing that this travel would appear to be suspicious, @alsadaqahsyria explained that UCE-2 should have a good cover story and should take steps to make it look like UCE-1 and UCE-2's travel was legitimate. The advice given by @alsadaqahsyria included, "Get Turkish visa. Message some charitys. Ask you want to volunteer. Make it look like your [sic] an aid worker. Then you have a good defence." When UCE-2 asked @alsadaqahsyria why he needed a "good defense," and whether @alsadaqahsyria was referring to being questioned by Turkish authorities, @alsadaqahsyria replied, "Yea. Also if you get stopped you have evidence to support your story."

UCE-1 sent a message to the defendant, thanking her for providing UCE-1 with @alsadaqahsyria's contact information, and advised that @alsadaqahsyria could help UCE-1 get to Syria. The defendant then claimed that she had not provided @alsadaqahsyria's contact information for travel purposes, stating, "He wasn't to make hijrah. But glad he can help you. It was just for charity purposes. And I have no clue who he is. Was just given to me to give to you for charity." The defendant also informed UCE-1 that she no longer wished to discuss the matter, stating, "You're going to get me arrested." The defendant then deleted the Telegram account from which she had been communicating with UCE-1 after the conversation.

## SECOND SUPERSEDING INDICTMENT

Count One charges the defendant with Attempted Material Support of a Foreign Terrorist Organization ("FTO"), specifically Hayat Tahrir al-Sham, in violation of Title 18, United States Code, Section 2339B.[6] (D.E. 255.) According to the Sixth Circuit Pattern Jury Instruction, for a defendant to be convicted of attempting to commit a crime, the Government must prove the following: 1) that the defendant intended to commit the crime specified in each specified count; and 2) that the defendant did some overt act that was a substantial step towards committing the crime specified in each specified count. *See* Sixth Circuit Pattern Jury Instruction No. 5.01. (March 2021).

The defense may try to argue that the defendant did not attempt to provide material support to HTS because after having provided UCE-1 with the contact information for @alsadaqahsyria, she soon thereafter attempted to disguise her true intent in doing so by changing her reason for providing the contact information, saying that she had provided it for charity purposes.

This defense is without merit. This Circuit has long recognized that:

> Withdrawal, abandonment, and renunciation, however characterized, do not provide a defense to an attempt crime. As noted, the attempt crime is completed when sufficient evidence exists to prove the defendant's intent together with the defendant taking a substantial step toward commission of the substantive offense. When a defendant withdraws prior to forming the necessary intent or taking a substantial step toward the commission of the offense, the essential elements of the crime cannot be proved . . . [However,] after a defendant has evidenced the necessary intent and has committed an act constituting a substantial step toward the commission of the offense, he has committed the crime of attempt, and can withdraw only from the commission of the substantive offense.

---

[6] The defendant is also charged in Count Two with Attempting to Provide Material Support (Currency) to HTS, in violation of Title 18, United States Code, Section 2339B; in Count Three with the Destruction and/or Alteration of Records in a Federal Investigation, in violation of Title 18, United States Code, Section 1519; and in Count Four with Altering, Destructing, Mutilating, or Concealing a Record or Document, or Attempting to do so, in violation of Title 18, United States Code, Section 1512(c)(1).

5

*United States v. Shelton*, 30 F.3d 702, 706 (6th Cir. 1994). *See also United States v. Adams*, 214 F.3d 724, 728 (6th Cir. 2000) (Conviction for attempting to commit a crime requires "[t]he intent to finish the crime, coupled with affirmative acts toward that end." Once a defendant takes a "substantial step" towards the completion of the crime, however, abandonment of the crime is not a defense.) (Internal citations omitted); *see also United States v. Temkin*, 797 F.3d 682 (9th Cir. 2015) (abandonment is not a defense when an attempt has proceeded well beyond preparation).

Based on the foregoing, the Government asks that this Court grant its Motion in Limine No. 1 and preclude the defendant from arguing that the defendant cannot be guilty of Count One of the Second Superseding Indictment – Attempting to Provide Material Support to an FTO, in violation of Title 18, United States Code, Section 2339B, because she withdrew from, abandoned, or renounced the crime.

## CONCLUSION

Therefore, the Government requests that the Court enter an order granting the Government's Motion in Limine No. 1.

    Respectfully Submitted,

    MARK H. WILDASIN
    Acting United States Attorney
    Middle District of Tennessee

By: /s/ *Kathryn Risinger*
    KATHRYN RISINGER
    PHIL WEHBY
    Assistant United States Attorneys
    110 9th Avenue South
    Nashville, Tennessee 37203

    /s/ *Jennifer E. Levy*
    JENNIFER E. LEVY
    Trial Attorney - Counterterrorism Section
    U.S. Department of Justice
    950 Pennsylvania Avenue, N.W., Ste. 7600
    Washington, D.C. 20530

## CERTIFICATE OF SERVICE

      I hereby certify that on November 24, 2021, I electronically filed one copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to counsel for the defendant in this case.

                                            /s/ *Kathryn D. Risinger*
                                            KATHRYN D. RISINGER
                                            Deputy Criminal Chief