# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:19-cr-00013 |
| ) | |
| **GEORGIANNA A.M. GIAMPIETRO** ) | Chief Judge Waverly D. Crenshaw, Jr. |
| Defendant. ) | |

## MOTION FOR A DAUBERT HEARING PRIOR TO ADMISSION OF TESTIMONY OF CATHERINE SCHRECK

COMES NOW Defendant, Georgianna Giampietro, by and through her undersigned counsel of record, and moves that this Court conduct a *Daubert* hearing to determine the admissibility of Catherine Schreck, who has been proffered by the government as an expert witness related to terrorism financing.

## BASIS FOR MOTION

On August 5, 2021, the government amended the indictment against Ms. Giampietro to include a second violation of 18 U.S.C § 2339(B) alleging that Ms. Giampietro materially supported Hayat Tarir al Sham (HTS) by providing currency in the form of three Western Union transfers in June 2018. On November 5, 2021, the government amended its Expert Witness Notice to include Ms. Schreck.[1]

Ms. Schreck is Multilingual Counterterrorism Analyst with fluency in Arabic, French, and Spanish as well as a native English with three and half years' experience in open-source intelligence and data collection, documentation, and interpretation, all of which was gained while

---

[1] Ms. Schreck had previously been listed as fact witness.

1

working at the SITE Intelligence Group.[2] Ms. Schreck's CV does not list relevant experience or education related to counterterrorism generally, or terrorism financing specifically, prior to her work at SITE which began in July 2018.[3] Apart from her work at SITE, Ms. Schreck does not list any publications that have been subjected to peer review. Nor has she been previously accepted by a court as an expert.

SITE describes itself as "an American non-governmental organization that tracks online activity of white supremacist and jihadist organizations." *See* SITE INTELLIGENCE GROUP ENTERPRISE, https://ent.siteintelgroup.com/ (last visited Nov. 23, 2021). It is a private entity run by a private individual; it is not a source of government-verified data nor does it purport to provide academic reports or studies. SITE is founded and led by Israeli analyst Rita Katz. Ms. Katz has built her career on being a self-described "terrorist hunter". [4]

The government proffers that Ms. Schreck is expected to testify about the following topics:

- The publication of reports by SITE concerning fundraising activities by entities such as The Merciful Hands and Alsadaqah on behalf of terrorist organizations;

- The methods through which SITE conducts research to track terrorist financing activity on-line, and the methods through which SITE develops written reports of the financing activity discovered through the research;

- How SITE analysts monitor social media sites to observe the activity of terrorist actors who may be planning operations or engaging in fundraising efforts;

---

[2] Prior to working for SITE, Ms. Schreck was a media editor prior to obtaining her Masers degrees in 2014 and 2017.

[3] Ms. Schreck does have an impressive academic background in international relations; including a Master of Science: Empires Colonialism & Globalization, 09/2017, London School of Economics, London, U.K., Dissertation: The Djebel Druze and the Great Syrian Revolt, 1925 – 1927; Master of Arts: International Relations, 09/2014, Queen Mary, University of London, London, U.K.; and a Bachelor of Arts: international Affairs, 05/2010, George Washington University, Washington, DC.

[4] *The Terrorist Hunter Speaks, An amazing story of an Iraqi Jew at the heart of dismantling terrorism*, NAT. REVIEW ONLINE, (June 26, 2003) https://web.archive.org/web/20100313013715/ http://article.nationalreview.com/269218/the-terrorist-hunter-speaks/q-a.

2

- How SITE analysts locate and preserve evidence concerning the activities of terrorist organizations; and how terrorist organizations use groups such as The Merciful Hands and Alsadaqah to raise funds for weapons, equipment and other necessities.

- On-line connections among entities such as The Merciful Hands and Alsadaqah, and Al Qaeda, HTS, and the groups in Syria that support mujahideen fighting for foreign terrorist organizations there

- How financial transactions involving The Merciful Hands and Alsadaqah can be traced to foreign fighters in Syria.

