IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) No. 2:19-cr-00013 | |
| v. | ) | |
| | ) Chief Judge Crenshaw | |
| | ) | |
| GEORGIANNA A.M. GIAMPIETRO | ) | |

**UNITED STATE'S MOTION IN LIMINE NO. 4 –
TO PRECLUDE CERTAIN OPINION TESTIMONY OF
PROPOSED DEFENSE EXPERT AYMENN JAWAD AL-TAMIMI**

The United States of America, by and through its attorneys, the Acting United States Attorney for the Middle District of Tennessee and the Chief of the Counterterrorism Section of the National Security Division, United States Department of Justice, hereby files this Motion in Limine No. 4 - To Preclude Certain Opinion Testimony of Proposed Defense Expert Aymenn Jawad Al-Tamimi ("Al-Tamimi"), as reflected in his expert report presented in this case. *See* Doc. 243. The government submits that Al-Tamimi's opinions identified below inappropriately invade the province of the jury and form conclusions as to ultimate issues in this case. As a result, defense counsel should not be allowed to elicit such opinions during Al-Tamimi's testimony, and he should not be allowed to testify as to such opinions.

**BACKGROUND**

The Expert Report of Aymenn al-Tamimi:

In his expert report, Al-Tamimi discusses armed groups and designated foreign terrorist organizations operating in Syria, beginning in 2011. Al-Tamimi then briefly discusses two particular entities operating in Syria as "charities," entities to which the defendant sent money in 2018: The Merciful Hands and Al-Sadaqah Syria. Concerning The Merciful Hands "charity", Al-

1

Tamimi notes that "the charity … gained some notoriety in the UK media in relation to the conviction of an individual called Amaani Noor on the charge of funding terrorism as she sent a donation via Paypal to the Merciful Hands." Doc. 243-1, PageID# 3135.[1] Al-Tamimi then states that he has communicated with the current Administrator of the Telegram account for The Merciful Hands, and that based on that purported communication, Al-Tamimi concludes: "In short, there is no evidence available to suggest that Merciful Hands is tied to Hay'at Tahrir al-Sham. . . . The evidence instead suggests that the Merciful Hands has been operating among foreigners present in northwest Syria who are independent of Hay'at Tahrir al-Sham." *Id.* at PageID# 3136.

Concerning Al-Sadaqah Syria, Al-Tamimi claims to have been in contact with an unnamed "former owner" of The Merciful Hands, whom he quotes as saying, "No, they don't support hts either. They're actually independent and hate hts." *Id.* at PageID# 3137. Al-Tamimi also asserts that he communicated in July 2021 with the "head of contact in Hay'at Tahrir al-Sham's media relations office," who reportedly denied a link between al-Sadaqah Syria and HTS. Based on these purported communications, Al-Tamimi concludes: "In short, there is no evidence to show that al-Sadaqah Syria is linked to Hay'at Tahrir al-Sham. For an individual to have made a donation to al-Sadaqah Syria believing that the money would go to Hay'at Tahrir al-Sham would have meant that the individual would have had to have been informed by someone urging the donation that this was the case." *Id.*

Subsequently, in the "Opinions" section of his report, Al-Timimi asserts the following additional opinions:

- "Based on a review of the defendant's communications regarding Hay'at Tahrir al-Sham, Harakat Nour al-Din al-Zinki and Ahrar al-Sham, it is my opinion that her expressed

---

[1] Additional information about this British prosecution was submitted as Exhibit D to Defendant's Motion in Limine to Prohibit the Introduction of Open Source Material, Doc. 322.

statements regarding Hayat Tahrir al-Sham are not consistent with those who support the group."

- "By extension, it is also my opinion that the sentiments that the defendant expressed about the 'fitna' (i.e., in-fighting) are not consistent with those who support participation by Westerners in the conflict."

- "It is also my opinion that the defendant's resolve to go to Syria is far from clear cut."

- "Concerning the Western Union transfers the defendant made, it is my opinion that it is possible that the transfer on June 14, 2018 was made to an individual participating in the activities of al-Sadaqah Syria and that the money was thus intended for al-Sadaqah Syria."

- "It is also my opinion that based on the available evidence, it cannot be conclusively demonstrated that this transfer was intended to support Hay'at Tahrir al-Sham, but rather it is possible that the money could have funded militant activity of groups independent of Hay'at al-Sham.  It is the burden of the prosecution to establish a definitive link here with a designated terrorist organization."

