IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff, | )<br>)<br>)<br>) | |
| v. | )<br>)<br>) | Case No.: 2:19-cr-00013 |
| GEORGIANNA A.M. GIAMPIETRO,<br>Defendant. | )<br>)<br>) | Chief Judge Waverly D. Crenshaw, Jr. |

### DEFENDANT'S MOTION IN LIMINE TO PROHIBIT THE GOVERNMENT FROM ENTERING EVIDENCE IN ITS CASE-IN-CHIEF IN VIOLATION OF THE DEFENDANT'S PROFFER AGREEMENT

COMES NOW, Defendant, Georgianna Giampietro, by and through undersigned counsel, and makes this Motion to prohibit entry of evidence in the government's case-in-chief concerning whether the defendant posed online as an extremist for the purposes of academic research. This includes testimony regarding Ms. Giampietro's Proffer session and testimony from Dr. Neely, Dr. Lefler, or Dr. Morris stating that they did not tell her to pose online as an extremist to conduct research.

### FACTS

Ms. Giampietro was interviewed by the FBI at her home on October 23, 2018. During this interview the FBI questioned Ms. Giampietro about the charged offenses in this case. As part of that interview Ms. Giampietro was asked about her prior support of ISIS. Ms. Giampietro explained that:

> I was new to Islam, and when you're on social media, they make it look…[whispers] good? But when you start doing –again, cause you said I'm educated, right? So I had to find out myself, and I'm that kind of person, let me find out. And then so I start reading articles, and I started looking more into it, and I'm like reading the Koran more, and I'm like, that's not Islam.

1

On December 6, 2018, the government conducted a proffer session with Ms. Giampietro and her attorney. The following relevant terms apply to the Proffer Agreement:

> Unless otherwise specified in this agreement, no statement made by Ms. Giampietro during this proffer discussion will be offered against Ms. Giampietro in the government's case in-chief in any criminal prosecution of Ms. Giampietro… except in a prosecution for false statements, obstruction of justice in the current investigation, or perjury. Ex. A at 3.[1]

> The United States can use information derived from statements by Ms. Giampietro under the proffer agreement directly or indirectly for the purpose of obtaining leads to other evidence, which evidence may be used by the United States against Ms. Giampietro in any prosecution of her. Ex. A at 3.

> The United States may also use Ms. Giampietro's statements as substantive evidence to rebut any evidence, factual assertions, or arguments offered by or on behalf of Ms. Giampietro that are inconsistent with the statements made during this proffer. Ex. A at 4.

The Proffer session was not recorded, however, the FBI subsequently prepared a 302 summarizing the interview. The 302 contains summarized admissions and explanations by Ms. Giampietro concerning her education at Middle Tennessee State University (MTSU) and a claim that her internet activities were for research.

> In the fall of 2013, Giampietro started studying International Affairs at Middle Tennessee State University (MTSU) which also had an element of counter-terrorism. Giampietro claimed soon after she came online calling herself "Arneera" in order to conduct research into terrorists and terrorism. Giampietro claimed she started turning terrorists into the authorities in 2017. Ex. A at 1.[2]

Despite the limitations on the Proffer Agreement, the government in its preliminary witness list has indicated its intent to call Dr. Kari Sue Neely, Dr. Vanessa A. Lefler, and Dr. Stephen

---

[1] No false statements or perjury charges have been brought in this case and the obstruction of justice charges pertain only to Ms. Giampietro's alleged deletion or alteration of online and social media records.

[2] Exhibit A is the government's 302 summary of the Proffer Session conducted on December 6, 2018, along with the Proffer Agreement. The defense does not have a full transcript of this meeting.

Morris as witnesses to rebut Ms. Giampietro's alleged claim that her online persona was "to conduct research into terrorists and terrorism." Specifically, the government proffers that:

> Dr. Neely was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Neely is expected to testify regarding the courses that she taught and in which of those courses the defendant was a student. Dr. Neely is further *expected to testify that she never asked the defendant to pose as someone who supported extremist Islamic views in order to conduct research for her classes*. Government's Prelim. Witness List (emphasis added).

