IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>)<br><br>)<br>v. )<br><br>)<br><br>)<br>GEORGIANNA A.M. GIAMPIETRO ) | No.   2:19-cr-00013<br><br>Chief Judge Crenshaw |

## <u>UNITED STATES' WITNESS LIST FOR<br>TRIAL ON JANUARY 31, 2022</u>

COMES NOW the United States of America, by and through the undersigned, and hereby files this witness list, identifying witnesses who may testify during trial in the above-referenced case, which is scheduled to begin on January 31, 2022. A brief summary of the topics on which each identified witness is expected to testify is also included herein.

***Identified Witnesses:***

1. **<u>Amjad, Rubda</u>**

Ms. Rubda is expected to testify about her communications with the defendant regarding the defendant's ideological beliefs, traveling to Syria, taking Ms. Rubda to Syria, and her support for the Mujahideen in Syria. Ms. Rubda is further expected to testify that at the time she was communicating with the defendant, she was a minor living in the United Kingdom.

2. **<u>Blackwell, Jeffrey - Special Agent USDA, OIG</u>**

Agent Blackwell is expected to testify regarding the defendant's participation in and receipt of funds from federal assistance programs for low-income individuals during the time in which she was donating money to organizations supporting the Mujahideen in Syria and the time she was soliciting others for money to pay off her student loan debt so that she could travel to Syria and marry an individual fighting on behalf of foreign terrorist organizations.

3. **<u>Bennett, Lyndsey E. - Middle Tennessee State University Records Custodian</u>**

Ms. Bennett is expected to identify, authenticate, and testify regarding records received from MTSU related to the defendant and classes she took while enrolled at MTSU, which are relevant to this investigation and the defendant's knowledge of what was happening in the Middle East and certain foreign terrorist organizations.

1

4. **Bloom, Mia**

Dr. Bloom will be offered as an expert and is expected to testify about the role of women in terrorism, including the activities undertaken by female jihadists and female jihadi supporters. She will describe the differing roles of women in HTS and ISIS and the differing roles of younger women and older women in each foreign terrorist organization. Dr. Bloom will help to explain the meaning of jihad in its various forms, the genesis and meaning of the ideology reflected in the Islamic teachings and literature often used in radicalization efforts, and the meaning of terminology used in this context. She is also expected to testify about certain clerics, including Anwar Awlaki, and their philosophies as they relate to women. She will help to explain the radicalization process, with a focus on the radicalization of women. She will explain the movement from radicalization of thought to the radicalization of deed. Dr. Bloom is expected to testify about the differing recruitment methods used to reach different categories of women, depending on their anticipated role in the foreign terrorist organization. She will explain the role of online communications and certain social media platforms in the radicalization process and in the encouragement of terrorist support activities, the use of organizations posing as charities to fund terrorist activities, and the techniques used to travel undetected and internationally in support of jihadis.

5. **Bronstein, Stewart – Special Agent, FBI**

Agent Bronstein was present during the initial interview of witness Maram Ese and is expected to testify about that interview and the extraction of information from Ms. Ese's cellular telephone.

6. **Campbell, Rich – Special Agent, FBI**

Agent Campbell is expected to testify regarding his background, training, and experience and his duties as the current Division Coordinator for the FBI's Computer Analysis Response Team for the FBI's Memphis Division. Agent Campbell will also testify regarding his extraction and processing of any electronic items, such as the defendant's cellular telephone and computer, that were seized during this investigation. Finally, Agent Campbell may testify regarding electronic items that were sent to FBI headquarters for assistance related to the forensic analysis of any electronic devices seized during this investigation.

7. **Cannata III, Frank - PayPal Records Custodian**

Mr. Cannata is expected to identify, authenticate, and testify regarding records received from PayPal related to the defendant and this investigation.

8. **Carnright, Cassandra – Special Agent, FBI**

Agent Carnright was present during the interview of witness Shirin Yusupova and is expected to testify about that interview.

### 9. Carter, Toby – Sergeant, Tennessee Highway Patrol

Sergeant Carter is expected to testify regarding his employment with the Tennessee Highway Patrol and his duties in 2015, including his participation in the FBI's Joint Terrorism Task Force. As a result of his participation on that task force, Sergeant Carter received a referral from an analyst employed by the Westchester Intelligence Center (at the Westchester District Attorney's office) and related to potential criminal conduct being committed by the defendant. Sergeant Carter is further expected to testify his review of the materials received from the analyst, including screenshots of postings made by the defendant, which resulted in the FBI opening an investigation into the defendant's potential involvement with terrorist organizations.

