IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>GEORGIANNA A.M. GIAMPIETRO )<br>    Defendant. ) | Case No.: 2:19-cr-00013<br><br>Chief Judge Waverly D. Crenshaw, Jr. |

**DEFENDANT'S RESPONSE IN OPPOSITION
TO UNITED STATES' MOTION IN LIMINE NO. 2**

In Motion in Limine No. 2, the government seeks to exclude any argument or questioning related to Defendant Georgianna Giampietro's freedom of expression and association under the First Amendment. (Gov't Mot. in Lim. No. 2, Doc. 319).

The government discusses at length its position that Ms. Giampietro's conduct is not protected expression or association. For example, it argues that "[t]he First Amendment's guarantee of associational freedom is no license to supply terrorist organizations with resources or material support in any form . . ." Mot. in Lim. No. 2 at 8. It further states that "a defendant who encourages others to join a foreign terrorist organization by traveling to join the fight . . . can be prosecuted for attempting to provide materials support to an FTO." *Id*. at 8-9. Both of these points are correct statements of law. But their application depends on the factual determination that a defendant's conduct crossed the "line [from] First Amendment protected activity [to] criminal conduct for which there is no constitutional protection." *Id*. at 8. The government will offer evidence seeking to demonstrate that Ms. Giampietro's conduct crossed that line. The Court should likewise permit Ms. Giampietro to offer evidence that her conduct did not. Accordingly, Ms. Giampietro requests that this Court deny Motion in Limine No. 2.

## RELEVANT BACKGROUND

On August 23, 2021, after submitting Motion in Limine No. 2, the government filed its Second Superseding Indictment, which added a charge for attempting to provide material support and resources in the form of currency to Hay'et Tahrir al-Sham (HTS) in violation of 18 U.S.C. § 2339B(a)(1). The government states that in support of Count Two, it will offer evidence to show that Ms. Giampietro made inquiries about how to send money to the Mujahedeen; that she sent money to an unspecified person in Syria and made donations to a humanitarian aid group called Merciful Hands; and that she gave an FBI Undercover Employee (UCE) information about supporting the Mujahedeen, also through Merciful Hands. Mot. in Lim. No. 2 at 5-6. The government claims that Merciful Hands provides funding to HTS and that Ms. Giampietro knew this. The defense will offer evidence to refute these allegations, including evidence that Merciful Hands has no ties to HTS, and that if Merciful Hands did support HTS, Ms. Giampietro was unaware and did not herself support HTS at the time of her donations in mid-2018. The defense will show that that Ms. Giampietro donated to Merciful Hands for the purpose of supporting needy families, children, and the disabled in Syria. And the defense will argue that her association with Merciful Hands is protected by the First Amendment.

Count 1 remains the same as in the Superseding Indictment: attempting to provide material support and resources in the form of personnel and services to HTS in violation of § 2339B(a)(1). In purported support, the government states that it will offer evidence to show that Ms. Giampietro advised UCE-1 on how to travel to Syria undetected and provided her with the contact information for a "trusted brother" who could assist with the UCE's travel. Mot. in Lim. No. 2 at 6-7. The defense, on the other hand, will offer evidence to show that Ms. Giampietro did not intend to provide personnel or services to HTS; and rather than support the UCEs plan to travel to Syria, she

actually discouraged the UCEs from traveling or joining HTS.[1] The defense will also argue that her communications with UCE-1 during the charging period are independent advocacy and political views protected by the First Amendment.

To prove the charges, the government seeks to offer evidence of Ms. Giampietro's online activity and posts relating to terrorist organizations to "complete[] the story of Giampietro's attempt to provide material support to HTS in 2018" or for another proper purpose under Rule 404(b)(2). *See* Gov't Opp'n to Def.'s Mot. in Lim. Re: 404(b), Doc. 170 at 4; *see also* Gov't Notice Re: 404(b) Evid., Doc. 102 at 8-9.

## ARGUMENT

The Court's analysis should begin with the language of the statute under which the government charged Ms. Giampietro: "Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States." 18 U.S.C. § 2339B(i). Those rights include the freedom of expression and freedom of association. U.S. CONST. amend. I.

