IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) No. 2:19-cr-00013 | |
| | ) | |
| | ) Chief Judge Crenshaw | |
| GEORGIANNA A.M. GIAMPIETRO | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PROHIBIT THE GOVERNMENT FROM ENTERING EVIDENCE IN ITS CASE-IN-CHIEF IN VIOLATION OF THE DEFENDANT'S PROFFER AGREEMENT**

The United States of America, by and through its attorney, the United States Attorney for the Middle District of Tennessee, and the Chief of the Counterterrorism Section, National Security Division, U.S. Department of Justice, respectfully opposes defendant Georgianna A.M. GIAMPIETRO's Motion in Limine to Prohibit the Government from Entering Evidence in its Case-in-Chief in Violation of the Defendant's Proffer Agreement (D.E. 331). GIAMPIETRO's motion is misplaced and should be denied without a hearing.

**I.   Background**

**A.   Charges**

A federal grand jury in the Middle District of Tennessee has charged GIAMPIETRO in the Second Superseding Indictment with attempting to provide material support to a foreign terrorist organization ("FTO") (personnel and services), in violation of Title 18, United States Code, Section 2339B(a)(1) (Count One); attempting to provide material support to an FTO (currency), in violation of Title 18, United States Code, Section 2339B(a)(1) (Count Two); obstruction of justice, in violation of Title 18, United States Code, Section 1519 (Count Three); and obstruction of justice, in violation of Title 18, United States Code, Section 1512(c)(1) (Count Four). These offenses are based on allegations that GIAMPIETRO attempted to provide material support to

1

Hayat Tahrir al-Sham, also known as "HTS," and then tried to obstruct the government's investigation into those attempts.

### B. Anticipated Testimony of Dr. Vanessa A. Lefler, Dr. Stephen D. Morris, and Dr. Kari Sue Neely

The government has identified Dr. Vanessa A. Lefler, Dr. Stephen D. Morris, and Dr. Kari Sue Neely as potential trial witnesses in this case. All of these witnesses were, at one time, professors whose courses GIAMPIETRO took while she was a student at Middle Tennessee State University ("MTSU").

The government has summarized Dr. Lefler's anticipated testimony in its Witness List as follows:

> Dr. Lefler was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Lefler is expected to testify regarding the courses that she taught and in which of those courses the defendant was a student. Dr. Lefler is further expected to testify that she never asked the defendant to pose as someone who supported extremist views in order to conduct research for her classes. Dr. Lefler is further expected to testify that during the defendant's time at MTSU, she took some of Dr. Lefler's classes, including "International Security in a Changing World," "Literature Review in International Affairs," and "Readings in International Relations." (*See* D.E. 346 at p. 5.)

The government has summarized Dr. Morris's anticipated testimony as follows:

> Dr. Morris was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Morris is expected to testify regarding the courses that he taught and in which of those courses the defendant was a student. Dr. Morris is further expected to testify that he never asked the defendant to pose as someone who supported extremist views in order to conduct research for his classes. Finally, Dr. Morris is expected to testify that while the defendant was a graduate student at MTSU, she took his class: Comparative Politics in the International Affairs Program. Dr. Morris is further expected to testify that when the defendant took his class in the spring of 2014, she wrote a paper for that class entitled, "Money in all the Wrong Places: Corruption and Financing Terrorist Organizations." Dr. Morris is further expected to testify that this paper detailed how terrorist organizations will use sham charities as a means for funneling money to support terrorist groups. (*See* D.E. 346 at p. 6.)

The government has summarized Dr. Neely's anticipated testimony as follows:

Dr. Neely was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Neely is expected to testify regarding the courses that she taught and in which of those courses the defendant was a student. Dr. Neely is further expected to testify that she never asked the defendant to pose as someone who supported extremist Islamic views in order to conduct research for her classes. (*See* D.E. 346 at p. 6.)

