IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:19-cr-00013 |
| | ) | |
| | ) | Chief Judge Crenshaw |
| GEORGIANNA A.M. GIAMPIETRO | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE IRRELEVANT TESTIMONY OF DR. NEELY AND DR. LEFLER**

The United States of America, by and through its attorney, the United States Attorney for the Middle District of Tennessee, and the Chief of the Counterterrorism Section, National Security Division, U.S. Department of Justice, respectfully opposes defendant Georgianna A.M. GIAMPIETRO's Motion in Limine to Exclude Irrelevant Testimony of Dr. Neely and Dr. Lefler (D.E. 333). GIAMPIETRO's motion is misplaced and should be denied without a hearing.

**I.    Background**

    **A.    Charges**

A federal grand jury in the Middle District of Tennessee has charged GIAMPIETRO in the Second Superseding Indictment with attempting to provide material support to a foreign terrorist organization ("FTO") (personnel and services), in violation of Title 18, United States Code, Section 2339B(a)(1) (Count One); attempting to provide material support to an FTO (currency), in violation of Title 18, United States Code, Section 2339B(a)(1) (Count Two); obstruction of justice, in violation of Title 18, United States Code, Section 1519 (Count Three); and obstruction of justice, in violation of Title 18, United States Code, Section 1512(c)(1) (Count Four). These offenses are based on allegations that GIAMPIETRO attempted to provide material support to Hayat Tahrir al-Sham, also known as "HTS," and then tried to obstruct the government's investigation into those attempts.

1

### B. Anticipated Testimony of Dr. Vanessa A. Lefler and Dr. Kari Sue Neely

The government has identified Dr. Vanessa A. Lefler and Dr. Kari Sue Neely as potential trial witnesses in this case. These witnesses were, at one time, professors whose courses GIAMPIETRO took while she was a student at Middle Tennessee State University ("MTSU").

The government has summarized Dr. Lefler's anticipated testimony in its Witness List as follows:

> Dr. Lefler was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Lefler is expected to testify regarding the courses that she taught and in which of those courses the defendant was a student. Dr. Lefler is further expected to testify that she never asked the defendant to pose as someone who supported extremist views in order to conduct research for her classes. Dr. Lefler is further expected to testify that during the defendant's time at MTSU, she took some of Dr. Lefler's classes, including "International Security in a Changing World," "Literature Review in International Affairs," and "Readings in International Relations." (*See* D.E. 346 at p. 5.)

The government has summarized Dr. Neely's anticipated testimony as follows:

> Dr. Neely was a professor at MTSU at the time the defendant was enrolled as a student at MTSU. Dr. Neely is expected to testify regarding the courses that she taught and in which of those courses the defendant was a student. Dr. Neely is further expected to testify that she never asked the defendant to pose as someone who supported extremist Islamic views in order to conduct research for her classes. (*See* D.E. 346 at p. 6.)

### C. GIAMPIETRO's December 6, 2018 Proffer

On December 6, 2018—prior to the filing of any charges in this case—the government conducted a proffer with GIAMPIETRO and her attorney, Peter Strianse, at the U.S. Attorney's Office for the Middle District of Tennessee. At the beginning of that proffer, the Assistant U.S. Attorney conducting the proffer reviewed the proffer agreement line-by-line with GIAMPIETRO, to ensure that she understood the terms of that agreement. GIAMPIETRO and Mr. Strianse then signed that agreement. A copy of the signed proffer agreement is attached to this Opposition as Exhibit A.

GIAMPIETRO made various claims during this brief proffer session, which the government terminated after approximately 20 minutes because the government concluded that GIAMPIETRO was not being truthful. GIAMPIETRO claimed, for example, that she had been engaging in certain activities online in part because she was conducting "research" into terrorists and terrorism, and because she intended to identify persons online as terrorists and then turn those persons in to the proper authorities. Indeed, GIAMPIETRO claimed that she had already turned in certain persons purporting to be engaged in terrorist activity to authorities at some point in 2017. GIAMPIETRO claimed that she planned to turn in certain persons ("Aisha" and "Yusef," who turned out to be undercover FBI operatives) to law enforcement as well. GIAMPIETRO also claimed that did not truly intend to travel to Syria, but was merely telling people online that she was traveling to Syria. And GIAMPIETRO acknowledged that she had sent money to one contact abroad, but claimed to agents that she did so merely because she was trying to figure out how "they"—meaning persons intending to aid terrorist organizations—sent money to terrorists abroad.

