IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>    Plaintiff, )<br>    )<br>v. )<br>    )<br>GEORGIANNA A.M. GIAMPIETRO )<br>    Defendant. ) | Case No.: 2:19-cr-00013<br><br>Chief Judge Waverly D. Crenshaw, Jr. |

**DEFENDANT'S RESPONSE IN OPPOSITION
TO UNITED STATES' MOTION IN LIMINE NO. 4**

In its Motion in Limine No. 4, the government seeks to exclude certain opinion testimony of defense expert Aymenn Jawad Al-Tamimi because they argue the selected opinions invade the province of the jury and form conclusions as to ultimate issues in this case. Gov't Mot. in Limine No. 4, Doc. 324.

The government makes two separate arguments regarding a selected set of Mr. Al-Tamimi's opinions. First, that certain opinions are based on limited facts or data that are unsupported by an explanation of the principles and methods used and thus cannot be said to be the product of reliable principles and methods. Second, the government argues that certain opinions usurp the role of the jury as factfinder and go to an ultimate issue in the case.

The defense does not intend to offer the below five opinions by Mr. Al-Tamimi identified by the government:

1. "It is also my opinion that the defendant's resolve to go to Syria is far from clear cut."

2. "Concerning the Western Union transfers the defendant made, it is my opinion that it is possible that the transfer on June 14, 2018 was made to an individual

1

participating in the activities of al-Sadaqah Syria and that the money was thus intended for al-Sadaqah Syria."

3. "It is also my opinion that based on the available evidence, it cannot be conclusively demonstrated that this transfer was intended to support Hay'at Tahrir al-Sham, but rather it is possible that the money could have funded militant activity of groups independent of Hay'at al-Sham. It is the burden of the prosecution to establish a definitive link here with a designated terrorist organization."

4. "Finally, it is my opinion, based on my research, that the advice the defendant and her contact provided to the undercover agent was general advice and not specialized advice one might pay for that could significantly enhance the chance of success for entering Syria and joining a designated terrorist group, particularly given the fact that entry into Syria at this stage of conflict required much more careful and detailed planning."

5. "For an individual to have made a donation to al-Sadaqah Syria believe that the money would go to Hay'at Tahrir al-Sham would have meant that the individual would have had to have been informed by someone urging the donation that this was the case."

However, the remaining five opinions below should not be excluded because they do not go to the ultimate issue of Ms. Giamipietro's mental state or condition as an element of the charges or of a defense, and they are based on reliable methods.

6. "Based on a review of the defendant's communications regarding Hay'at Tahrir al-Sham, Harakat Nour al-Din al-Zinki and Ahrar al-Sham, it is my opinion that her expressed statements regarding Hayat Tahrir al-Sham are not consistent with those who support the group."

7. Mr. Tamimi's communications with the current administrator of the Telegram account for The Merciful Hands (an account Ms. Giampietro is now charged in Count Two of the Second Superceding Indictment with providing currency to in an attempt to provide material support to Hayat Tahrir al-Sham). Along with Mr. Tamimi's opinions based on his communications.

8. Mr. Tamimi's communications with a former owner of The Merciful Hands whom Mr. Al-Tamimi quotes as saying, "No, they don't support hts either. They're actually independent and hate hts."

9. Mr. Tamimi's communications in July 2021 with the "head of contact in Hay'at Tahrir al-Sham's media relations office," who denied a link between al-Sadaqah Syria and HTS. Along with Mr. Tamimi's opinions that there is no evidence to show al-Sadaqah Syria is linked to Hay'at Tahrir al-Sham."

2

10. "By extension, it is also my opinion that the sentiments that the defendant expressed about the 'fitna' (i.e., in-fighting) are not consistent with those who support participation by Westerners in the conflict."

### A. Mr. Al-Tamimi is a qualified expert and his principles and methods are reliable.

The government submits that it is not requesting a *Daubert* hearing regarding Mr. Al-Tamimi. Mr. Al-Tamimi is a qualified expert and has testified in terrorism-related cases, and in fact he has served as an expert in cases for the government previously. *United States v. Musaibli*, No. 18-20495, (E.D. Mich. 2021), *In re Extradition of Ameen*, No. 2:18-mj-152-EFB, (E.D. Cal. 2019). Mr. Al-Tamimi is a researcher and analyst that has worked with the George Washington University Program on Extremism and the Middle East Forum, and has gained significant access and exposure to jihadist groups in Syria both in-person and online. Mr. Al-Tamimi's methods involving interviewing direct sources in these organizations and groups is a standard method in learning about how they function. The government does not specifically argue this objection, but states that the sources are "unknown" to question his methods. Mr. Al-Tamimi will lay proper foundation for all of his interviews, methods, and opinions in his testimony by explaining which individuals he interviewed, how they were connected to the organizations, and the content of his communications.

