IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CR-00013 |
| | ) | |
| | ) | CHIEF JUDGE CRENSHAW |
| GEORGIANNA A.M. GIAMPIETRO | ) | |

## PLEA AGREEMENT

The United States of America, through Mark H. Wildasin, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorneys Kathryn Risinger and Philip H. Wehby, and defendant, Georgianna A.M. Giampietro, through defendant's counsel, Charles D. Swift and Peter J. Strianse, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

### Charge in This Case

1. Defendant acknowledges that she has been charged in the Superseding Information in this case with the following offense: Concealment of Material Support and Resources Intended to be Provided to a Foreign Terrorist Organization, in violation of Title 18, United States Code, Section 2339B, all in violation of Title 18, United States Code, Section 2339C(c).

### Penalties for Charged Offense

2. The parties understand and agree that the offense with which defendant is charged carries the following maximum penalties: a maximum term of imprisonment of 10 years, a maximum fine of $250,000, and a period of supervised release of up to life. Defendant also must pay a mandatory special assessment fee of $100.

3. Defendant has read the charge against her contained in the Superseding Information. That charge has been fully explained to her by her attorney. Defendant fully understands the nature and elements of the crime with which she has been charged.

### Charge to Which Defendant is Pleading Guilty

4. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the sole count of the Superseding Information, charging the offense set forth above. Upon the Court's acceptance of the defendant's plea and the parties' agreement and the imposition of sentence, the government will move to dismiss the underlying indictments in this case.

### Acknowledgements and Waivers Regarding Plea of Guilty
### Nature of Plea Agreement

5. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States and defendant regarding defendant's criminal liability in case 2:19-cr-00013.

6. Defendant understands that by pleading guilty she surrenders certain trial rights, including the following:

    a. If defendant persisted in a plea of not guilty to the charges against her, she would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

    b. If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict

of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charges beyond a reasonable doubt; and that it must consider each count of the information against defendant separately.

        c.      If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

        d.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court.

        e.      At a trial, defendant would have a privilege against self-incrimination so that she could testify or decline to testify, and no inference of guilt could be drawn from her refusal to testify.

7.      Defendant understands that by pleading guilty she is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

### Factual Basis

8.      Defendant will plead guilty because she is in fact guilty of the offense charged in the information. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

3

On September 23, 2018, a female undercover agent ("UCE-1") known to the Defendant, Georgianna Giampietro, told Giampietro that the undercover agent's husband ("UCE-2") swore an oath of allegiance to Hayat Tahrir Al-Sham ("HTS") and that the undercover agents intended to travel to Syria to join HTS with the intent that the husband, UCE-2, would fight on behalf of HTS. UCE-1 further communicated the couple's intent to travel to Syria via London, where they would meet the husband's contacts.

Giampietro initially told UCE-1 that "HTS is no good," and Giampietro also expressed concerns about their plan to travel via London and the husband's contacts in London. Giampietro explained in part, "This is scaring me. Many people in London get caught . . ." Giampietro further explained, ". . . I need you to unfollow the [social media platform] channel [that Giampietro was operating] . . . I need you to delete my name and phone number from your phone and all pictures and text messages."

In subsequent communications, Giampietro also provided UCE-1 with specific advice as to how UCE-1 and UCE-2 should travel to Syria in order to avoid detection by law enforcement authorities. Giampietro explained, for example, that UCE-1 and UCE-2 should not take their phones with them, and that they ought to acquire new phones and new phone numbers before they traveled. Giampietro referenced her own plan for traveling to Syria, which included cutting ties with other persons before leaving, explaining that, "[w]hen I was planning my plan was to delete everyone 6 to 8 months before leaving and have no contact with anyone. Bc [because] one wrong move." Giampietro explained further that UCE-1 and UCE-2 should purchase roundtrip airline tickets, rather than one-way tickets, and that they should consider traveling to Turkey (prior to entering Syria) by traveling first to Italy, and then by traveling from Italy to Turkey.

4

In the course of their communications, Giampietro asked UCE-1 about the overseas contact UCE-1 claimed UCE-2 was using to assist UCE-1 and UCE-2's travel overseas. Giampietro offered to reach out to one of Giampietro's contacts instead, whom Giampietro claimed could better assist UCE-2. In this regard, Giampietro told UCE-1, "I don't want him to go with that brother yet. Bc I know ppl who I trust more than myself". The undercover responded, "Should [UCE-2] just talk to your people??". Giampietro said, "Yes." UCE-1 then told Giampietro that her husband (UCE-2) wanted to use Giampietro's contact. Giampietro indicated that she would attempt to contact someone she knew and get back to UCE-1. Giampietro subsequently communicated with the Telegram channel for Al-Sadaqah Syria. When Giampietro reached out to @alsadaqahsyria, via Telegram, she was aware that @alsadaqahsyria raised funds for unidentified combatants in Syria (mujahideen), namely HTS. Giampietro's contact, @alsadaqahsyria, however, did not immediately respond.

