IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>GEORGIANNA A.M. GIAMPIETRO )<br>    Defendant. ) | Case No.: 2:19-cr-00013<br><br>Chief Judge Waverly D. Crenshaw, Jr. |

## DEFENDANT'S OBJECTIONS TO REVISED PSR AND ADDENDUM

The defendant, Georgianna A. Giampietro, submits her objections to the Revised PSR and Addendum. Ms. Giampietro maintains her previous objections to the PSR and incorporates those objections herein. Ms. Giampietro objects to the revised PSR and Addendum continued inclusion of 1) alleged contributions to HTS in June of 2018 as part of her offense conduct; 2) the terrorism enhancement; and 3) an enhancement for the obstruction of justice. Inclusion of the alleged HTS contributions in June of 2018 is contrary to the agreed factual basis in the plea agreement. The plea agreement stipulated that Ms. Giampietro committed the concealment of currency by providing the "@alsadaqahsyria," contact so that the undercovers agents could provide funds to HTS, disguised as a charitable contribution. The application of the terrorism enhancement is inappropriate because the evidence fails to establish that Ms. Giampietro calculated her offense to influence a government by intimidation or coercion, or to retaliate against a government. Instead, the evidence shows that Ms. Giampietro calculated her offense to avoid discovery and potential prosecution. Finally, the obstruction offense is not appropriate, as there is no evidence that Ms. Giampietro actually destroyed evidence or otherwise destroyed evidence after October 23, 2018, the end date of her offense of conviction.

1

## I. The PSR erroneously states the factual basis for the offense of conviction (Paragraphs 17, 18, 29).

Ms. Giampietro pled guilty to the Superseding Information to one count of concealing the provision of material support and resources to HTS in the form of Personnel, Services, and Currency between <u>September 23 and October 23, 2018</u>, in violation of 18 U.S.C. 2339C(c).

18 U.S.C. 2339C(c) prohibits:

> **(c) CONCEALMENT.** —Whoever—
> **(1)**
> **(A)** is in the United States; or
> **(B)** is outside the United States and is a national of the United States or a legal entity organized under the laws of the United States (including any of its States, districts, commonwealths, territories, or possessions); and
>
> **(2)** knowingly conceals or disguises the nature, location, source, ownership, or control of any material support or resources, or any funds or proceeds of such funds—
> **(A)** knowing or intending that the support or resources are to be provided, or knowing that the support or resources were provided, in violation of section 2339B of this title; or
> **(B)** knowing or intending that any such funds are to be provided or collected, or knowing that the funds were provided or collected, in violation of subsection (a),

The factual basis for the Plea Agreement captures each element of the offense. Common to all charged courses of conduct is the factual basis that Ms. Giampietro is a person in the United States, which satisfies the first element of the offense. For "personnel", the second element (knowingly conceal) is satisfied by Ms. Giampietro's actions to conceal the purpose of the undercovers' travel through providing advice and a contact in order to aid the undercovers in traveling to Syria and avoiding detection. Ms. Giampietro's admitted knowledge that the undercover's husband had sworn allegiance to HTS – an organization Ms. Giampietro knew was a designated terrorist organization – satisfies the final element (knowing the support and resources were provided in violation of 2339B).

For "services", the elements are largely the same, with the exception of element three, where, in addition to swearing allegiance to HTS, Ms. Giampietro admitted that the undercover's husband intended to provide services, to wit: providing fighting for HTS. There is no dispute about the personnel and services Ms. Giampietro pled to concealing.

The dispute with the PSR arises from the offense conduct for the concealment of "currency". The concealment of material support in the form of "currency" in violation of § 2339C(c) that Ms. Giampietro plead guilty to is described in the factual basis of the Plea Agreement – to wit:

> "…In addition, Giampietro intended that UCE-1 and UCE-2 would provide funds to "@alsadaqahsyria," who in turn would provide funds to HTS, thereby providing material support to HTS disguised as a charitable contribution." Plea Agreement, Doc. 390 at 6.

The factual conduct above satisfies the element of concealment by Ms. Giampietro's provision of a means to disguise financial support to HTS as a charitable contribution. Ms. Giampietro's knowledge that HTS is a designated FTO satisfies the knowledge element.

