# Application of the Terrorism Sentencing Enhancement to Material Support Convictions

*Jeff Breinholt*
*Counsel for Law and Policy*
*National Security Division*

## I. Introduction

This article provides an overview of the terrorism enhancement provision under U.S. Sentencing Guidelines (U.S.S.G.) § 3A1.4 and its application to terrorist financing convictions in recent years. The enhancement provides a 12-level increase in the offense level, with a minimum offense level floor of 32 and an increase in the criminal history category (CHC) to category VI if the offense involved, or was intended to promote, a federal crime of terrorism. The combination of offense level 32 and CHC VI provides a U.S.S.G. range of 210 to 262 months, which, when converted to years, provides a range from 17 years, 6 months, to 21 years, 10 months.

Because we are talking about a provision of the U.S.S.G., the terrorism enhancement provision was impacted by *United States v. Booker*, 543 U.S. 220 (2005), where the Supreme Court found that the Sixth Amendment prohibited the imposition of an enhanced sentence under the Sentencing Guidelines on the basis of facts not admitted by the defendant or found by the jury beyond a reasonable doubt. The net effect of this ruling was to make the Guidelines advisory in nature. In this respect, *Booker* also held that, while the Sentencing Guidelines were no longer mandatory, they must still be taken into account by the court pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence. Consequently, rumors of the demise of the Sentencing Guidelines with *Booker* were greatly exaggerated. In the wake of *Booker*, prosecutors continue to have the responsibility to assist and advise the court in the formulation of an appropriate Guidelines sentence and, although courts are not required to impose a Guidelines sentence, sentencing courts are still required to consider the Guideline range adopted by the Sentencing Commission. As a result, at least with respect to the terrorism enhancement provision set forth in U.S.S.G. § 3A1.4, sentencing opinions today look very much like those that predated *Booker*.

## II. Good news and bad news

The good news for prosecutors who are seeking to have the court apply the terrorism enhancement following an 18 U.S.C. §§ 2339A or 2339B conviction is that both crimes are enumerated in the definition of "federal crime of terrorism." 18 U.S.C. § 2332b(g)(5) (2014). Even better, the terrorism enhancement, by its terms, does not require an actual conviction for these enumerated crimes. Rather, the defendant must have been convicted of an offense that either "involved" or "was intended to promote" such a crime. U.S. SENTENCING GUIDELINES MANUAL § 3A1.4 (2011). In fact, the first published controversy over its applicability was in 1998, in a case involving an aggressive tax protestor who was not convicted of a terrorism crime. *See United States v. Wells*, 163 F.3d 889, 893 (4th Cir. 1998).

Being convicted of an offense that involves one of the enumerated federal crimes of terrorism is only the first part of the definition of "federal crime of terrorism." In addition to an offense involving one of the enumerated crimes, the offense must be "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct . . . ." 18 U.S.C.

Case 2:19-cr-00013   Document 417-1   Filed 06/21/22   Page 1 of 4 PageID #: 4986

§ 2332b(g)(5)(A) (2014). Thus, a U.S.S.G. § 3A1.4 enhancement is not automatic following a § 2339A or § 2339B conviction as both elements must be met.

In other words, the intent element under § 2332b(g)(5)(A) often requires a higher level of knowledge than the level of knowledge for a § 2339B conviction. A conviction under 18 U.S.C. § 2339B requires the Government to prove that a person knowingly provided, attempted to provide, or conspired to provide material support or resources. In order to apply the U.S.S.G. § 3A1.4 terrorism enhancement, the Government must also demonstrate that the material support or resources were "calculated to influence or affect . . . or retaliate against government conduct." The conviction of the § 2339B offense is not necessarily, by itself, sufficient for the application of the § 3A1.4 enhancement. As the court noted in *United States v. Banol-Ramos*, 516 F. App'x 43, 47 (2d Cir. 2013), "[n]ot all material support for terrorism is calculated to affect government conduct, nor does it always involve weapons."

For example, in *United States v. Chandia*, 514 F.3d 365, 376 (4th Cir. 2008), a terrorist financing conviction, the Fourth Circuit vacated a sentence and remanded for resentencing because there were no factual findings on the intent element of the terrorism enhancement. The district court and the Presentence Investigation Report "appeared to assume (erroneously) that the enhancement automatically applies to a material support conviction."