- The Abu Ahmed Foundation ("AAF"), which appeared on The Merciful Hands and publicly available information about AAF on social media platforms established AAF's support for HTS and other terrorist organization

- How entities soliciting funds for terrorist organizations instructed potential donors to send money to avoid detection

- Schreck will offer an expert opinion as to the common practices of entities such as The Merciful Hands and Alsadaqah to support the activities of foreign terrorist organization, and the limited amount of funds solicited for the benefit of displaced persons, widows, and orphans of those fighting in Syria that actually is intended for those purposes.

Despite this Court's order of April 16, 2021, Doc. 173, the government has not submitted an expert report from Ms. Schreck supporting the above testimony.[5]

## ARGUMENT

The admission of expert testimony is governed by Federal Rule of Evidence 702 and the Rule's interpretation by the Supreme Court in *Daubert, Joiner*, and *Kumho Tire*. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Rule 702 was amended in 2000 in response to *Daubert* and *Kumho Tire*. FED. R. EVID. 702 advisory committee's note. The 2000 amendment affirms the trial court's role as gatekeeper, excluding unreliable expert testimony. *Id.* Rule 702 provides:

---

[5] The government previously provided an internet article posted on the SITE Intelligence Group website concerning The Merciful Hands on March 8, 2019 titled, "Pro-AQ Group Persists in Fundraising for Foreign Fighters' Families in Syria".

3

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

The proponent of the evidence has the burden of showing that expert evidence is admissible, by a preponderance of proof. *Daubert*, 509 U.S. at 592 n.10; FED. R. EVID. 702 advisory committee's note to 2000 amendment.

Pursuant to Rule 702, the defense objects to Ms. Schreck's testimony concerning:

1) On-line connections between The Merciful Hands and Alsadaqah, and Al Qaeda, HTS, and other groups that support mujahideen fighting in Syria in 2018;

2) How these use groups use The Merciful Hands and Alsadaqah to raise funds;

3) How financial transactions involving The Merciful Hands and Alsadaqah can be traced to foreign fighters in Syria; and

4) Ms. Schreck offering the opinion that expert opinion as to the common practices of The Merciful Hands was to support the activities of foreign terrorist organization, and the limited funds solicited for of displaced persons, widows, and orphans of those fighting in Syria that actually is intended for those purposes[6]

A *Daubert* hearing is necessary regarding the financial support of terrorist organizations to determine whether Ms. Schreck is qualified to testify in the proffered areas; whether the testimony will assist the trier of fact; and finally whether the testimony is product of reliable principles.

Ms. Schreck's qualifications as an expert in terrorism financing are not clear. She started working as an analyst a month after Ms. Giampietro's alleged unlawful transactions. She has a

---

[6] The defense understands the proffered opinion to be that The Merciful Hands supported the activities of foreign terrorist organizations by limiting the humanitarian aid provided to only widows' orphans and displaced family members of members of a terrorist organization.

4

total of three and half years of experience. The limited experience she does have appears to have been gained through monitoring social media. She does not appear to have training in the forensic financial accounting and does not have field experience. Her work to date has been for private clients for undisclosed purposes. Finally, her work has not been subject to the judgment of independent peers and she has never been qualified as an expert. While it is possible that she is qualified, the same descriptions could be used for so-called experts proffered as experts on election fraud after the recent presidential election. Her apparent lack of experience or credentials therefore warrants a full inquiry to her qualifications.

Next, in the absence of an expert report, the reliability of the methodology underlying her testimony and opinion cannot accurately be assessed. Apart from the absence of an expert report or prior qualification, there is good reason to distrust the methodology of SITE on the topic of terrorism financing. SITE's founder and Director, Rita Katz, has been sued twice for her allegations related to terrorism financing. Specifically, Katz she was sued for her role in alleging that the Safa Group engaged in terrorism financing, [7] and that Mar-Jac Poultry engaged in money laundering of terrorist funds based by inflating money losses.[8] Both actions were ultimately

---

[7] In *Unus v. Kane*, 565 F.3d 103 (4th Cir. 2009), Unus (affiliated with the Safa Group) sued Kane and Katz on an unlawful search of the Unus home based on misrepresentation of fact that a federal agent (Kane) and Katz made in order to obtain a search warrant. The prior award of attorney's fees to Katz was overturned by the court noting that "the claims against Katz, viewed in an objective light by a reasonable lawyer, allege unsettling, discrimination-fueled acts by Katz that — though ultimately unsuccessful — were not undeserving of serious and careful consideration in a court of law." *Id.* at 130.