- "Finally, it is my opinion, based on my research, that the advice the defendant and her contact provided to the undercover agent was general advice and not specialized advice one might pay for that could significantly enhance the chance of success for entering Syria and joining a designated terrorist group, particularly given the fact that entry into Syria at this stage of conflict required much more careful and detailed planning."

## ARGUMENT

<u>Al-Timimi's Opinions as to Ultimate Issues of Fact to be Decided by the Jury Should be Precluded:</u>

Federal Rule of Evidence 702 permits a witness qualified as an expert "by knowledge, skill, experience, training or education" to offer opinion testimony if four specific preconditions are met:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702 (2021).

Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three

3

> requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.* Rule 702 guides the trial court by providing general standards to assess reliability: whether the testimony is based upon "sufficient facts or data," whether the testimony is the "product of reliable principles and methods," and whether the expert "has applied the principles and methods reliably to the facts of the case." *Id.*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). *See also United States v. Girod*, 2016 WL 3512159 at *2 (June 22, 2016). In this case, the opinions proffered by Al-Timimi are based on limited facts or data that he unilaterally represented to be credible. Moreover, the proffered opinions are unsupported by any explanation of the principles and methods used to obtain the limited data. Insofar as Al-Timimi fails to describe in any way the unidentifiable individuals on social media who purport to speak for The Merciful Hands and a designated foreign terrorist organization, his opinion testimony cannot be said to be the product of reliable application of principles and methods. Thus, he should not be permitted to offer opinions regarding "charities," specifically "The Merciful Hands and al-Sadaqah Syria" or their connections to designated foreign terrorist organizations.

Apart from the unreliability of Al-Timimi's proffered opinions, the government submits that the Court should preclude presentation of those opinions because most of them usurp the role of the jury as factfinder.[2] "When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment

---

[2] The proffered opinion relating to the advice provided by the defendant and her contact to the undercover agent is irrelevant to this case because the defendant is not charged with providing material support in the form of specialized advice to the agent. Moreover, this proffered opinion purports to define the term as it is used in 18 U.S.C. § 2339B, usurping the role of the Court to define operative legal terms in the statute. *See United States v. A Hausa*, 12-Cr-0134 (BMC), 2017 WL 354197 at *2 (January 24, 2017) (motion to preclude testimony granted); *Covertino v. United States Dept of Justice*, 772 F. Supp.2d 10 (D.D.C. 2010). Al-Timimi's proffered opinion concerning the connection of money transfers to HTS also should be stricken as written, insofar as he opines that "[i]t is the burden of the prosecution to establish a definitive link here with a designated terrorist organization."

4

for the jury's." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994). As the Second Circuit reasoned, if a court allows an expert to testify in this way, the expert has acted "outside of his limited role of providing the groundwork . . . to enable the jury to make its own informed determination." *Id.*

Although Federal Rule of Evidence 704(a) generally permits opinion testimony that "embraces an ultimate issue," FRE 704(b) explicitly establishes an exception to that proposition in a criminal case. Rule 704(b) states, "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Thus, Al-Timimi should not be permitted to offer any opinion as to the meaning, validity, and intent of statements that the defendant made to the undercover agent or on social media, including whether the defendant supported Hay'at Tahrir al-Sham; whether she intended to travel to Syria or had the "resolve" to do so; or whether she intended that the money she sent to "charities" in June 2018 was meant to support Hay'at Tahrir al-Sham.

## CONCLUSION

Wherefore, for the foregoing reasons, the Government requests that the Court enter an order granting the Government's Motion in Limine No. 4 and preclude Aymenn Al-Tamimi from proffering the opinions identified in this Motion. The Government submits that a *Daubert* hearing is unnecessary for the Court to grant the relief sought in the Government's Motion in Limine No. 4.

5

Respectfully Submitted,

MARK H. WILDASIN
Acting United States Attorney
Middle District of Tennessee

By: /s/ *Kathryn Risinger*
KATHRYN RISINGER
PHIL WEHBY
Assistant United States Attorneys
110 9th Avenue South
Nashville, Tennessee 37203
Phone: (615) 736-5151

/s/ *Jennifer E. Levy*
JENNIFER E. LEVY
Trial Attorney - Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W., Ste. 7600
Washington, D.C. 20530
(202) 514-1092

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2021, I electronically filed one copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to counsel for the defendant in this case.

/s/ *Kathryn D. Risinger*
KATHRYN D. RISINGER
Deputy Criminal Chief