The government further indicated its intent to call Dr. Vanessa A. Lefler and proffers that:

> Dr. Lefler was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Lefler is expected to testify regarding the courses that she taught and in which of those courses the defendant was a student. Dr. Lefler is further expected to testify that she never asked the defendant to pose as someone who supported extremist views in order to conduct research for her classes. Dr. Lefler is further expected to testify that during the defendant's time at MTSU, she took some of Dr. Lefler's classes, including "International Security in a Changing World," "Literature Review in International Affairs," and "Readings in International Relations." Government's Prelim. Witness List.

The government has also indicated its intent to call Dr. Morris and proffers that:

> Dr. Morris was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Morris is expected to testify regarding the courses that he taught and in which of those courses the defendant was a student. Dr. Morris is further *expected to testify that he never asked the defendant to pose as someone who supported extremist views in order to conduct research for his classes*. Finally, Dr. Morris is expected to testify that while the defendant was a graduate student at MTSU, she took his class: Comparative Politics in the International Affairs Program. Dr. Morris is further expected to testify that when she took his class in the spring of 2014, she wrote a paper for that class entitled, "Money in all the Wrong Places: Corruption and Financing Terrorist Organizations." Dr. Morris is further expected to testify that this paper detailed how terrorist organizations will use sham charities as a means for funneling money to support terrorist groups. Government's Prelim. Witness List (emphasis added).

**ARGUMENT**

The government is likely to argue that Dr. Neely, Dr. Lefler, and Dr. Morris's testimony denying that they asked the defendant to pose as an extremist online is derivative evidence of their Proffer session, and therefore admissible. The relevance of Dr. Neely, Dr. Lefler, and Dr. Morris's

3

testimony rests on the need to rebut a factual assertion that Ms. Giampietro was posing as an extremist to conduct research online. *See* FED. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.") Here, the fact that neither Dr. Neely, nor Dr. Lefler, nor Dr. Morris instructed Ms. Giampietro to pose online as an extremist is only of consequence if there is a suggestion that Ms. Giampietro is claiming that she posed online as part of her class work. This suggestion could of course come from Ms. Giampietro's testimony herself, and the use of her prior Proffer statements would be in accordance with the Proffer Agreement. However, if she does not testify, then under the terms of the Proffer Agreement the suggestion cannot be made during the government's case-in-chief without violating the Proffer Agreement.

In the absence of any suggestion, Dr. Neely, Dr. Lefler, and Dr. Morris's testimony will significantly confuse and mislead the jury. Federal Rule of Evidence 403 permits this Court to exclude marginally relevant evidence if its probative value is outweighed by a danger of "unfair prejudice, confusing the issues [and] misleading the jury". By calling Dr. Neely, Dr. Lefler, or Dr. Morris to rebut a theory that the defense does not intend to offer, the government will only confuse the jury. "Unfair prejudice as used in Rule 403 does not mean the damage to a [party's] case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988). Here, Dr. Neely, Dr. Lefler, and Dr. Morris's testimony will suggest to the jury that Ms. Giampietro lied to investigators—something she is not charged with. Because there is no relevant or non-prejudicial reason to admit their testimony, Dr. Neely, Dr. Lefler, and Dr. Morris's proposed testimony is precisely the type of testimony that Fed. R. Evid. 403 excludes.

4

## CONCLUSION

For the reasons stated above, the defendant respectfully requests (1) that this Court prohibit entry of evidence concerning whether the defendant posed online as an extremist for the purposes of academic research, including testimony regarding her Proffer session, and (2) this Court prohibit testimony from Dr. Neely, Dr. Lefler, or Dr. Morris eliciting that they did not tell her to pose online as an extremist to conduct research.

Respectfully submitted this 24th day of November, 2021.

/s/ Charles D. Swift
CHARLES D. SWIFT
*Pro Hac Vice* Attorney for Giampietro
Constitutional Law Center for Muslims in America
100 N. Central Expy., Suite 1010
Richardson, TX 75080
Phone: (972)-914-2507
Email: cswift@clcma.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of November, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Charles D. Swift
CHARLES D. SWIFT
*Pro Hac Vice* Attorney for Georgianna Giampietro