### 10. Clark, Jennifer - Western Union Records Custodian

Ms. Clark (or another Western Union custodian) is expected to identify, authenticate, and testify regarding records received from Western Union related to the defendant and this investigation.

### 11. Craig, Kelsey

Ms. Craig was a friend of the defendant who is expected to testify regarding her observations of some radical postings the defendant made on social media, including an image on Instagram of the Statue of Liberty headless, burning, and holding a black flag with Arabic writing, and New York City burning in the background.

### 12. Elvenaes, Alexandra

Ms. Elvenaes is expected to testify regarding her employment as an analyst at the Westchester Intelligence Center (at the Westchester District Attorney's office) in 2015, during which she observed postings made by the defendant that concerned her and which she reported to law enforcement for follow-up. Such reporting is what led to the FBI investigation in this case.

### 13. Ese, Maram

Ms. Ese is expected to testify regarding meeting the defendant through online forums in or around September 2017 when Ms. Ese was a minor female. Ms. Ese is further expected to testify about the extremist views espoused by the defendant during the time that they knew each other. Ms. Ese is further expected to testify about her conversations with the defendant regarding the defendant's fiancé, who was a fighter in Syria, the influence the defendant had on Ms. Ese and her beliefs, and their discussions regarding traveling to Syria.

### 14. Evans, Kirk

Mr. Evans is the father of the defendant's minor son and with whom she shared joint custody during this investigation. During the investigation in this case, the defendant repeatedly discussed with other individuals her desire to move to Syria in order to support the Mujahideen and her desires to take her minor son with her to Syria, despite knowing that Mr. Evans would not allow his son to go to Syria. Mr. Evans is expected to testify that during the time of this

3

investigation, the defendant never discussed moving to Syria with their son, and had she discussed as much, he would not have allowed her to move to Syria with her son.

### 15. <u>Faroqi, Beheshta</u>

Ms. Faroqi is expected to testify about her communications with the defendant regarding the defendant's ideological beliefs; her desire to marry a fighter; and her support for the Mujahideen in Syria. Ms. Faroqi is further expected to testify that when she learned the British Police were coming to her residence, she advised the defendant of their impending visit and the defendant told her to delete her applications before the police arrived. Finally, Ms. Faroqi is further expected to testify that at the time she was communicating with the defendant, Ms. Faroqi was a minor.

### 16. <u>Fletcher, Brandi - Tennessee Tech University Records Custodian</u>

Ms. Fletcher is expected to identify, authenticate, and testify regarding records received from TTU related to the defendant and classes she took while enrolled at TTU, which are relevant to this investigation and the defendant's knowledge of what was happening in the Middle East and certain foreign terrorist organizations.

### 17. <u>Griffin, Elizabeth</u>[1]

Ms. Griffin is the defendant's ex-girlfriend who was incarcerated with the defendant following her arrest in this case. Ms. Griffin subsequently went to live with the defendant's mother upon her release from jail. Ms. Griffin is expected to testify regarding conversations about this case that she had with the defendant while incarcerated and after Ms. Griffin's release from jail.

### 18. <u>Hassan, Hassan</u>

Mr. Hassan will be offered as an expert and is expected to testify about the foreign terrorist organization, Hayat Tahrir al-Sham, its genesis, ideology, strategy, tactics, activities, and recruiting efforts. He is expected to testify about the relationship of this organization to other extremist groups and foreign terrorist organizations operating in the region during and around the time that the defendant attempted to provide material support to a foreign terrorist organization – Hayat Tahrir al-Sham. More specifically, Mr. Hassan will provide a background of the history of the region encompassing Iraq, Iran, and Syria since 2011, the background and history of the groups operating in this region and how they operate, including their Islamic philosophy, how jihadists became involved in the conflict in Syria, and the identification of certain foreign terrorist organization leaders and clerics. Mr. Hassan will discuss the tactics and strategies for radicalization, including the perspective of certain literature, and will explain specific concepts of importance in understanding Islamic philosophy or religious teachings and how some of those concepts are interpreted to assist in radicalization and recruitment efforts.

---

[1] The Government does not intend to introduce the testimony of Elizabeth Griffin in its case-in-chief. However, there is the potential that Ms. Griffin's testimony could become relevant in rebuttal. While the Government normally does not specify if a witness will likely be a rebuttal witness or testify in its case-in-chief, we did so here because the defense has filed a Motion in Limine to exclude her testimony, and we intend to respond to that motion in this manner.