The government seeks to exclude argument and evidence that Ms. Giampietro's actions are protected by the First Amendment, arguing that Ms. Giampietro "is not charged with violating 18 U.S.C. § 2339B on the basis of her postings or conversations." Mot. in Lim. No. 2 at 5. It goes on to claim, however, that Ms. Giampietro provided material support "in the following ways"— including her contacts with various individuals in Syria, her donations to a Syria-based organization, and her conversations with UCE-1. *Id.* at 5-6. Further, in its 404(b) notice (Doc. 102) and its opposition (Doc. 170) to Ms. Giampietro's motion in limine seeking to exclude the 404(b)

---

[1] Ms. Giampietro will also offer evidence that to the extent her conduct violated § 2339B, it was the result of entrapment by UCE-1.

3

evidence (Docs. 169, 171),[2] the government argued that Ms. Giampietro's social media posts, including posts "espousing support for ISIS and for terrorist attacked," are inextricably intertwined with the charged offenses. Gov't Opp'n to 404(b) Mot., Doc. 170 at 1, 3. And although the government claims in Motion in Limine No. 2 that it "has never characterized the defendant's conduct as 'expert advice and assistance,'" the premise of its personnel argument is that because of Ms. Giampietro's alleged past interest and research into terrorist organizations, she could and did provide the UCEs with specific contact information and advice on how to travel to Syria undetected. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 28 (2010) (explaining that the statute is content-based because if the speech imparts a specific skill, it is barred; if it is only general or unspecialized knowledge, it is not barred). Indeed, in the Opposition noted above, the government stated that its proffered *expert*,[3] Mia Bloom, will testify about "the techniques used to travel undetected and internationally in support of jihadis. . . . to place Giampietro's conduct in this case in its full context."[4] Gov't Opp'n to 404(b) Mot. at 5. And finally, months after the Opposition, the government added another count against Ms. Giampietro relating to her

---

[2] Ms. Giampietro's 404(b) Motion organizes the government's proffered evidence into five categories: (1) Defendant's social media posts about terrorism, (2) photos and statements made by terrorists that Defendant either shared or saved on her electronic devices, (3) photos depicting violence, (4) Defendant's uncharged financial transfers, and (5) Defendant's prior plans to travel to Syria and to marry Aby Abdullah. Category 4 is likely moot in light of the Second Superseding Indictment. The Court has not yet ruled on the 404(b) Motion.

[3] As the Court is aware, a witness constitutes an "expert" if they have "scientific, technical, or other specialized knowledge." FED. R. EVID. 702. This mirrors the language of 18 U.S.C. § 2339A(b)(3) (defining "expert advice or assistance" as "advice or assistance derived from scientific, technical or other specialized knowledge").

[4] If the government does not plan to argue that Ms. Giampietro attempted to provide expert advice or assistance, then Dr. Bloom's testimony on "the techniques used to travel undetected and internationally in support of jihadis" is inadmissible because it would not assist the jury. FED. R. EVID. 702. *See* Mot. in Lim. No. 2 at 7 n.8.

contributions to a humanitarian aid group. Based on its own allegations and the evidence it seeks to introduce, this case raises First Amendment questions—whether the government likes it or not.[5]

The government discusses the constitutionality of § 2339B at length. Mot. in Lim. No. 2 at 7-9. But the statute's constitutionality is not at issue for purposes of trial. Rather, Ms. Giampietro argues that her social media posts and political thoughts, communications to the UCEs about travel, and contribution or support of a humanitarian aid group are protected expression and association, and do not cross the line into criminal conduct under § 2339B. Thus, although the defense agrees that *Holder v. Humanitarian Law Project* has relevance to this case, it disagrees that the Court's holding justifies exclusion of argument or evidence about whether Ms. Giampietro's expression or association is protected. 561 U.S. 1 (2010). In *Humanitarian Law*, the plaintiffs argued that § 2339B was unconstitutional as applied to their particular conduct (training members of terrorist organizations on the peaceful use of international law). *Id*. at 25. The Court disagreed with a qualification: "All this is not to say that any future applications of the material-support statute to speech or advocacy will survive First Amendment scrutiny."[6] *Id*. at 39; *see also United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020) (finding that the defendant did not act independently of the organization but instead worked under its direction and control) (citing *Humanitarian L. Project*, 561 U.S. at 23 (emphasizing that the term "personnel" excludes "independent advocacy")). The government here seems to conflate the issues; but a First

---

[5] Contrary to the government's argument, Ms. Giampietro does not believe or argue "that the First Amendment somehow prevents the jury from considering her statements or beliefs as evidence of [attempting to provide material support]." Mot. in Lim. No. 2 at 9. Allowing the defense to argue that her conduct is protected and not criminal does not prevent the government from presenting evidence to support the government's charges (if this Court deems such evidence admissible under Rules 403 and 404).