### C. GIAMPIETRO's December 6, 2018, Proffer

On December 6, 2018—prior to the filing of any charges in this case—the government conducted a proffer with GIAMPIETRO and her attorney, Peter Strianse, at the U.S. Attorney's Office for the Middle District of Tennessee. At the beginning of that proffer, the Assistant U.S. Attorney conducting the proffer reviewed the proffer agreement line-by-line with GIAMPIETRO, to ensure that she understood the terms of that agreement. GIAMPIETRO and Mr. Strianse then signed that agreement. A copy of the signed proffer agreement is attached to this Opposition as Exhibit A.

GIAMPIETRO made various claims during this brief proffer session, which the government terminated after approximately 20 minutes because the government concluded that GIAMPIETRO was not being truthful. GIAMPIETRO claimed, for example, that she had been engaging in certain activities online in part because she was conducting "research" into terrorists and terrorism, and because she intended to identify persons online as terrorists and then turn those persons in to the proper authorities. Indeed, GIAMPIETRO claimed that she had already turned in certain persons she believed to be engaged in terrorist activity to authorities at some point in 2017. GIAMPIETRO claimed that she planned to turn in certain persons ("Aisha" and "Yusef," who were, in fact, undercover FBI operatives) to law enforcement as well. GIAMPIETRO also claimed that she did not truly intend to travel to Syria, but was merely telling people online that she was traveling to Syria. Additionally, GIAMPIETRO acknowledged that she had sent money to one contact abroad, but claimed to agents that she did so merely because she was trying to figure out

how "they"—meaning persons intending to aid terrorist organizations—sent money to terrorists abroad.

The FBI 302 documenting this proffer summarizes these claims as follows:

In the fall of 2013, Giampietro started studying International Affairs at Middle Tennessee State University (MTSU) which also had an element of counter-terrorism. Giampietro claimed soon after she came online calling herself "Ameera" in order to conduct research into terrorists and terrorism. Giampietro claimed she started turning terrorists into the authorities in 2017.

. . .

Giampietro met Aisha and Yusef through Eman online. Aisha and Yusef were the only two people Giampetro met in person. Giampietro claimed she was trying to turn in Aisha and Yusef but did not because Giampietro did not know their real names.

Giampietro claimed that she was not really planning on going to Syria. She was only telling people online she was trying/wanted to go to Syria.

Giampietro admitted to sending money to a person utilizing Telegram handle Merciful Hands (@mercifulhands) but then tried to claim she only did it so she could figure out how they send money.

Some of the claims GIAMPIETRO made during the December 6, 2018, proffer session echo similar claims GIAMPIETRO made during a non-custodial interview FBI agents conducted with her at her residence in Sparta, Tennessee, a month and a half prior on October 23, 2018. During that interview, for example, GIAMPIETRO claimed that she had "turned people in in Australia and London," including two Australians GIAMPIETRO identified as "Farhannah" and "Abu Habib," and a Londoner whose online username GIAMPIETRO identified as "Akrirah over Dumya." Neither GIAMPIETRO nor her counsel has ever provided the government with anything other than her bare assertion that she in fact "turned in" anyone she suspected to be involved in terrorist activities to relevant authorities, however. Nor has the government been able to verify GIAMPIETRO's claim.

## II. Argument

During her December 6, 2018, proffer with the government, GIAMPIETRO claimed that she had been engaging in certain online activities because she was merely conducting "research;" because she intended to turn in persons she suspected of being involved in terrorist activity to the relevant authorities; and because she was trying to determine how persons who supported terrorist organizations sent money to those organizations. Given that GIAMPIETRO has already advanced these claims once in her dealings with the government, it stands to reason that she may seek to advance defenses like these at trial.[1] It is axiomatic that the government may introduce evidence in its case-in-chief in order to rebut potential defenses like these. *See*, *e.g.*, *Brooks v. Caterpillar Global Mining America, LLC*, No. 4:14CV-00022-JHM, 2017 WL 3401476, at *7 (W.D. Ky. Aug. 8, 2017) (citing cases) ("Federal courts have repeatedly held that in a criminal case, the government may offer evidence in its case-in-chief in anticipation of an expected defense."); *see also United States v. Moderna*, 302 F.3d 626, 632 (6th Cir. 2002) ("The prosecutor, therefore, was entitled to question [the government witness] about his prior conspiracy conviction in order to 'remove the sting' of any attempt to impeach his credibility with his conviction on cross-examination."); *United States v. Stapleton*, 297 F. App'x 413, 421 (6th Cir. 2008) (holding same). The government is therefore entitled to call Dr. Lefler, Dr. Morris, and Dr. Neely as witnesses at trial, to inform the jury that they never asked or advised GIAMPIETRO to pose as someone who supported extremist views in order to conduct research for her classes. Their testimony—which would help establish that GIAMPIETRO's professors never asked her to conduct any "research" that involved posing