The FBI 302 documenting this proffer summarizes these claims as follows:

> In the fall of 2013, Giampietro started studying International Affairs at Middle Tennessee State University (MTSU) which also had an element of counter-terrorism. Giampietro claimed soon after she came online calling herself "Ameera" in order to conduct research into terrorists and terrorism. Giampietro claimed she started turning terrorists into the authorities in 2017.
>
> . . .
>
> Giampietro met Aisha and Yusef through Eman online. Aisha and Yusef were the only two people Giampetro met in person. Giampietro claimed she was trying to turn in Aisha and Yusef but did not because Giampietro did not know their real names.
>
> Giampietro claimed that she was not really planning on going to Syria. She was only telling people online she was trying/wanted to go to Syria.
>
> Giampietro admitted to sending money to a person utilizing Telegram handle Merciful Hands (@mercifulhands) but then tried to claim she only did it so she could figure out how they send money.

3

Some of the claims GIAMPIETRO made during the December 6, 2018, proffer session echo similar claims GIAMPIETRO made during a non-custodial interview agents conducted with her at her residence in Sparta, Tennessee, on October 23, 2018. During that interview, for example, GIAMPIETRO claimed that she had "turned people in in Australia and London," including two Australians GIAMPIETRO identified as "Farhannah" and "Abu Habib," and a Londoner whose online username GIAMPIETRO identified as "Akrirah over Dumya." Neither GIAMPIETRO nor her counsel has ever provided the government with anything other than her bare assertion that she in fact "turned in" anyone she suspected to be involved in terrorist activities to relevant authorities, however. Nor has the government been able to verify GIAMPIETRO's claims.

## II.  Argument

This Court should deny GIAMPIETRO's motion because the testimony of Dr. Lefler and Dr. Neely is relevant to the charges in this case, as evidence of GIAMPIETRO's intent, and as evidence which rebuts at least two potential defenses. As GIAMPIETRO recognizes, Rule 401 of the Federal Rules of Evidence permits the introduction of "relevant" evidence at criminal trials. Evidence is "relevant if (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." *Id.* Rule 402, furthermore, provides that "[r]elevant evidence is admissible" unless prohibited by "the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court."[1]

To prove Counts One and Two of the Second Superseding Indictment, the government must prove that the defendant knowingly attempted to provide material support or resources to a

---

[1] Although GIAMPIETRO, in the conclusion to her motion, asks the Court to preclude the introduction of "irrelevant and prejudicial" evidence, *see* Doc. 333 at 3, GIAMPIETRO has not otherwise argued that the introduction of the evidence above would be unduly prejudicial under Rule 403 of the Federal Rules of Criminal Procedure. GIAMPIETRO has thus waived any such argument. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) ("In this circuit, it is well-settled that '[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'").

designated foreign terrorist organization. *See United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020). As the defense has made clear in prior filings—*see, e.g.*, D.E. 169 at 6-9—GIAMPIETRO's intent in providing personnel, services, and currency to HTS, a designated foreign terrorist organization, will be a central issue at trial. Evidence that bears upon GIAMPIETRO's intent in carrying out the criminal acts she is alleged to have engaged in is therefore highly relevant to the charges in this case.

At trial, the government anticipates introducing evidence that GIAMPIETRO took several courses, entitled "International Security in a Changing World;" "Literature Review in International Affairs;" and "Readings in International Relations," from Dr. Lefler. The government also anticipates introducing evidence that GIAMPIETRO took courses on Islamic Studies from Dr. Neely. By taking those courses, GIAMPIETRO would have become familiar with various strains of Islam, including moderate strains of Islam and strains of Islam espousing violence or other forms of extremism. GIAMPIETRO would also necessarily have become more familiar with recognizing the differences between moderate strains of Islam and extreme strains of Islam. GIAMPIETRO's heightened degree of familiarity with various strains of Islam is a fact of consequence in determining her intent, and has a tendency to make it more likely that she would have recognized the difference between moderate strains of Islam and extreme strains of Islam while engaging with other persons online. Evidence establishing this heightened degree of familiarity—like the anticipated testimony of Dr. Lefler and Dr. Neely—is therefore relevant to the charges in this case, and should be permitted at trial.