The defense notes that the government seeks to call an expert, Ms. Catherine Schrek[1], who relies on online posts and web articles for her much of her expert report to testify regarding the online connections of Hayat Tahrir al-Sham, Al-Sadaqah Syria, and Merciful Hands. Doc. 340.3. These are less reliable sources of information than the direct source interviews conducted by Mr. Al-Tamimi. If this Court finds that Ms. Schrek can be qualified and her testimony found reliable

---

[1] The defense has a pending motion for a *Daubert* challenge on multiple grounds against Ms. Schrek's qualification as an expert as she has a total of three and a half years of relevant experience, the majority of which seems to have been gained through monitoring social media online. Doc. 323.

3

on the basis of online web articles, then it should similarly allow Mr. Al-Tamimi's above opinions and methods as a previously qualified expert and academic. Alternatively, the Court could exclude all testimony on the subject of the links, or lack thereof, between Merciful Hands, Al-Sadaqah Syria and HTS by either expert.

### B. The proffered opinions do not go to "whether the defendant did or did not have a mental state or condition that constitutes an element" of a charge or defense.

The government argues that Mr. Al-Tamimi's opinions usurp the role of the factfinder because they pertain to an ultimate issue. In fact, as the government notes, Federal Rule of Evidence 704(a) permits opinion testimony that "embraces an ultimate issue", and the only exception is FRE 704(b)'s limitation that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." To determine whether the expert opinion is admissible, courts must ask "whether the expert actually referred to the intent of the defendant or, instead, simply described in general terms the common practices of those who clearly do possess the requisite intent…" *United States v. Dunnican*, 961 F.3d 859, 876 (6th Cir. 2020) quoting *United States v. Frost*, 125 F.3d 346, 383-84 (6th Cir. 1997). "It is only as to the last step in the inferential process-a conclusion as to the defendant's mental state-that Rule 704(b) commands the expert to be silent." *United States v. Dunn*, 846 F.2d 761, 762, 269 U.S. App. D.C. 373 (D.C. Cir. 1988).

Mr. Al-Tamimi's expert opinions regarding whether Al-Sadaqah Syria or Merciful Hands were linked to Hay'at Tahrir al-Sham are not opinions on whether Ms. Giampietro had the intent to support Hayat Tahrir al-Sham, nor Ms. Giampietro's mental state regarding her intention in sending money to charities. His communications and opinions on Al-Sadaqah Syria and Merciful Hands will instead offer important assistance to the jury in assessing who these groups are, what their purposes were, and their link, or lack thereof, to Hayat Tahrir Al-Sham.

4

Similarly, Mr. Al-Tamimi's review of the defendant's communications regarding Hay'at Tahrir al-Sham, Harakat Nour al-Din al-Zinki, Ahrar al-Sham, "fitnah" (division), and other terminology to compare to the typical rhetoric of supporters of such terrorist organizations is relevant and admissible, not for evidence of Ms. Giampietro's mental state regarding either Count One or Count Two, but as evidence of a lack of predisposition. To prove entrapment, the government is permitted to admit evidence to prove either that Ms. Giampietro was predisposed to commit the charged offenses before being contacted by government agents, or that she was not induced by government agents to commit the crime. To rebut this evidence, the defense is similarly permitted to put on evidence to show that Ms. Giampietro was not predisposed to committing the charged offenses and that, if an attempted offense occurred, it was induced by government agents. *Sosa v. Jones*, 389 F.3d 644, 647 (6th Cir. 2004) (citing *Jacobson v. United States*, 503 U.S. 540, 548-49, (1992)).

While Mr. Al-Tamimi may not draw the ultimate conclusion on whether Ms. Giampietro was predisposed to commit the offenses charged, he may provide an analysis of her communications based on his knowledge of the language, terminology and religious justifications and attitudes used typically by Western jihadists. Further, Mr. Al-Tamimi's explanations and descriptions of the typical rhetoric in such groups online will assist the jury in assessing religiously complex and unfamiliar language used by Ms. Giampietro that is key to understanding her beliefs.

**Conclusion**

For the reasons above, the defense respectfully submits that Mr. Al-Tamimi's opinions numbered 6 through 10 above be admitted. Further, the defense will not offer opinions numbered 1 through 5.

5

Respectfully submitted this 30th day of December, 2021.

/s/ *Charles D. Swift*
CHARLES D. SWIFT
*Pro Hac* Attorney for Giampietro
Constitutional Law Center for Muslims in America
100 N. Central Expy., Suite 1010
Richardson, TX 75080
Phone: (972)-914-2507

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of December, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Charles D. Swift*
CHARLES D. SWIFT
*Pro Hac* Attorney for Georgianna Giampietro

6

Case 2:19-cr-00013  Document 370  Filed 12/30/21  Page 6 of 6 PageID #: 4364