On September 26, 2018, and again on September 30, 2018, Giampietro communicated to UCE-1 that she had not heard back from her contact yet. Later on September 30, 2018, Giampietro engaged in a Telegram chat with @alsadaqahsyria. Also, in an online conversation on that date, Giampietro informed UCE-1 that Giampietro had spoken with one of her contacts, who claimed that there was presently no jihad in Syria, and asked UCE-1, "Have you thought about Afghanistan? They're still fighting there."

On October 2, 2018, Giampietro messaged UCE-1. During this conversation, Giampietro again expressed concern regarding UCE-1 and UCE-2's London contacts and then, after expressing this concern, Giampietro told UCE-1 "Have your husband message this account" and gave UCE-1 the Telegram name "@alsadaqahsyria". Giampietro messaged the contact's Telegram name "@alsadaqahsyria" with the intent that UCE-1 and UCE-2 use that contact as a contact to

5

aid them in their travel to Syria. Giampietro was concerned that UCE-2 and UCE-1 would be stopped by law enforcement if they attempted to travel via London and that her association with them would be discovered.

When Giampietro provided the contact, she knew that HTS was a designated terrorist organization and believed that UCE-1 and UCE-2 intended to travel to Syria to work under the direction and control of HTS and believed that the contact would substantially assist them in this effort. In addition, Giampietro intended that UCE-1 and UCE-2 would provide funds to "@alsadaqahsyria," who in turn would provide funds to HTS, thereby providing material support to HTS disguised as a charitable contribution.

The defendant and UCE-1 utilized Telegram, an end-to-end encrypted social media platform, to engage in the above-referenced communications. Additionally, the defendant and UCE-1 utilized self-destruct timers within their communications so that those communications would automatically delete, without the possibility of recovery, after a specified time, such as one minute. In some cases, the defendant set these self-destruct timers, and in other instances, UCE-1 set these self-destruct timers. Such timers were set in order to conceal or disguise the substance of the advice and assistance provided by the defendant.

By undertaking these actions, Giampietro knowingly concealed or disguised the nature, location, source, ownership or control of any material support or resources—including, inter alia, currency, personnel, and services—and did so knowing that the support or resources were provided, or intending that the support or resources were to be provided, in violation of 18 U.S.C. § 2339B.

The above-described events occurred within the Middle District of Tennessee and elsewhere.

6

*MM* This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and to assess relevant conduct for purposes of the United States Sentencing Guidelines. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

## Sentencing Guidelines Calculations

9. The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective at the time of sentencing.

10. The parties have no agreement as to the applicable Sentencing Guidelines' provisions.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems to be appropriate. To that end, neither party is limited to recommending a sentence within the court-determined guideline range and may seek a variance or departure above or below that guideline range.

12. It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and, after consideration of the U.S.S.G., may impose the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea. Similarly, defendant understands that any recommendation by the Court related to location of imprisonment is not binding on the Bureau of Prisons.

13. Defendant agrees to pay the special assessment fee of $100 to the Clerk of the U.S. District Court.

## Presentence Investigation Report/Post-Sentence Supervision

14. Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against her, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

15. Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of her sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

16. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee

and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as otherwise expressly noted herein.

### Entry of Guilty Plea

17. The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this Agreement and enter an order reflecting the acceptance of the plea while reserving acceptance of the Plea Agreement until receipt of the Pre-Sentence Report and sentencing.

### Waiver of Appellate Rights

18. Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether she is guilty of the crime(s) to which she is agreeing to plead guilty; and (ii) trial rights that might have been available if she exercised her right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence within or below the final court-determined guidelines range ~~that otherwise comports with the terms and conditions of the parties' agreement.~~ Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence within or above the final court-determined guidelines range ~~that otherwise comports with the terms and conditions of the parties' agreement.~~

## Other Terms

19.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

20.     Should defendant engage in additional criminal activity after she has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Agreement.

## Conclusion

21.     Defendant understands that the Superseding Information and Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

22.     Defendant understands that her compliance with each part of this Plea Agreement extends until such time as she is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event she violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement.

23.     Defendant and her attorney acknowledge that no threats have been made to cause defendant to plead guilty.

24.     No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all the parties listed below.

25. <u>Defendant's Signature:</u> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending Superseding Information. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 1.18, 2022

_____
GEORGIANNA A.M. GIAMPIETRO
Defendant

26. <u>Defense Counsel Signature:</u> I am counsel for defendant in this case. I have fully explained to defendant her rights with respect to the pending Superseding Information. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with defendant. To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 1-18-22

_____
CHARLES D. SWIFT
Attorney for Defendant

Date: 1-18-22

_____
~~PETER J. STRIANSE~~ LINDA MORENO
Attorney for Defendant

11

Respectfully Submitted,

MARK H. WILDASIN
United States Attorney
Middle District of Tennessee

By: *(signature)*
PHIL WEHBY
Assistant United States Attorney

*(signature)*
KATHRYN RISINGER
Deputy Criminal Chief - Organized Crime