Rather than using, the stipulated conducted as set out in the Plea Agreement above, Probation uses the allegation that Ms. Giampietro provided material support in the form of currency to HTS in June of 2018, in the form of three Western Union transfers. The allegation of providing currency to HTS in June of 2018 was charged separately in the Second Superseding Indictment as Count II (Doc. 255). The Superseding Information, to which Ms. Giampietro pled guilty, does not charge providing currency to HTS in June 2018. The June 2018 conduct is outside the charged period (September 23-October 23, 2018). The June 2018 conduct also lacks any element of concealment that would be necessary to satisfy the Second Superseding Indictment. Finally, and most importantly, during the negotiations of a plea agreement, the government repeatedly sought a resolution with a plea of guilty to providing material support by providing

3

currency in June of 2018, either under § 2339B or § 2339C(c).[1] However, Ms. Giampietro was unwilling to resolve the case on this basis, as she could not factually agree that she provided funds to HTS in June of 2018.[2] It was only when the government proposed resolving the case on the basis of the conduct charged between September 23 – October 23, 2018, as a violation of § 2339C(c), that Ms. Giampietro agreed to take the plea.

## II. The Terrorism Enhancement is Inapplicable to the Offense of Conviction (Paragraphs 23, 33, 43).

The defense continues its objection to the Revised PSR's application of the terrorism enhancement § 3A4.1. Revised PSR at 23, 33 and 43.

Initially, Probation recommended the application of the Terrorism Enhancement, stating,

> **Victim Related Adjustment:** Pursuant to U.S.S.G. § 3A1.4(a), because the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, the Base Offense Level is increased by 12 levels. In this case, the defendant made multiple financial donations, via Western Union, to support terrorist groups. She also attempted to provide additional support to foreign terrorist organizations by connecting two undercover FBI agents, whom she believed wanted to commit jihad, with individuals who would be able to assist their travel into Syria without suspicion. Revised PSR at paragraph 33.

In the Addendum, Probation provided the following additional support for her recommendation:

---

[1] The factual basis of the Plea Agreement also includes facts that Ms. Giampietro told the undercovers to unfollow her channel, to delete her information, that she advised them not to take their phones with them and get new numbers and advised they should buy one-way tickets. Plea Agreement at 4. The factual basis also stipulates that Ms. Giampietro used encrypted social media, where she also used self-destruct timers to delete the conversations automatically. Plea Agreement at 6.

[2] The government first offered a plea in late 2019, and later re-offered a plea in Januray 2022. In the last plea offer, the government agreed that the factual basis would exclude the donations in June of 2018. That is not to say that government accepted that the conduct had not occurred, but rather the government agreed not to charge the June 2018 transfers as part of the Plea Agreement. Ms. Giampietro disputes that for the reasons set forth in section I, the allegations regarding the June 2018 transfer of money is "relevant conduct." Ms. Giampietro also disputes that there is sufficient evidence to conclude by a preponderance of the evidence, that she made financial contributions to HTS in June of 2018. To the extent that the June 2018 allegations are now included in the factual basis of the offense, they create an issue of whether there was a material misunderstanding of the plea agreement.

4

> "Given the enumerated statute of conviction in the definition of "federal crime of terrorism" as well as the multiple financial donations, via Western Union, to support terrorist groups. The undersigned probation officer respectfully submits the enhancement is appropriate applied. In addition, the defendant attempted to provide additional support to foreign terrorist organizations by connecting two undercover FBI agents, whom she believed wanted to commit jihad, with individuals who would be able to assist their travel to Syria without suspicion." Addendum to PSR at 2.

Probation's recommendation for the application of the terrorism enhancement is erroneous for three reasons. First, the PSR relies erroneously on the Western Union transfers in June of 2018 as part of the offense of conviction. Second, the PSR relies exclusively on the fact that § 2339C(c) is a listed crime of terrorism and ignores the second prong of the test requiring the government to prove by a preponderance of the evidence that said crime was also "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." Third, the PSR errs in relying on the concealment of the undercover agents' intent to travel to Syria. The factual basis stipulated to by the parties is that the concealment of the undercover agents was done out of concern that the undercovers "would be stopped by law enforcement if they attempted to travel via London and that her (Ms. Giampietro) association with them would be discovered". (Doc. 390 – Plea Agreement, at 6). A finding that attempting to conceal the undercovers' travel was done for intimidating coercing or retaliating against a government is contrary to this factual basis.