Indeed, where courts have reversed terrorism enhancements, it is often on the grounds of an insufficiency of proof of the terrorism intent element. *See United States v. Stewart*, 590 F.3d 93, 136–39 (2d Cir. 2009) (upholding denial of imposition of terrorism enhancement on material support conviction for translator where offense conduct was insufficient to show he intended to promote or was involved in a federal crime of terrorism). Importantly, several cases have specified that the defendant's personal motivation is not the focus; the requirement is satisfied if the offense itself was calculated to influence the Government, even if the defendant claims he was motivated by glory or charity or other non-terrorism purposes. For example, in *United States v. Jayyousi*, 657 F.3d 1085, 1114 (11th Cir. 2011), the Eleventh Circuit rejected defendants' argument that they had a "benign motive in assisting the oppressed Muslims," and that motive precluded application of the enhancement. The court explained that "the Guidelines's [sic] precise language focuses on the intended outcome of the defendants' unlawful acts— i.e., what the activity was calculated to accomplish, not what the defendants' claimed motivation behind it was."

In *United States v. Awan*, 607 F.3d 306, 316 (2d Cir. 2010), the Second Circuit similarly rejected the district court's reasoning that the enhancement did not apply because defendant acted with "private purposes" to gain prestige. The court of appeals held that "motive is simply not relevant." *Id.* at 317. " 'Motive' is concerned with the rationale for an actor's particular conduct. . . . 'Calculation' is concerned with the object that the actor seeks to achieve through planning or contrivance." *Id.* The enhancement "does not focus on the defendant but on his 'offense,' asking whether it was calculated, i.e., planned—for whatever reason or motive—to achieve the stated object." *Id. See also United States v. Wright*, 747 F.3d 399, 408 (6th Cir. 2014) ("[A] defendant who provided material assistance to terrorist organizations, but claimed that his goal was to assist an oppressed group of Muslims, is eligible for the enhancement regardless of his purportedly benign motive."); *but see United States v. Wright*, 747 F.3d 399, 418 (6th Cir. 2014) ("We now hold that this element requires the government to prove that the defendant specifically intended to influence or affect the conduct of government, and that a defendant has the requisite intent if he or she acted with the purpose of influencing or affecting government conduct and planned his or her actions with this objective in mind." (internal quotations omitted)); *United States v. Banol-Ramos*, 516 F. App'x 43, 48 (2d Cir. 2013) ("Hence, to impose the terrorism enhancement, the district court was required to find that Ibarguen–Palacio committed (a) an enumerated offense, (b) with specific intent to influence government conduct.").

In sum, for the court to apply the terrorism enhancement, a prosecutor must also prove by a preponderance of the evidence that the terrorism offense was "calculated to influence or affect the

Case 2:19-cr-00013   Document 417-1   Filed 06/21/22   Page 2 of 4 PageID #: 4987

conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A) (2014).

## III. Selected recent sentencing opinions

For prosecutors seeking to have the court impose the enhancement after a material support conviction, the best guidebook for what is required comes from court opinions from the last two years.

First, these cases show that achieving the terrorism enhancement for a material support-type conviction is a tricky proposition, especially when the convictions are by plea and where they do not involve other terrorism crimes beyond material support.

For instance, the Second Circuit in *United States v. Banol-Ramos*, 516 F. App'x 43, 50 (2d Cir. 2013), recently vacated the sentence of one defendant who pled guilty to conspiracy to provide material support to a designated terrorist organization in violation of 18 U.S.C. § 2339B, relating to activities involving Fuerzas Armadas Revolucionarias de Colombia (FARC). After describing Ibarguen–Palacio's involvement with FARC, the district court concluded that he agreed to help FARC in their activities, and that he "knew a good deal about the organization that he was joining." *Id.* at 49. Taken alone, however, according to the Second Circuit, these facts were not sufficient to support a finding that Ibarguen–Palacio had the specific intent to influence government conduct by intimidation or coercion, or to retaliate against the Government. In other words, his agreement to help FARC did not necessarily establish that he specifically intended to influence or retaliate against the Government. The court remanded for further proceedings, indicating that the district court would need to set forth additional findings to support the terrorism enhancement. *Id.* at 50.