[8] *Mar-Jac Poultry, Inc. v. Katz*, 773 F. Supp. 2d 103 (D.D.C. 2011) "[Katz] asserted that Mar-Jac engaged in money laundering activities, specifically by taking advantage of the asserted 'fact' that chicken 'is the best cover for money laundering' because a claim that a given number of chickens died in a year cannot be proven, and that those activities were engaged in by Mar-Jac as part of a knowing effort to support terrorists and/or terrorist organizations." Pl.'s Oppn. [Dkt. # 196] at 8." *Id* at 115-116; "Katz's statements about laundering money through misreporting dead chickens were anything but rank speculation, surmise or hyperbole, engendered, perhaps, by her thrill at being involved in an uncover capacity. Ms. Katz's story was greeted with a fair amount of skepticism by Mr. Simon *Id.* at 121; "Ms. Katz's speculative language within the context of the Broadcast makes clear that she was only presenting an hypothesis, and not implying that she was in possession of objectively verifiable facts." *Id.* at 123.

dismissed. What is notable about the suits is not that they were dismised but why. In the first instance it was because the plaintiffs could not establish that the government agent relied on Ms. Katz's claims. In the second, it was because Ms. Katz's claims were so facially speculative that a reasonable jury could not conclude that they were anything *but* speculative.  Lack of government reliance and facially speculative theories raise reasonable questions as to the reliability of the work of SITE concerning terrorism financing. Because Ms. Schreck's experience was gained exclusively at SITE under Ms. Katz's direction, the questions fairly apply to her opinions in this case.

Finally, even if Ms. Schreck is qualified as an expert and her methodology is sufficiently reliable to permit admission of her testimony, her testimony is not helpful to the jury.  Ms. Giampietro is charged with material support of HTS.  The government's theory is that Ms. Giampietro provided the funds through The Merciful Hands and Alsadaqah to HTS. To prove this theory, the government must prove that The Merciful Hands and Alsadaqah either transferred the funds to HTS or acted at its direction and control. *See Holder v. Humanitarian L. Project*, 561 U.S. 1 (2010). Independent action by The Merciful Hands or Alsadaqah to support families, or even fighters not affiliated with HTS, would not constitute material support.

Placed within the relevant legal framework, Ms. Schreck's proffered testimony and opinions are not helpful because they are not restricted to HTS, but instead refer primarily to "foreign fighters" and "fighters in Syria."  Foreign fighters are not necessarily part of HTS, as they were found within almost every militant group in Syria, and they are not exclusive to HTS. Likewise, native fighters in Syria also fought for multiple groups other than HTS.  Because Ms. Giampietro is charged with material support of a terrorist organization rather than material support of a terrorist act, supporting a fighter is not sufficient to constitute a crime unless that fighter is an HTS fighter.

6

For Ms. Schreck's testimony to be helpful to the jury, the government bears the burden of showing that the testimony is relevant to the support of HTS fighter, rather than fighters in general.

## CONCLUSION

For the reasons stated above, Ms. Giampietro respectfully requests that this Court conduct a *Daubert* hearing to determine the admissibility of Ms. Catherine Schreck as an expert for the government in terrorism financing.

Respectfully submitted this 24th day of November, 2021.

By: /s/ *Charles Swift*
Charles D. Swift,
*Pro Hac* Attorney for Giampietro
CLCMA
100 N. Central Expy, Suite 1010
Richardson, TX 75080
(972) 914-2507

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of November, 2021, I electronically filed the foregoing Motion for a *Daubert* Hearing Prior to Admission of Testimony of Catherine Schreck with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

By: /s/ *Charles Swift*
Charles D. Swift, *Pro Hac*
Attorney for Giampietro
100 N. Central Expy, Suite 1010
Richardson, TX 75080

7

Case 2:19-cr-00013   Document 323   Filed 11/24/21   Page 7 of 7 PageID #: 3790