19. **Hermanson, Gregory T. – FBI Forensic Examiner**

Mr. Hermanson is expected to testify regarding his background, training, and experience and his duties as a forensic examiner for the FBI's Computer Analysis Response Team. Mr. Hermanson will also testify regarding any assistance he provided in extracting and processing the data retrieved from any of the electronic devices seized during this investigation.

20. **Kamel, Karam – (Language Specialist, FBI)**

Mr. Kamel is expected to testify regarding his background, training, and experience related to the Arabic language and his official translation of materials and conversations from this case that included phrases, words, and writings in Arabic. Mr. Kamel is further expected to testify that he was born in Egypt where he lived until age 18. At 18 years old, he moved to Nashville, Tennessee, and subsequently joined the United States Air Force as a Civil Engineering Assistant before contracting for/joining the FBI as an Arabic Language Specialist in 2007.

21. **Kesey, Client - Ben Lomand / Subsentio Records Custodian**

This witness will identify, authenticate, and testify regarding records, including records related to IP address 137.119.204.163, received from Ben Lomand / Subsentio related to the defendant and this investigation.

22. **Laskowski, Tammi – Special Agent, FBI**

Agent Laskowski is expected to testify regarding her background, training, and experience with the FBI, including her time as an analyst for the FBI and her time as an Army Intelligence Officer before becoming an FBI agent. Agent Laskowski is expected to testify as to her current duties as an agent and the squad to which she is assigned. Agent Laskowski is also expected to testify regarding the FBI's overall investigation into the defendant, including, among other things, the genesis of the FBI's investigation into the defendant, the steps taken by the FBI to investigate the defendant, records received and analyzed related to this investigation, and evidence obtained and analyzed during this investigation. Agent Laskowski is further expected to testify regarding photographs taken during the search of the defendant's residence and items recovered during that search including, but not limited to books, journals, notes, and extremist propaganda, as well as data extracted from the defendant's electronic devices and information obtained from the defendant's cloud. Such testimony is expected to include Agent Laskowski's identification of extremists related to this case, such as individuals depicted or quoted in items/electronic data recovered from the defendant's devices or electronic communications with other individuals.

23. **Lefler, Vanessa A.**

Dr. Lefler was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Lefler is expected to testify regarding the courses that she taught; the subject matters discussed as part of those courses; and in which of those courses the defendant was a student. Dr. Lefler is further expected to testify that she never asked the defendant to pose as someone who supported extremist views in order to conduct research for her classes. Dr. Lefler is further expected to testify that during the defendant's time at MTSU, she took some of Dr. Lefler's classes,

5

including "International Security in a Changing World," "Literature Review in International Affairs," and "Readings in International Relations."

### 24. <u>Moore, Jennifer - Facebook/Instagram Records Custodian</u>

Ms. Moore (or another Facebook custodian) is expected to identify, authenticate, and testify regarding records received from Facebook/Instagram related to the defendant and this investigation.

### 25. <u>Morris, Stephen D.</u>

Dr. Morris was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Morris is expected to testify regarding the courses that he taught; the subject matters discussed as part of those courses; and in which of those courses the defendant was a student. Dr. Morris is further expected to testify that he never asked the defendant to pose as someone who supported extremist views in order to conduct research for his classes. Finally, Dr. Morris is expected to testify that while the defendant was a graduate student at MTSU, she took his class: Comparative Politics in the International Affairs Program. Dr. Morris is further expected to testify that when the defendant took his class in the spring of 2014, she wrote a paper for that class entitled, "Money in all the Wrong Places: Corruption and Financing Terrorist Organizations." Dr. Morris is further expected to testify that this paper detailed how terrorist organizations will use sham charities as a means for funneling money to support terrorist groups.

### 26. <u>Neely, Kari Sue</u>

Dr. Neely was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Neely is expected to testify regarding the courses that she taught; the subject matters discussed as part of those courses; and in which of those courses the defendant was a student. Dr. Neely is further expected to testify that she never asked the defendant to pose as someone who supported extremist Islamic views in order to conduct research for her classes.