[6] The government's argument that First Amendment challenges have been unsuccessful does not support precluding the defense from arguing that Ms. Giampietro's conduct constitutes protected expression and association. *See* Mot. in Lim. No. 2 at 8.

5

Amendment challenge to § 2339B is not the same as a trial argument that the defendant's conduct is protected expression or association, not a crime. As the statute recognizes, it does not apply to conduct protected by the First Amendment. 18 U.S.C. § 2339B(i). That provision is meaningless if the defendant cannot raise it at trial. In fact, when discussing material support in the context of personnel, the Sixth Circuit in *Hosseini v. Nielsen* noted its consideration of the evidence:

> [Section 2339B] creates a carveout for independent political advocacy, even if that advocacy promotes the terrorist organization's legitimacy: "[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." 18 U.S.C. § 2339B(h*). Because there is no record evidence* that Hosseini took orders from MeK or FeK—and because Hosseini insists that he was not a member of either organization—his conduct might well have fallen within this carveout, had he been charged under § 2339B.

911 F.3d 366, 376 (6th Cir. 2018). Further, in *United States v. Mehanna*, the First Circuit explained that the jury's "presumed expertise [in factfinding] is not vitiated even when performing the factfinding task requires them to separate constitutionally protected conduct from illegal conduct."[7] 735 F.3d 32, 51 (1st Cir. 2013). The government seeks to prevent the jury from performing that factfinding task in this case by excluding argument and evidence of constitutionally protected conduct.

Finally, in the criminal cases cited by the government, the defendants *did* argue at trial, albeit unsuccessfully, that their conduct was protected. In *United States v. Taleb-Jedi*, when

---

[7] In *Mehanna*, the trial judge instructed the jury in relevant part:

> [A]ctivity that is proven to be the furnishing of material support or resources to a designated foreign terrorist organization under the statute is not activity that is protected by the First Amendment; on the other hand, as I've said, independent advocacy on behalf of the organization, not done at its direction or in coordination with it, is not a violation of the statute.

735 F.3d at 48. Such an instruction necessarily required the jury to determine whether the facts demonstrated (a) independent advocacy on behalf of an FTO or (b) activity at the FTO's direction or in coordination with it. A jury cannot make this decision without hearing argument and evidence about this distinction between protected activity and unprotected activity.

6

denying the defendant's motion to dismiss the indictment, the Eastern District of New York noted that even though the government's proffer of facts tended to show that her participation was more than mere membership, "if the proof at trial shows only that defendant participated in the PMOI through mere membership and chanting at meetings, it may well be insufficient to reach a jury or sustain a guilty verdict." 566 F. Supp. 2d 157, 182-83 (E.D.N.Y. 2008); *see also United States v. Nagi*, 254 F. Supp. 3d 548, 558 (W.D.N.Y. 2017) (denying the defendant's motion to dismiss the indictment and noting that the government's "anticipated trial evidence shows that the Defendant attempted to work 'under the direction of, or in coordination with' ISIL" whereas the defendant argued that his actions were "simple membership") ("The line between advocacy and action is, to be sure, a hazy one, particularly in an attempt case such as this one."). In *United States v. Rahman*, also cited by the government, the Second Circuit rejected the defendant's constitutional challenge but also held that the prosecution's evidence at trial proved that the defendant crossed the line from political speech into criminal conspiracy. 189 F.3d 88, 117-18 (2d Cir. 1999). The government makes clear in Motion in Limine No. 2 that it intends to offer evidence of Ms. Giampietro's online activity, speech, and conversations in an effort to prove its case. Mot. in Lim. No. 2 at 9-10. If the government can argue and present evidence that the defendant "crossed the line" from protected activity (such as independent advocacy or mere membership) into criminal conduct, the Court must also permit the defendant to argue and present evidence that she did not cross that line. *Rahman*, 189 F.3d at 117-18.

## CONCLUSION

Ms. Giampietro respectfully requests that the Court deny the government's Motion in Limine No. 2.

7

Respectfully submitted this 30th day of December, 2021.

/s/ *Charles D. Swift*
CHARLES D. SWIFT
*Pro Hac* Attorney for Giampietro
Constitutional Law Center for Muslims in America
100 N. Central Expy., Suite 1010
Richardson, TX 75080
Phone: (972)-914-2507

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of December, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Charles D. Swift*
CHARLES D. SWIFT
*Pro Hac* Attorney for Georgianna Giampietro