---

[1] Indeed, to the extent GIAMPIETRO advances defenses at trial which conflict with the representations she made during her proffer with the government, the government is permitted, under the terms of the proffer agreement, to introduce her proffer statements to rebut those trial defenses. *See* Exhibit A, at 2 ("The United States may also use Ms. Giampietro's statements as substantive evidence to rebut any evidence, factual assertions, or arguments offered by or on behalf of Ms. Giampietro that are inconsistent with the statements made during this proffer.").

as a terrorist or as someone who supported terrorist activity—would help rebut the potential defenses described above.

GIAMPIETRO nevertheless contends that the testimony of Dr. Lefler, Dr. Morris, and Dr. Neely should be excluded because its introduction in the government's case-in-chief at trial, in the absence of evidence in the defense case (like the testimony of GIAMPIETRO herself) that GIAMPIETRO was posing as an extremist for research purposes, would amount to a violation of the proffer agreement. GIAMPIETRO is mistaken. It is true that the proffer agreement prohibits the government from using any of GIAMPIETRO's statements during the proffer session as direct evidence in the government's case-in-chief against GIAMPIETRO.[2] But the government is not seeking to elicit any of GIAMPIETRO's statements during the proffer session in connection with the anticipated testimony of Dr. Lefler, Dr. Morris, or Dr. Neely. Rather, the government intends to offer the anticipated testimony of these witnesses, in part, to rebut defenses that the government reasonably anticipates GIAMPIETRO will advance at trial. Proceeding in that fashion, as the government is permitted to do under the case law cited above, in no way violates the proffer agreement in this case[3].

---

[2] *See* Exhibit A, at 1 ("Unless otherwise specified in this agreement, no statement made by Ms. Giampietro during this proffer discussion will be offered against Ms. Giampietro in the government's case-in-chief in any criminal prosecution of Ms. Giampietro . . . .").
[3] While the defendant's motion in limine states that they do not intend to argue at trial that the defendant was engaging in this conduct – posing as an extremist for research purposes – this information is still admissible in the Government's case-in-chief for other purposes, as stated herein and in response to the various motions in limine to strike the witness testimony of certain professors. Additionally, at this time, the defendant's defense is unclear, fluid, and could change prior to trial. Therefore, this is still a valid basis for which this information should be admitted.

## III. Conclusion

WHEREFORE, for the reasons above, the government respectfully requests that this Court deny defendant Georgianna A.M. GIAMPIETRO's "Motion in Limine to Prohibit the Government from Entering Evidence in its Case-in-Chief in Violation of the Defendant's Proffer Agreement" (D.E. 331) without a hearing.

Respectfully Submitted,

MARK H. WILDASIN
United States Attorney
Middle District of Tennessee

By: /s/ *Kathryn Risinger*
KATHRYN RISINGER
PHIL WEHBY
Assistant United States Attorneys
110 9th Avenue South
Nashville, Tennessee 37203
Phone: (615) 736-5151

/s/ *Jennifer E. Levy*
JENNIFER E. LEVY
Trial Attorney
Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Suite 7600
Washington, D.C. 20530
(202) 514-1092

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2021, a true and correct copy of the foregoing document was filed electronically via CM/ECF, which will automatically provide service to Charles Swift and Peter Strianse, counsel for the defendant.

/s/ *Kathryn Risinger*
KATHRYN RISINGER
Deputy Criminal Chief – Organized Crime