This evidence also rebuts at least two potential defenses in this case. First, based upon conversations with defense counsel, GIAMPIETRO has made clear that she intends to advance an entrapment defense at trial. In order to obtain an entrapment instruction at trial—and, thus, in order to argue entrapment in closing—a defendant must provide "proof of two elements: (1) government

5

inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002). "Predisposition"—the principal element in an entrapment defense—"focuses upon whether the defendant was an 'unwary innocent' or instead[] an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Id.* (citing *Mathews v. United States*, 485 U.S. 58, 63 (1988)). Testimony from Dr. Lefler and Dr. Neely establishing that GIAMPIETRO—a graduate student in Islamic Studies—took courses that would have made her familiar with various strains of Islam, is undoubtedly relevant to establishing that she was not merely an "unwary innocent" who was lured into criminal activity by law enforcement officers, but was instead a sophisticated, individual who readily availed herself with the opportunity to commit the crimes with which she is charged when presented with the opportunity.

Second, as outlined above, GIAMPIETRO has also suggested at various times that she had been posing as an online extremist for "research" purposes, in part so that she could identify terrorists online and turn them in to relevant authorities. Given that GIAMPIETRO has already advanced these claims once in her dealings with the government, it stands to reason that she may seek to advance defenses like these at trial. It is axiomatic that the government may introduce evidence in its case-in-chief in order to rebut potential defenses like these. *See*, *e.g.*, *Brooks v. Caterpillar Global Mining America, LLC*, No. 4:14CV-00022-JHM, 2017 WL 3401476, at *7 (W.D. Ky. Aug. 8, 2017) (citing cases) ("Federal courts have repeatedly held that in a criminal case, the government may offer evidence in its case-in-chief in anticipation of an expected defense."); *see also United States v. Moderna*, 302 F.3d 626, 632 (6th Cir. 2002) ("The prosecutor, therefore, was entitled to question [the government witness] about his prior conspiracy conviction in order to 'remove the sting' of any attempt to impeach his credibility with his conviction on cross-examination."); *United States v. Stapleton*, 297 F. App'x 413, 421 (6th Cir. 2008) (holding

6

same). The government is therefore entitled to call Dr. Lefler and Dr. Neely as witnesses at trial, to inform the jury that they never asked or advised GIAMPIETRO to pose as someone who supported extremist views in order to conduct research for her classes. Their testimony—which would help establish that GIAMPIETRO's professors never asked her to conduct any "research" that involved posing as a terrorist or as someone who supported terrorist activity—would help rebut the potential defenses described above.

GIAMPIETRO nevertheless contends that the testimony of Dr. Lefler and Dr. Neely should be excluded because their testimony is not relevant to whether GIAMPIETRO knew that HTS was a designated FTO at the time of alleged offenses in this case. (*See* Doc. 333 at 2.) But the government is not offering the testimony of Dr. Lefler and Dr. Neely to show that GIAMPIETRO knew that HTS was a designated FTO at the time of the offenses: as GIAMPIETRO herself recognizes, "the issue of Ms. Giampietro's knowledge concerning HTS's activities is not seriously in question given her admissions to FBI agents during questioning on October 23, 2018" (*see* D.E.333 at 2). GIAMPIETRO's argument is therefore misplaced and should be rejected.

## III. Conclusion

WHEREFORE, for the reasons above, the government respectfully requests that this Court deny defendant Georgianna A.M. GIAMPIETRO's "Motion in Limine to Exclude Irrelevant Testimony of Dr. Neely and Dr. Lefler" (D.E. 333) without a hearing.

Respectfully Submitted,

MARK H. WILDASIN
United States Attorney
Middle District of Tennessee

By: /s/ *Kathryn Risinger*
KATHRYN RISINGER
PHIL WEHBY
Assistant United States Attorneys
110 9th Avenue South
Nashville, Tennessee 37203
Phone: (615) 736-5151

/s/ *Jennifer E. Levy*
JENNIFER E. LEVY
Trial Attorney
Counterterrorism Section
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Suite 7600
Washington, D.C. 20530
(202) 514-1092

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2021, a true and correct copy of the foregoing document was filed electronically via CM/ECF, which will automatically provide service to Charles Swift and Peter Strianse, counsel for the defendant.

/s/ *Kathryn Risinger*
KATHRYN RISINGER
Deputy Criminal Chief – Organized Crime