   **A. Alleged Western Union Transfers to HTS in June of 2018 are Not Directly Considered in Determining Whether the Terrorism Enhancement Applies to the Offense of Conviction Concealing Material Support from September 23-October 23, 2018.**

The terrorism enhancement, found at U.S.S.G. § 3A1.4 states:

(a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.

5

(b) In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

"[I]n order to apply the terrorism enhancement, the court must find that the offense of conviction involved or was intended to promote an enumerated offense intended to influence, affect, or retaliate against government conduct." *United States v. Thurston*, U.S. Dist. LEXIS 38185, at *19 (D. Or. May 21, 2007). In this case, the offense of conviction occurred between September 23-October 23, 2018, and involved the intent to conceal the undercovers intended material support of HTS by providing, personnel, services or currency. As explained in section I. above, the allegations that Ms. Giampietro provided material support to HTS in June of 2018, cannot serve as the basis for determining that the terrorism enhancement applies. Even if it were determined that Ms. Giampietro provided currency to HTS in June of 2018, the acts are a separate course of conduct. Ms. Giampietro has not been convicted of this course of conduct. As a result, it cannot serve as the offense of conviction, and cannot be used for the purposes of the terrorism enhancement.

**B. The Terrorism Enhancement Requires Proof by a Preponderance of the Evidence that the offense was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."**

The terrorism enhancement can only apply if "the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." § 3A1.4. The term "federal crime of terrorism" is defined as "an offense that is ... calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," 18 U.S.C. § 2332b(g)(5)(A), *and* that "is a violation of" certain enumerated statutes, 18 U.S.C. § 2332b(g)(5)(B). Both parts of § 2332b(g)(5) must be satisfied for the enhancement to apply. *United States v. Alhaggagi*, 978 F.3d 693, 699 (9th Cir. 2020). "In sum, for the court to apply the terrorism enhancement, the government must also prove by a preponderance of the evidence that the terrorism offense was

6

"calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A) (2014)." *Application of the Terrorism Sentencing Enhancement to Material Support Convictions* by Jeff Breinholt, Counsel for Law and Policy National Security Division, United States Attorneys' Bulletin SEPTEMBER 2014. (Attached as Exhibit A).[3]

Ms. Giampietro's offense of conviction is a violation of 18 U.S.C. § 2339C(c). The elements of the offense of conviction include:

(1) "knowingly conceals or disguises" material support or resources to a terrorist organization, and (2) "knowing or intending that the support or resources" would be provided in violation of 18 § U.S.C. 2339B. *See supra* Section I.

The elements of § 2339C(c) do not require the defendant to intend to actually "influence, affect, or retaliate against government conduct." *See United States v. Banol-Ramos,* 516 F. App'x 43 (2d Cir. 2013), (stating "[n]ot all material support for terrorism is calculated to affect government conduct, nor does it always involve weapons." *Id.* at 47). Thus, the government is required to prove by a preponderance of the evidence additional facts necessary to establish the offense of conviction. Probation errs here because it relies solely on the alleged violation to establish the enhancement. This is wrong. To establish the enhancement, the evidence has to prove that Ms. Giampietro's purpose in concealing material support was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."

Instead of analyzing Ms. Giampietro's offense of conviction to determine whether her conduct was "calculated to influence or affect the conduct of government by intimidation or coercion, or

---

[3] Jeff Breinholt's article provides an excellent and succinct summary of the case law concerning the Terrorism Enhancement, which undersigned counsel both agrees with and recommends to this Court for consideration.

7

to retaliate against government conduct", the PSR summarily concludes that it is an offense of terrorism, so necessarily the enhancement applies. That is plain error. See *United States v. Chandia (Chandia I),* 514 F.3d 365 (4th Cir. 2008), vacating and remanding for resentencing because there were no factual findings that the terrorism enhancement applied. The *Chandia* Court specifically took to task the pre-sentencing investigation and District Court, which both automatically "appeared to assume (erroneously) that the enhancement automatically applies to a material support conviction." *Chandia* at 376.

### C. The PSR errs in relying on the concealment of the undercover agents' intent to travel to Syria as a Basis for the Terrorism Enhancement.