On the other hand, in *United States v. Hassan*, 742 F.3d 104, 110 (4th Cir. 2014), a case that involved more than material support charges, the terrorism enhancement was upheld. Mohammad Omar Aly Hassan, Ziyad Yaghi, and Hysen Sherifi were tried jointly in the Eastern District of North Carolina and convicted of several offenses arising from plotting to wage "violent jihad" outside the United States, including conspiracy to kill a federal officer or employee, conspiracy to provide material support, conspiracy to murder, kidnap, maim, and injure persons in foreign country, and related crimes. They appealed their terrorism-enhanced sentences. The Fourth Circuit saw no clear error in the district court's findings supporting the enhancements, which relied on evidence including the fact that one defendant sought out the ringleader "to learn more about [his] time in Afghanistan and presumably to learn more about traveling abroad to commit violent jihad," a defendant's travels in 2006 and 2007 to the Middle East seeking "to engage in violent jihad," advocacy of violent jihad on the Internet "through raps and other postings," a defendant's hopes "that he would be able to secure farmland from which to launch various challenges against military occupation or intervention," and the receipt of $15,000 to support the mujahideen as evidence of "[a] specific intent to intimidate, coerce, or retaliate against government." *Id.* 149–50. *See also United States v. Kaziu*, 559 F. App'x 32, 39 (2d Cir. 2014) (affirming application of terrorism enhancement following jury conviction for § 2339A and § 2339B offenses, rejecting defendant's argument that the enhancement was "inherently unreasonable because automatic placement into the harshest Criminal History Category diverges sharply from the true facts" (internal quotations omitted)).

In a recent D.C. Circuit case, *United States v. Mohammed*, 693 F.3d 192, 201 (D.C. Cir. 2012), Khan Mohammed was convicted of narcoterrorism (18 U.S.C. § 960a), for providing support to the Afghanistan Taliban. The D.C. Circuit had no trouble affirming the imposition of the terrorism enhancement. It found sufficient the district court's determination that the defendant "specifically intend[ed] to use the commission from the drug sales to purchase a car to facilitate attacks against U.S. and foreign forces in Afghanistan."

Case 2:19-cr-00013   Document 417-1   Filed 06/21/22   Page 3 of 4 PageID #: 4988

Second, some courts have ameliorated the harshness of the terrorism enhancement in material support cases by applying downward departures or variances.

In *United States v. Nayyar*, No. 09 Cr. 1037(RWS), 2013 WL 2436564, at *9 (S.D.N.Y. June 5, 2013), a New York district court recently departed downward from a terrorism enhancement sentence in sentencing Patrick Nayyar, who was convicted of providing military equipment to Hizballah. The court, without much analysis, applied both the terrorism enhancement and the weapons enhancement of U.S.S.G. § 2M5.3(b)(1)(E). Then, when going through the 18 U.S.C. § 3553(a) factors, the court noted that there is "no claim here that the defendant is a terrorist. No one is arguing that the defendant was planning to blow anything up or commit any acts of violence." *Id.* at *8. The court was disturbed that "[a]pplication of the Terrorism Enhancement to Nayyar's sentence would have the ultimate effect of punishing him as harshly as someone who had actually committed acts of terroristic violence." *Id.* It also noted that one of the rationales for the criminal history increase under the terrorism enhancement, the difficulty of rehabilitating a terrorist, "is wholly inapposite here, where even the Government has openly and expressly acknowledged that there is no claim here that the defendant is a terrorist. *Id.* (internal quotations omitted). For these reasons, the court downwardly departed from the Guidelines range and sentenced the defendant to 15 years. *Id.* at *9.

Finally, a Sri Lankan native who was the principal procurement officer for the Liberation Tigers of Tamil Eelam (LTTE), a foreign terrorist organization that targeted the Sri Lankan government, pleaded guilty to conspiracy to provide material support LTTE (under 18 U.S.C. § 2339B) and conspiracy to bribe public officials. *United States v. Thavaraja*, 740 F.3d 253, 255 (2d Cir. 2014). The district court sentenced him to 108 months' imprisonment for the material support charge, with a concurrent 60-month sentence for a bribery conspiracy, a substantial downward variation from the Guidelines range. The Government challenged the substantive reasonableness of the sentence, contending that the sentence was unreasonably low and that the district court had erred in relying "on its subjective viewpoint [that] the LTTE's goals are somehow less blameworthy than those of other designated foreign terrorist organizations." *Id.* at 261.

The Second Circuit affirmed the sentence and explained that the district court properly considered "credible evidence of human rights violations by both the Sri Lankan security forces and the LTTE," and the defendant's motivation "to help people who were, at least in [LTTE's] view, being persecuted by other authorities." *Id.* at 261–62 (internal quotations omitted).❖

**ABOUT THE AUTHOR**

❏**Jeff Breinholt** currently serves as Counsel for Law and Policy within the National Security Division. A 24-year DOJ veteran, he has served in the Tax Division Criminal Enforcement Section and the Criminal Division's Terrorism and Violent Crime Section, and as Deputy Chief of the NSD's Counterterrorism Section. He is a frequent author and lecturer on law enforcement and intelligence topics. ✠

Case 2:19-cr-00013   Document 417-1   Filed 06/21/22   Page 4 of 4 PageID #: 4989