### 27. <u>NY Online Covert Employee</u>

This witness is expected to testify that he was directed to and observed a Facebook group named "Al Sadaqah." This witness is expected to testify that in the "about section" of the group, the group identified as "An independent charity organization supporting the Mujahideen in Syria."[2] This witness is also expected to testify that the group included images advocating for donations to the Mujahideen in an effort to purchase, among other things, new military uniforms, for those fighting on behalf of jihad. This witness is further expected to testify that he engaged in online communications with a user of the "Al Sadaqah" Facebook page through various platforms, including Facebook messenger, about how money could be sent, and to whom, overseas in support of the Mujahideen in Syria. Finally, this witness is expected to testify about Al Sadaqah's affiliation with HTS.

---

[2] The defendant donated money to an organization posing as a charity in an effort to support terrorist activities affiliated with Al Sadaqah for the purpose of supporting the Mujahideen.

### 28. <u>Online Covert Employee #1 ("OCE #1")</u>

OCE #1 is expected to testify that she is an FBI employee who acted in an online covert capacity during this investigation, representing herself as a female individual who held extremist views. In that capacity, OCE #1 became online friends with the defendant and engaged in online communications with the defendant regarding their like-minded beliefs related to jihad and supporting the Mujahideen. OCE #1 is further expected to testify regarding her observations of the defendant's Telegram channel and/or other social media accounts and the items and information the defendant posted on that channel and/or other social media accounts. OCE #1 will also testify that she introduced the defendant to Undercover Employee #1 who acted as a like-minded sister who shared the defendant's extremist views. Finally, OCE #1 is expected to testify that in the fall of 2018, the defendant became concerned about having befriended potential spies for the Government and the steps she planned to take in order to protect herself against such spies and the Government.

*The Government anticipates calling OCE #1 twice at trial so as to present evidence in chronological order and to aid the jury in its understanding of the timeline of events in this case.

### 29. <u>Online Covert Employee #2 ("OCE #2")</u>

OCE #2 is expected to testify that he is an FBI employee who acted in an online covert capacity as the husband of UCE #1 during this investigation. OCE #2 is expected to testify that he was provided the online contact information for a foreign extremist related to Hayat Tahrir al-Sham, a foreign terrorist organization, by the defendant through UCE #1. OCE #2 is further expected to testify that the defendant provided this contact to UCE #1 so that they could reach out to the extremist contact for assistance in traveling from the United Kingdom to Syria for the purpose of joining Hayat Tahrir al-Sham and supporting jihad. OCE #2 is further expected to testify that he did, in fact, reach out to the foreign extremist through an online platform and will introduce into evidence of his online communications with that individual. Finally, OCE #2 is expected to testify as to the substance of those communications.

### 30. <u>Online Covert Employee #3 ("OCE #3")</u>

OCE #3 is expected to testify that she is an FBI employee who acted in an online covert capacity during this investigation. In that capacity, OCE #3 followed a Telegram channel related to Merciful Hands, an organization soliciting and receiving donations on behalf of the Mujahideen. OCE #3 will authenticate postings that she downloaded from the Merciful Hands Telegram channel account and enter those postings into evidence at trial.

### 31. <u>Phillips, Jacelynn</u>

Ms. Phillips is expected to testify that during this investigation, she was friends with the defendant and observed graphic postings and pictures that the defendant made on Snapchat related to the Middle East.

### 32. <u>**Rogers, Amanda – USCIS/DHS Employee**</u>

Ms. Rogers (or another USCIS/DHS employee) is expected to testify that she and another individual met with Alaa Abusaad to discuss issues related to her husband's immigration status.

### 33. <u>**Reller, Daniel - AT&T Records Custodian**</u>

Mr. Reller is expected to identify, authenticate, and testify regarding records received from AT&T related to the defendant and this investigation.

### 34. <u>**Saltar, Josh – Special Agent, FBI**</u>

Agent Salter was present during the initial interview of witness Maram Ese and is expected to testify about that interview and the extraction of information from Ms. Ese's cellular telephone.

### 35. <u>**Savage, Lukas – Resident Agency Specialist, FBI**</u>

Mr. Savage is expected to testify regarding his employment with the FBI and his duties related to his employment, including his role as a member of the FBI's Evidence Response Team. Mr. Savage is expected to testify about the execution of a search warrant at the defendant's residence in October 2018, the photos taken during the execution of the search warrant, and any items seized as evidence in this case. Mr. Savage will also authenticate certain photos and items seized from the search warrant that will be entered into evidence at trial.