The facts contained in the factual basis addressed Ms. Giampietro's reasons for knowingly concealing the material support in the form of the undercovers as personnel and service providers. The factual basis provides

a. "Giampietro initially told UCE-1 that "HTS is no good," and Giampietro also expressed concerns about their plan to travel via London and the husband's contacts in London. Giampietro explained in part, "This is scaring me. Many people in London get caught…" Factual Basis, Plea Agreement, Doc. 390 at 4.

b. "On October 2, 2018, Giampietro messaged UCE-1. During this conversation, Giampietro again expressed concern regarding UCE-1 and UCE-2's London contacts…" Factual Basis, Plea Agreement, Doc. 390 at 6.

c. "Giampietro was concerned that UCE-2 and UCE-1 would be stopped by law enforcement if they attempted to travel via London and that her association with them would be discovered." Factual Basis, Plea Agreement, Doc. 390 at 6.

A finding that Ms. Giampietro's intended concealment of the undercovers' travel was for the purpose of intimidating coercing, or retaliating against a government is contrary to the above factual basis. From the factual basis, it is clear that Ms. Giampietro's offense of conviction action was calculated not to intimidate, coerce, or retaliate against a government, but instead to prevent her discovery and potential punishment. While concealing material support to prevent discovery

8

could arguably influence or affect the conduct of government, Ms. Giampietro's concealment was not calculated to intimidation, coercion, or retaliate against a government.

### D. Ms. Giampietro's intended concealment of the undercovers' financial contributions to HTS was not calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct

Because the PSR erroneously considered the June 2018 transactions as the currency referred to in the Superseding Information, the PSR did not analyze the actual currency Ms. Giampietro pled guilty to in determining whether the intended concealment of the undercovers' provision of currency to HTS was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.

Nevertheless, the factual basis in the PSR is silent on Ms. Giampietro's intent with respect to currency. Accordingly, the Court may look to other evidence to determine whether Ms. Giampietro's concealment of currency was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. The evidence, however, does not support such a conclusion.

To begin with, the terrorism enhancement is a victim related adjustment. The first logical step in determining whether the concealment was calculated to influence or affect the conduct of government is to identify the government in question. Neither the government nor the PSR identifies a government victim. Revised PSR at 23, 33. Instead, both rely on Ms. Giampietro's alleged contributions to HTS in June 2018, her past statements regarding jihad, and her desire to travel to Syria in 2016 and 2017, to establish that her offense, beginning September 23 to October 23, 2018, was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.

> *i. The alleged contribution of financial support to HTS in June, 2018, is not relevant conduct with respect to the Terrorism Enhancement.*

9

The government agreed in the factual basis that Ms. Giampietro committed the concealment of currency by providing the "@alsadaqahsyria," contact so that the undercover agents could provide funds to HTS, disguised as a charitable contribution. *See supra* Section I. at 3. Accordingly, Ms. Giampietro presumes the government provided the Probation Officer evidence concerning the alleged financial support of HTS in June 2018, as "relevant conduct" with respect to the Terrorism Enhancement. The government, however, is legally incorrect in arguing that the contributions in June 2018 are "relevant conduct" for the purposes of determining whether the enhancement applies, and they are factually incorrect in arguing that the funds were provided to HTS.

The alleged financial contributions in June 2018 are separate and not relevant conduct for the purposes of determining whether the enhancement applies.

U.S.S.G. 1B1.3(a) states that the relevant conduct for determining the guidelines range:

> *Unless otherwise specified* …adjustments in Chapter Three[4], shall be determined on the basis of the following: all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and… all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and…

The terrorism enhancement, however, specifies that the conduct in question is limited to the *offense of conviction*. *See United States v. Amer Sinan Alhaggagi*, 978 F.3d 693 (9th Cir. 2020) (holding that "the text of the terrorism enhancement, explicitly requires the underlying offense ─ the offense that violates one of the enumerated crimes in the second prong ─ be calculated to influence or affect government conduct." Id. at 700 n.6.)

Accordingly, the June 2018 allegations to which Ms. Giampietro did not plead guilty to would have to be part of the same course of conduct as the September/October 2018 conduct in

---

[4] The Terrorism enhancement is Chapter Three Adjustment.