### 36. <u>**Schreck, Catherine - SITE Intelligence Group**</u>

Ms. Schreck is a senior analyst with the SITE Intelligence Group and is expected to testify about the research that SITE Intelligence Group has conducted concerning entities that hold themselves out as charities to raise funds for terrorist organizations, including Alsadaqah and The Merciful Hands; the methods through which SITE Intelligence Group conducts research to track terrorist financing activity on-line; and the methods through which SITE Intelligence Group develops written reports of the financing activity discovered through the research. She is further expected to testify about how SITE Intelligence Group analysts monitor social media sites to observe the activity of terrorist actors who may be planning operations or engaging in fundraising efforts; how SITE Intelligence Group analysts locate and preserve evidence concerning the activities of these terrorist organizations; and how they use groups such as The Merciful Hands and Alsadaqah to raise funds for weapons, equipment and other necessities. Ms. Schreck is further expected to testify about the publicly accessible communications and postings that can be retrieved on social media platforms such as Telegram. She is further expected to testify about the references to the Abu Ahmed Foundation ("AAF") that appeared on The Merciful Hands platform in 2018, when the defendant sent a contribution to The Merciful Hands. Ms. Schreck is further expected to testify that publicly available information about AAF on social media platforms established AAF's support for HTS and other terrorist organizations.

If allowed to testify as an expert witness, Ms. Schreck will also be asked to explain to the jury the on-line connections among entities such as The Merciful Hands and Alsadaqah, and Al

Qaeda, HTS, and the groups in Syria that support mujahideen fighting for foreign terrorist organizations there. Ms. Schreck's testimony will give the jury context for the on-line solicitations made by The Merciful Hands and Alsadaqah, and the research reflecting that these entities are embedded in the jihadi community in Syria. Ms. Schreck is expected to testify about the methods and means of support of terrorist organizations and their non-charitable activities on social media platforms such as Telegram in 2018. She will help the jury understand how financial transactions involving The Merciful Hands and Alsadaqah can be traced to foreign fighters in Syria. She will offer an expert opinion as to the common practices of entities such as The Merciful Hands and Alsadaqah to support the activities of foreign terrorist organization, and the limited amount of funds solicited for the benefit of displaced persons, widows, and orphans of those fighting in Syria that actually is intended for those purposes. She is also expected to discuss how entities soliciting funds for terrorist organizations instructed potential donors to send money to avoid detection.

### 37.    Schu, Erin C. – Special Agent, FBI

Agent Schu was present during the interview of witness Shirin Yusupova and is expected to testify about that interview.

### 38.    Sledd, Scot – Special Agent, FBI

Agent Sledd is expected to testify regarding his background, training, and experience with the FBI and before joining the FBI. Agent Sledd is expected to testify as to his current and former duties as an agent for the FBI, the squad to which he is assigned, and his duties. Agent Sledd is expected to testify regarding the FBI's overall investigation into the defendant, including, among other things, the genesis of the FBI's investigation into the defendant, the steps taken by the FBI to investigate the defendant, records received and analyzed related to this investigation, and evidence obtained and analyzed during this investigation. Agent Sledd is further expected to testify regarding photographs taken during the search of the defendant's residence and items recovered during that search including, but not limited to books, journals, notes, and extremist propaganda, as well as data extracted from the defendant's electronic devices and information obtained from the defendant's cloud. Such testimony is expected to include Agent Sledd's identification of extremists related to this case, such as individuals depicted or quoted in items/electronic data recovered from the defendant's devices or electronic communications with other individuals.[3]

### 39.    Undercover Employee #1 ("UCE #1")

UCE #1 is expected to testify that she is an FBI employee who acted in an undercover capacity during this investigation, representing herself as a female individual who held extremist views, had a desire to support the Mujahideen in Syria, and who wanted to travel to Syria to support the jihad and Hayat Tahrir al-Sham. UCE #1 is expected to testify that she became friends with the defendant and engaged in ongoing conversations with the defendant regarding their like-minded radical beliefs and support for the Mujahideen. UCE #1 will authenticate any

---

[3] Additionally, Agent Sledd is expected to testify regarding any statements the defendant made to the Government during her proffer session if the defense opens the door to the admissibility of those statements at trial.