10

order to be "relevant conduct" for the purposes of the enhancement. The June 2018 contributions, however, are not part of the same course of conduct. The alleged June 2018 contributions are independent and separate courses of conduct. To make this determination the Court need look no further than the Second Superseding Indictment where the financial support to HTS is charged separately from the attempted material support based on the defendant's actions with the undercovers. Doc. 255, Count II. Because they were separate courses of conduct, if Ms. Giampietro had been convicted of material support by providing finances in June of 2018 to HTS, and concealing support to HTS in September/October 2018, the offence score for each would have been calculated separately. As such, it does not follow that the June 2018 conduct is "relevant conduct" with respect to the concealment of material support in September/October 2018.

> ii. *Financial support of HTS in June 2018 is not supported by a preponderance of the evidence.*

The government maintains that Ms. Giampietro provided material support to HTS based on three transactions/payments via Western Union to Turkey in June of 2018, and Ms. Giampietro's screen shots of "@alsadaqahsyria's" advertisement for funds to support the mujahedeen. MS. Giampietro maintains that the Western Union transfers were to Merciful Hands for a wheelchair and housing, and separately to Syria Care Turkey for general purposes. The government's position is speculative at best. Ms. Giampietro's position is supported not only by her statements, but also documentary evidence and expert testimony. The evidence is summarized in the initial "Defense Position With Respect to Sentencing", Doc. 396, pages 2 – 6, filed on April 29, 2022. Ms. Giampietro renews and incorporates her arguments herein with respect to the lack of factual basis for the conclusion that she attempted to provide material support to HTS in June of 2018. The exhibits attached to Doc. 396 in support of the defendant's position was furnished to the Probation officer during her interview of Ms. Giampietro on June 1, 2022. The Probation

11

officer, however, has not incorporated this information at all in the PSR. Nevertheless, it has been furnished to the Court in Doc. 396 and will be available to the Court in the upcoming hearing on June 24, 2022.

### III. While the Revised PSR now Applies the Correct Rule Regarding the Obstruction of Justice Enhancement, it Misapplies the Rule to the Offense (Paragraphs 22, 24-26, 35).

The Draft PSR initially applied the obstruction of justice enhancement in clear error by ignoring Application Note 7 to § 3C1.1. Application Note 7 states,

> "Inapplicability of Adjustment in Certain Circumstances.—If the defendant is convicted of an offense covered by … §2X3.1 (Accessory After the Fact)…, this adjustment is not to be applied to the offense level for that offense except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself (e.g., if the defendant threatened a witness during the course of the prosecution for the obstruction offense)."

The Revised PSR concedes that § 2X3.1 (Accessory After the Fact) is applicable in determining obstruction of justice enhancement is appropriate. Revised PSR at 25 Section § 2X3.1 states that obstruction of justice enhancement:

> "is not to be applied to the offense level for that offense except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself (e.g., if the defendant threatened a witness during the course of the prosecution for the obstruction offense)." U.S.S.G § 2X3.1

The Revised PSR then misapplies Application Note 7 and applies the obstruction of justice enhancement, stating,

> In this case, the defendant admitted that subsequent to learning of a federal investigation into an online friend, she deleted social media accounts that she used to communicate with that individual. Agents also found messages on the defendant's cellphones that indicated she was deleting messages and applications due to her possible pending Indictment. Given the additional obstructive conduct that occurred after the defendant was aware of a federal investigation involving her online friend, the enhancement is applied as it is separate from the concealment included in her offense of conviction. Revised PSR at 26.

12

These facts are insufficient to establish a "significant further obstruction" that occurred in addition to the offense of conviction because the only deletions that occurred, happened before or during the charged period in the Superseding Information. The Superseding Information charges the offense between September 23, 2018 and October 23, 2018. The deletions referred to in the PSR occurred during this timeframe and thus cannot constitute a "significant further obstruction". The messages that the revised PSR addresses in paragraph 22 state:

> "In one message, sent on August 14, 2019, Giampietro advised Onanuga that she was "deleting what's app shortly" [sic]. When Onanuga inquired as to why Giampietro was deleting the application, she responded, "I may be indicted tomorrow or Friday." According to Giampietro, she never actually deleted WhatsApp, but made the statement to Onanuga prior to her federal detention hearing as she thought she would be released on bond with internet restrictions." Revised PSR, paragraph 22.