communications she had with the defendant underlying the charges in this case and is further expected to testify regarding the substance of those communications. UCE #1 is further expected to testify regarding her in-person meetings with the defendant and the topics they discussed during those meetings relating to the defendant's extremist views and her support of jihad. UCE#1 is further expected to testify regarding information the defendant shared on her Telegram Channel "Islaamic Literature," which was observed and captured by UCE #1. UCE #1 is further expected to testify that the defendant provided her with contact information for a "trusted brother" as an individual to whom UCE #1 could send money to help support the Mujahideen. UCE #1 is also expected to testify regarding the advice that the defendant provided her regarding the steps she and her purported husband should take in planning their travel to Syria to support the jihad so that they could avoid law enforcement detection and successfully arrive in Syria. UCE #1 is further expected to testify that the defendant provided her with the contact information for a foreign extremist with connections to Hayat Tahrir al-Sham, a foreign terrorist organization, in Syria in order to secure assistance for UCE #1 and her purported husband to safely travel to Syria to support the Mujahideen. UCE #1 is further expected to testify that she provided that contact information to her purported husband who then reached out to the foreign extremist for assistance regarding travel.

### 40.   Vassilev, Todd - Google Records Custodian

Mr. Vassilev is expected to identify, authenticate, and testify regarding records received from Google related to the defendant and this investigation.

### 41.   Wright, Joy – Special Agent, FBI

Agent Wright is expected to testify regarding her background, training, experience with the FBI, her current squad assignment, and her duties as an FBI agent. Agent Wright is expected to testify regarding statements the defendant made during a non-custodial interview with the FBI in October 2018, the defendant's demeanor during that interview, and how the defendant re-engaged the agents for additional conversations after the first interview had concluded and around the time the FBI had begun executing its search warrant at her residence.

### 42.   Williams, Maria[4]

Ms. Williams is expected to testify that she is the mother of the defendant and that during the time of this investigation, the defendant was living at the Ms. Williams's residence. She is further expected to testify that while living at the residence, Ms. Williams was unaware that the defendant had converted to Islam. Ms. Williams is further expected to testify that the defendant did not share her support for radical Islamic beliefs and that she was unaware of the postings and communications the defendant was making/having on social media related to her support for the Mujahideen fighting for jihad.

---

[4] The Government does not intend to introduce the testimony of Maria Williams in its case-in-chief. However, there is the potential that Ms. William's testimony could become relevant in rebuttal. While the Government normally does not specify if a witness will likely be a rebuttal witness or testify in its case-in-chief, we did so here because the defense has filed a Motion in Limine to exclude her testimony, and we intend to respond to that motion in this manner.

### 43.  **Yusupova, Shirin**

Ms. Yusupova is expected to testify that she knew the defendant in an online capacity and communicated with the defendant through Telegram. Ms. Yusupova is expected to testify regarding her online communications with the defendant related to the fighting in Syria, the specific groups located there, and her extremist beliefs related to Islam. Ms. Yusupova is further expected to testify that she shared the defendant's extremist beliefs and that they often discussed their support for the Mujahideen, as well as the terroristic groups fighting in Syria, to include ISIS and Al Nusra.[5] Ms. Yusupova will also testify that the defendant discussed her fiancé in Syria and stated that he was affiliated with Hayat Tahrir al-Sham. During this investigation, Chicago FBI agents interviewed Ms. Yusupova about her online activities. Ms. Yusupova is expected to testify that after she was interviewed, she told the defendant about her interview with the FBI, and the defendant expressed concern about the FBI's interview of Ms. Yusupova and then immediately stopped communicating with Ms. Yusupova.

### 44.  **Zweig, Elliot – Deputy Director of MEMRI**

Mr. Zweig is expected to testify about research conducted by MEMRI related to the organization known as "The Merciful Hands" and the publication of the report by MEMRI on August 9, 2018 entitled, "A Review of Al-Sadaqah Organization's Activity on Telegram: Group Updates Its WhatsApp Number, Uses Deep Web-Based Email Service SecMail."

---

[5] Al Nusra is the precursor terrorist organization for Hayat Tahrir al-Sham.

Respectfully Submitted,

MARK H. WILDASIN
United States Attorney
Middle District of Tennessee

By:   /s/ *Kathryn Risinger*
KATHRYN RISINGER
Deputy Criminal Chief – Organized Crime

/s/ *Phil Wehby*
PHIL WEHBY
Assistant United States Attorney
110 9th Avenue South
Nashville, Tennessee 37203
Phone: (615) 736-5151

/s/ *Jennifer E. Levy*
JENNIFER E. LEVY
Trial Attorney
Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Suite 7600
Washington, D.C. 20530
(202) 514-1092

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2021, I electronically filed one copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to counsel for the defendant in this case.

/s/ *Kathryn D. Risinger*
KATHRYN D. RISINGER
Deputy Criminal Chief

12