These messages are not proof of any deletions and such deletions never actually occurred; they were merely discussed. The government must prove a significant further obstruction, beyond the charged period, in order to apply the obstruction of justice enhancement. The social media deletions and telling the undercover to delete Ms. Giampietro's name from her phone either occurred before the offense of conviction, or were part of the offense of conviction, the concealment element of her offense, and thus cannot be double counted for the purpose of the § 3C1.1 enhancement.

### IV.     Ms. Giampietro Qualifies for Acceptance of Responsibility (Paragraph 29)

The Revised PSR currently applies the three-level reduction for acceptance of responsibility, but it notes,

> Of note, during the second interview with the undersigned probation officer, the defendant was questioned about the wire transfers noted in the offense conduct. According to the defendant, her monetary donations were made to Turkey Syrian Care and Merciful Hands charities. The defendant stated that the monetary donations she made, via wire transfer, were to provide funds and necessities to those in need in Syria. This information appears to be in contrast to an element of the

13

offense of conviction of Concealment of Material Support and Resources Intended to be Provided to a Foreign Terrorist Organization. As it stands, the three-level reduction for acceptance of responsibility has been applied; however, it is left for the Court's consideration. Revised PSR at 29.

As addressed above, *see supra* section I, the monetary donations Ms. Giampietro made via wire transfer in June 2018 are not an element of the offense. Ms. Giampietro objects to the inclusion of paragraph 29 of the donations as an element of the offense because they are outside the time-period of the Superseding Information and were not included in the Factual Basis of the Plea Agreement.

Alternatively, if the Court finds that the June 2018 transactions are relevant conduct for the purposes of the terrorism enhancement, Ms. Giampietro should still be given credit for acceptance of responsibility. She has accepted responsibility for all facts contained in the factual basis of the Plea Agreement, the relevant conduct of the offense, her entire personal history and involvement in online discussion of jihad and terrorist groups. Application Note 1 of U.S.S.G. 3E1.1 provides,

> (A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous…

Ms. Giampietro did not directly address the charitable donations until the Court noted in the status conference on May 11, 2022, that there was confusion about whether Ms. Giampietro was backtracking on her Plea Agreement and advised that Ms. Giampietro meet with Probation to address these concerns. Ms. Giampietro then provided a detailed statement to Probation regarding

14

the history of her case, including the charitable donations. At a second status conference on May 18, 2022, the Court advised the defense that written statements were given less weight and that Ms. Giampietro would have to meet with Probation in-person to discuss the concerns about her plea.

To preserve her objection to the application of the terrorism enhancement, and to ensure the Court had a full understanding of the facts, Ms. Giampietro made the requested statements. This was done despite the fact that she had the right to remain silent in respect to relevant conduct beyond the offense of conviction without affecting her ability to obtain a reduction for acceptance of responsibility.

V. Conclusion

For the reasons stated above, the defendant objects to the Revised PSR's guidelines calculation and instead submits that correct calculations are as follows:

| Guideline | Guideline # | Levels |
| --- | --- | --- |
| Base Offense Level[5] | 2X3.1, 2M5.3(a) | 26 + 2 -6 = 22 |
| Acceptance of Responsibility | 3E1.1(a) | -2 |
| Acceptance of Responsibility | 3E1.1(b) | -1 |
| Criminal History | I | |
| | | |
| Total Offense Level | | 19 |

| Guidelines Range | | 30-37 Months |
| --- | --- | --- |

Dated this 21st day of June, 2022.

Submitted By:
/s/ Charles Swift
CHARLES D. SWIFT

---

[5] The defense does not dispute Probation's application of the 2-level increase pursuant to § 2M5.3(b)(1) which states that if the offense involved the provision of funds, or other material support, knowing that they would be used in a violent act, the base offense level is increased by 2 levels. The defense does not dispute this cross-reference because it only requires that the defendant had knowledge of the intended use of the resources, it does not require the additional intent of intimidation, coercion, or retaliation against a government.

Linda G. Moreno
*Pro Hac Vice* Attorneys for Defendant
100 N. Central Expy, Ste.1010
Richardson, TX 75080
(972) 914-2507

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of June, 2022, I electronically filed the foregoing **Defendant's Objections to Revised PSR and Addendum** with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

By: /s/ *Charles Swift*
CHARLES D. SWIFT
*Pro Hac Vice*
Attorney for Giampietro
100 N. Central Expy, Suite 1010
Richardson, TX 75080